Kathryn A. Stebner, State Bar No. 121088
George Kawamoto, State Bar No. 280358
**STEBNER AND ASSOCIATES**
870 Market Street, Suite 1212
San Francisco, CA  94102
Tel:  (415) 362-9800
Fax:  (415) 362-9801

Michael D. Thamer, State Bar No. 101440
**LAW OFFICES OF MICHAEL D. THAMER**
Old Callahan School House
12444 South Highway 3
Post Office Box 1568
Callahan, California 96014-1568
Tel:  (530) 467-5307
Fax:  (530) 467-5437

Robert S. Arns, State Bar No. 65071
**THE ARNS LAW FIRM**
515 Folsom Street, 3rd Floor
San Francisco, CA 94105
Tel:  (415) 495-7800
Fax: (415) 495-7888

Guy B. Wallace, State Bar No. 176151
Mark T. Johnson, State Bar No. 76904
Jennifer A. Uhrowczik, State Bar No. 302212
Sarah Colby, State Bar No. 194475
**SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS, LLP**
2000 Powell Street, Suite 1400
Emeryville, CA  94608
Tel: (415) 421-7100
Fax: (415) 421-7105

W. Timothy Needham, State Bar No. 96542
**JANSSEN MALLOY LLP**
730 Fifth Street
Eureka, CA  95501
Tel:  (707) 445-2071
Fax:  (707) 445-8305

Christopher J. Healey, State Bar No. 105798
**DENTONS US LLP**
600 West Broadway, Suite 2600
San Diego, CA 92101-3372
Tel: (619) 236-1414
Fax: (619) 645-5328

Attorneys for Plaintiff and the Proposed Class

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS CARNES, by and through his guardian ad litem, JULIANA CHRISTINE CLEGG, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>vs.<br><br>ATRIA SENIOR LIVING, INC. and DOES 1 through 100,<br><br>     Defendants. | Case No.: 3:14-cv-02727-VC<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:     June 30, 2016<br>Time:    10:00 a.m.<br>Place:   Courtroom 4<br>Judge:   Hon. Vince Chhabria |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ..................................................................1

POINTS AND AUTHORITIES ...........................................................................1

I.     INTRODUCTION ...................................................................................1

II.    BACKGROUND.......................................................................................3

     A.    Case Overview ...............................................................................3

     B.    Case Proceedings...........................................................................4

     C.    Case Investigation and Discovery .................................................4

     D.    Parties' Settlement Negotiations Result In Agreement.................5

     E.    Court Grants Preliminary Approval .............................................5

III.   THE PROPOSED SETTLEMENT WILL BENEFIT THE CLASS ....................5

     A.    The Settlement Fund .....................................................................6

     B.    Settlement Payments to Class Members .......................................6

     C.    Stipulated Injunction ....................................................................7

     D.    Release Provisions.........................................................................8

     E.    Class Notice and Settlement Administration Costs.......................8

     F.    Payment of Service Awards, Attorneys' Fees and Litigation Costs ........................9

IV.    THE SETTLEMENT MEETS THE STANDARDS FOR FINAL SETTLEMENT APPROVAL...........................................................................9

     A.    The Settlement is Entitled to a Presumption of Fairness ...........11

     B.    The Settlement is Fair Given the Settlement Benefits and the Risks Associated With Continued Litigation. ...................................................12

          1.    The Settlement Will Result in Substantial Benefits to the Class ................12

          2.    The Litigation Risks Support Final Approval .............................14

     C.    Reaction of Class Members.........................................................15

V.     CONCLUSION ...................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In Re Armored Car Antitrust Litig.*,
    472 F. Supp. 1357 (N.D. 1979) ...................................................................................13

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ..............................................................................11

*Churchill Village, L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004)........................................................................................10

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) .....................................................................................10

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980) .....................................................................................11

*Grunin v. International House of Pancakes*,
    513 F.2d 114 (8th Cir. 1975), cert. denied, 423 U.S. 864 (1975) ...............................10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998).................................................................................10, 11

*Linney v. Cellular Alaska Partnership*,
    151 F.3d 1234 (9th Cir. 1998).....................................................................................13

*Linney v. Cellular Alaska Partnership*,
    No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18 1997)..........................11, 14

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000).......................................................................................13

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982).......................................................................................10

*In re Omnivision Techs.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) .......................................................................13

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003)........................................................................................10

