1  Kathryn A. Stebner, State Bar No. 121088
   George Kawamoto, State Bar No. 280358
2  **STEBNER AND ASSOCIATES**
   870 Market Street, Suite 1212
3  San Francisco, CA  94102
   Tel:  (415) 362-9800
4  Fax:  (415) 362-9801

5  Michael D. Thamer, State Bar No. 101440
   **LAW OFFICES OF MICHAEL D. THAMER**
6  Old Callahan School House
   12444 South Highway 3
7  Post Office Box 1568
   Callahan, California 96014-1568
8  Tel:  (530) 467-5307
   Fax:  (530) 467-5437
9
   Robert S. Arns, State Bar No. 65071
10 **THE ARNS LAW FIRM**
   515 Folsom Street, 3rd Floor
11 San Francisco, CA 94105
   Tel: (415) 495-7800
12 Fax: (415) 495-7888

13

Guy B. Wallace, State Bar No. 176151
Mark T. Johnson, State Bar No. 76904
Sarah Colby, State Bar No. 194475
Jennifer A. Uhrowczik, State Bar No. 302212
**SCHNEIDER WALLACE**
**COTTRELL KONECKY**
**WOTKYNS, LLP**
2000 Powell Street, Suite 1400
Emeryville, CA  94608
Tel: (415) 421-7100
Fax: (415) 421-7105

W. Timothy Needham, State Bar No. 96542
**JANSSEN MALLOY LLP**
730 Fifth Street
Eureka, CA  95501
Tel:  (707) 445-2071
Fax:  (707) 445-8305

Christopher J. Healey, State Bar No. 105798
**DENTONS US LLP**
600 West Broadway, Suite 2600
San Diego, CA 92101-3372
Tel: (619) 236-1414
Fax: (619) 645-5328

14 Attorneys for Plaintiff and the Proposed Class

15                **UNITED STATES DISTRICT COURT**

16               **NORTHERN DISTRICT OF CALIFORNIA**

17

18 THOMAS CARNES, by and through his guardian ad litem, JULIANA CHRISTINE CLEGG, on behalf of himself and all others similarly situated,

19

20          Plaintiff,

21 vs.

22 ATRIA SENIOR LIVING, INC. and DOES 1 through 100,

23          Defendants.

24

25

Case No.: 3:14-cv-02727-VC

**CLASS ACTION**

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**

Date:   June 30, 2016
Time:  10:00 a.m.
Place:  Courtroom 4
Judge: Hon. Vince Chhabria

26

27

28

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    Please take notice that Plaintiff's Motion for Attorneys' Fees, Costs, and Service Award will be heard

3    on June 30, 2016, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 4, 17th Floor, in

4    the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue,

5    San Francisco, California 94102, the Honorable Judge Vince Chhabria presiding.

6    Plaintiff, on behalf of herself and the Settlement Class, will and hereby do move for an order awarding

7    (a) Class Counsel attorneys' fees in the amount of $2,112,000.00 and litigation costs of $135,000.00; and (b) a

8    service award in the amount of $3,500.00 to Named Plaintiff Juliana Christine Clegg, as successor-in-interest

9    to the Estate of Thomas Carnes.  This motion is based on the attached Memorandum of Points and Authorities;

10   the Notice of Lodgment in Support of the Motion for Final Approval of Class Settlement and the Motion for

11   Attorneys' Fees, Costs, and Service Award and declarations and exhibits attached thereto; Proposed Order

12   Granting Motion for Attorneys' Fees, Costs, and Service Award; all other records, pleadings, and papers on

13   file in this action; and such other evidence or argument as may be presented to the Court at the hearing on the

14   motion.  Plaintiff's Motion for Attorneys' Fees, Costs, and Service Award is filed concurrently with Plaintiff's

15   Motion for Final Approval of Class Settlement.

16   DATED:  May 16, 2016

17                                    _/s/ Kathryn Stebner_____
                                      Kathryn A. Stebner, State Bar No. 121088

18                                    **STEBNER AND ASSOCIATES**

19                                    Attorneys for Plaintiff and the Proposed Class
                                      [***Additional Counsel for Plaintiff on Service List***]

20

21   The e-filing attorney hereby attests attest that (s)he has obtained concurrence in the filing of the

22   document from the signatory.

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR ATTYS' FEES, COSTS, AND SERVICE AWARD;
MEMO OF P&A ISO PLTFF'S MOTION FOR ATTYS' FEES, COSTS, AND SERVICE AWARD
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ....................................................................................................1

II.     BACKGROUND ......................................................................................................1

        A.      Class Counsel Expended Considerable Time and Resources to Investigate, Litigate, and Settle These Class Claims..................................................................1

                1.      Factual Investigation and Discovery. ..................................................1

                2.      Class Counsel's Coordination of Efforts ............................................2

                3.      Class Counsel Overcame Formidable Challenges in the Lawsuit ......................2

        B.      Class Counsel Achieved Substantial Benefits for the Class. ...........................3

                1.      The Settlement Fund............................................................................3

                2.      Substantial Settlement Payments to Class Members ...........................3

                3.      Stipulated Injunction ..........................................................................4

                4.      Class Notice and Settlement Administration Costs............................5

                5.      Payment of Service Award, Attorneys' Fees and Litigation Costs. ...................5

III.    THE AGREED-UPON FEE REQUEST IS FAIR, REASONABLE, AND JUSTIFIED ...........5

        A.      Class Counsel's Fee Request is Reasonable Under the Lodestar Analysis ...................5

                1.      Class Counsels' Lodestar Amounts Are Reasonable ...........................6

                2.      Class Counsels' Hourly Rates Are Well Within the Prevailing Rates for Similar Complex Civil Litigation in the Bay Area..............................................7

        B.      Plaintiff's Fee Request Represents a Negative Multiplier on Present Lodestar Fees ........................................................................................................8

                1.      Risks Presented by the Contingent Nature of Recovery.....................10

                2.      Difficulty of the Questions Involved and the Skill Required ...........................10

                3.      Vigorous Opposition by Defendant....................................................11

                4.      The Extent to Which the Litigation Precluded Other Employment Justifies an Enhancement ...............................................................11

                5.      The Result Obtained and the Importance of the Lawsuit to the Public Justifies an Enhancement ...............................................................12

        C.      The Percentage Cross-Check Supports the Reasonableness of the Fee Request ..........12

D.      The Requested Fee Is Presumptively Reasonable Because It Resulted from Arms' Length Negotiations Between Experienced Counsel..........................................13

IV.      REIMBURSEMENT OF LITIGATION EXPENSES IS WARRANTED ...............................13

V.       THE SERVICE AWARD FOR THE NAMED PLAINTIFF IS FAIR.....................................14

VI.      CONCLUSION .......................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple Computer, Inc. Deriv. Litig.*,
No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) ....................13