*Trombley v. Nat'l City Bank*,
    759 F. Supp .2d 20, 25-26 (D.D.C., 2011) ...................................................................13

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976)........................................................................................10

*Winans et al. v. Emeritus et al.*,
    No. 13-cv-03962-HSG, 2016 U.S. Dist. LEXIS 3212 (N.D. Cal. 2016) ..................................13

**Statutes**

28 United States Code
    §1715 ...............................................................................................................................9

California Business and Professions Code
    §§ 17200 *et seq.* .............................................................................................................3

California Civil Code
    § 1750, *et seq.* ...............................................................................................................3
    § 1780(b)(1) ..................................................................................................................12

California Welfare and Institutions Code
    § 15610.30 ......................................................................................................................3

**Rules**

Federal Rules of Civil Procedure
    Rule 23 .........................................................................................................................1, 9
    Rule 23(e) .....................................................................................................................11

**Other Authorities**

Federal Judicial Center, Manual for Complex Litigation (4th ed. 2004)
    §§ 21.63, *et seq.* ...........................................................................................................10

4 *Newberg on Class Actions* (4th ed. 2002)
    § 11.41 ...........................................................................................................................11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that Plaintiff's Motion for Final Settlement Approval will be heard on June 30, 2016, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 4, 17th Floor, in the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable Judge Vince Chhabria presiding.  Pursuant to Federal Rule of Civil Procedure ("FRCP"), Rule 23, Plaintiff on behalf of itself and the Settlement Class will and hereby do move for an order approving the parties' Stipulation of Settlement as fair, reasonable, and in the best interests of the Settlement Class.  This motion is based on the attached Memorandum of Points and Authorities, the Notice of Lodgment and declarations and exhibits attached thereto, all other records, pleadings, and papers on file in this action; and such other evidence or argument as may be presented to the Court at the hearing on the motion.

## POINTS AND AUTHORITIES

### I.      INTRODUCTION

This motion seeks final approval of the parties' class settlement in this action, reached after arms-length settlement negotiations supervised by a neutral mediator.  In addition to injunctive relief, the settlement provides substantial monetary payments to a settlement class of approximately 13,750 current and former residents of assisted living facilities owned, managed and/or operated by Atria Senior Living, Inc. ("Defendant") in California.  The proposed Settlement Class is readily ascertainable and Defendant has provided the Settlement Administrator with a list of all Class Members from Defendant's existing records, and notice was sent to the Class Members by utilizing the list.

This case is based on allegations that Defendant misrepresented that resident assessments performed by Atria personnel would be used to set facility staffing, and allegations that Defendant failed to disclose that staffing is determined by labor budgets only.  Defendant disputes these allegations in their entirety, denies any legal liability and vigorously defended the case since the

initial complaint was filed in June 2014.  After weeks of mediation proceedings before the Hon. Rebecca Westerfield (Ret) of JAMS, the parties reached a settlement to resolve the case.

Specifically, Defendant has agreed to pay $6.4 million (the "Settlement Fund") in full settlement of all claims. Subject to Court approval of Plaintiff's application for attorneys' fees, litigation costs, a service award to the Named Plaintiff, and factoring in estimated notice and administration expenses, it is anticipated that approximately $4 million will be available to fund payments to Settlement Class members.  That translates to a minimum per-resident payment of approximately $290.  In addition, the settlement includes a Stipulated Injunction agreed to by Atria.  Among other terms, the Injunction requires Atria to include language in residency agreements and other documents stating, among other things, that resident assessments and other factors are considered in setting or monitoring staffing levels at Atria's California facilities.  The injunction will begin on the Effective Date (defined in the Agreement) and remain in place for three years.

As detailed below, the Settlement falls well within the "range of reasonableness."  The $290 per-resident minimum settlement payment represents over 32% of the average resident move-in fee (which is approximately $885 per resident).  From Plaintiff's perspective, the move-in fees represent the "hard damages" realistically recoverable at trial.  Specifically, under Plaintiff's case theory, the move-in fees would not have been paid had residents known the alleged "true" facts that resident assessments are not used to set facility staffing.  Unlike other charges (such as rent payments) -- as to which residents arguably received some value for services rendered – the move-in fees are unlikely to be barred or reduced by Defendant's offset and related arguments. (See Declaration of Christopher J. Healey ("Healey Decl."),¶33).