*Been v. O.K. Industries, Inc.*,
No. CIV-02-285-RAW, 2011 U.S. Dist. LEXIS 115151 (E.D. Okla., Aug. 16,
2011)..............................................................................................................................................9

*In re Bluetooth Headset Products Liab. Lit.*,
654 F.3d 935 (9th Cir. 2011) ........................................................................................................6

*Cal. Hous. Fin. Agency v. E. R. Fairway Assocs. I*,
37 Cal.App.4th 1508 (1995) ........................................................................................................13

*Camacho v. Bridgeport Fin., Inc.*,
523 F.3d 973 (9th Cir. 2008) ........................................................................................................7

*Campbell v. Nat'l Passenger R.R. Corp.*,
718 F.Supp.2d 1093 (N.D. Cal. 2010).........................................................................................8

*Chavez v. Netflix, Inc.*,
162 Cal.App.4th 43 (2008) ..........................................................................................................12

*Children's Hosp. and Med. Ctr. v. Bonta*,
97 Cal.App.4th 740 (2002) ............................................................................................................7

*Cicero v. DirectTV, Inc.*,
2010 WL 2991486 (C.D. Cal. July 27, 2010)............................................................................12

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) ....................................................................................................14

*Cotchett, Pitre & McCarthy v. Universal Paragon Corp.*,
187 Cal.App.4th 1405 (2010) ......................................................................................................13

*Edgerton v. State Pers. Bd.*,
83 Cal.App.4th 1350 (2000) ...................................................................................................11, 12

*Garner v. State Farm Mut. Auto. Ins. Co.*,
No. CV-08-1365 CW, 2010 U.S. Dist. LEXIS 49482 (N.D. Cal. Apr. 22, 2010)...........................14

*Graciano v. Robinson Ford Sales, Inc.*
144 Cal.App.4th 140 (2006) ........................................................................................................12

*Graham v. DaimlerChrsyler Corp.*,
34 Cal.4th 553 (2004) .........................................................................................................6, 9, 12

iii

NOTICE OF MOTION AND MOTION FOR ATTYS' FEES, COSTS, AND SERVICE AWARD;
MEMO OF P&A ISO PLTFF'S MOTION FOR ATTYS' FEES, COSTS, AND SERVICE AWARD
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

*Harman v. Lyphomed, Inc.*,
   945 F.2d 969 (7th Cir. 1991) ..................................................................................10

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)...........................................................................................6, 13

*Ingalls v. Hallmark Mktg. Corp.*,
   Case No. 08-CV-4342, Doc. No. 77 (C.D. Cal. Oct. 16, 2009) ......................................12

*Ketchum v. Moses*,
   24 Cal.4th 1122 (2001) ...........................................................................7, 8, 9, 10

*Kim v. Euromotors West/The Auto Gallery*,
   149 Cal.App.4th 170 (2007) .....................................................................................5

*Lealao v. Beneficial Cal., Inc.*,
   82 Cal.App.4th 19 (2000) .............................................................................5, 6, 11, 12

*Linney v. Cellular Alaska Partnership*,
   1997 WL 450064 (N.D. Cal. July 18, 1997) ...............................................................4

*In re Media Vision Tech. Sec. Litig.*,
   913 F.Supp. 1362 (N.D. Cal. 1996).........................................................................13

*PLCM Group, Inc. v. Drexler*,
   22 Cal.4th 1084 (2000) ............................................................................................7

*Pokorny v. Quixtar*,
   No. C07-0201 SC, 2013 U.S. Dist. LEXIS 100791 (N.D.Cal. July 18, 2013) ...............12

*Robertson v. Fleetwood Travel Trailers of Cal., Inc.*,
   144 Cal.App.4th 785 (2006) .....................................................................................7

*Serrano III v. Priest*,
   20 Cal.3d 25 (1977) .........................................................................5, 6, 7, 9, 11, 12

*Singer v. Becton Dickinson and Co.*,
   No. 08-CV-821 IEG (BLM), 2009 WL 4809646 (S.D. Cal. Dec. 9, 2009) ...................14

*Staton v. Boeing Co.*,
   327 F.3d 938 (4th Cir. 2001) ...............................................................................4, 13

*Trustees v. Greenough*,
   105 U.S. 527 (1881)...............................................................................................14

*In re Vitamin Cases*,
   110 Cal.App.4th 1041 (2003) ...................................................................................6

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002), *cert. denied*, 537 U.S. 1018 (2002)...................4, 5, 9, 12

iv

*Vo v. Los Virgenes Mun. Water Dist.*,
   79 Cal.App.4th 440 (2000) ..................................................................................6

*Walsh v. Kindred Healthcare, et al.*,
   2013 U.S. Dist. LEXIS 176319 (N.D. Cal. Dec. 16, 2013) ......................................8

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ..............................................................................10

*Wehlage v. Evergreen at Arvin LLC*,
   2012 U.S. Dist. LEXIS 144152 (N.D. Cal. Oct. 4, 2012) ........................................8

*Wershba v. Apple Computer, Inc.*,
   91 Cal.App.4th 224 (2001) ..............................................................................5, 9

*Widrig v. Apfel*,
   140 F.3d 1207 (9th Cir. 1998) ............................................................................7

**Statutes**

Civil Code
   § 1750 *et seq.* ..................................................................................................5
   § 1780(e) ..........................................................................................................5

**Other Authorities**

Advisory Committee Notes to Fed. R. Civ. P. 23(h) (2003 Amendments) ....................4

"Attorney Fee Awards in Common Fund Class Actions"
   24 No. 2 CLASS ACTION REPORT 4 (Apr. 2003) ..............................................9

3 *Newberg on Class Actions*
   § 14.7 ............................................................................................................12

5-23 Moore's Federal Practice — Civil § 23.124(b)(i) ..............................................4

NOTICE OF MOTION AND MOTION FOR ATTYS' FEES, COSTS, AND SERVICE AWARD;
MEMO OF P&A ISO PLTFF'S MOTION FOR ATTYS' FEES, COSTS, AND SERVICE AWARD
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Class Counsel respectfully submit this application for an award of Attorneys' Fees, Costs, and Service Award.  Class Counsel seek Court approval for reimbursement of out-of-pocket expenses totaling $135,000.00, as well as an attorney's fees award of $2,112,000.00, which is less than the amount authorized under the settlement agreement and represents a negative multiplier of Class Counsel's lodestar to date.  The fee award sought is fair, reasonable and justified under the applicable law and the factual circumstances, given the substantial benefits obtained for the Class of current and former residents at Atria assisted living facilities in California, the work performed to achieve that settlement, and the risks and challenges faced in bringing this case.  To date, Class Counsel have collectively spent over 5,601.8 hours litigating the case, incurred $2,675,653.46 in lodestar attorneys' fees, and advanced $144,483.89 in litigation expenses.  For the reasons set forth herein, Class Counsel respectfully request that this motion be granted.