The actual per-resident payment will likely be higher, given the practical difficulties in locating all settlement class members. In accordance with the Court's stated preferences for class resolution, the Agreement provides several proceedings to maximize the amount of settlement payments to the Settlement Class.  First, before making the initial distribution, the Settlement Administrator will recalculate the per-resident payment using the actual number of class members located through Defendant's records, address updates and Distribution Requests.  From past

1   experience with these types of settlements, that process will likely result in an increase in the per-

2   resident payment.  (Healey Decl.,¶¶ 33-34).  Second, once the initial distribution has been

3   completed, the Administrator will calculate the total funds remaining from the late payment

4   reserve ($25,000) and uncashed checks, and assuming another distribution round is economically

5   feasible (including taking into account, among other things, the postage costs), all identified

6   settlement class members who cashed their initial settlement payment will receive a second

7   settlement check. (Stipulation of Settlement ("SS" or "Agreement"), ¶ 9.6; Healey Decl., ¶27).

8   **II.   BACKGROUND**

9       **A.   Case Overview**

10       Plaintiff Thomas Carnes, by and through his guardian ad litem, Juliana Christine Clegg

11   filed this action on June 12, 2014.  Filed as a putative class action, the lawsuit sought relief on

12   behalf Mr. Carnes and all persons who resided in any of Atria's California assisted living facilities

13   since June 2010.  The crux of Plaintiff's case is that Defendant allegedly misled residents, family

14   members and the general public to believe that resident assessments would be used to determine

15   staffing at Atria's facilities. (Third Amended Complaint, Dkt. No.101, "TAC", ¶¶2-6).  Plaintiff

16   alleges, facility staffing is not determined by resident assessments, but instead is based on labor

17   budgets and pre-determined profit objectives.

18       Plaintiff asserts claims for damages and other relief under California's Consumers Legal

19   Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"), California's unfair competition statute,

20   Bus. & Prof. Code §§ 17200 *et seq.* ("UCL") and the Financial Elder Abuse statute, Cal. W&I

21   Code § 15610.30.

22       Defendant denies the allegations and claims in the case in their entirety, and denies any

23   wrongdoing whatsoever.  Defendant also denies that the case is appropriate as a class action for

24   purposes of litigation.  As stated in the Settlement Stipulation, Defendant has agreed to settle

25   solely to avoid continued burdensome and costly litigation, and disruption to its business.

26       When the lawsuit was initially filed, Ms. Clegg served as Mr. Carnes' personal

27   representative.  Thereafter, the Court approved Ms. Clegg to act as Mr. Carnes' guardian ad litem.

28   Mr. Carnes died on or about September 29, 2015.  As Ms. Clegg is the Successor Trustee of the

1   Thomas & Alice Carnes Family Trust dated September 28, 2004, Plaintiff's complaint was

2   amended to update Ms. Clegg's status as Mr. Carnes' guardian ad litem and legal successor.

3   (TAC, ¶14).

4       **B.       Case Proceedings**

5           The case has been vigorously litigated from inception.  Following Plaintiff's amendment to the

6   initial complaint, Defendant moved to dismiss Plaintiff's First Amended Complaint ("FAC") on multiple

7   grounds.  After full briefing and oral argument in November 2014, the Court dismissed the FAC but

8   granted leave to amend.  (Dkt. No. 43).  Plaintiff filed a Second Amended Complaint, Dkt. No. 51

9   ("SAC"), on December 11, 2014.  Among other changes, the SAC alleged that, as a result of Atria's

10  challenged conduct, Plaintiff had not received the amount of care promised in his initial admission

11  contract.  Plaintiff further alleged other residents either had not received their promised care, or were

12  placed at substantial risk that they would not receive such care in the future.  (SAC, ¶¶2, 6).

13          Defendant again moved to dismiss, raising among other arguments, that Plaintiff's request for

14  injunctive relief was barred on abstention grounds and that Plaintiff's financial elder abuse claim failed

15  because Ms. Clegg was not an "elder" for purposes of that statute.  On February 20, 2015, the Court

16  denied Atria's motion to dismiss the SAC.  (Dkt No. 61).  Defendant thereafter answered the SAC by

17  denying the allegations and claims asserted in the SAC, denying any wrongdoing, and denying that the

18  case is appropriate as a class action for purposes of litigating the claims.

19      **C.       Case Investigation and Discovery**

20          Prior to reaching a settlement, Plaintiff engaged in substantial investigation and discovery.

21  Before filing the initial complaint, Plaintiff's Counsel reviewed approximately 2,800 pages of

22  background documents, interviewed former Atria employees, interviewed residents (and family

23  members), and consulted with multiple experts on assisted living facilities.  (Healey Decl.,¶14).