## II.   BACKGROUND

Pursuant to the Northern District's Procedural Guidance for Class Action Settlements, Plaintiff refers the Court to the case history and facts set out in the "Introduction" and "Background" sections of Plaintiff's Motion for Final Approval (*see* Memorandum of Points and Authorities in Support of Motion Final Approval of Class Settlement ("Final Approval Motion"), *filed concurrently herewith*, Sections I and II).

### A.   Class Counsel Expended Considerable Time and Resources to Investigate, Litigate, and Settle These Class Claims.

#### 1.   Factual Investigation and Discovery.

Class Counsel's factual investigation and discovery required substantial attorney time and expenses. Before filing the initial complaint, Class Counsel reviewed approximately 2,800 pages of background documents; interviewed witnesses; and consulted with experts on assisted living facilities.  (*See* Declaration of Christopher J. Healey, Exhibit B of the Notice of Lodgment ("NOL"), filed concurrently ("Healey Decl"), ¶ 15.)

After the lawsuit was filed, discovery included Defendant's production and Plaintiff's review of approximately 554,469 pages of documents, and 2,406 additional electronic documents in native formats. Plaintiff's also reviewed approximately 56,345 pages of documents from the California Department of Social

1

NOTICE OF MOTION AND MOTION FOR ATTYS' FEES, COSTS, AND SERVICE AWARD;
MEMO OF P&A ISO PLTFF'S MOTION FOR ATTYS' FEES, COSTS, AND SERVICE AWARD
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

1   Services regarding Defendant's facilities.  Plaintiff also deposed two of Defendant's employees.  (Healey

2   Decl, ¶ 16.)  The substantial exchange of discovery requests and material prompted numerous meet and confer

3   discussions.  In connection with the mediation effort, Defendant produced additional information, including a

4   summary of the move-in fees paid by all residents during the Settlement Class Period.  (Healey Decl, ¶ 17.)

5                    **2.      Class Counsel's Coordination of Efforts**

6           Class Counsel consisted of a team of experienced attorneys from various law firms, each with a special

7   set of skills and resources which contributed to the investigation, prosecution and eventual resolution of this

8   class action.  The six firms representing the Class offered considerable expertise litigating individual and

9   complex cases against assisted living and skilled nursing facilities, and other complex class actions.  Class

10  Counsel coordinated their efforts to maximize efficiency and avoid duplication of work.  (NOL, Ex. C,

11  Declaration of Kathryn Stebner ("Stebner Decl"), ¶ 15.)  Each firm took a leadership role in certain aspects of

12  the case and made a particular contribution to advancing the litigation on behalf of the Class.  (Stebner Decl., ¶

13  15.)

14          While Class Counsel consistently delegated duties to particular firms, they also marshaled their shared

15  expertise on projects at key moments in the case.  (Stebner Decl. ¶ 15.)  Class Counsel met together and

16  consulted each other regularly to devise strategy, make key decisions and to craft the top-quality work product

17  necessary to successfully prosecute the case.  (Stebner Decl. ¶ 15.)  The delegation of tasks and the

18  cooperation around high-stakes decisions and briefing were always carried out foremost for the benefit of the

19  Class.  (Stebner Decl. ¶ 15.)  Without Class Counsel's efforts, this Class of vulnerable assisted living facility

20  residents would still be exposed to Defendant's misrepresentations and misleading statements.

21                  **3.      Class Counsel Overcame Formidable Challenges in the Lawsuit**

22          The benefits of the Settlement are substantial, particularly given the numerous obstacles Class Counsel

23  overcame to achieve it and the risks of continued litigation for the Class.  This is one of the first class actions

24  challenging misrepresentations and misleading statements made by a provider of assistive living services, and

25  Defendant is represented by skilled counsel. As reflected in motion practice before the Court, the case raises

26  novel issues, and the pleadings were heavily contested in motions to dismiss the First and Second Amended

27  Complaints.  With Defendant's repeated attacks on the pleadings, Class Counsel had no choice but to devote

28  extensive resources to defend and re-plead Plaintiff's claims.  Further, Plaintiff's Counsel faced substantial

risks in agreeing to prosecute this class action case on a contingency fee basis.  In litigating this case, Plaintiff confronted several arguments that presented potential risks.  With respect to class certification, Defendant contended that Plaintiff's claims necessarily require consideration of the care services provided (or not) to each resident, thereby triggering individual issues not suitable for class treatment under cases such as *Walmart* and *Comcast*.  With respect to the merits, Defendant contended that residents received value (in the form of care services and other benefits) that negate (or at least mitigate) any recovery.  (See Healey Decl, ¶¶ 36-37.)

If this case had been litigated to conclusion, Plaintiff believes she would likely have obtained class certification and prevailed at trial on the merits.  But Defendant's contentions, asserted by extremely skilled and experienced counsel, raised real litigation risks.  (See Healey Decl, ¶ 38.)

**B.** **Class Counsel Achieved Substantial Benefits for the Class.**

As a result of Class Counsel's vigorous prosecution of this case and negotiation of the Settlement, Class Counsel secured important and substantial benefits for the Class.  (A copy of the parties' Stipulation of Settlement is attached as Exhibit A to the Notice of Lodgment.)  As discussed in Section III of the Final Approval Motion, the key terms are as follows:

**1.** **The Settlement Fund**

Defendant has agreed to pay $6.4 million to resolve all monetary obligations owed under the settlement.  The Settlement Fund will be used to pay the Settlement Awards paid to class members, to pay notice/administration costs (estimated $120,000), pay a service award of $3,500 to the Named Plaintiff, and pay a reimbursement of litigation expenses (up to $135,000) and reasonable attorneys' fees in the amount approved by the Court but not to exceed one-third of the Settlement Fund.  Factoring in an agreed-upon reserve of $25,000 to cover late claims, the estimated amount available to fund payments to class members is roughly $4 million.  (Healey Decl, ¶ 20.)  As discussed in Section III(A) of the Final Approval Motion, there will be no reversion of the Settlement Fund to Defendant.  (SS, ¶ 1.29: Healey Decl, ¶ 27.)

**2.** **Substantial Settlement Payments to Class Members**

As discussed in Section III(B) of the Final Approval Motion, the Agreement provides for cash payments to class members (or if deceased, their legal successors) on a direct distribution basis, with no claims requirement to obtain payment.  The parties estimate that the Settlement Class includes roughly 13,750 current and former residents.  (Healey Decl, ¶ 21.)  For illustration purposes, if the Net Settlement Fund (after Court-

3

NOTICE OF MOTION AND MOTION FOR ATTYS' FEES, COSTS, AND SERVICE AWARD;
MEMO OF P&A ISO PLTFF'S MOTION FOR ATTYS' FEES, COSTS, AND SERVICE AWARD
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

approved payments) is $4 million, and there are roughly 13,750 Settlement Class Members, the Initial

Settlement Payment would be approximately $290.  The Settlement Administrator is authorized to increase the

Initial Settlement Amount if sufficient monies are available after calculating the amounts owed to all

Settlement Class Members for whom current addresses have been provided or located, along with the amounts

owed to class members who made timely distribution requests. (SS, ¶9.4; Healey Decl., ¶¶ 22-24.)