24          After the lawsuit was filed, discovery included Defendant's production and Plaintiff's

25  review of approximately 554,469 pages of documents and 2,406 additional electronic documents

26  in their native formats.  Plaintiff's review also included approximately 56,345 pages of documents

27  from the California Department of Social Services, Community Care Licensing Division regarding

28  the California assisted living facilities owned and/or operated by Defendant.  In addition, the

1  parties participated in depositions discovery obtained from two of Defendant's employees.

2  (Healey Decl.,¶15).

3      In connection with the mediation and settlement effort, Defendant produced additional

4  information, including a summary of the move-in fees paid by all Atria facility residents during

5  the Settlement Class Period.  Defendant's records show that the average move-in fee for each

6  resident was roughly $885. (Healey Decl.,¶16).

7      **D.   Parties' Settlement Negotiations Result In Agreement**

8      In late 2015, the parties engaged in preliminary settlement discussions through counsel.

9  Those discussions eventually led to an agreement to mediate before the Honorable Rebecca

10 Westerfield (Ret.) of JAMS in San Francisco. On November 17, 2015, the parties engaged in a

11 full-day mediation before Judge Westerfield.

12      Although the case did not resolve at the initial mediation session, in the month following

13 the mediation, the parties continued settlement efforts with Judge Westerfield's assistance.  After

14 further discussions with counsel for the respective parties, Judge Westerfield provided both sides

15 with a mediator's proposal for the parties to either accept or reject.  On December 17, 2015, the

16 parties (independently) agreed to accept Judge Westerfield's mediator's proposal to settle the case.

17 (Healey Decl.,¶¶17-18).

18      **E.   Court Grants Preliminary Approval**

19      By order dated April 6, 2016, the Court granted Plaintiff's motion for preliminary approval

20 of the settlement.  (Dkt. No. 103). In accordance with the Court's order, notice of the settlement

21 was provided to the Settlement Class on April 26, 2016, through mail, publication and Internet

22 website posting.  The 35-day period for Class Members to opt-out or object expires on May 31,

23 2016.  (Declaration of Kathleen Wyatt ("Wyatt Decl."), ¶¶3-4, 7).

24 **III.   THE PROPOSED SETTLEMENT WILL BENEFIT THE CLASS**

25      A copy of the parties' Stipulation of Settlement is attached as Exhibit A to Plaintiff's

26 Notice of Lodgment ("PNOL").The key settlement terms are as follows:

27

28

### A.   The Settlement Fund

Defendant has agreed to pay $6.4 million to resolve all monetary obligations owed under the settlement.  In addition to the Settlement Awards paid to class members, the Fund will be used to pay notice/administration costs (estimated $120,000), a service award of $3,500 to Named Plaintiff, reimbursement of litigation expenses (roughly $130,000) and Plaintiff's attorneys' fees in the amount approved by the Court but not exceed one-third of the Settlement Fund.  Factoring in an agreed-upon reserve of $25,000 to cover late claims, the estimated amount available to fund payments to class members is roughly $4 million.  (Healey Decl.,¶19).

Significantly, there will be no reversion of any portion of the Settlement Fund to Defendant.  Rather, unused reserve funds as well as uncashed or returned checks will be used to fund a second round of Settlement Awards to identified class members.  Alternative, if the remaining amounts make a second distribution economically impractical, the balance will be distributed to a *cy pres* recipient, nominated by Plaintiff's Counsel and approved by the Court (SS,¶1.29; Healey Decl., ¶26).[1]

### B.   Settlement Payments to Class Members

The Agreement provides for cash payments to class members (or if deceased, their legal successors) on a direct distribution basis, with no claims requirement to obtain payment.  The parties estimate that the Settlement Class consists of approximately 13,750 current and former residents.  (Healey Decl., ¶20).  The Settlement Administrator -- KCC/Gilardi -- will mail settlement checks to each Settlement Class Member for whom a valid address has been provided by Defendant (or located through the address update procedures).  For Settlement Class Members for whom current addresses cannot be located, the Administrator is authorized to make payment based on a "distribution request" by the class member (or their legal successor).  (SS, ¶9.3).