### 3.     Stipulated Injunction

As discussed in Section III(C) of the Final Approval Motion, an integral part of the settlement is the

Stipulated Injunction, which subject to Court approval, will commence on the Effective Date and remain in

place for three years from that date.  (NOL, Ex. A.1 - Stipulated Injunction ; SS,¶ 8.2).  Among other terms,

the Injunction requires that Defendant:

1.  Ensure that resident assessments, including those conducted at the time of admission and thereafter during a resident's stay, are considered by Atria in determining, setting or monitoring staffing levels for its California communities.

2.  Ensure that all new Residency Agreements provided to, made available or entered into after the Effective Date for Atria's California communities disclose that: a) resident assessments are considered by Atria in determining, setting and monitoring staffing levels at its California communities; and b) Atria does not guarantee that any resident will receive a specific number of minutes or amount of care on any given day or time period.

3.  Ensure that all Residency Agreements, web pages, marketing brochures or other materials, and any other written statements to be provided to or made available to the consuming public in California and that discuss resident assessments are in compliance with the terms of the Injunction. (Stipulated Injunction, ¶¶3-6).

To Plaintiff Counsel's knowledge, the Stipulated Injunction is the first time an owner/operator of

assisted living facilities in California has agreed to such an injunction.  This non-monetary term further

supports the reasonableness of the fee request given the overall settlement value.  When awarding attorneys'

fees, "[a] court should take into account any non-monetary benefits obtained for the class."  5-23 Moore's

Federal Practice — Civil § 23.124(b)(i).  "[I]t is important to recognize that in some class actions the monetary

relief obtained is not the sole determinant of an appropriate attorney fees award."  Advisory Committee Notes

to Fed. R. Civ. P. 23(h) (2003 Amendments) (citation omitted). "Incidental or nonmonetary benefits conferred

by the litigation are a relevant circumstance" in determining fee awards. *Vizcaino v. Microsoft Corp.*, 290

F.3d 1043, 1049 (9th Cir. 2002), *cert. denied*, 537 U.S. 1018 (2002); *Staton v. Boeing Co.*, 327 F.3d 938, 974

(4th Cir., 2001);  *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at *6-7 (N.D. Cal. July 18, 1997)

1  (court considers injunctive relief in evaluating fairness of overall settlement fee request).

2  **4.      Class Notice and Settlement Administration Costs**

3      The Agreement also provides for all costs of class notice, as well as administration costs, to be paid

4  from the Settlement Fund.  The Settlement Administrator estimates the notice and administration costs will not

5  exceed $120,000.  (Healey Decl, ¶¶ 39-40.)

6  **5.      Payment of Service Award, Attorneys' Fees and Litigation Costs.**

7      Subject to Court approval, the Agreement provides for a service award of $3,500 to Ms. Clegg, who

8  served as the representative and Guardian ad Litem to Mr. Carnes in the prosecution of this lawsuit. After

9  Mr.Carnes' death in September 2015, Ms. Clegg continued the case prosecution as his legal successor.

10     In addition, the Agreement allows Plaintiff's Counsel to seek reimbursement of litigation costs up to

11  $135,000 and attorneys' fees not to exceed one-third of the Settlement Fund (i.e., $2.133 million).  (SS,¶12.1.)

12  **III.   THE AGREED-UPON FEE REQUEST IS FAIR, REASONABLE, AND JUSTIFIED**

13     California law governs the attorneys' fee award here because Plaintiff's claims arise under California

14  law.  *See, e.g., Vizcaino*, 290 F.3d at 1047.  In this action, Plaintiff asserted jury claims under the Consumers

15  Legal Remedies Act, Cal. Civil Code § 1750 *et seq.*, which requires mandatory payment of attorneys' fees and

16  costs to successful plaintiffs.  The attorneys' fees provision of the CLRA, Section 1780(e), states:  "The court

17  *shall* award court costs and attorney fees to a prevailing plaintiff in litigation filed pursuant to this section."

18  Thus, some award of attorneys' fees is mandatory.  *Kim v. Euromotors West/The Auto Gallery*, 149

19  Cal.App.4th 170, 177 (2007).

20     Under California law, the court may award reasonable attorneys' fees and costs when a litigant

21  proceeding in a representative capacity has achieved a "substantial benefit" for a class of persons.  *Serrano III*

22  *v. Priest*, 20 Cal.3d 25, 38 (1977) ("*Serrano III*").  There are two methods of calculating attorneys' fees in

23  civil class actions: (1) the lodestar/multiplier method, and (2) the percentage of recovery method.  *Wershba v.*

24  *Apple Computer, Inc.*, 91 Cal.App.4th 224, 254 (2001).  A recognized approach is to determine the plaintiffs'

25  lodestar fees, determine whether a multiplier is warranted, and then "cross check" the propriety of that amount

26  as a percentage of the overall recovery.  *See Lealao v. Beneficial Cal., Inc.*, 82 Cal.App.4th 19, 49-50 (2000).

27  **A.      Class Counsel's Fee Request is Reasonable Under the Lodestar Analysis**

28     Under California law, "[t]he primary method for establishing the amount of reasonable attorney fees is

5

NOTICE OF MOTION AND MOTION FOR ATTYS' FEES, COSTS, AND SERVICE AWARD;
MEMO OF P&A ISO PLTFF'S MOTION FOR ATTYS' FEES, COSTS, AND SERVICE AWARD
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

the lodestar method." *In re Vitamin Cases*, 110 Cal.App.4th 1041, 1052 (2003), (internal quotation marks and citations omitted).  *See also, Serrano III*, 20 Cal.3d at 49 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974)); *In re Bluetooth Headset Products Liab. Lit.*, 654 F.3d 935, 941 (9th Cir. 2011). Applicable precedents support the reasonableness of the fees requested here.

### 1.    Class Counsels' Lodestar Amounts Are Reasonable

The lodestar method requires the Court to determine a lodestar figure based on a compilation of time spent and reasonable hourly compensation for each attorney.  *See, e.g.*, *Graham v. DaimlerChrsyler Corp.*, 34 Cal.4th 553, 579 (2004); *Vo v. Los Virgenes Mun. Water Dist.*, 79 Cal.App.4th 440, 445 (2000); *Lealao*, 82 Cal.App.4th at 26.  Generally, hours are reasonable if they were "reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client."  *Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983).