The amount of the Settlement Award will be determined through a straightforward formula.  The Net Settlement Fund available for distribution (after Court approval of the above-

---

[1] As referenced in the Settlement Stipulation, Plaintiff has proposed the Institute on Aging as a potential *cy pres* recipient.  The Institute is a non-profit entity with substantial experience in assisting seniors and disabled persons on various matters, including assisted living facilities. (Healey Decl,¶26).

referenced expenses, service award and fee award) will be divided by the total number of Settlement Class Members to yield an "Initial Settlement Award." The Settlement Administrator is authorized to increase the Initial Settlement Amount if sufficient monies are available after calculating the amounts owed to all Settlement Class Members for whom current addresses have been provided or located, along with the amounts owed to class members (or their successors) who made timely distribution requests. (SS, ¶9.4; Healey Decl.,¶23).

So, for illustration purposes, if the Net Settlement Fund (after Court-approved payments) is $4 million, and there are roughly 13,750 Settlement Class Members, the Initial Settlement Payment would be approximately $290. That amount will be increased, if monies are available after the Administrator calculates the amounts owed to Settlement Class Members for whom current addresses are known or provided through Distribution Requests. (SS, ¶9.4).

The Agreement authorizes the Administrator to hold a reserve of $25,000 to pay late-submitted distribution requests or address other valid requests from Settlement Class Members. Also, Settlement Award checks not cashed within the check cashing deadline (after reasonable reminders issued by the Settlement Administrator) shall be added to the reserve fund. The Agreement provides for a second potential distribution to identified Settlement Class Members after the initial distribution and late claims process has been completed, assuming funds are left over in an amount sufficient to make another distribution economically practical. (SS, ¶9.6; Healey Decl.,¶26).

**C.      Stipulated Injunction**

An integral part of the settlement is the Stipulated Injunction, which subject to Court approval, will commence on the Effective Date and remain in place for three years from that date. (PNOL, Ex. A.1 - Stipulated Injunction; SS,¶ 8.2). Among other terms, the Injunction requires that Defendant:

1.      Ensure that resident assessments, including those conducted at the time of admission and thereafter during a resident's stay, are considered by Atria in determining, setting or monitoring staffing levels for its California communities.

2.      Ensure that all new Residency Agreements provided to, made available or entered into after the Effective Date for Atria's California communities disclose that: a) resident assessments are considered by Atria in determining, setting and monitoring staffing levels at its California communities; and b) Atria does not guarantee that any resident will receive a specific number of minutes or amount of care on any given day or time period.

3.      Ensure that all Residency Agreements, web pages, marketing brochures or other materials, and any other written statements to be provided to or made available to the consuming public in California and that discuss resident assessments are in compliance with the terms of the Injunction.  (Stipulated Injunction, ¶¶3-6).

**D.      Release Provisions**

Under the Agreement, the Named Plaintiff and Settlement Class Members (excluding opt-outs) will release all claims that were asserted or could have been asserted in the lawsuit arising out of or relating to statements, representations, acts, omissions or failures to disclose prior to March 17, 2016 (the close of the Settlement Class Period) regarding Defendant's agreements, advertising, marketing or other documents concerning the use or consideration of resident assessments to determine, evaluate, review or set facility staffing, staffing levels or care amounts. The releases are effective only after the settlement has been granted final approval and the "Effective Date" is reached.  Expressly excluded are any claims for personal injuries, emotional distress or bodily harm.  (SS,¶ 1.25; Healey Decl.,¶28).

**E.      Class Notice and Settlement Administration Costs**

The Agreement provides for mailed class notice by U.S. mail to all Settlement Class Members for whom current addresses can be located.  In addition, where Defendant's records include an email address for a resident or responsible party, notice was sent to the email address as well.  To effectuate the mailed notice, Defendant provided a list of names and contact information for all resident class members (and representatives/family members to the extent available) to the Administrator.  Those addresses were updated by the Administrator using standard change of address and other procedures.  (SS,¶6.2).  In addition to mailing, a summary form of the Court-

1  approved class notice was published in the California edition of USA Today, and posted on the

2  settlement website. (Wyatt Decl., ¶¶3-5).

3      Notice of the settlement was also provided to the applicable state and federal authorities in

4  accordance with the provisions of the Class Action Fairness Act, 28 U.S.C. §1715.  [Cottriel

5  Decl., ¶2.]

6      The costs of class notice and settlement administration expenses will be paid from the

7  Settlement Fund.  KCC/Gilardi estimates the notice and administration costs will not exceed

8  $120,000.  (Healey Decl.,¶39).