Through May 10, 2016, Class Counsel's total lodestar fees are $2,675,653.46.  That includes significant work undertaken to prosecute this case through investigation, filing, motion practice, discovery, and the eventual settlement.  The primary task categories and lodestar figures are as follows:

| Firm | Hours | Lodestar | Task Category |
|---|---|---|---|
| Stebner and Associates | 1,649.60 | $929,227.50 | Investigation and preliminary analysis, coordination of efforts by co-counsel, client contact, witness interviews, drafting pleadings, document review, drafting written discovery requests and responses, preparing client for deposition, drafting motions, mediation briefing, settlement negotiations and preparation, settlement documentation, and contact with defense counsel. |
| Schneider Wallace Cottrell Konecky Wotkyns, LLP | 1,851.40 | $860,710.00 | Investigation and preliminary analysis, reviewing draft pleadings, draft written discovery requests and reviewing responses, drafting and reviewing motions, deposing defendant witnesses, preparing client for deposition, document organization, settlement negotiations and preparation, and contact with defense counsel. |
| Dentons US LLP | 1,449.9 | $552,112.21 | Investigation and preliminary analysis, reviewing draft pleadings, reviewing draft written discovery requests and responses, drafting and reviewing motions, mediation briefing, settlement negotiations and preparation, and settlement documentation. |
| Law Offices of Michael D. Thamer | 368.8 | $232,476.25 | Investigation, contact with experts, written discovery, document review, and settlement negotiations and preparations. |
| Janssen Malloy, LLP | 282.1 | $101,127.50 | Investigation and document review, contact with witnesses, legal research, work on pleadings, and participation in mediation and settlement negotiations. |
| **Total** | **5,601.8** | **$2,675,653.46** | |

1   (*See* Stebner Decl., ¶¶ 15-26; Healey Decl., ¶¶ 42-43; NOL, Ex. F, Declaration of Guy Wallace ("Wallace

2   Decl"), ¶¶ 7-31; NOL, Ex. E, Declaration of Michael Thamer ("Thamer Decl"), ¶¶ 6-18; NOL, Ex. D,

3   Declaration of Timothy Needham ("Needham Decl"), ¶¶ 8-12; and exhibits attached thereto.  Copies of

4   detailed timesheets will be made available for the Court's review in camera upon request.)

5        The number of hours that Class Counsel devoted to this case is reasonable.  *See, e.g.*, *Ketchum v. Moses*,

6   24 Cal.4th 1122, 1133 (2001) (fee award should be "fully compensatory [and] absent circumstances rendering

7   the award unjust, an attorney fee award should ordinarily include compensation for *all* the hours reasonably

8   spent.") (emphasis in original); *Serrano III*, 20 Cal.3d at 49.  While collaboration between Class Counsel was

9   necessary and important to the successful case prosecution, each firm was assigned lead responsibility on

10  specific task areas to minimize the potential for duplication.  As Class Counsel's declarations make clear, all

11  time reported in the chart above was devoted to necessary and non-duplicative tasks, and calculated at

12  counsel's reasonable billing rates.  Additionally, tasks were delegated when possible to associate attorneys or

13  legal assistants.

14              **2.**       **Class Counsels' Hourly Rates Are Well Within the Prevailing Rates for Similar Complex Civil Litigation in the Bay Area**

15       The second step is determining the reasonable market value of the attorneys' services at an hourly rate.

16  *Ketchum*, 24 Cal.4th at 1134; *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  This rule

17  applies even when, as here, attorneys from five of the six firms representing the Named Plaintiff (Michael

18  Thamer, Timothy Needham, Kathryn Stebner, Guy Wallace, and Robert Arns) normally work on a contingent

19  fee basis.  *See, e.g., Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal.App.4th 785, 818 (2006).

20  Rates are reasonable if they are "within the range of reasonable rates charged by and judicially awarded

21  comparable attorneys for comparable work."  *Children's Hosp. and Med. Ctr. v. Bonta*, 97 Cal.App.4th 740,

22  783 (2002).  A reasonable hourly rate is the prevailing rate charged by attorneys of similar skill and experience

23  in the relevant community.  *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1095 (2000).  Declarations

24  regarding the prevailing market rate in the relevant community are sufficient to establish a reasonable hourly

25  rate.  *See Widrig v. Apfel*, 140 F.3d 1207, 1209 (9th Cir. 1998).

26       Class Counsel are highly regarded members of the bar.  They brought a unique blend of expertise and

27  skill, including specialized knowledge in elder care class actions and complex litigation vital to the success of

28

7

NOTICE OF MOTION AND MOTION FOR ATTYS' FEES, COSTS, AND SERVICE AWARD;
MEMO OF P&A ISO PLTFF'S MOTION FOR ATTYS' FEES, COSTS, AND SERVICE AWARD
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

1   this case.  (Stebner Decl. ¶ 15.)  Here, the rates requested by Class Counsel are well within the rates charged

2   by skilled counsel in the Bay Area in similar complex civil litigation.  (NOL, Ex. I, Declaration of Richard M.

3   Pearl, ¶¶ 12-13).  The rates requested here are similar or equal to Class Counsel's rates in class actions against

4   operators of assisted living and skilled nursing facilities previously approved by U.S. District Judge Haywood

5   Gilliam in *Winans v. Emeritus Corporation* (N.D. Cal. Jan. 19, 2016, case no. 3:13-cv-03962-HSG, dkt. 133),

6   Chief Judge of the Northern District of California Claudia Wilken in *Wehlage v. Evergreen at Arvin LLC*,

7   2012 U.S. Dist. LEXIS 144152 at *8 (N.D. Cal. Oct. 4, 2012), and by U.S. District Judge Jeffrey S. White in

8   *Walsh v. Kindred Healthcare, et al.*, 2013 U.S. Dist. LEXIS 176319 (N.D. Cal. Dec. 16, 2013).  Rates similar

9   or equal to Class Counsel's rates in this case were also previously approved in the Superior Court of California

10  by Judge Robert Freedman in *Valentine v. Thekkek Health Services, Inc., et. al.* Alameda Cty. Superior Court,

11  Case No. RG-10546266; by Judge Wynne Carvill in *Shuts v. Covenant Holdco LLC*, Alameda Cty. Superior

12  Court, Case No. RG 10551807, *Dalao v. LifeHouse Holdings, LLC* Alameda County Superior Court, Case No.

13  RG12660602, and *Correa v. SnF Management Company, LLC* Alameda Cty. Superior Court, Case No. RG-

14  13664498; by Judge Jane Johnson in *Montreuil v. The Ensign Group, Inc.* Los Angeles Cty. Superior Court,

15  Case No. BC449162; by Judge Richard Kramer in *Hernandez v. Golden Gate Equity Holdings, LLC* San

16  Francisco Cty. Superior Court, Case No. CGC-10-505288); and by Judge George Hernandez, Jr., in *Regina v.*

17  *Hycare, Inc.*, Alameda Cty. Superior Court, Case No. RG-12647573.  (Stebner Decl., ¶ 18.)