9      **F.      Payment of Service Awards, Attorneys' Fees and Litigation Costs**

10     Subject to Court approval, the Agreement provides for a service award of $3,500 to Ms.

11 Clegg, who served as the representative and guardian ad litem to Mr. Carnes in the prosecution of

12 this lawsuit.  After Mr. Carnes' death in September 2015, Ms. Clegg continued the case

13 prosecution as Mr. Carnes' legal successor.  As will be established in more detail in the formal

14 application for the requested service award, Ms. Clegg has devoted substantial time to the case,

15 assisting with discovery, monitoring and consulting on settlement negotiations and preparing for

16 case deposition (which was canceled shortly before the scheduled date due to settlement). (Healey

17 Decl.,¶29).

18     In addition, the Agreement allows Plaintiff's Counsel to seek reimbursement of litigation

19 costs up to $135,000 and attorneys' fees not to exceed one-third of the Settlement Fund.

20 (SS,¶12.1).  To date, Plaintiff's Counsel have incurred over $2.67 million in lodestar attorneys'

21 fees and advanced $144,506.97 in litigation expenses.  Counsel anticipate that additional fees and

22 costs will be incurred in connection with the approval proceedings, settlement administration and

23 related matters.  (Healey Decl.,¶30).

24 **IV.     THE SETTLEMENT MEETS THE STANDARDS FOR FINAL SETTLEMENT
25         APPROVAL**

26     Rule 23 contemplates a three-step procedure for approval of class action settlements:

27 1) certification of a settlement class and preliminary Court approval of the proposed settlement;

28 2) notice of the proposed settlement to the affected class members; and 3) Court determination

with respect to the fairness of the settlement in a final settlement approval hearing.  Federal

Judicial Center, Manual for Complex Litigation (4th ed. 2004), §§ 21.63, *et seq.* ("Manual 4th").

With the Court's preliminary approval order, the first two steps have been completed.  Dkt. No.

99.  With this motion, Plaintiff respectfully seek Court approval with respect to the third step, i.e.,

determination that the settlement meets the fairness requirement sufficient to warrant final

approval.

Courts consider a number of factors in evaluating class action settlements, recognizing that

"'it is the settlement taken as a whole, rather than the individual component parts, that must be

examined for overall fairness.'"  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (quoting

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Among the factors considered

are the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further

litigation; the risk of maintaining class action status through trial; the amount offered in

settlement; the extent of discovery completed and the stage of the proceedings; the experience and

considered views of counsel; the defendant's ability to pay; and the reaction of the class to the

proposed settlement.  *See Staton*, 327 F.3d at 959; *see also Grunin v. International House of*

*Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975), cert. denied, 423 U.S. 864 (1975).

The law favors the compromise and settlement of class-action suits.  *See, e.g., Churchill*

*Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle,*

955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

625 (9th Cir. 1982).  The Ninth Circuit recognizes the "overriding public interest in settling and

quieting litigation . . . particularly . . . in class action suits . . ." *Van Bronkhorst v. Safeco*

*Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

"[T]he decision to approve or reject a settlement is committed to the sound discretion of

the trial judge because he is exposed to the litigants and their strategies, positions, and proof."

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (internal citations and quotations

omitted).  In exercising such discretion, the Court should give "proper deference to the private

consensual decision of the parties . . . . [T]he court's intrusion upon what is otherwise a private

consensual agreement negotiated between the parties to a lawsuit must be limited to the extent

necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id*. at 1027 (internal citations and quotations omitted); see also Fed. R. Civ. P. 23(e).

The instant settlement clearly meets the requirements for final approval.

**A.     The Settlement is Entitled to a Presumption of Fairness**

Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the Court begins its analysis with a presumption that the settlement is fair and reasonable. *See* 4 *Newberg* § 11.41; *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980). The facts support such a presumption here.

First, the settlement was reached after settlement negotiations supervised by an experienced JAMS neutral, Judge Rebecca Westerfield (Ret.). Those negotiations included a full day of mediation on November 17, 2015, followed by weeks of further settlement discussions. The parties ultimately agreed to the settlement outlined in Judge Westerfield's proposal. (Healey Decl., ¶¶17-18).

Second, Plaintiff's Counsel here have extensive experience litigating and settling consumer class actions and other complex matters. (Healey Decl., ¶¶3-8). They have investigated the factual and legal issues raised in this action. Before reaching settlement, the parties engaged in substantial discovery that included a review of over 557,00 pages of documents, and propounding several sets of discovery requests. (Healey Decl., ¶¶14-15). Likewise, the pleadings were contested in Defendant's motions to dismiss the First and Second Amended Complaints. (Healey Decl., ¶¶12-13).