18       Given that Class Counsel's hourly billing rates have been approved by California state courts and by

19  courts in this District in assisted living and skilled nursing facility class actions, Class Counsel's hourly rates

20  are "in line" with prevailing market rates and are reasonable.  Outside of the context of elder facility class

21  actions, rates similar to those of Class Counsel have been approved in a wide range of litigation.  *Campbell v.*

22  *Nat'l Passenger R.R. Corp.*, 718 F.Supp.2d 1093, 1099-1100 (N.D. Cal. 2010) (finding reasonable market

23  rates from $380 to $775 for employment and civil rights attorneys in the Northern District; *In re: TFT-LCD*

24  *(Flat Panel) Anti-Trust Litigation*, 3:07-md-1827 SI (N.D. Cal.), December 27, 2011 Order, Dkt. 4436 at 2

25  (finding lodestar amount reasonable in a cross-check analysis).

26       **B.      Plaintiff's Fee Request Represents a Negative Multiplier on Present Lodestar Fees**

27       Class Counsel's fee request represents a ***negative*** multiplier of the lodestar fees incurred in prosecuting

28  this case, which is another reason this motion should be granted.  As the California Supreme Court has held,

8

NOTICE OF MOTION AND MOTION FOR ATTYS' FEES, COSTS, AND SERVICE AWARD;
MEMO OF P&A ISO PLTFF'S MOTION FOR ATTYS' FEES, COSTS, AND SERVICE AWARD
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

1   contingency fees should be higher than fees for the same legal services paid concurrently with the provision of

2   the services. *Ketchum*, 24 Cal.4th at 1132-33.  "A lawyer who both bears the risk of not being paid and

3   provides legal services is not receiving the fair market value of his work if he is paid only for the second of

4   these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases."

5   *Ketchum*, 24 Cal.4th at 1133.  Application of that rule is particularly appropriate where the case is brought to

6   redress important rights of vulnerable persons. *Id.*  In short, a risk enhancement is neither a bonus nor a

7   windfall.  It is "earned compensation; unlike a windfall, it is neither unexpected nor fortuitous.  Rather it is

8   intended to approximate market-level compensation for such services which typically pay a premium for the

9   risk of nonpayment or delay in payment of attorney's fees." *Ketchum*, 24 Cal.4th at 1138.

10       This Court found reasonable a multiplier of 2.67 times the lodestar.  *Galeener v. Source Refrigeration

11   & HVAC, Inc.,* 3:13-cv-04960-VC (N.D. Cal.) August 21, 2015 Order, Dkt. 158 at ¶5.  Multipliers normally

12   range from two to four or higher.  *Wershba*, 91 Cal.App.4th at 255; *see also Vizcaino*, 290 F.3d at 1051 n.6

13   ("most" common fund cases apply a multiplier of 1.0-4.0); *Been v. O.K. Industries, Inc.*, No. CIV-02-285-

14   RAW, 2011 U.S. Dist. LEXIS 115151, at *30, 32 (E.D. Okla., Aug. 16, 2011) (citing a study, "Attorney Fee

15   Awards in Common Fund Class Actions, 24 No. 2 CLASS ACTION REPORT 4 (Apr. 2003), "reporting an

16   average multiplier of 3.89 in survey of 1,120 class action cases" and finding that a multiplier of 2.43 would be

17   "per se reasonable").  Factors considered in determining whether a lodestar multiplier is appropriate generally

18   include: (1) the risks presented by the contingent nature of the case; (2) the novelty and difficulty of the

19   questions involved and the skill requisite to perform the legal service properly; (3) the nature of the

20   opposition; (4) the preclusion of other employment by the attorney due to acceptance of the case; and (5) the

21   result obtained and the importance of the lawsuit to the public.  *Graham*, 34 Cal.4th at 582; *Serrano III*, 20

22   Cal. 3d at 48-49.

23       Here, all of these factors favor approval of a positive multiplier, even though Class Counsel's present

24   fee request represents a negative multiplier.  To date, Class Counsel have incurred $2,675,653.46 in attorneys'

25   fees and advanced $144,483.89 in litigation costs and expenses.  After reimbursement of their reasonable out-

26   of-pocket expenses, Class Counsel's fee request represents seventy-nine percent (79%) of the lodestar fees

27   incurred in prosecuting this case.  Taking into account the additional attorney time required for settlement

28   approval and implementation phases, the projected fee discount will be even greater.

1          **1.      Risks Presented by the Contingent Nature of Recovery**

2          As noted above in *Ketchum*, the major consideration in determining the necessity of a multiplier is the

3   contingent nature of the award.  24 Cal.4th at 1132-33.  In determining what multiplier to award, the

4   probability of success must be assessed from the outset of the case.  *See e.g.*, *Harman v. Lyphomed, Inc.*, 945

5   F.2d 969, 976 (7th Cir. 1991).  Further, the possibility of no recovery is only one of the uncertainties involved

6   in taking on such a case.  Other uncertainties are the amount that will be recovered, uncertainty as to the cost,

7   both in effort and expenses, and uncertainty about how much time will pass before the recovery is obtained.

8   *See e.g.*, *Ketchum* , 24 Cal. 4th at 1132-1133, 1138; *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19

9   F.3d 1291, 1299-1300 (9th Cir. 1994) ("Contingent fees that may far exceed the market value of the services if

10  rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring

11  competent representation for plaintiffs who could not afford to pay on an hourly basis.").

12         Class Counsel have been the only counsel to represent class members in this matter and have borne the

13  entire risk and costs of litigation for almost two years purely on a contingency basis.  Class Counsel's outlay

14  of time and money in this case has been significant. In all, Class Counsel and their staffs have spent

15  approximately 5,601.8 hours investigating, analyzing, researching, litigating, and negotiating a favorable

16  resolution of this case, and have incurred $144,483.89 in necessary litigation expenses.  Unsettled legal issues

17  also presented risks to the claims in this case. Class Counsel bore the substantial risk of an uncertain outcome

18  in agreeing to prosecute this class action case on a contingency fee basis, particularly in complex actions such

19  as class actions, as well as the difficulties and delay inherent in such litigation. There was the prospect of the

20  enormous cost inherent in class action litigation, as well as extensive negotiations with corporate defendants

21  who retained Jones Day, a premier defense firm. Class Counsel risked significant time and expense to ensure

22  the successful class settlement.  When this case was accepted for prosecution, Class Counsel knew of the risk

23  but also considered the possibility of a risk-related multiplier, as their hourly rates do not include consideration

24  of risk.  (Stebner Decl, ¶ 14.)