These and other proceedings in the case produced a thorough vetting (pre-settlement) of the factual and legal bases for Plaintiff's claims and the key defenses to those claims. The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate weighs heavily in favor of approval. *See Linney v. Cellular Alaska Partnership*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18 1997); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D.

1  Cal. 1979) ("The recommendations of plaintiffs' counsel should be given a presumption of

2  reasonableness.").

3      **B.    The Settlement is Fair Given the Settlement Benefits and the Risks Associated
           With Continued Litigation.**

4

5      Even without a presumption of fairness, the benefits of the proposed settlement clearly

6  warrant final Court approval, particularly given the risks of continued litigation for the class.

7              **1.    The Settlement Will Result in Substantial Benefits to the Class**

8      Under the Agreement, Defendant has agreed to pay $6.4 million, of which over $4 million

9  will be available for distribution to class members.  Assuming that every settlement class member

10  is located for distribution of the payments, the minimum Settlement Award will be roughly $290.

11  If current addresses cannot be located for all potential class members (or their successors), such

12  that additional funds are available for distribution, the Settlement Administrator will increase the

13  per-class member payment.  (SS, ¶9.4).

14      Even at the $290 range, the projected average settlement award compares favorably with

15  the likely recovery if the case was tried.  The primary focus of Plaintiff's claim for monetary relief

16  is the recovery of the initial move-in fees paid by residents, which arguably are the least likely to be

17  affected by Defendant's offset and related defenses. [2]  (See TAC, ¶¶12, 96; Healey Decl.,¶33).

18      Defendant's records indicate that the average move-in fee was approximately $885.

19  (Healey Decl.,¶16).  The projected *minimum* settlement award of $290 represents over 32% of the

20  average move-in fees paid by residents during the relevant time period.

21      While the move-in fees represent the most solid damage claim at trial, for settlement

22  purposes, there is no guarantee that the trier of fact would award the full amount of these fees.  As

23  to these fees, and other payments made by residents (such as rent), Atria contends that Plaintiff's

24  damage claims are barred (or at least mitigated) by the resident's receipt of care services after

25  _____

26  [2] If the case were tried, Plaintiff would assert claims for statutory damages under the CLRA as
   well.  However, CLRA statutory damages are not mandatory, but instead may be awarded at the

27  discretion of the trier of fact if the required showing is made. Civ. Code § 1780(b)(1) (listing
   factors required for CLRA statutory damage award, including whether the trier of fact finds "an

28  additional award is appropriate.")

move-in. In addition to substantive defenses, Atria argues the claims are not suitable for class treatment, given the arguable resident-specific issues raised. (Healey Decl.,¶¶35-37).

While Plaintiff disagrees with Atria's position, for settlement evaluation purposes, these and other defense arguments must be considered.  In any event, the fact that the projected per-resident settlement award is less than the potential trial recovery does not preclude settlement approval. Quite the contrary, it is "well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982)).  A proposed settlement is not to be measured against a hypothetical ideal result that might have been achieved.  *See, e.g., Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998).  That is because the "very uncertainty of outcome in litigation" and avoidance of expensive litigation "induce consensual settlements." *Id.*

Here, the projected minimum settlement payment of $290 (which represents roughly 32% of the hard damages most likely to be recovered at trial per class member) is well within the range of reasonableness for Court approval.  *See, e.g., In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement where class received payments totaling 6% of potential damages); *In Re Armored Car Antitrust Litig.*, 472 F. Supp. 1357, 1373 (N.D. 1979) (collecting cases in which settlements with a value of 1% to 8% of the estimate total damages were approved); *Trombley v. Nat'l City Bank*, 759 F. Supp .2d 20, 25-26 (D.D.C., 2011) (settlement in range of 17-24% of potential recovery at trial was within range of possible approval); *Winans et al. v. Emeritus et al.*, No. 13-cv-03962-HSG, 2016 U.S. Dist. LEXIS 3212 at **13-15 (N.D. Cal. 2016) (approving class settlement that provided roughly 20-40% of the estimated "hard damages" at trial).