25         **2.      Difficulty of the Questions Involved and the Skill Required**

26         Class Counsel are skilled attorneys who have had success in class actions, including one prior class

27  action against an assisted living facility operator and multiple understaffing cases against the skilled nursing

28  industry.  (Stebner Decl, ¶¶ 4-12.)  This case required experienced and competent lawyers and expertise in the

issues presented herein.  To obtain such an attorney on the free market, a client must pay the prevailing market rate.  While most class actions are complex and involve some risk, Class Counsel had to overcome several major obstacles in prosecuting this case.  This is one of the first putative class actions challenging misrepresentations and misleading statements made by a provider of assistive living services.  As reflected in motion practice before the Court, the case raised novel issues, and the pleadings were heavily contested.  Furthermore, Plaintiff faced significant challenges with respect to class certification.  Although Plaintiff believes she would prevail at trial with respect to these and other anticipated defense arguments, Defendant's contentions, asserted by extremely skilled and experienced counsel, raised trial risks.  Any of these obstacles on their own may have prevented the Class from recovering anything.  Further, proceeding to trial would have added years to the resolution of this case because of the difficult legal and factual issues raised and the likelihood of appeals.  Given the elderly status of most class members, the potential for years of delayed recovery is a significant concern.  This Settlement provides immediate relief to the Class members without the delay associated with protracted litigation, trial, and a likely appeal.  Class Counsel should be commended (not penalized) for obtaining substantial benefits for the Class through settlement in light of the significant risks of continued litigation and the advanced age of many of the plaintiff class members. *See Lealao*, 82 Cal.App.4th at 52.  California courts place "an extraordinarily high value" on settlement, and successful counsel should be rewarded, not punished, for achieving this goal.  *Id.*

### 3. Vigorous Opposition by Defendant

Plaintiffs who skillfully overcome difficult issues or uncompromising opposition in the litigation are entitled to a fee enhancement.  *Serrano III*, 20 Cal.3d at 49; *Edgerton v. State Pers. Bd.*, 83 Cal.App.4th 1350, 1363 (2000).  Here, Defendant asserted a vigorous defense including motions to dismiss the First and Second Amended Complaints.  Defendant also contended that written arbitration agreements with a majority of residents preclude a litigation class in this case although Plaintiff believes the claims asserted are proper for class treatment.  The settlement effort was protracted, with extended discussions, a formal mediation, and several instances in which it appeared the parties would not reach a settlement.  (*See* Healey Decl, ¶¶ 18-19.)

### 4. The Extent to Which the Litigation Precluded Other Employment Justifies an Enhancement

There are only so many cases that Class Counsel can take at any one time. Consequently, there were

11

1   other meritorious cases presented to Class Counsel that would have generated substantial fees, but were

2   declined, during the pendency of this action in order to devote the attention necessary to achieve favorable

3   results.  (Stebner Decl., ¶ 10; Thamer Decl., ¶ 17.)

4           **5.      The Result Obtained and the Importance of the Lawsuit to the Public**
                      **Justifies an Enhancement**

5

6           The results obtained in litigation "can properly be used to enhance a lodestar calculation where an

7   exceptional effort produced an exceptional benefit."  *Graham*, 34 Cal. 4th at 582; *Edgerton*, 83 Cal.App.4th at

8   1363 ("excellent results achieved by plaintiffs" justified a fee enhancement).  Here, in addition to cash

9   payments, the case settlement produced substantial non-monetary relief in the form of a Stipulated Order for

10  an Injunction as described above (Section II(B)(3) *supra*).  The injunction accomplishes what Plaintiff sought

11  to achieve when she took on the prosecution of this case, and will benefit the Settlement Class and other

12  prospective residents of Defendant's facilities, who are among the most vulnerable members of our society.

13          Again, all of these factors collectively favor approval of a positive multiplier, even though Class

    Counsel's present fee request represents a negative multiplier.

14

15          **C.      The Percentage Cross-Check Supports the Reasonableness of the Fee Request**

16          A common cross-check regarding the reasonableness of a fee award is its percentage of the total value

17  of the benefits conferred on the class.  *Serrano III*); *Lealao*, 82 Cal.App.4th at 49-50; *Graciano v. Robinson*

18  *Ford Sales, Inc.*, 144 Cal.App.4th 140, 164 (2006); 3 *Newberg on Class Actions*, § 14.7.

19          Viewed from a "percentage of fund" perspective, the anticipated fee request of $2,112,000.00

20  represents thirty-three percent (33%) of the Settlement Fund.[1]  California federal trial courts have approved fee

21  requests within that range in comparable consumer class actions.[2]  *See Ingalls v. Hallmark Mktg. Corp.*, Case

22  No. 08-CV-4342, Doc. No. 77 (C.D. Cal. Oct. 16, 2009) (awarding  33.33% fee).  *Cicero v. DirectTV, Inc.*,

23  _____

24  [1] In calculating the overall settlement benefit, the Court considers the total potential benefits made available. *Chavez v. Netflix,*
    *Inc.*, 162 Cal.App.4th 43, 46 (2008) (approving methodology that adds fees and class payments in the percentage of recovery

25  cross-check).  The overall settlement benefit includes items such as attorneys' fees, costs, class notice and administration costs
    and other settlement amounts that defendants have agreed to pay.

26  [2] In determining what constitutes a reasonable fee in ordinary common fund cases, Ninth Circuit courts start at a "benchmark"
    of 25% of the total fund for the analysis, adjusting that amount as appropriate based on many of the same "enhancement"

27  factors considered in the lodestar-multiplier analysis.  *See Vizcaino*, 290 F.3d at 1047-50; *Pokorny v. Quixtar, Inc.*, No. C07-
    0201 SC, 2013 U.S. Dist. LEXIS 100791 at *4-5 (N.D.Cal. July 18, 2013) (Conti, J.).

28

2010 WL 2991486, at *7 (C.D. Cal. July 27, 2010) (case survey of class action settlements demonstrate that "50% [of settlement fund] is the upper limit, with 30-50% commonly awarded in cases in which the common fund is relatively small."); *Cotchett, Pitre & McCarthy v. Universal Paragon Corp.*, 187 Cal.App.4th 1405, 1421 (2010) (contingency fees typically range from 33 to 40% of class benefit).

Accordingly, this cross-check demonstrates the propriety of the requested fee.

### D.     The Requested Fee Is Presumptively Reasonable Because It Resulted from Arms' Length Negotiations Between Experienced Counsel.