Further, it is likely that the actual settlement awards will exceed the projected minimum average of $290.  The Settlement Administrator is tasked with making all reasonable efforts to locate and pay all Settlement Class Members (or their legal successors).  But the practical reality is that some Class Members will not be located or not have successors.  As such, some funds will go

1  undistributed.  If so, under the Agreement, the Administrator will use those funds to increase the

2  payment amounts for the Class Members who have been located.  (SS ¶9.4).

3      In addition to cash payments, the settlement provides important non-monetary relief.

4  Specifically, the Stipulated Injunction requires Atria to consider resident assessments in setting

5  facility staffing, and to disclose to residents that assessments, as well as other factors, are used to

6  determine staffing.  (Stipulated Injunction, ¶¶ 3-6). The non-monetary term further supports the

7  reasonableness of the overall settlement.  See *Linney v. Cellular Alaska Partnership* (N.D. Cal. July

8  18, 1997) 1997 WL 450064, at **6-7 (court considers injunctive relief in evaluating fairness of

9  overall settlement fairness and fee request).

10                    **2.       The Litigation Risks Support Final Approval**

11      The potential risks attending further litigation support final settlement approval.  Plaintiff

12  faces significant challenges with respect to class certification. Among other arguments, Defendant

13  contends that Plaintiff's claims necessarily require consideration of the care services provided (or

14  not) to each resident.  According to Defendant, that will trigger individual issues and thus negate

15  class certification, under recent cases such as *Walmart* and *Comcast*.  Defendant also contends that

16  written arbitration agreements between Defendant and a majority of residents preclude a litigation

17  class in this case.  While Plaintiff believes the claims asserted are proper for class treatment,

18  Defendant's anticipated challenge to class certification is a litigation risk that bears on the overall

19  settlement evaluation.

20      Even if the Court certified a litigation class, Defendant is expected to raise vigorous trial

21  defenses as to both liability and damages. For example Defendant has asserted that residents

22  received value (in the form of care services and other benefits) that negate (or at least mitigate)

23  any recovery.  Defendant also argues that there is no misrepresentation or omission concerning

24  staffing or staffing levels at Atria's communities, or the use of assessments in setting or reviewing

25  staffing or staffing levels.  Defendant contends that resident assessments are considered in setting

26  or reviewing staffing at its communities, that Atria's residency agreement does not promise that

27  facility staffing levels will be based on any particular factor, including resident assessments, and

28  that prospective residents based their decision to enter Atria's facilities on non-staffing factors.

1    Again, Plaintiff disagrees with Defendant's arguments and other anticipated defense

2    arguments.  But Defendant's contentions, asserted by extremely skilled and experienced counsel,

3    raise real trial risks.  Further, proceeding to trial (and the inevitable appeal) could add five years or

4    more to the resolution of this case.  Given the elderly status of most class members, the potential

5    for years of delayed recovery is a significant concern.  Considered against the risks of continued

6    litigation, and the advanced age of many of the plaintiff class members, the totality of relief

7    provided under the proposed Settlement is more than adequate and well within the range of

8    reasonableness. (See Healey Decl., ¶¶35-37).

9    **C.    Reaction of Class Members**

10    Class notice issued on April 26, 2016.  As of May 13, 2016, only eight Settlement Class

11    Members have opted out of the settlement and none have submitted objections.  (Wyatt Decl., ¶7).

12    The deadline to opt-out or object runs on May 31, 2016.  Plaintiff will update the Court on class

13    member reaction after the May 31 deadline.

14    **V.    CONCLUSION**

15    In sum, the proposed settlement is fair, reasonable and should be approved. The settlement

16    provides substantial monetary benefits that, in the aggregate, represents at least 32% of the

17    maximum realistic damages available if the case were tried.  In addition, the settlement includes

18    injunctive relief to address the challenged practice.  That is a strong result for the Settlement Class,

19    particularly given the litigation risks presented on class certification and the merits. Defendant is

20    represented by highly skilled counsel and has the resources to vigorously litigate all issues through

21    trial and appeal, if necessary. With this resolution, the Settlement Class (many of whom are

22    elderly) get real relief now, as opposed to years down an uncertain litigation road.

23    DATED:  May 16, 2016                    Respectfully submitted,
                                             DENTONS US LLP

24

25                                           */s/ Chris Healey*

26                                           Christopher J. Healey
                                             Attorneys for Plaintiff and the Proposed Class

27

28    93411512\V-3

15                                            Case No. 3:14-cv-02727-VC
                                              MOT. FOR FINAL SETTLEMENT APPROVAL