As the United States Supreme Court has explained, "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley*, 461 U.S. at 437. Thus, the court "should refrain from substituting its own value for a properly bargained-for agreement." *In re Apple Computer, Inc. Deriv. Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195, at *12-14 (N.D. Cal. Nov. 5, 2008).  Here, the parties reached a settlement after agreeing to accept Judge Westerfield's mediator's proposal, following a formal arms-length mediation session and weeks of continued settlement discussions with Judge Westerfield's assistance.  Before reaching settlement, Class Counsel vigorously opposed Defendant's pleading challenges and engaged in substantial discovery that included a review of over 600,000 pages of documents and the deposition of two of Defendant's employees.  These and other proceedings in the case produced a thorough vetting (pre-settlement) of the factual and legal bases for Plaintiff's claims and the key defenses to those claims, facilitating the arms' length settlement negotiations. (*See* Healey Decl. ¶¶ 15-19.)  Partly to avoid wasteful collateral proceedings over fees, Class Counsel negotiated with Defendant to arrive at a fee that they (Class Counsel and Defendant) concluded was reasonable.  (Stebner Decl. ¶ 36.)  Importantly, the fee was properly bargained for *after* the monetary and injunctive relief to the Class was agreed upon, and without any detriment to the Class.  (Stebner Decl. ¶ 36.)

### IV.     REIMBURSEMENT OF LITIGATION EXPENSES IS WARRANTED

Class Counsel are entitled to recover the out-of-pocket costs and litigation expenses they reasonably incurred in investigating, prosecuting, and settling this case.  *Staton*, 327 F.3d at 974; *In re Media Vision Tech. Sec. Litig.*, 913 F.Supp. 1362, 1366 (N.D. Cal. 1996).  The CLRA provides for reimbursement of costs incurred.  *Cal. Hous. Fin. Agency v. E. R. Fairway Assocs. I*, 37 Cal.App.4th 1508, 1514 (1995). Reimbursement of costs and litigation expenses is also necessitated under the common fund doctrine of

13

1  *Trustees v. Greenough*, 105 U.S. 527, 533 (1881).  Here, Class Counsel request a reimbursement of

2  $135,000.00 in litigation expenses pursuant to the terms of the Stipulation of Settlement.  As shown in the

3  attached declarations and the chart below, the requested amount is less than the amount actually incurred to

4  date ($144,483.89) in expenses necessary for the investigation, prosecution, and settlement of this action.[3]

| Firm | Costs |
|---|---|
| The Arns Law Firm | $2,446.85 |
| Stebner and Associates | $18,320.01 |
| Schneider Wallace Cottrell Konecky Wotkyns, LLP | $80,257.87 |
| Dentons US LLP | $24,855.82 |
| Law Offices of Michael D. Thamer | $3,977.14 |
| Janssen Malloy, LLP | $14,626.20 |
| TOTAL | $144,483.89 |

## V.    THE SERVICE AWARD FOR THE NAMED PLAINTIFF IS FAIR

The Agreement provides for services awards of $3,500 to Named Plaintiff Juliana Clegg subject to

Court approval. (SS, ¶ 12.3, p. 17.)  The award is appropriate in light of the efforts and risks taken by Named

Plaintiff.  (Stebner Decl, ¶ 37.)  The amount requested is within the range approved by trial courts in this

Circuit.  *See, e.g., Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV-08-1365 CW, 2010 U.S. Dist. LEXIS

49482, at *6 (N.D. Cal. Apr. 22, 2010) (approving $20,000 service award); *Singer v. Becton Dickinson and

Co.*, No. 08-CV-821 IEG (BLM), 2009 WL 4809646, at *6 (S.D. Cal. Dec. 9, 2009) (approving $25,000

service award).  Relevant considerations include: the actions the class representatives took to protect the

interests of the class; the degree to which the class benefited; the time and effort the class representatives

expended; the risk to named plaintiff; the personal difficulties encountered by named plaintiff; and the

duration of litigation.  *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Here, Named Plaintiff Juliana Clegg served as the representative and Guardian ad Litem to Mr. Carnes

in the prosecution of this lawsuit for over two years. After Mr. Carnes' death in September 2015, Ms. Clegg

continued the case prosecution as Mr. Carnes' legal successor.  Named Plaintiff her name to this case and thus

subjected herself to public attention.  As Thomas Carnes was a resident of Atria Hillsdale in San Mateo from

approximately July 26, 2012 to approximately January 19, 2015, Ms. Clegg had initial concerns about

becoming a class representative including potential retaliation resulting from participating in a lawsuit.  She

[3] *See* Healey Decl., ¶ 44; Needham Decl., ¶ 13; Thamer Decl., ¶ 19; Stebner Decl., ¶¶ 29-35; Wallace Decl., ¶¶ 27, 32-38; NOL, Ex. G, Declaration of Robert S. Arns, ¶¶ 2-3; and exhibits attached thereto.

1  also understood there was a risk she would be ordered to pay Defendants' costs should the litigation prove

2  unsuccessful.  Nonetheless, she agreed to become a class representative to stand up for vulnerable current and

3  future residents.  Ms. Clegg devoted approximately sixty hours to this case to help secure the payments to the

4  class members and the stipulated Injunction.  Ms. Clegg met in person with Class Counsel on seven or more

5  separate occasions, including to meeting for several hours to prepare for her deposition, and communicated at

6  least twenty-five times via telephone with Class Counsel throughout the pendency of this lawsuit.  She gave

7  significant assistance in providing facts towards the drafting of the complaint and amended complaints.  She

8  reviewed and produced documents related to her father's stay at Atria's facility, was willing to put forth

9  documents for public scrutiny, and took on the weighty responsibility of representing the Class.  Ms. Clegg

10 also responded to written discovery and participated in settlement discussions.  All of these activities were

11 time-consuming and emotionally difficult, as they required her to relive and talk about the circumstances at

12 Atria.  Named Plaintiff made this case possible when many other potential class representatives were reluctant

13 to step forward and represent the class.  Ms. Clegg reviewed the terms of the settlement and supports final

14 approval.  Her contributions helped produce the substantial benefits now offered to the Settlement Class.

15 (Stebner Decl, ¶ 37; NOL, Ex. H, Declaration of Juliana Clegg, ¶¶ 2-7.)

16 **VI.   CONCLUSION**

17     For the foregoing reasons, Class Counsel respectfully request that the Court issue an Order awarding:

18 (a) Class Counsel attorneys' fees in the amount of $2,112,000.00; (b) reimbursement of litigation costs in the

19 amount of $135,000.00; and (c) a service award in the amount of $3,500.00 to Named Plaintiff Juliana Clegg

20 as successor-in-interest to the Estate of Thomas Carnes.  A proposed order is submitted with this motion.

21 DATED:  May 16, 2016

22                        _/s/ Kathryn Stebner_____
                         Kathryn A. Stebner
23                       **STEBNER AND ASSOCIATES**

24                       Attorneys for Plaintiff and the Proposed Class
                         [***Additional Counsel for Plaintiff on Service List***]
25

26     The e-filing attorney hereby attests attest that (s)he has obtained concurrence in the filing of the

27 document from the signatory.

28