Kathryn A. Stebner, State Bar No. 121088
George Kawamoto, State Bar No. 280358
**STEBNER AND ASSOCIATES**
870 Market Street, Suite 1212
San Francisco, CA 94102
Tel: (415) 362-9800
Fax: (415) 362-9801

Michael D. Thamer, State Bar No. 101440
**LAW OFFICES OF MICHAEL D. THAMER**
Old Callahan School House
12444 South Highway 3
Post Office Box 1568
Callahan, California 96014-1568
Tel: (530) 467-5307
Fax: (530) 467-5437

Robert S. Arns, State Bar No. 65071
**THE ARNS LAW FIRM**
515 Folsom Street, 3rd Floor
San Francisco, CA 94105
Tel: (415) 495-7800
Fax: (415) 495-7888

Guy B. Wallace, State Bar No. 176151
Mark T. Johnson, State Bar No. 76904
Jennifer A. Uhrowczik, State Bar No. 302212
Sarah Colby, State Bar No. 194475
**SCHNEIDER WALLACE**
**COTTRELL KONECKY**
**WOTKYNS, LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel: (415) 421-7100
Fax: (415) 421-7105

W. Timothy Needham, State Bar No. 96542
**JANSSEN MALLOY LLP**
730 Fifth Street
Eureka, CA 95501
Tel: (707) 445-2071
Fax: (707) 445-8305

Christopher J. Healey, State Bar No. 105798
**DENTONS US LLP**
600 West Broadway, Suite 2600
San Diego, CA 92101-3372
Tel: (619) 236-1414
Fax: (619) 645-5328

Attorneys for Plaintiff and the Proposed Class

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS CARNES, by and through his guardian ad litem, JULIANA CHRISTINE CLEGG, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>ATRIA SENIOR LIVING, INC. and DOES 1 through 100,<br><br>        Defendants. | Case No.: 3:14-cv-02727-VC<br><br>**CLASS ACTION**<br><br>**NOTICE OF LODGMENT OF EXHIBITS IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>Date:        June 30, 2016<br>Time:        10:00 a.m.<br>Place:        Courtroom 4<br>Judge:        Hon. Vince Chhabria |

1    TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that the Plaintiff and the Proposed Class hereby lodge the

3 following exhibits in support of the Motion for Final Approval of Class Settlement.

4 **EXHIBIT**              **DESCRIPTION**

5 Exhibit A                Stipulation of Settlement (Settlement Agreement), which has the
                           following exhibits:
6
                           (1) Stipulated Injunction;
7                          (2) Class Notice (long and summary forms);
                           (3) [Proposed] Preliminary Approval Order; and
8                          (4) [Proposed] Final Judgment and Order Approving Settlement

9 Exhibit B                Declaration of Christopher J. Healey in Support of Plaintiff's Motion for
                           Final Settlement Approval
10
  Exhibit C                Declaration of Kathryn Stebner in Support of Plaintiff's Motion for
11                         Attorneys' Fees, Costs, and Service Awards

12 Exhibit D               Declaration of W. Timothy Needham in Support of Motion for
                           Attorneys' Fees and Costs
13
   Exhibit E               Declaration of Michael D. Thamer in Support of Plaintiffs' Motion for
14                         Attorneys' Fees, Costs, and Service Awards

15 Exhibit F               Declaration of Guy B. Wallace in Support of Plaintiff's Motion for an
                           Award of Reasonable Attorneys' Fees, Costs and Expenses
16
   Exhibit G               Declaration of Robert S. Arns in Support of Plaintiff's Motion for
17                         Attorneys' Fees, Costs, and Service Award

18 Exhibit H               Declaration of Juliana Christine Clegg

19 Exhibit I               Declaration of Richard M. Pearl in Support of Plaintiff's Motion for
                           Award of Attorney's Fees
20
   Exhibit J               Declaration of Kathleen Wyatt Re: Notice to Class
21
   Exhibit K               Declaration of Darren K. Cottriel Re Compliance with 28 U.S.C. §
22                         1715(B)

23 DATED:  May 16, 2016               Respectfully submitted,
                                      DENTONS US LLP
24

25                                    _/s/ Chris Healey_
                                      _____
26                                    Christopher J. Healey
                                      Attorneys for Plaintiff and the Proposed Class
27

28

# Exhibit A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Thomas Carnes, by and through his Guardian ad Litem, Juliana Christine Clegg, on his own behalf and on behalf of others similarly situated, | ) CASE NO.:  3:14-cv-02727-VC<br>)<br>) STIPULATION OF SETTLEMENT<br>) |
| Plaintiff, | ) |
| v. | ) |
| Atria Senior Living, Inc. and Does 1 Through 100, | ) |
| Defendant. | ) |

This Stipulation of Settlement is entered into by and among Plaintiff Thomas Carnes, by and through Juliana Christine Clegg, the Successor Trustee of the Thomas & Alice Family Trust ("Plaintiff"), on his own behalf, and on behalf of others similarly situated ("Settlement Class Members," as defined below), and Defendant Atria Senior Living, Inc. ("Defendant"). Plaintiff, the Settlement Class Members and Defendant agree that, subject to approval by the United States District Court for the Northern District of California pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Action and all claims and matters raised in it are hereby settled, compromised, resolved and dismissed,  with prejudice, on the terms and conditions set forth herein.

## <u>RECITALS</u>

A.     On June 12. 2014, Plaintiff filed the instant putative class action complaint against Atria Senior Living in the Northern District of California, for claims arising under the Consumer Legal Remedies Act ("CLRA"), California's Unfair Competition Law, Business & Professions Code section 17200 *et seq*. & 17500 *et seq.*("UCL"), and section 15610.30 of the Welfare and Institutions Code (the "Elder Fraud Act") (collectively, the "Claims").  Plaintiff filed a First Amended Complaint on August 7, 2014 and a Second Amended Complaint on December 11, 2014.

B.     On April 6, 2015, Defendant answered the Second Amended Complaint, wherein Defendant expressly denied the allegations and Claims alleged in the Second Amended Complaint.

C.     When the Action was initially filed, Juliana Christine Clegg served as Mr. Carnes' personal representative.  Thereafter, the Court approved Ms. Clegg to act as Mr. Carnes' guardian ad litem.  Mr Carnes died on or about September 29, 2015.  Ms. Clegg is the Successor Trustee of the Thomas & Alice Carnes Family Trust dated September 28, 2004.  The Parties have stipulated to substitute Ms. Clegg as the named plaintiff in the Action, in her capacity as Mr. Carnes' guardian ad litem and the Successor Trustee of the Thomas & Alice Carnes Family Trust, dated September 28, 2004.

D.     The Parties engaged in substantial investigation, motion practice, and discovery efforts before reaching a settlement.  Among other things, the discovery included written discovery and responses exchanged between the parties (including interrogatories and requests for production of documents, depositions of Defendant's employees, subpoenas to third parties for production of documents and production and review of said third-party documents.

E.     On November 17, 2015, the Parties engaged in a full-day mediation before the Honorable Rebecca Westerfield (ret.) of JAMS in San Francisco.  Although the case did not resolve at the initial mediation sessions, in the month following the mediation, the parties continued settlement efforts with Judge Westerfield's assistance, which further efforts resulted in the mediator making a proposal for settlement of the case for the parties to either accept or reject. On December 17, 2015, the parties agreed to accept Judge Westerfield's mediator's proposal to resolve the entire Action in full.  The mediation and negotiations resulted in this Agreement.

F.      The Parties have reached the resolution set forth in this Agreement, providing for, among other things, the settlement of the Action between and among Plaintiff, on behalf of himself and the Settlement Class, and Defendant, on the terms and subject to the conditions set forth below.  This Agreement was reached as a result of extensive arm's length negotiations between the Parties and their counsel.

G.      Class Counsel have determined that a settlement of the Action on the terms reflected in this Agreement provides substantial benefits to the Settlement Class, is fair, reasonable, adequate, and in the best interests of Plaintiff and the Settlement Class.  In agreeing to the settlement set forth in this Agreement, Class Counsel have considered numerous risks of continued litigation and other factors, including but not limited to the following:

1.      The expense and length of time necessary to prosecute the Action through trial;

2.      The uncertainty of outcome at trial and the possibility of an appeal by either side following the trial;

3.      The possibility that a contested class might not be certified, and if certified, the possibility that such certification would be reversed on appeal;

4.      The fact that Defendant could file a motion for summary judgment that, if granted, would dispose of all or many of the claims in the Action;

5.      The fact that Defendant could file a preemptive motion to strike some or all of the class allegations in the Second Amended Complaint; and

6.      The risk that Plaintiff and the proposed class may recover no damages or substantially less damages than the amounts sought in the Action;

7.      The benefits provided to Plaintiff and the Settlement Class members under the terms of this Agreement.

H.      Weighing the above factors, as well as all other risks and uncertainties of continued litigation and all factors bearing on the merits of settlement, Plaintiff and his counsel are satisfied that the terms and conditions of this settlement are fair, adequate, and in the best interests of Plaintiff and the Settlement Class members.

I.      Defendant, to avoid the costs, disruption to business operations and distraction of further litigation, and without admitting the truth of any allegations made in the Action, or any liability with respect thereto, or any wrongdoing whatsoever, has concluded that it is desirable that the claims against it be settled and dismissed on the terms reflected in this Agreement.

J.      Therefore, it is hereby stipulated and agreed by and among Plaintiff, the Settlement Class and Defendant that the Second Amended Complaint shall be dismissed with prejudice upon the Effective Date (defined below), and this Action in its entirety, and the Claims, shall be finally and fully compromised, settled, and released, subject to the approval of the Court

3

as required by Rule 23 of the Federal Rules of Civil Procedure, on the following terms and conditions:

<u>**SETTLEMENT TERMS**</u>

**1.     Definitions**

For purposes of this Settlement Agreement only, the words and terms used in this Agreement that are expressly defined in this Section or elsewhere in this Settlement Agreement shall have the meaning ascribed to them in those definitions.

1.1     "Action" means this lawsuit, *Thomas Carnes by and through his guardian ad litem,  Juliana Christine Clegg v. Atria Senior Living, Inc. and DOES 1 through 100*, case no. 3:14-cv-02727-VC, which is currently pending in the United States District Court for the Northern District of California, including, without limitation, any appeals or requests for leave to appeal any ruling or judgment entered in that case.

1.2     "Agreement," "Settlement Agreement," or "Stipulation" means this Stipulation of Settlement (including all Exhibits attached hereto).

1.3     "Attorneys' Fees and Expenses" means such funds as may be awarded by the Court based on the stipulation described herein to compensate Class Counsel as determined by the Court, but not to exceed one-third of the Settlement Fund, plus reimbursement of litigation costs actually incurred not to exceed $135,000.

1.4     "Award" or "Settlement Award" means the relief obtained by Settlement Class Members, as described in section <u>9</u> of this Agreement.

1.5     "Class Notice" or "Notice" means the forms of notice to be disseminated to Settlement Class Members informing them about the Settlement Agreement.  A copy of the proposed Notice is attached as Exhibit 2.

1.6     "Class Representative" means plaintiff Thomas Carnes, by and through his guardian ad litem and legal successor, Juliana Christine Clegg.

1.7     "Class Counsel" means:

ARNS LAW FIRM
515 Folson Street
3rd Floor
San Francisco, CA 94105
Telephone:     (415) 495-7800
Facsimile:     (415) 495-7888

Robert S. Arns
rsa@arnslaw.com

DENTONS US LLP
600 West Broadway
Suite 2600
San Diego, CA 92101
United States
Telephone: (619) 236-1414
Facsimile: (619) 232 8311

Christopher J. Healey
chris.healey@dentons.com

4

Ex. A - Notice of Lodgment

Page 7

STEBNER & ASSOCIATES
870 Market Street
Suite 1212
San Francisco, CA 94102
Telephone: (415) 362-9800
Facsimile: (415) 362-9801

Kathryn A. Stebner
kathryn@stebnerassociates.com
Sarah Colby
sarah@stebnerassociates.com

SCHNEIDER WALLACE COTTRELL
KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

Guy B. Wallace
gwallace@schneiderwallace.com

JANSSEN, MALLOY, NEEDHAM, ET AL.
730 Fifth Street
Eureka, CA 95501
Telephone: (707) 445-2071
Facsimile: (707) 445-8305

W. Timothy Needham
tneedham@janssenlaw.com

LAW OFFICE OF MICHAEL D. THAMER
Old Callahan School House
12444 South Highway 3
Callahan, CA 96014
Telephone: (530) 467-5307
Facsimile: (530) 467-5437

Michael D. Thamer
michael@trinityinstitute.com

1.8    "Court" means the United States District Court for the Northern District of California.

1.9    "Defendant" or "Atria" means Atria Senior Living, Inc.

1.10    "Defendant's Counsel" means the following counsel of record for Defendant:

JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone: (949) 851-3939
    Facsimile: (949) 553-7539

    Darren K. Cottriel
    darrencottriel@jonesday.com

1.11    "Distribution Request" means a request for payment of a Settlement Award made by a Settlement Class Member, or made by the legal representative of a deceased Settlement Class Member.   Any Distribution Request must be submitted to the Settlement Administrator and post-marked not later than thirty (30) days after the Effective Date (herein the "Distribution Request Deadline").

1.12    "Effective Date" means the later in time of: (a) the date of entry of the Final Judgment and Order Approving Settlement, if no timely motions for reconsideration and/or no appeals or other efforts to obtain review have been filed; or (b) in the event that an appeal or other effort to obtain review has been initiated, the date after such appeal or other review has

5

been finally concluded and is no longer subject to review, whether by appeal, petitions for rehearing, petitions for rehearing en banc, petitions for writ of certiorari, or otherwise.

1.13    "Final Approval Hearing" means the hearing to be conducted by the Court on such date as the Court may order to determine the fairness, adequacy, and reasonableness of this Agreement.

1.14    "Final Judgment and Order Approving Settlement" means the Final Judgment and Order Approving Settlement to be entered by the Court, substantially in the form of Exhibit 4 approving the settlement, as fair, adequate, and reasonable, confirming the certification of the Settlement Class, and issuing such other findings and determinations as the Court and/or the Parties deem necessary and appropriate to implement the Settlement Agreement.

1.15    "Motion for Preliminary Approval of Settlement" means the motion, to be filed by Class Counsel on behalf of Plaintiff, and not to be opposed by Defendant, for Preliminary Approval of this Agreement.

1.16    "Notice and Administration Expenses" means all costs and expenses incurred by the Settlement Administrator, including all notice expenses, the cost of administering the Notice Program and the costs of processing all payments to Settlement Class Members.

1.17    "Notice Date" means the date by which the Settlement Administrator substantially completes dissemination of the Class Notice as provided in the Agreement and shall be no later than ten (10) business days after Settlement Administrator receives the Settlement Class Member Information List.

1.18    "Objection Date" means the date by which Settlement Class Members must file and serve objections to the settlement, and shall be thirty-five (35) days after the Notice Date.

1.19    "Opt Out Date" means the postmark date by which a Request for Exclusion must be submitted to the Settlement Administrator in order for a Settlement Class Member to be excluded from the Settlement Class, and shall be thirty-five (35) days after the Notice Date.

1.20    "Parties" means Plaintiff, the Settlement Class and Defendant.

1.21    "Person" or "Persons" means any natural or artificial person, business entity or other legal entity, including without limitation individuals, sole proprietorships, associations, companies, firms, partnerships, joint ventures, corporations, employees or former employees, or any other business, governmental agencies, and any divisions, departments, or other units thereof.

1.22    "Plaintiff" means named plaintiff Thomas Carnes, by and through his guardian ad litem and legal successor, Juliana Christine Clegg.

1.23    "Preliminary Approval Order" means the order to be entered by the Court, substantially in the form of Exhibit 3, preliminarily approving the Settlement, certifying the Settlement Class, setting the date of the Final Approval Hearing, approving the Notice Program and Class Notice, and setting the Opt Out Date, Objection Date, and  Notice Date.

6

1.24    "Related Persons" means any and all past, present and future parent companies and entities, predecessors, assigns, direct or indirect subsidiaries, divisions, subdivisions, brands, departments, affiliates, related corporations, limited liability companies, holding companies, operating companies and other entities, general partners, limited partners, partnerships, partners, joint ventures, co-venturers, shareholders, members, investors, owners, directors, officers, employees, agents, attorneys, insurers, experts, consultants, predecessors, successors, heirs, administrators, executors, trusts, trustees, fiduciaries, beneficiaries, creditors, assigns, agents and representatives of Defendant.

1.25    "Released Claims" means any and all actions, claims, demands, rights, suits, and causes of action of whatever kind or nature whatsoever against the Released Parties, including without limitation any and all damages, loss, costs, expenses, penalties, attorneys' fees and expert fees, and interest, whether known or unknown, suspected or unsuspected, assigned or unassigned, asserted or unasserted, whether as individual claims or claims asserted on a class basis or on behalf of the general public, in law or equity, arising out of or relating to statements, representations, acts, omissions or failures to disclose made prior to March 17, 2016 by the Released Parties regarding the Released Parties' agreements, advertising, marketing, or promotion concerning the use or consideration of resident assessments to determine, evaluate, review or set facility staffing or staffing levels or care amounts, which have been asserted, could reasonably have been asserted or in the future might be asserted by the Releasing Parties in the Action, including but not limited to claims alleging any type of fraud, misrepresentation, omission, false advertising or unfair trade practice under any state or federal law.

Specifically excluded from this release are any and all individual claims solely for personal injuries, wrongful death, bodily harm, or emotional distress resulting therefrom.  In the event that any Settlement Class Member asserts any such excluded claim in a future action against any Released Party, nothing in this Agreement shall preclude the Settlement Class Member from asserting any and all relevant allegations in support of such claim, including without limitation, allegations that the facility was understaffed.

Also specifically excluded from this release are claims based on a breach of this Agreement or the Stipulated Injunction.

1.26    "Released Parties" or "Released Party" means (i) Atria, (ii) all Related Persons, and (ii) any and all of their respective predecessors, successors, assigns, parents, direct or indirect subsidiaries, divisions, departments, and affiliates, and, in addition to the foregoing entities and individuals, any and all of their respective past, present and future officers, directors, employees, shareholders, member, partners, joint ventures, co-venturers, employees, agents, servants, successors, attorneys, insurers, representatives, licensees, licensors, subrogees and assigns.  It is expressly understood that, to the extent a Released Party is not a Party to the Agreement, all such Released Parties are intended third-party beneficiaries of the Agreement.

1.27    "Releasing Party" or "Releasing Parties" means Plaintiff, each and every Settlement Class Member, and any Person claiming by or through him/her/it as his/her/its spouse, parent, child, heir, guardian, associate, co-owner, attorney, agent, administrator, executor, devisee, trustee, predecessor, successor, assignee, representative of any kind, shareholder, partner, director, employee or affiliate.  The Parties expressly agree and

acknowledge that Releasing Party includes any legal successor to or trustee, executor or other legal representative of any deceased Settlement Class Member, including that deceased Settlement Class Member's estate.

1.28   "Request for Exclusion" means the written communication that must be submitted to the Settlement Administrator and postmarked on or before the Opt Out Date by a Settlement Class Member who wishes to be excluded from the Settlement Class.

1.29   "Reserve Fund" means the $25,000 that the Settlement Administrator shall hold in the Settlement Fund to pay late-submitted Distribution Requests.   The amount of any Settlement Award checks not cashed within the check cashing deadline (after reasonable reminders issued by the Settlement Administrator) shall be added to the Reserve Fund.  Any moneys left in the Reserve Fund not paid to Settlement Class Members shall be paid to the Institute on Aging, or other appropriate cy pres recipient(s) qualified under 501(c)(3) and nominated by Class Counsel and approved the Court.

1.30   "Settlement Administrator" or "Administrator"  means KCC/Gilardi & Co., LLC, which subject to Court approval, shall design and implement the program for disseminating notice to the Settlement Class, administer the payment portion of this settlement, and perform overall administrative functions.

1.31   "Settlement Class" means Plaintiff and all similarly situated Persons who resided at one of the California assisted living facilities owned, managed and/or operated by Defendant at any time between June 12, 2010 through and including March 17, 2016  (the "Settlement Class Period"), as defined for the purpose of this Settlement Agreement only.

1.32   "Settlement Class Member" means any Person falling within the description of the Settlement Class (including any legal successor, trustee or executor to any such Persons who are deceased) who does not opt out of the Settlement Class.  "Eligible Settlement Class Member" means any Settlement Class Members for whom addresses have been provided to or located by the Settlement Administrator, or any Settlement Class Member (or in the case of any deceased Settlement Class Member, their successor(s) or trustee(s)) who submitted timely Distribution Requests.

1.33   "Settlement Class Member Information List" means and includes all the following information within Defendant's possession, custody or control: (a) a list of any Person meeting the definition of the Settlement Class; (b) names of any family member or representative of any such Person; and the (c) last-known addresses, phone numbers or other contact information for any Settlement Class Member and their family members or representatives.

1.34   "Settlement Fund" means the $6.4 million that Defendant has agreed to pay in full settlement and resolution of the Action.

1.35   "Settlement Website" means the Internet website to be established for this settlement by the Settlement Administrator to provide information to the public and the Settlement Class about this Agreement.

8

1.36    "Stipulated Injunction" or "Injunction" means the Court-approved injunction agreed to by the parties as part of this Settlement, a copy of which is attached as Exhibit 1 hereto

1.37    Other capitalized terms in this Agreement not defined in this Section shall have the meanings ascribed to them elsewhere in this Agreement.

## 2.    Preliminary Settlement Approval

2.1    As soon as practicable after the signing of this Agreement, Plaintiff at his sole expense shall move the Court for an order: (a) preliminarily approving this Agreement as fair, reasonable and adequate; (b) conditionally certifying the Settlement Class for settlement purposes only; (c) approving the form, manner, and content of the Class Notice; (d) setting the date and time of the Final Approval Hearing; (e) appointing Plaintiff as representatives of the Settlement Class for settlement purposes only; and (f) appointing Class Counsel for settlement purposes only.  Defendant shall cooperate with Plaintiff to obtain the Preliminary Approval Order consistent with the terms herein.

2.2    This Agreement is for settlement purposes only, and neither the fact of, nor any provision contained in this Agreement, nor any action taken hereunder, shall constitute or be construed as an admission of: (a) the validity of any claim or allegation by Plaintiff, or of any defense asserted by Defendant, in the Action; (b) any wrongdoing, fault, violation of law, or liability on the part of any Party, Released Party, Settlement Class Member, or their respective counsel; or (c) the propriety of class treatment of Plaintiff's claims for any purpose other than for purposes of settlement and this Settlement Agreement.

2.3    With the Motion for Preliminary Approval. Plaintiff will seek certification of the Settlement Class for settlement purposes only. Defendant hereby consents, solely for purposes of settlement and this Settlement Agreement, to the certification of the Settlement Class, to the appointment of Class Counsel, and to the approval of Plaintiff as suitable representative of the Settlement Class; provided, however, that if the Court fails to approve this Agreement or the Agreement otherwise fails to be consummated, then Defendant shall retain all rights it had immediately preceding the execution of this Agreement to oppose and object to the maintenance of the Action as a class action for any purpose.

## 3.    Notice to California and Federal Officials

3.1    In compliance with the provisions of the Class Action Fairness Act, 28 U.S.C. §1715, within ten (10) days after the Motion for Preliminary Approval is filed, Defendant, by and through the Settlement Administrator, shall provide notice of this proposed Settlement to the Attorney General of the United States and the California Attorney General, and shall file with the Court a certification stating the notice was provided and the date(s) on which the notices were sent.

## 4.    Settlement Class Notice

4.1    No later than ten (10) business days after the entry by the Court of the Preliminary Approval Order, Defendant shall furnish the Settlement Administrator with the Settlement Class Member Information List.

4.2     No later than ten (10) business days after the Settlement Administrator receives the Settlement Class Member Information List, the Settlement Administrator shall substantially complete the dissemination of Class Notice to potential Settlement Class Members. The Parties agree that notice by United States mail and the other methods set forth herein constitutes the best means under the circumstances of this case to effect notice to the Settlement Class, and that the notice program described in this Section comports with the requirements of FRCP 23 and due process.

4.3     At or prior to the Final Approval Hearing, the Settlement Administrator shall provide the Court with an affidavit attesting that Notice was disseminated pursuant to the Notice Program set forth below.

4.4     Defendant agrees to respond to requests from the Settlement Administrator to review any relevant information held by Defendant if necessary to confirm updated addresses for Settlement Class Members, within five (5) business days of Defendant's receipt of the Settlement Administrator's request.

4.5     The Class Notice delivered to Settlement Class Members shall be substantially similar to Exhibit 2, attached hereto. At a minimum, the Notice shall include: (1) contact information for Class Counsel; (2) the address for the Settlement Website; (3) instructions on how to access the case docket via PACER or in person at any of the Court's locations; (4) the date of the Final Approval Hearing and a clear statement that the date may change without further notice to the class; (5) an advisory that Settlement Class Members should check the Settlement Website or the Court's PACER site to confirm that the date has not been changed; (6) an explanation of the procedures for opting out of the Settlement Class including the applicable deadline for opting out; (7) instructions to Settlement Class Members who wish to submit objections to the settlement; (8) a short, plain statement of the background of the Action and the proposed Agreement; (9) a statement that any Award to Settlement Class Members under the Agreement is contingent on the Court's final approval of the Agreement; (10) an explanation that any judgment or orders entered in the Action or the Other Actions, whether favorable or unfavorable to the Settlement Class shall include and be binding on all Settlement Class Members who have not been excluded, even if they have objected to the proposed Agreement and even if they have another claim, lawsuit, or proceeding pending against Defendant.

4.6     The Class Notice shall  be provided as follows:

4.6.1   Notice by Mail: No later than ten (10) business days after the Settlement Administrator receives the Settlement Class Member Information List, the Settlement Administrator shall substantially complete the dissemination of the Notice by U.S. Mail to the last known addresses of the Settlement Class Member, and their family members or legal representatives, as provided by Defendant in the Settlement Class Member Information List.

4.6.2   Notice by Publication: No later than ten (10) business days after the Settlement Administrator receives the Settlement Class Member Information List, the Settlement Administrator shall substantially complete the publication of the Notice, or a summary version of the Notice as approved by the Court, through a single publication in the USA Today (California weekday edition), or equivalent media publication approved by the Court.

10

4.6.3   Posting of the Notice: On or before the date that Notice by Publication is accomplished, the Settlement Administrator shall post the Notice on the Settlement Website. The Notice shall remain available by these means until the Effective Date. The Notice may also be posted on the websites of Class Counsel at their option.

**5.      Opt-out and Objection Procedure**

5.1      Any Settlement Class Member who intends to object to the fairness of the Settlement must do so in writing no later than the Objection Date. The written objection must be filed with the Court and served on the Class Counsel identified in the Notice and Defendant's Counsel no later than the Objection Date. The written objection must include: (a) a heading which refers to the Action; (b) the objector's name, address, telephone number and, if represented by counsel, of his/her counsel; (c) a statement that the objector resided at or signed a contract with Emeritus during the class period, or that the objector is the legal successor to such a person; (d) a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel; (e) a clear statement of the objection to the Settlement and grounds supporting the objection; (f) copies of any papers, briefs, or other documents upon which the objection is based; and (g) the objector's signature.

5.2      Any Settlement Class Member who fails to file and serve a timely written objection in the time and manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by objection, appeal or otherwise) to the Settlement and this Agreement.

5.3      Any Settlement Class Member may appear at the Final Approval Hearing, either in person or through counsel hired at the Settlement Class Member's sole expense, to object to any aspect of the fairness, reasonableness, or adequacy of this Agreement, including attorneys' fees.

5.4      Plaintiff, Class Counsel and Defendant and its counsel shall have the right and opportunity to respond in writing to any objections to the Settlement prior to the Fairness Hearing, as well as to respond to the objections at the Fairness Hearing.  Plaintiff, Class Counsel and Defendant and its counsel shall file responses to objections with the Court concurrently with the filing of reply briefs in support of the final approval of the Settlement.

5.5      Any member of the Settlement Class may request to be excluded from the Settlement Class.  A Settlement Class Member who wishes to opt out of the Settlement Class and relinquish their rights to benefits under the Settlement Agreement must do so no later than Opt Out Date.  In order to opt out, a Settlement Class Member must send to the Settlement Administrator via first class United States mail a written Request for Exclusion that is post-marked no later than the Opt Out Date.  The Request for Exclusion must be personally signed by the Settlement Class Member requesting exclusion and must contain the following information: (a) the Settlement Class Member's name, current address and telephone number; and (b) a statement that indicates a desire to be excluded from the Settlement Class.  Any Request for Exclusion postmarked after the Opt Out Date shall not be valid.

11

5.6     Any Settlement Class Member who does not make a timely written Request for exclusion shall be bound by all subsequent proceedings, orders and the Final Judgment and Order Approving Settlement in this Action, even if he or she has pending, or subsequently initiates, litigation, arbitration or any other proceeding against Defendant relating to the Released Claims.

5.7     Any Settlement Class Member who properly requests to be excluded from the Settlement Class shall not: (a) be bound by any orders or judgments entered in the Action relating to the Agreement; (b) be entitled to an Award from the Settlement Fund, or be affected by, the Agreement; (c) gain any rights or obligations by virtue of the Agreement; or (d) be entitled to object to any aspect of the Agreement.

5.8     The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with a final list of all timely Requests for Exclusion within five (5) business days after the Opt Out Date.  Plaintiff shall file the final list of all timely Requests for Exclusion prior to or at the Final Approval Hearing.

5.9     Notwithstanding anything else in this Agreement, Defendant may, in its sole discretion, unilaterally withdraw from and terminate this Agreement no later than ten (10) days prior to the Final Approval Hearing if 750 or more Persons elect to exclude themselves from the Settlement Class.

5.10    The Parties and their respective counsel agree that they will not solicit, facilitate or assist in any way, Requests for Exclusion or Objections by putative or actual Settlement Class Members.  The Parties recognize that they have an obligation to support the Settlement and seek the Court's approval of its terms.  Class Counsel will abide by all applicable governing ethical rules, opinions and obligations concerning any representation of opt outs.

**6.      Settlement Administrator**

6.1     In addition to any tasks and responsibilities ordered by the Court, the Settlement Administrator shall be authorized to and shall in fact undertake the tasks set forth in this Section to help implement the terms of the proposed Agreement.

6.2     The Settlement Administrator shall undertake various administrative tasks, including, without limitation, (1) mailing or arranging for the mailing, emailing or other distribution of the Notice to Settlement Class Members, (2) handling returned mail and email not delivered to Settlement Class Members, (3) attempting to obtain updated address information for Settlement Class Members by all reasonable means, including running change of address, skip traces or other procedures on the Settlement Class Member Information List provided by Defendant, and any notices returned without a forwarding address or an expired forwarding address, (4) making any additional mailings required under the terms of this Agreement, (5) answering written inquiries from Settlement Class Members and/or forwarding such inquiries to Class Counsel or their designee, (6) receiving and maintaining on behalf of the Court and the Parties any Settlement Class Member correspondence regarding requests for exclusion to the settlement, (7) establishing the Settlement Website that posts notices, distribution request forms and other related documents, (8) establishing a toll-telephone number that will provide

settlement-related information to Settlement Class Members, (9) receiving and processing payment requests and distributing payments to Settlement Class Members, and (10) otherwise assisting with administration of the Agreement.

6.3     The contract(s) with the Settlement Administrator(s) shall obligate the Administrator, among other duties, to abide by the following performance standards:

6.3.1     accurately and neutrally describe, and shall train and instruct its employees and agents to accurately and objectively describe, the provisions of this Agreement in communications with Settlement Class Members;

6.3.2     provide prompt, accurate and objective responses to inquiries from Class Counsel or their designee, Defendant and/or Defendant's Counsel.

6.3.3     execute all necessary Business Associate Agreements, as required by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") or any similar state or federal law.

6.3.4     maintain the confidentiality of the Settlement Class Member Information List, and all information contained therein.  Such information may be disclosed *in camera* to the Court, as reasonably necessary to implement this Agreement.

6.4     The costs, fees and expenses of the Administrator, including without limitation the Notice and Administration Expenses and all other costs of disseminating Notice to Settlement Class Members, administration of the claims process, and all of the other functions of the Administrator as described herein, shall be paid from the Settlement Fund.

## 7.     Final Judgment and Order Approving Settlement

7.1     This Agreement is subject to and conditioned upon the issuance by the Court of the Final Judgment and Order Approving Settlement that finally certifies the Settlement Class for the purposes of this Settlement only, grants final approval of the Agreement, and provides the relief specified herein, which relief shall be subject to the terms and conditions of the Agreement and the Parties' performance of their continuing rights and obligations hereunder.  Such Final Judgment and Order Approving Settlement shall be substantially in the form attached hereto as Exhibit 4.

7.2     Fifteen (15) calendar days prior to the Opt Out Date, Plaintiff shall file a motion for final approval of the Settlement, and Class Counsel shall file a request for award of attorneys' fees and costs consistent with the terms and conditions of this Agreement.

7.3     The Parties shall request the Court to schedule and conduct a Fairness Hearing so that the Court may review any objections to the Settlement and this Agreement, consider the fairness, reasonableness and adequacy of the Settlement and this Agreement, and consider Class Counsel's request for award of attorneys' fees and costs.  The date of the Fairness Hearing shall be stated in the Class Notice and posted on the settlement website in advance of the hearing.  If the date of the Fairness Hearing is subsequently modified by the Parties or the Court, no further notice is required to be published to the Settlement Class Members, except that the Parties will

notify in writing any Settlement Class Member who has filed a timely objection to the Settlement regarding the change of date of the Fairness Hearing.

**8.      Settlement Relief  - Injunction**

8.1      As an integral part of the consideration provided under this Agreement, Defendant stipulates to entry of the Court-approved injunction substantially in the form attached as Exhibit 1 to this Agreement.

8.2      The Injunction shall become effective upon the Effective Date and remain in place for not less than three (3) years from the Effective Date.

**9.      Settlement Relief – Settlement Fund and Settlement Awards**

9.1      Within fifteen (15) business days of the date the Court signs the Final Judgment and Order Approving Settlement, Defendant shall make a payment of $6.4 million into the Settlement Fund to be administered and distributed by the Settlement Administrator consistent with the terms of this Section.  The $6.4 million payment shall cover all of Defendant's monetary obligations under the Settlement, exclusive of costs to comply with the Stipulated Injunction. The Settlement Fund shall be maintained in an interest-bearing, secure account that, to the extent feasible, meets the requirements for a "Qualified Settlement Fund" within the meaning of Treasury Regulation Section 1.468B. The Parties and Settlement Administrator shall treat the Settlement Fund as being at all times a "Qualified Settlement Fund."

9.2      The Settlement Fund, less the money used from the Settlement Fund to pay Notice and Administration Expenses, taxes and tax expenses, Attorneys' Fees and Expenses, Service Awards and the Reserve Fund, shall be the "Net Settlement Fund."

9.3      The Net Settlement Fund will be distributed through Settlement Award checks made payable to each Settlement Class Member for whom a valid address has been provided to, or located by, the Settlement Administrator.   In addition, any Settlement Class Member (or any legal successor to any deceased Settlement Class Member) that submits a timely Distribution Request to the Settlement Administrator shall likewise be mailed a Settlement Award check.

9.4      The Settlement Administrator shall calculate the Settlement Awards and distribute the Net Settlement Fund to Settlement Class Members as follows:

9.4.1    The Settlement Administrator shall first calculate an Initial Settlement Amount for each Settlement Class Member.  The Initial Settlement Amount shall be calculated by dividing the Net Settlement Fund by the total number of Settlement Class Members to whom Class Notice has been mailed and Settlement Class Members who have made timely Distribution Requests.

9.4.2    Within thirty (30) calendar days after the Distribution Request Deadline, the Settlement Administrator shall determine if there are excess funds available in the Net Settlement Fund over and above those required to pay the total amount of the Initial Settlement Amount to all Eligible Settlement Class Members.  If so, the extra amount (if any) in the Net Settlement Fund shall be divided by the total number of Eligible Settlement Class Members,

which calculation shall be the Additional Settlement Amount. The total Settlement Award payable to each Eligible Settlement Class Member shall be the total of the Initial and Additional Settlement Amounts, and any additional distribution(s) as calculated by the Settlement Administrator pursuant to paragraph 9.6 below.

    9.4.3 The Settlement Administrator is authorized to and shall pay settlement checks in response to requests (including Distribution Requests) submitted after the Distribution Request Deadline, provided that the amount of such payments shall be the Initial Settlement Payment Amount,  or such other amount as the Settlement Administrator in its discretion determines can be paid from the Reserve Fund.

   9.5 The Settlement Administrator shall mail the Settlement Award checks to the above-described Settlement Class Members within forty-five (45) calendar days after the Distribution Request Deadline.  The Settlement Payment checks shall allow for a check cashing period of one hundred eighty (180) calendar days.

   9.6 There shall be no reversion to Defendant of any portion of the Settlement Fund, any unclaimed funds, any uncashed Settlement Awards, or any interest earned on any such funds.   If the amount left in the Reserve Fund (after all Settlement Awards have been paid to Eligible Settlement Class Members) is sufficient to make another distribution economically practical, the remaining amount shall be paid in pro rata shares to all Eligible Settlement Class Members who cashed their initial settlement checks.  If the Settlement Administrator determines a further distribution is not economically practical, the remaining balance in the Reserve Fund shall be distributed through cy pres payment to the Institute on Aging upon Court approval.

## 10. Releases

   10.1 Upon entry of the Final Judgment and Order Approving Settlement and after the Effective Date, each and every Settlement Class Member shall be deemed to and does hereby release and forever discharge any and all Released Parties from any and all liability, obligation or responsibility for any and all Released Claims.  Each Settlement Class Member shall be permanently barred and enjoined from initiating, asserting or prosecuting any of the Released Claims against any of the Released Parties.  No Released Party shall be subject to liability or expense of any kind to any Releasing Party with respect to any Released Claim.

   10.2 Upon entry of the Final Judgment  and Order Approving Settlement , and after the Effective Date, the Defendant and Related Persons, and each of them, shall be deemed to and do hereby release and forever discharge Plaintiff, Settlement Class Members and Class Counsel solely from any claim arising from or related to the prosecution of the Action, including without limitation, any claim for malicious prosecution or abuse of process. The Settling Defendant and Related Persons, and each of them, shall be barred and enjoined from initiating, asserting or prosecuting any such claim against Plaintiff, Settlement Class Members and Class Counsel.

   10.3 With respect to any and all claims released herein, for good and valuable consideration, all Parties shall be deemed to have, and by operation of the Final Judgment and Order Approving Settlement contemplated by this Agreement shall have, fully, finally, and forever expressly waived and relinquished, to the fullest extent permitted by law, any and all

provisions, rights and benefits of section 1542 of the Civil Code and any and all provisions, rights and benefits conferred by any law of any state or territory of the United States or principle of common law that is similar, comparable or equivalent to section 1542 of the Civil Code, which provides:

> "**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR**."

10.4    This waiver shall apply even if facts are later discovered that are different from or in addition to those which they now know or believe to be true with respect to the matters released herein.

**11.    Dismissal of Action**

11.1    Upon entry of the Final Judgment and Order Approving Settlement and after the Effective Date, the Action shall be dismissed with prejudice subject to the Court retaining jurisdiction to implement and enforce the terms of this Agreement.

11.2    The Parties agree that the Court shall retain exclusive and continuing jurisdiction over the Parties and the Settlement Class Members to interpret and enforce the terms, conditions, and obligations under the Agreement.

**12.    Attorneys' Fees, Litigation Costs, Service Awards**

12.1    Defendant agrees not to oppose Class Counsel's application for a single award of attorneys' fees not to exceed one-third of the Settlement Fund and litigation costs not to exceed $135,000 .  The fees and expenses awarded by the Court (the "Fees and Expenses Payment") shall be paid in full from the Settlement Fund within three (3) calendar days of the Settlement Administrator's receipt of the Defendant's payment pursuant to Section 9.1 above.  In the event that the Final Judgment and Order Approving Settlement is reversed or modified, and the appellate decision results a reduction or vacation of the Fees and Expenses Payment, Class Counsel shall repay all such affected amounts of the Fees and Expenses Payment, together with any accrued interest ordered.  In the event that repayment of affected amounts of Fees and Expenses Payment (including accrued interest) is required, Class Counsel, and each of them, shall be jointly and severally liable for the repayment obligation.  Class Counsel shall be solely responsible for allocating the Fees and Expenses Payment among the respective Class Counsel. Defendant shall have no obligation or involvement whatsoever in regards to the allocation and sharing of the single fee, cost and expense award as between Class Counsel.  The Parties agree that Defendant's single $6.4 million payment, as provided herein, represents and constitutes Defendant's all-inclusive full payment for any and all settlement amounts, attorneys' fees, costs and other expenses in relation to the Settlement and the releases provided for herein.  Defendant shall have no obligation for any fees, costs and expenses incurred by Class Counsel in responding to objections to the Settlement, if any, or any appeal from the Final Judgment and Order Approving Settlement.

16

12.2    The Court's award of fees, costs and expenses to Class Counsel shall be separate from its determination of whether to approve the Settlement.  In the event the Court approves the Settlement, but declines to award fees and costs to Class Counsel or awards a lesser amount of fees and costs than requested by Class Counsel, the Settlement will nevertheless be valid and binding on the Parties.  If the Court declines to approve the Settlement and this Agreement, no award of fees, costs and expenses shall be paid to Class Counsel.  The Parties have negotiated and reached agreement on Class Counsel's fees, costs and expenses only after reaching agreement on all other material terms of Settlement and this Agreement set forth herein.

12.3    Defendant agrees not to oppose Plaintiff's application for a Service Payment not to exceed $3,500, which payment shall be in addition to any Settlement Award owed to Plaintiff. The Service Payment shall be paid in the full amount awarded by the Court from the Settlement Fund at the same time as Settlement Awards are paid to the Settlement Class.   The Court's award of the Service Payment to Plaintiff shall be separate from its determination of whether to approve the Settlement as set forth in this Agreement.  In the event the Court approves the Settlement, but declines to award the Service Payment to Plaintiff or awards a lesser amount than what is requested, the Settlement will nevertheless be binding on the Parties.  If the Court declines to approve the Settlement, no Service Payment shall be made to Plaintiff.

**13.    Media Communications**

13.1    It is the intent of the Parties to provide useful information about the settlement and to provide reasonably neutral descriptions about the Action, while not making inflammatory statements.  Except as expressly permitted by this Section of this Agreement, the Parties will not make any public statements about the Agreement or any of the allegations or claims made in the Action.

13.2    Plaintiff, Defendant, Class Counsel and Defendant's Counsel shall not hold any press conference or issue any press release or comment regarding the settlement reflected in this Agreement except through the Class Notice process approved by the Court.  Plaintiff, Defendant, Class Counsel and Defendant's Counsel may make disclosures as may be required to the Court, and may make such disclosures as may be required by law or to submit to a government agency, or as may be necessary for financial purposes (including without limitation, tax and audit purposes), or to respond to inquiries by Settlement Class Members (including their family members or representatives) or other Persons relating to the Action or the settlement reflected in this Agreement.

13.3    Nothing herein will prohibit Class Counsel, Defendant or Defendant's Counsel from responding to routine media questions or questions by other Persons (including prospective residents) about the settlement or the Action so as to permit timely responses to the inquiries consistent with the language of the Class Notice.  Nothing herein will prohibit Class Counsel from responding to inquiries from Settlement Class Members or their representatives, or in any way limit communications by Class Counsel with Settlement Class Members or their representatives regarding the Action or the settlement consistent with the Class Notice. Defendant may respond to questions from Settlement Class Members (including their family members or representatives) regarding the Action and this Agreement, provided that Defendant's

17

statements are consistent with the language of the Class Notice and do not violate section 5.10 of this Agreement.

## 14.    Representations and Warranties

14.1    Defendant represents and warrants: (1) it has the requisite corporate power and authority to execute, deliver and perform the Agreement and to consummate the transactions contemplated hereby; (2) that the execution, delivery and performance of the Agreement and the consummation by it of the actions contemplated herein have been duly authorized by necessary corporate action on the part of Defendant; and (3) that the Agreement has been duly and validly executed and delivered by Defendant and constitutes its legal, valid and binding obligation.

14.2    Plaintiff's representative represents and warrants that she is entering into the Agreement on behalf of Plaintiff individually, on behalf of his estate, and the proposed Settlement Class, of her own free will and without the receipt of any consideration other than what is provided in the Agreement or disclosed to, and authorized by, the Court.  Plaintiff's representative represents and warrants that she has reviewed the terms of the Agreement in consultation with Class Counsel, and that she fully understands and voluntarily accepts the terms and conditions of this Agreement.   Class Counsel represent and warrant that they are fully authorized to execute the Agreement on behalf of Plaintiff.

14.3    The parties represent and warrant that no promise, inducement or consideration for the Agreement has been made, except those set forth herein.

## 15.    No Admissions of Fault, No Use Except for Enforcement

15.1    The Parties acknowledge that Defendant contests and disputes the claims asserted in the Action, and denies the material allegations made by Plaintiff.  By agreeing to settle the Action, Defendant and Related Persons do not acknowledge, admit or concede the validity of any Released Claim or any wrongdoing, fault, violation of law, or any liability of any kind whatsoever.  The Agreement and every stipulation and term contained in or attached hereto, including without limitation, the Stipulated Injunction, it is conditioned upon final approval of the Court and is made for settlement purposes only.  Whether or not consummated, this Agreement and the Stipulated Injunction shall not be: (a) construed as, offered in evidence as, received in evidence as, and/or deemed to be, evidence of a presumption, concession or an admission by Plaintiff,  Defendant, Related Persons, any Settlement Class Member or Releasing or Released Party, of the truth of any fact alleged or the validity of any claim or defense that has been, could have been, or in the future might be asserted in any litigation or the deficiency of any claim or defense that has been, could have been, or in the future might be asserted in any litigation, or of any liability, fault, wrongdoing or otherwise of such Party; or (b) construed as, offered in evidence as, received in evidence as, and/or deemed to be, evidence of a presumption, concession or an admission of any liability, fault or wrongdoing, or in any way referred to for any other reason, by Plaintiff, Defendant, Related Persons, any Releasing Party or Released Party in the Action or in any other civil, criminal or administrative action or proceeding other than such proceedings as may be necessary to effectuate the provisions of the Agreement.

18

15.2    Without limiting the generality of the foregoing, the Stipulated Injunction shall not be: (a) construed as, offered in evidence as, received in evidence as, and/or deemed to be, evidence of a presumption, concession or an admission by Plaintiff, Defendant, Related Persons, any Settlement Class Member or Releasing or Released Party, of the truth of any fact alleged or the validity of any claim or defense that has been, could have been, or in the future might be asserted in any litigation or the deficiency of any claim or defense that has been, could have been, or in the future might be asserted in any litigation, or of any liability, fault, wrongdoing or otherwise of such Party; or (b) construed as, offered in evidence as, received in evidence as, and/or deemed to be, evidence of a presumption, concession or an admission of any liability, fault or wrongdoing, or in any way referred to for any other reason, by Plaintiff, Defendant, Related Persons, any Releasing Party or Released Party in the Action or in any other civil, criminal or administrative action or proceeding other than such proceedings as may be necessary to effectuate the provisions of the Agreement.

15.3    This Agreement and all negotiations, correspondence and communications leading up to its execution shall be deemed to be within the protection of Federal Rule of Evidence 408 and any analogous state or federal rules or principles. Neither this Agreement, nor any terms, conditions, contents or provisions hereof or exhibits hereto, nor any negotiations, correspondence or communications leading up to the execution of this Agreement, shall constitute a precedent or be admissible for any purpose in any proceeding; provided, however, that this Agreement shall be admissible in any proceeding related to the approval of this Agreement, to enforce an of its terms and conditions, to support or defend this Agreement in an appeal from an order granting or denying final approval, or to enforce or assert a claim or defense of *res judicata*, collateral estoppel, claim preclusion, issue preclusion, settlement release, merger and bar, or any similar claim or defense against Plaintiff, the Settlement Class or any Settlement Class Member, or any third party.

## 16.    Termination

16.1    Any Party may terminate this Agreement by providing written notice to the other Parties hereto within ten (10) days of any of the following events:

16.1.1    The Court does not enter a Preliminary Approval Order that conforms in material respects to Exhibit 2 hereof; or

16.1.2    The Court does not enter a Final Judgment and Order Approving Settlement conforming in material respects to Exhibit 3, or if entered, such Final Judgment and Order Approving Settlement is reversed, vacated, or modified in any material respect by another court, except as provided for herein.

16.2    In the event that this Agreement terminates for any reason, all Parties shall be restored to their respective positions as of immediately prior to the date of execution of this Agreement, and shall proceed in all respects as if this Agreement and any related Court orders had not been made or entered. Upon termination, Sections 15 and 17.5 herein shall survive and be binding on the Parties, but this Agreement shall otherwise be null and void. In that event, within five (5) business days after written notification of such event is sent by Defendant's Counsel or Class Counsel to the Settlement Administrator, the Settlement Fund (including

19

accrued interest), less expenses and any costs which have been disbursed or are determined to be chargeable as Notice and Payment Distribution Administration Expenses, shall be refunded by the Settlement Administrator to Defendant. In such event, Defendant shall be entitled to any tax refund owing to the Settlement Fund.  At the request of Defendant, the Settlement Administrator or its designee shall apply for any such refund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for a refund, to Defendant.  In no event will Defendant be entitled to recover any funds spent for Notice and Administration Expenses prior to termination of this Agreement.

**17.    Miscellaneous Provisions**

17.1    Integration:  The Agreement, including all Exhibits hereto, shall constitute the entire Agreement among the Parties with regard to the Agreement and shall supersede any previous agreements, representations, communications, and understandings among the Parties with respect to the subject matter of the Agreement.  The Agreement may not be changed, modified, or amended except in a writing signed by one of Class Counsel and one of Defendant's Counsel and, if required, approved by the Court.  The Parties contemplate that the Exhibits to the Agreement may be modified by subsequent agreement of Defendant or Defendant's Counsel and Class Counsel, or by the Court.

17.2    Governing Law:  The Agreement shall be construed under and governed by the laws of the State of California, applied without regard to laws applicable to choice of law.

17.3    Execution in Counterparts:  The Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  Facsimile signatures or signatures scanned to PDF and sent by e-mail shall be treated as original signatures and shall be binding.

17.4    Notices:  Whenever this Agreement requires or contemplates that one Party shall or may give notice to the other, notice shall be provided in writing by first class US Mail and email to:

  If to Plaintiff or Class Counsel:

    Kathryn A. Stebner
    STEBNER & ASSOCIATES
    870 Market Street
    Suite 1212
    San Francisco, CA 94102
    Telephone: (415) 362-9800
    Facsimile: (415) 362-9801
    kathryn@stebnerassociates.com

    Guy B. Wallace
    SCHNEIDER WALLACE COTTRELL KONECKY, LLP
    2000 Powell Street, Suite 1400

    Emeryville, California 94608

Ex. A - Notice of Lodgment

Telephone: (415) 421-7100
Facsimile: (415) 421-7105

If to Defendant or Defendant's Counsel:

Darren K. Cottriel
**JONES DAY**
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone: (949) 851-3939
Facsimile: (949) 553-7539
darrencottriel@jonesday.com

17.5    Stay of Proceedings:  Upon the execution of this Agreement, all discovery and other proceedings in the Action shall be stayed until further order of the Court, except for proceedings that may be necessary to implement the Agreement or comply with or effectuate the terms of this Settlement Agreement.

17.6    Good Faith:  The Parties agree that they will act in good faith and will not engage in any conduct that will or may frustrate the purpose of this Agreement.  The Parties further agree, subject to Court approval as needed, to reasonable extensions of time to carry out any of the provisions of the Agreement.

17.7    Protective Orders:  All orders, agreements and designations regarding the confidentiality of documents and information ("Protective Orders") remain in effect, and all Parties and counsel remain bound to comply with the Protective Orders, including the provisions to certify the destruction of  documents deemed Confidential under the Protective Orders. Notwithstanding such provision in the Protective Order, Defendant's Counsel and Class Counsel may retain copies of all deposition transcripts and exhibits and all documents submitted to the Court, but those documents must be kept confidential to the extent they were designated as "Confidential," and will continue to be subject to the Protective Order.

17.8    Assignment of Claims:  Plaintiff's representative warrants and represents that no claim or any portion of any claim by Plaintiff referenced in or covered by this Agreement has been sold, assigned, conveyed, or otherwise transferred to any other entity or Person.

17.9    Binding on Successors:  This Agreement shall inure to the benefit of and be binding upon the respective agents, assigns, administrators, employees, trustees, executors, heirs, and successors in interest of each of the Parties, including without limitation any legal successors to or executors, trustees or other representatives for Settlement Class Members who previously deceased.

17.10    Arms-Length Negotiations:  The determination of the terms and conditions contained herein and the drafting of the provisions of this Agreement has been by mutual understanding after negotiation, with consideration by, and participation of, the Parties hereto and their counsel.  This Agreement shall not be construed against any Party on the basis that the

21

Party was the drafter or participated in the drafting.  Any statute or rule of construction that ambiguities are to be resolved against the drafting party shall not be employed in the implementation of this Agreement and the Parties agree that the drafting of this Agreement has been a mutual undertaking.

17.11   Recitals:  The Recitals are a material part of this Agreement and are incorporated herein in their entirety.

17.12   No Liability:  The Parties agree that Defendant and Released Parties are in no way liable or responsible for any taxes Class Counsel, Plaintiff, Settlement Class Members or others may be required or obligated to pay as a result of the receipt of settlement benefits or payments relating to the Settlement or under this Agreement.  No Settlement Class Member or any other Person shall have any claim against Plaintiff, Class Counsel, Defendant, the Released Parties, the Claims Administrator, or any designated agent thereof, based on any eligibility determination, distributions or payments made in accordance with the Settlement and this Agreement, or based on payments made or other relief provided and made substantially in accordance with this Agreement or with further orders of the Court or any appellate court.

17.13   Waiver:  The waiver by one Party of any provision or breach of the Agreement shall not be deemed a waiver of any other provision or breach of the Agreement.

17.14   Variance:  In the event of any variance between the terms of this Agreement and any of the Exhibits hereto, the terms of this Agreement shall control and supersede the Exhibit(s).

17.15   Exhibits:  All Exhibits to this Agreement are material and integral parts hereof, and are incorporated by reference as if fully rewritten herein.

17.16   Taxes:  No opinion concerning the tax consequences of the Agreement to any Settlement Class Member is given or will be given by Defendant, Defendant's Counsel, or Class Counsel; nor is any Party or their counsel providing any representation or guarantee respecting the tax consequences of the Agreement as to any Settlement Class Member. Each Settlement Class Member is responsible for his/her tax reporting and other obligations respecting the Agreement, if any.

17.17   Implementation Before Effective Date:  The Parties may agree in writing to implement the Agreement or any portion thereof after the entry of the Final Judgment and Order Approving Settlement, but prior to the Effective Date.

17.18   Reservation of Rights:  This Agreement is made without prejudice to the rights of Defendant to oppose class certification in this Action for any purpose, including for purposes of trial, in the event that the Effective Date does not occur.

## 18.   Retained Jurisdiction

18.1     The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Agreement, and all Parties hereto submit to the jurisdiction of

22

Ex. A - Notice of Lodgment

Page 25

the Court for purposes of implementing and enforcing the Agreement embodied in this Agreement.

23

IN WITNESS WHEREOF, each of the Parties hereto has caused the Agreement to be executed on its behalf by its duly authorized counsel of record, all as of the day set forth below.

DATED: 2/25 , 2016          ATRIA SENIOR LIVING, INC.

By: _____

W. Bryan Hudson
Executive Vice President
General Counsel and Secretary

DATED: _____ , 2016          JULIANA CHRISTINE CLEGG

By: _____
    Guardian ad litem for Plaintiff Thomas Carnes

APPROVED AS TO FORM:

DATED: _____ , 2016          STEBNER & ASSOCIATES

By: _____
    KATHRYN A. STEBNER
    Attorneys for Plaintiff

DATED: 2/25 , 2016          JONES DAY

By: _____
    DARREN K. COTTRIEL
    Attorneys for Defendant

24

Ex. A - Notice of Lodgment

Page 27

IN WITNESS WHEREOF, each of the Parties hereto has caused the Agreement to be executed on its behalf by its duly authorized counsel of record, all as of the day set forth below.

DATED: _____, 2016         ATRIA SENIOR LIVING, INC.

                                        By: _____

DATED: Feb. 16 , 2016         JULIANA CHRISTINE CLEGG

                                        By: _____
                                              Guardian ad litem for Plaintiff Thomas Carnes

APPROVED AS TO FORM:

DATED: Feb 16 , 2016         STEBNER & ASSOCIATES

                                        By: _____
                                              KATHRYN A. STEBNER
                                              Attorneys for Plaintiff

DATED: _____, 2016         JONES DAY

                                        By: _____
                                              DARREN K. COTTRIEL
                                              Attorneys for Defendant

**EXHIBITS**

| **Document** | **Exhibit Number** |
|---|---|
| Stipulated Injunction | 1 |
| Class Notice | 2 |
| Preliminary Approval Order | 3 |
| Final Judgment and Order Approving Settlement | 4 |

USW 805376076.9

Ex. A - Notice of Lodgment

# Exhibit 1

Ex. 1 to Stipulated Settlement

Ex. A - Notice of Lodgment

1

2

3

4

5

6

7

8             **UNITED STATES DISTRICT COURT**

9         **NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO**

10

11   THOMAS CARNES, by and through his              Case No. 3:14-cv-02727-VC
     Guardian ad Litem, Juliana Carnes Clegg, on
12   his own behalf and on behalf of others        **STIPULATED ORDER FOR INJUNCTION**
     similarly situated,
13                                                  Place: Courtroom 4
14                    Plaintiff,                    Judge: Hon. Vince Chhabria

15   vs.

16   ATRIA SENIOR LIVING and DOES 1
17   Through 100,

18                    Defendants.

19

20

21

22

23

24

25

26

27

28

1         Pursuant to the parties' stipulation, IT IS HEREBY ORDERED, ADJUDGED AND

2  DECREED as follows:

3       1.     This injunction ("Injunction") is entered into and shall be enforceable against Atria

4  Senior Living, Inc. ("Atria") and any other person or entity owned or controlled by Atria that

5  owns, manages or operates any assisted living facility or community under the Atria name ("Atria

6  community" or "community") in California during the duration of the Injunction.

7       2.     Atria personnel, including Atria community personnel, shall refrain from making

8  any oral or written statements to current or prospective residents (and if applicable, family

9  members or representatives of current or prospective residents) that state or imply that resident

10  assessments are the only factor used to determine, set or monitor staffing levels at Atria's

11  California communities.

12       3.     Not later than the Effective Date (as defined in the Settlement Agreement), Atria

13  shall ensure that resident assessments, including those conducted at the time of admission and

14  thereafter during a resident's stay, shall be given consideration by Atria in determining, setting or

15  monitoring staffing levels for its California communities.

16       4.     Atria shall ensure that all new Residency Agreements provided to, made available

17  or entered into after the Effective Date for Atria's California communities contain disclosures

18  substantially in the form as follows:

19       a.     The resident assessments described in this Residency Agreement, including those

20  conducted at the time of admission and thereafter during a resident's stay, are considered by Atria

21  in determining, setting and monitoring staffing levels at its California communities.  Atria

22  considers the assessments and other factors to determine, set or monitor staffing levels at Atria

23  communities.

24       b.     Atria does not guarantee that any resident will receive a specific number of minutes

25  or amount of care on any given day or time period.  The care level assigned to a resident

26  represents an estimate only of the approximate range of care minutes or amount of care that Atria

27  anticipates its community personnel will provide to the resident.

28

5.     Atria shall ensure that its web pages, marketing brochures or other materials, and any other written statements provided to or made available to the consuming public in California after the Effective Date and that discuss resident assessments contain the following disclosure substantially in this form: "In determining and monitoring staffing levels, Atria considers resident assessments and other factors."

6.     Not later than the Effective Date, Atria shall ensure that all Residency Agreements, web pages, marketing brochures or other materials, and any other written statements to be provided to or made available to the consuming public in California and that discuss resident assessments are in compliance with the terms of this Injunction.  The requirements of this Injunction shall apply only to Residency Agreements, marketing brochures, web pages and any other statements provided to, made available or entered into with new or prospective residents after the Effective Date, and shall not require or obligate Atria to amend or modify Residency Agreements or other documents or statements provided to, made available or entered into prior to the Effective Date.

7.     On or before thirty (30) calendar days before the Effective Date, Atria shall provide to Class Counsel a template copy of the Residency Agreement, web pages, marketing brochures or other materials, and any other written statements to be provided to or made available to the consuming public in California and that discuss resident assessments, for a review of Atria's compliance with the terms of this Injunction.

8.     This Injunction shall remain in force and effect for a period of three (3) years from the Effective Date.  Upon the expiration of the three (3) year period, the Injunction shall terminate and no longer be enforceable.

9.     On or before fifteen (15) days after the Effective Date occurs, Atria shall file a sworn declaration with the court that confirms compliance with all terms of this Injunction.

1    IT IS SO STIPULATED.

2    DATED:  February ___, 2016          STEBNER & ASSOCIATES

3

4                                        By: _____

5                                             Kathryn A. Stebner
                                              Attorneys for Class Plaintiffs
6

7    DATED:  February __, 2016           JONES DAY

8

9                                        By: _____

10                                            Darren Cottriell
                                              Attorneys for Defendants
11

12       IT IS SO ORDERED, ADJUDGED AND DECREED.

13

14   DATED:  _____, 2016              _____

15                                       Honorable Vince G. Chhabria
                                         United States District Court Judge
16

17   USW 805386174.2

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 2

Ex. 2 to Stipulated Settlement

Ex. A - Notice of Lodgment

Class Notice (Summary Form)

## LEGAL NOTICE

IF YOU RESIDED AT AN ATRIA ASSISTED LIVING FACILITY IN CALIFORNIA AT ANY TIME FROM JUNE 12, 2010 THROUGH MARCH 17, 2016, YOU MAY BE ENTITLED TO MONEY FROM A CLASS ACTION SETTLEMENT.  READ ON FOR IMPORTANT INFORMATION ABOUT YOUR RIGHTS

Thomas Carnes v. Atria Senior Living, Inc., Case No. 3:14-cv-02727-VC
United States District Court, Northern District of California

### WHAT IS THIS LAWSUIT ABOUT?

Plaintiff Thomas Carnes, by and through his representative and legal successor, Juliana Christine Clegg, ("Plaintiff")  brings this proposed class action on behalf of residents of assisted living communities owned,  managed  or operated by Atria Senior Living, Inc. ("Atria") in California. Plaintiff alleges that Atria made purportedly misleading statements about how its resident evaluations would be used to set staffing at Atria's facilities in California, which Plaintiff alleges resulted in monetary damages to residents.   Atria denies all allegations and claims, but has agreed to settle to avoid burdensome and costly litigation and disruption to its business operations. The settlement is not an admission of wrongdoing, and this Notice does not mean the Court has expressed any opinion as to the merits of any claim or defense.

In a class action, one or more individuals (called plaintiffs) assert claims on behalf of others (called Class Members). Here, the Court has appointed Stebner & Associates and other counsel (Class Counsel) to represent all Settlement Class Members. If you want to be represented by your own lawyer, you may hire one at your expense.

### WHAT ARE THE TERMS OF THE SETTLEMENT?

Under the proposed settlement, Atria has agreed to provide a total settlement fund of $6.4 million (the "Fund") in full settlement of the claims of the Settlement Class.  Subject to Court approval, it is expected that after payment of class notice and administration, Class Counsel's attorneys' fees and litigation expenses, and service award to Plaintiff, the cash payment for each Settlement Class Member will be approximately $300. The attorneys' fees shall not exceed one-third of the settlement fund.  The settlement amount, any attorneys' fee award and the net funds available for payment to class members are all contingent on final approval by the Court.  In addition to monetary payments, Atria has agreed to an injunction that requires, among other things, that Atria include language in its residency agreements and other documents stating that resident assessments and other factors are considered in setting, or monitoring or modifying staffing levels at Atria's facilities.

Ex. 2 to Stipulated Settlement

Ex. A - Notice of Lodgment

## WHO IS A SETTLEMENT CLASS MEMBER?

You are a member of the Settlement Class if you resided at any assisted living facility owned, managed and/or operated by Atria located in California at any time between June 12, 2010 through and including March 17, 2016. To be eligible for benefits under the settlement, you must be a Settlement Class Member, or a legal successor to a deceased Class Member.

## WHAT ARE MY RIGHTS AND OPTIONS?

If you are a member of the settlement class, you must decide whether to:

**Include Yourself In Settlement Class and Receive a Settlement Payment**.  You may include yourself in the settlement class and seek money from the class settlement, but give up your right to sue in a different case about the same subject matter.  If you choose this option, you do not need to do anything, as you will automatically be included in the settlement class;

**Include Yourself in Settlement Class, But File An Objection.**  Alternatively, you can remain in the settlement class, seek money from the class settlement and give up your right to sue in a different case about the same subject matter, but object to the terms of the settlement. If you choose this option, you do not need to do anything in order to be included in the settlement class, but to object to the terms of the settlement, you or your own counsel will need to prepare and submit a written objection.  Please visit [settlement website] for instructions on how to file an objection.  Your written objection must be submitted not later than **[date].**

**Exclude Yourself**.  Your third option is to exclude yourself from the settlement class and give up your right to seek money from the class settlement, but keep your right to sue in a different case about the same subject matter.  If you choose this option, you will need to prepare and submit a written request to be excluded from the settlement class. Please visit [website] for instructions on how to submit a request for exclusion. Your written exclusion request must be submitted not later than **[date].**

## FAIRNESS HEARING

The Court will hold a Final Approval Hearing on **[date]** to decide whether to approve the settlement. This fairness hearing will be held in Courtroom 4, 450 Golden Gate Avenue, 17th Floor, San Francisco, CA 94102.  The hearing date, time and place may be changed without notice to the Settlement Class, so please check the [settlement website] for updates.

## HOW CAN I GET MORE INFORMATION?

This notice is a summary only.  More information about the lawsuit and settlement can be found at [settlement website], or by reviewing court records at https://www.pacer.gov/.  Pleadings and other court documents in the lawsuit may also be reviewed during regular business hours at the Office of the Clerk, United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, California.

PLEASE DO NOT CONTACT THE COURT FOR INFORMATION ABOUT THE LAWSUIT

USW 805399868.3

Ex. 2 to Stipulated Settlement

Ex. A - Notice of Lodgment

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*A federal court has authorized this Notice.  It is not a solicitation from a lawyer.*

Did you reside at one of the California assisted living facilities owned, managed and/or operated by Atria Senior Living ("Atria") at any time between June 12, 2010 through and including March 17, 2016?  If so, please read this notice very carefully and in its entirety.  Your rights are probably affected by a class settlement of a lawsuit because you may be a member of the settlement class.  If you are a member of the settlement class, you must decide whether to:

    1)   include yourself in the settlement class and seek money from the class settlement, but give up your right to sue in a different case about the same subject matter.  If you choose this option, you do not need to do anything, as you will automatically be included in the settlement class;

    2)   include yourself in the settlement class and seek money from the class settlement, give up your right to sue in a different case about the same subject matter, but object to the terms of the settlement. If you choose this option, you do not need to do anything in order to be included in the settlement class, as you will automatically be included in the settlement class.  However, if you want to object to the terms of the settlement, you or your own counsel will need to prepare and submit a written objection; or

    3)   exclude yourself from the settlement class and give up your right to seek money from the class settlement, but keep your right to sue in a different case about the same subject matter.  If you choose this option, you will need to prepare and submit a written request to be excluded from the settlement class.

The lawsuit is entitled *Thomas Carnes, by and through his Guardian ad litem, Juliana Christine Clegg, on his own behalf and on behalf of others similarly situated v. Atria Senior Living*, Case Number 3:14-cv-02727-VC pending in the United States District Court for the Northern District of California (the "Lawsuit").  The Lawsuit was filed by plaintiff Thomas Carnes, by and through his guardian ad litem and legal successor, Juliana Christine Clegg[A1] ("Plaintiff" or "Class Representative"), on behalf of himself and all of the other Settlement Class Members (as defined below).

The parties have reached a proposed settlement on the terms and conditions set forth in the Stipulation of Settlement entered into by and between Plaintiff and Atria. The Court in charge of the Lawsuit still has to decide whether to approve the settlement.  A settlement fund will be available for distribution to the Settlement Class only if the settlement is approved by the Court and the approval is upheld following any appeals.

1

Ex. 2 to Stipulated Settlement

Ex. A - Notice of Lodgment

Page 39

The following provides a detailed description about the proposed class settlement and the rights you have if you are a Settlement Class Member, the benefits available under the settlement and how you can get the benefits, including the relevant deadlines and requirements.

**BASIC INFORMATION**

| **WHAT IS THIS LAWSUIT ABOUT?** |
|---|

Plaintiff brings this proposed class action on behalf of residents of California assisted living communities owned, managed or operated by Atria, alleging that Atria made purportedly misleading statements about how resident evaluations would be used to determine, set and monitor staffing levels at Atria's assisted living facilities in California,  which Plaintiff alleges resulted in monetary damages to residents.   Atria denies all allegations and claims in the Lawsuit, and denies that it committed any wrongdoing.  Atria is entering into the settlement to avoid burdensome and costly litigation and disruption to its business operations.  This settlement is not an admission of any wrongdoing by Atria.  The Parties have agreed to settle the Lawsuit on the terms and conditions explained in this notice.

| **WHY IS THIS A CLASS ACTION?** |
|---|

In a class action, one or more people, called class representatives (in this case, Juliana Christine Clegg), sue on behalf of people who have similar claims.  All of these people are called a class or class members.  One court resolves the issues for all class members, except for those who choose to exclude themselves from the class.  United States District Court Judge Vince G. Chhabria is in charge of this proposed class action.

| **WHY IS THERE A SETTLEMENT?** |
|---|

The Court did not decide in favor of Plaintiff or Atria.  Instead, both sides agreed to a settlement.  That way, they avoid the cost of a trial and settlement benefits go to the Settlement Class Members.  The Class Representative and the attorneys think the settlement is in the best interest of the Settlement Class Members taking in to account the benefits of the proposed settlement, the risks of continued litigation and the delay in obtaining relief for the Settlement Class if the Lawsuit continues.

| **WHO IS IN THE SETTLEMENT CLASS?** |
|---|

You are a member of the Settlement Class if you resided at any assisted living facility owned, managed and/or operated by Atria located in California at any time between June 12, 2010 through and including March 17, 2016. To be eligible for benefits under the settlement, you must be a Settlement Class Member, or a legal successor to a deceased Class Member.

**THE SETTLEMENT BENEFITS**

| **CASH PAYMENTS AND INJUNCTIVE RELIEF** |
|---|

2

Ex. 2 to Stipulated Settlement

Ex. A - Notice of Lodgment

Under the terms of the settlement, Atria has agreed to provide a total settlement fund of $6.4 million (the "Fund") in full settlement of the claims of the Settlement Class.  The Fund will be used to pay for class notice and payment distribution administration expenses (estimated at $120,000), as well as Class Counsel's attorneys' fees not to exceed one-third of the Fund, litigation expenses of approximately $135,000, and a service award of $3,500 to the Class Representative.  The remaining amount (the "Net Settlement Fund") will be used to make cash payments to Settlement Class Members (or if a Class Member is deceased, to their legal successor).  It is estimated that the cash payment for each Settlement Class Member will be approximately $300. The settlement distribution process will be administered by an independent settlement administrator (the "Settlement Administrator") approved by the Court. **The settlement amount and Net Settlement Fund are contingent on final approval by the Court.**

In addition, as part of the settlement and a Court-approved injunction, Atria has agreed, among other terms,to include language in Atria's residency agreements and other documents stating that resident assessments and other factors are considered in setting,  monitoring or modifying staffing levels at Atria's facilities. The injunction will begin on the Effective Date (defined in the Agreement) and remain in place for three years.

| AMOUNT OF CASH PAYMENT |
|---|

The actual cash payment amounts to Class Members will be determined by the Settlement Administrator based on the formula described in the settlement agreement, and may be increased if funds are available.  Subject to Court approval, the Administrator will reserve $25,000 from the Fund to pay late distribution requests.  Any amounts left in the Fund and not paid from the reserve or from uncashed checks, if any, will be paid to the Institute on Aging, or other non-profit organizations approved by the Court.

| HOW CAN I GET A CASH PAYMENT? |
|---|

If you are a Class Member and the address above is correct, **you do not need to take any action.**  Your cash payment will be mailed to you if the settlement is approved by the Court and becomes Effective.   If your address has changed, you must provide your new address to the Settlement Administrator.  If a Class Member is deceased, his or her legal successor must submit a payment request and supporting documentation to the Settlement Administrator.  To contact the Settlement Administrator, visit [insert website] or call 1-800- xxx-xxxx.

| WHEN WILL I RECEIVED MY SETTLEMENT AWARD? |
|---|

The Court will hold a final approval hearing on **[date]** at **[time]**, to decide whether to approve the settlement.  **The date or time of the final approval hearing may be changed by the Court without notice to the Settlement Class, and you should check the Settlement Website at [insert web address] or the public court records on file in this lawsuit for any updates.**  If the Court approves the settlement, there may be appeals, which could extend the process by 18 months or more.

3

Ex. 2 to Stipulated Settlement

Ex. A - Notice of Lodgment

Page 41

| IN RETURN FOR THESE SETTLEMENT BENEFITS, WHAT AM I GIVING UP? |
|---|
| If the Court approves the proposed settlement and you do not request to be excluded from the Settlement Class, you must release (meaning, give up) all legal claims concerning Atria's alleged misrepresentations and nondisclosures with respect to whether or how resident assessments are used to set, determine or monitor staffing levels or care amounts provided in Atria's facilities.  **This includes any other lawsuit or proceeding already in progress.** The Release does not include claims solely for personal injury, emotional distress or bodily harm.  The judgment and orders entered in this case, whether favorable or unfavorable, will bind all Settlement Class Members who do not request to be excluded.  The full terms of the Release are contained in the Stipulation of Settlement that is available on the Settlement Website at **[web address]**, or at the public court records on file in the Lawsuit. |

### THE LAWYERS REPRESENTING YOU

| DO I HAVE A LAWYER IN THIS CASE? |
|---|
| All Settlement Class Members are represented by Plaintiffs' Counsel, who have been preliminarily approved by the Court to serve as Class Counsel representing the Settlement Class for purposes of the settlement.  If you want to be represented by your own lawyer, you may hire one at your own expense and enter an appearance through your own counsel. |

| HOW WILL THE LAWYERS BE PAID? |
|---|
| Class Counsel will ask the Court to award attorneys' fees not to exceed one-third of the Fund (approximately $2.1 million), and litigation expenses not to exceed $135,000.  Atria has agreed not to oppose this request.  Any award of attorneys' fees and litigation expenses must be approved by the Court as fair, reasonable and consistent with prevailing marketplace standards. The amount of attorneys' fees and costs awarded by the Court will be paid from the Fund. |

### EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want to keep the right to sue or continue to sue Atria, on your own, about the legal issue in this case, then you must take steps to be excluded from the settlement.  This is called excluding your self – or is sometimes referred to as opting out of the Settlement Class.

| HOW DO I GET OUT OF THE SETTLEMENT? |
|---|
| If you do not wish to be included in the Settlement Class and receive a cash payment, you must send a letter stating that you want to be excluded from the Settlement Class in *Thomas Carnes v. Atria Senior Living and DOES 1 through 100*, case no. 3:14-cv-02727-VC (N.D. Cal.).  Be sure to include your name, address, telephone number, signature, and a statement that you are covered by this settlement.  You must mail your letter requesting exclusion postmarked no |

4

Ex. 2 to Stipulated Settlement

Ex. A - Notice of Lodgment

Page 42

later than **[date]** to: [insert Administrator address]

You cannot exclude yourself via telephone, fax, or email.

| **WHAT HAPPENS IF I EXCLUDE MYSELF FROM THE SETTLEMENT?** |
|---|
| If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement.  However, you will not be legally bound by anything that happens in this lawsuit and you will keep your right to separately pursue claims against Atria relating to the subject matter of this lawsuit. |
| **IF I DON'T EXCLUDE MYSELF, CAN I SUE DEFENDANTS FOR THE SAME THING LATER?** |
| No.  Unless you exclude yourself, you give up the right to sue Atria for the claims that this settlement resolves.  You must exclude yourself from *this* case and the Settlement Class to pursue your own lawsuit.  Remember, your letter requesting exclusion must be postmarked on or before **[date]**. |
| **IF I EXCLUDE MYSELF, CAN I GET MONEY FROM THIS SETTLEMENT?** |
| No.  If you exclude yourself, you will not receive any money from the settlement.  But, you will not lose any right you may have to sue (or continue to sue) in a different lawsuit against Atria about the legal issues or claims in this case.  If you choose to initiate a new lawsuit, your claim will be subject to time limitations, so you must act promptly. |

### OBJECTING TO THE SETTLEMENT

You can tell the court that you do not like the settlement or some part of it.

| **HOW DO I TELL THE COURT THAT I DO NOT LIKE THE SETTLEMENT?** |
|---|
| If you are a Settlement Class Member, you can object to the settlement if you do not like any part of it, and the Court will consider your views.  To object, you must send a letter to the Court and the parties saying that you object to the settlement in *Thomas Carnes v. Atria Senior Living and DOES 1 through 100*, case no. 3:14-cv-02727-VC (N.D. Cal.).  Be sure to include your name, address, telephone number, your signature, and the reasons you object to the settlement.  You must also affirm under penalty of perjury that you are a Settlement Class Member (or a legal successor to a Class Member) or provide other proof of Settlement Class membership.  If you are represented by counsel, be sure to include the name, address, and telephone number of that lawyer. |
| Your objection ***must be mailed to*** these three different places no later than **[date]**: |
| |
| Clerk of the Court |
| United States District Court, |

5

Ex. 2 to Stipulated Settlement

Ex. A - Notice of Lodgment

Northern District of California
450 Golden Gate Avenue
Courtroom 4 – 17th Floor
San Francisco, CA 94102

Kathryn A. Stebner
STEBNER AND ASSOCIATES
870 Market Street, Suite 1212
San Francisco, CA  94102
Telephone:  (415) 362-9800

Darren Cottriel
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, California 92612-4408
Telephone:  (949) 553-7548

---

**WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND EXCLUDING?**

Objecting is telling the Court that you do not like something about the settlement.  You can object only if you stay in the Settlement Class.  Excluding yourself is telling the Court that you do not want to be part of the Settlement Class or the lawsuit.  You cannot request exclusion **and** object to the settlement.  If you exclude yourself, you have no basis to object because the lawsuit and settlement no longer affect you.

**THE FINAL APPROVAL HEARING**

The Court will hold a Final Approval Hearing to decide whether to approve the settlement.  You may attend, and you may ask to speak at the hearing, but you are not required to do either.

---

**WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?**

The Court will hold a Final Approval Hearing at **[time]** and **[date]** at the Courtroom of the Honorable Vince G. Chhabria:  450 Golden Gate Avenue, Courtroom 4 – 17th Floor, San Francisco, CA 94102.  **The hearing date or time may be changed by the Court without notice to the Settlement Class, and you should check the Settlement Website at [web address] or the public court records on file in this lawsuit at https://www.pacer.gov/ for any updates.**  At the Final Approval Hearing, the Court will consider whether the settlement is fair, reasonable and adequate.  If there are objections, the Court will consider them.  The Court will listen to people who have asked to speak at the hearing.  After the hearing, the Court will decide whether to approve the settlement.  The Court will also consider how much to award Class Counsel as reasonable attorneys' fees and litigation expenses.  We do not know how long this decision will take.

6

Ex. 2 to Stipulated Settlement

Ex. A - Notice of Lodgment

| **DO I HAVE TO COME TO THE HEARING?** |
|---|
| No.  Class Counsel will answer any questions the Court may have.  But you are welcome to come to the hearing at your own expense.  If you submit an objection, you do not have to attend the hearing.  As long as you filed and delivered your written objection on time, signed it and provided all of the required information, the Court will consider it.  You may also pay your own lawyer to attend the hearing, but it is not necessary. |
| **MAY I SPEAK AT THE HEARING?** |
| If you are a Settlement Class Member, you may speak at the Final Approval Hearing, subject to any limitations made by the judge presiding over the hearing.  You cannot speak at the hearing if you exclude yourself from the Settlement Class. |

**IF YOU DO NOTHING**

| **WHAT HAPPENS IF I DO NOTHING AT ALL?** |
|---|
| If you do nothing, you will be part of the Settlement Class.  You will receive a cash payment from the settlement and you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Atria about the claims and issues in this case. |

**GETTING MORE INFORMATION**

| **ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?** |
|---|
| The Stipulation of Settlement contains the complete terms of the parties' agreement.  You can get a copy at **[Settlement website]**, or by reviewing the records on file in the court clerk's office at **https://www.pacer.gov/.** <br><br> The pleadings and other documents in this lawsuit may also be examined during regular business hours at the Office of the Clerk, United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, California. <br><br> If you have additional questions, you may call the Settlement Administrator at **[insert]** |
| **DO NOT CONTACT THE COURT OR COURT CLERK'S OFFICE REGARDING THIS NOTICE.** |
| <br> [/s/ The Honorable Vince G. Chhabria] <br> DATED: _____   UNITED STATES DISTRICT JUDGE |

USW 805398346.4

7

42                                             Ex. 2 to Stipulated Settlement

Ex. A - Notice of Lodgment

Page 45

# Exhibit 3

Ex. 3 to Stipulated Settlement

Ex. A - Notice of Lodgment

1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9        **NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO**
10

11    THOMAS CARNES, by and through his          Case No. 3:14-cv-02727-VC
      Guardian ad Litem, Juliana Christine Clegg,
12    on his own behalf and on behalf of others    **[PROPOSED] ORDER PRELIMINARILY**
      similarly situated,                          **APPROVING CLASS ACTION**
13                                                 **SETTLEMENT**
14                    Plaintiff,
15    vs.
16    ATRIA SENIOR LIVING and DOES 1
17    Through 100,
18                    Defendants.
19
20
21
22
23
24
25
26
27
28

DENTONS US LLP
SAN DIEGO

Case No. 3:14-cv-02727-VC
[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS
ACTION SETTLEMENT

44                                          Ex. 3 to Stipulated Settlement

Ex. A - Notice of Lodgment

Page 47

1    Plaintiff Thomas Carnes, by and through his Guardian ad Litem and legal successor,

2  Juliana Christine Clegg, on his own behalf and on behalf of others similarly situated, in this action

3  entitled *Thomas Carnes v. Atria Senior Living and DOES 1 through 100*, case no. 3:14-cv-02727-

4  VC and Defendant Atria Senior Living, Inc. have entered into a Stipulation of Settlement

5  ("Stipulation"), filed February 10, 2016, after substantial discovery and lengthy arms-length

6  settlement discussions.

7    The Court has received and considered the Stipulation, including the accompanying

8  exhibits, and the record in this Action.

9    The Court has been advised that Thomas Carnes died on or about September 29, 2015, and

10  that the parties have stipulated to substitute Juliana Christine Clegg as the named plaintiff in the

11  Action, in her capacity as Mr. Carnes' guardian ad litem and the Successor Trustee of the Thomas

12  & Alice Carnes Family Trust, dated September 28, 2004.

13    Plaintiff has applied, pursuant to Federal Rules of Civil Procedure, Rule 23(e), for an order

14  preliminarily approving the settlement of this Action, and for its dismissal with prejudice upon the

15  terms and conditions set forth in the Stipulation.

16    The Court has reviewed the Plaintiff's application and the supporting memorandum for

17  such order, and has found good cause for same.

18    NOW, THEREFORE, IT IS HEREBY ORDERED:

19  **The Settlement Class Is Preliminarily Certified**

20    1.    If not otherwise defined herein, all capitalized terms have the same meanings as set

21  forth in the Stipulation of Settlement.

22    2.    Pursuant to Federal Rules of Civil Procedure, Rule 23(c), for purposes of

23  settlement only, the Court certifies the following Settlement Class: Plaintiff and all similarly

24  situated persons who resided at one of the California assisted living facilities owned, managed

25  and/or operated by Defendant at any time between June 12, 2012 through and including March 17,

26  2016 (the "Class Period").

27    3.    Excluded from the Settlement Class are:  (i) Defendant and its officers, directors

28  and employees; (ii) any person who files a valid and timely Request for Exclusion; and (iii) the

DENTONS US LLP
SAN DIEGO

Case No. 3:14-cv-02727-VC
[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS
ACTION SETTLEMENT
1

45                    Ex. 3 to Stipulated Settlement

Ex. A - Notice of Lodgment

Page 48

1  Judges to whom this Action and the Other Actions are assigned and any members of their

2  immediate families.

3       4.      The Settlement Class meets all requirements of Federal Rules of Civil Procedure,

4  including Rules 23(a) and (b)(3) for certification of the Settlement Class for purposes of

5  settlement of the Action only, including:  (a) numerosity; (b) commonality; (c) typicality; (d)

6  adequacy of the Class Representative and Class Counsel; (e) predominance of common questions

7  of fact and law; and (f) superiority.

8       5.      Class Counsel and the Class Representative are found to be adequate

9  representatives of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure

10  for purposes of settlement only.  The Court appoints Plaintiff Thomas Carnes, by and through his

11  Guardian ad Litem and legal successor, Juliana Christine Clegg, on his own behalf and on behalf

12  of others similarly situated, as the Class Representative for purposes of settlement only.  The

13  Court also designates the following attorneys as Class Counsel for purposes of settlement only:

14  Kathryn Stebner of Stebner & Associates, Guy Wallace of Schneider Wallace Cottrell Konecky

15  Wotkyns LLP, Robert Arns of The Arns Law Firm, Michael D. Thamer of the Law Offices of

16  Michael D. Thamer, Tim Needham of Janssen Malloy LLP and Chris Healey of Dentons US LLP.

17  Having considered the factors set forth in Rule 23(g)(1), the Court finds Class Counsel are

18  experienced and adequate counsel to represent the Settlement Class for purposes of settlement

19  only.

20  **The Stipulation Is Preliminarily Approved and Final Approval Schedule Set**

21       6.      The Court hereby preliminarily approves the Stipulation and the terms and

22  conditions of settlement set forth therein, subject to further consideration at the Final Approval

23  Hearing.

24       7.      The Court has conducted a preliminary assessment of the fairness, reasonableness,

25  and adequacy of the Stipulation, and hereby finds that the settlement falls within the range of

26  reasonableness meriting possible final approval.

27       8.      The Court therefore preliminarily approves the proposed settlement as set forth in

28  the Stipulation.

DENTONS US LLP
SAN DIEGO

Case No. 3:14-cv-02727-VC
[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS
ACTION SETTLEMENT

2

Ex. 3 to Stipulated Settlement

Ex. A - Notice of Lodgment

Page 49

9.      Pursuant to the Federal Rules of Civil Procedure, Rule 23(e) the Court will hold a final approval hearing on _____, 2016, at ___a.m./p.m., in the Courtroom of the Honorable Vince Chhabria, United States District Court for the Northern District of California, 450 Golden Gate Avenue, Courtroom 4 – 17th Floor, San Francisco, CA 94102, for the following purposes:

A.      determining whether the proposed settlement of the Action on the terms and conditions provided for in the Stipulation is fair, reasonable and adequate and should be approved by the Court;

B.      considering the application of Class Counsel for an award of attorneys' fees and litigation expenses as provided for under the Stipulation;

C.      considering the application for service awards to the Plaintiff as provided for under the Stipulation;

D.      considering whether the Court should enter the [Proposed] Final Judgment and Order Approving Settlement;

E.      considering whether the release by the Settlement Class Members of the Released Claims as set forth in the Stipulation should be provided  and binding on the Settlement Class Members; and

F.      ruling upon such other matters as the Court may deem just and appropriate.

10.      The Court may adjourn the Final Approval Hearing and later reconvene such hearing without further notice to the Settlement Class Members.

11.      Any Settlement Class Member may enter an appearance in the Action, at his or her own expense, individually or through counsel. All Settlement Class Members who do not enter an appearance will be represented by Class Counsel.

12.      The Parties may further modify the Stipulation prior to the Final Approval Hearing so long as such modifications do not materially change the terms of the settlement provided therein. The Court may approve the Stipulation with such modifications as may be agreed to by the Parties, if appropriate, without further notice to Settlement Class Members.

13.      Opening papers in support of final approval of the Stipulation, and opening papers in support of Plaintiff's and Class Counsel's application for attorneys' fees, litigation expenses

DENTONS US LLP
SAN DIEGO

Case No. 3:14-cv-02727-VC
[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS
ACTION SETTLEMENT

3

Ex. 3 to Stipulated Settlement

1  and a service award, shall be filed and served fifteen (15) days prior to the deadline for any

2  objections to the Stipulation.  Opposition papers, if any, must be filed with the Court and served

3  on the Parties' counsel at least fourteen (14) days prior to the Final Approval Hearing. Reply

4  papers, including response to oppositions or objections, if any, must be filed and served at least (7)

5  seven days prior to the Final Approval Hearing.

6  **The Court Approves the Form and Method of Class Notice**

7          14.     The Court approves, as to form and content, the proposed long form and summary

8  Class Notice, copies of which are attached collectively hereto as Exhibit 1.

9          15.     The Court finds that the distribution of Class Notice substantially in the manner and

10  form set forth in this Order and the Stipulation of Settlement meets the requirements of Federal

11  Rules of Civil Procedure, Rule 23 and due process, is the best notice practicable under the

12  circumstances, and shall constitute due and sufficient notice to all Persons entitled thereto.

13          16.     The Court approves the designation of KCC/Gilardi & Co., LLC to serve as the

14  Settlement Administrator for the settlement. The Settlement Administrator shall disseminate Class

15  Notice and supervise and carry out the notice procedure and other administrative functions, and

16  shall respond to Settlement Class Member inquiries, as set forth in the Stipulation and this Order

17  under the direction and supervision of the Court.

18          17.     The Court directs the Settlement Administrator to establish a Settlement Website,

19  making available copies of this Order, the Class Notice, the Stipulation and all exhibits thereto,

20  and such other information as may be of assistance to Settlement Class Members or required under

21  the Stipulation.

22          18.     The Settlement Administrator is ordered to substantially complete dissemination of

23  the Class Notice no later than ten (10) business days after it receives the Settlement Class Member

24  Information List.

25          19.     The costs of the Class Notice, creating and maintaining the Settlement Website,

26  and all other Notice and Payment Distribution Administration Expenses shall be paid out of the

27  Settlement Fund in accordance with the applicable provisions of the Stipulation.

28

DENTONS US LLP
SAN DIEGO

Case No. 3:14-cv-02727-VC
[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS
ACTION SETTLEMENT

4

48                                                              Ex. 3 to Stipulated Settlement

Ex. A - Notice of Lodgment

Page 51

**Procedure for Settlement Class Members to Participate In the Settlement**

20.     No later than ten (10) business days after the entry by the Court of this Preliminary Approval Order, Defendant shall furnish the Settlement Administrator with the Settlement Class Member Information List (which shall include all Settlement Class Members), in accordance with the Stipulation.  The Settlement Administrator shall mail the Notice to all Settlement Class Members at the addresses provided by Defendant, as updated by the Settlement Administrator, and shall also publish the Notice in a single publication of the USA Today (California weekday edition).

21.     Settlement Class Members who wish to receive a settlement award need take no action.   If a Settlement Class Member is deceased, the legal successor for the Class Member may obtain payment by providing the Settlement Administrator with appropriate proof of successor status and a current address.  Settlement Class Members (or legal successors) will not receive a settlement award only if the Settlement Administrator lacks a valid address for that individual, as determined by monitoring those Notice documents that were returned as undeliverable, or if the individual opts out of the settlement by the Opt Out Date.

**Procedure for Requesting Exclusion from the Class**

22.     Any Person falling within the definition of the Settlement Class may, upon his or her request, be excluded from the Settlement Class. Any such Persons (or their legal successor) must submit a request for exclusion to the Settlement Administrator via first class United States mail postmarked no later than the Opt Out Date, which shall be thirty-five (35) days from the Notice Date, as set forth in the Class Notice.  Requests for exclusion purportedly filed on behalf of groups of persons are prohibited and will be deemed to be void.

23.     Any Settlement Class Member who does not send a signed request for exclusion postmarked or delivered on or before the Opt-Out Date will be deemed to be a Settlement Class Member for all purposes and will be bound by all further orders of the Court in this Action and by the terms of the settlement, if finally approved by the Court. The written request for exclusion must request exclusion from the Settlement Class, must be signed by the potential Settlement Class Member (or his/her legal successor) and include a statement indicating that the Person

DENTONS US LLP
SAN DIEGO

Case No. 3:14-cv-02727-VC
[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS
ACTION SETTLEMENT

5

49                                    Ex. 3 to Stipulated Settlement

Ex. A - Notice of Lodgment

Page 52

1  desires to be excluded from the Settlement Class. All Persons who submit valid and timely

2  requests for exclusion in the manner set forth in the Stipulation shall have no rights under the

3  Stipulation and shall not be bound by the Stipulation or the Final Judgment and Order.

4      24.      A list reflecting all requests for exclusions shall be filed with the Court by

5  Defendant at or before the Final Approval Hearing.

6  **Procedure for Objecting to the Settlement**

7      25.      Any Settlement Class Member (or their legal successor) who desires to object to

8  the proposed settlement, including the requested attorneys' fees and expenses or service awards to

9  the Plaintiff must timely file with the Clerk of this Court a notice of the objection(s), together with

10  all papers that the Settlement Class Member desires to submit to the Court no later than the

11  Objection Date, with shall be thirty-five (35) days after the Notice Date as set forth in the Class

12  Notice.  The objection must also be served on Class Counsel and Defendant's counsel no later

13  than the Objection Date.

14      26.      The written objection must include:  (a) a heading which refers to the Action; (b)

15  the objector's name, address, telephone number and, if represented by counsel, of his/her counsel;

16  (c) a statement that the objector is a Settlement Class Member or that the objector is the legal

17  successor to a Settlement Class Member; (d) a statement whether the objector intends to appear at

18  the Final Approval Hearing, either in person or through counsel; (e) a clear statement of the

19  objection to the Settlement and grounds supporting the objection; (f) copies of any papers, briefs,

20  or other documents upon which the objection is based; and (g) the objector's signature.

21      27.      Any Settlement Class Member (or their legal successor) may appear at the Final

22  Approval Hearing, either in person or through counsel hired at the Settlement Class Member's

23  expense, to object to any aspect of the fairness, reasonableness, or adequacy of the settlement and

24  the Stipulation, including Class Counsel's request for award of attorneys' fees and litigation costs.

25

26

27

28

DENTONS US LLP
SAN DIEGO

Case No. 3:14-cv-02727-VC
[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS
ACTION SETTLEMENT

6

50

Ex. 3 to Stipulated Settlement

Ex. A - Notice of Lodgment

Page 53

1         28.      Counsel for the Parties are hereby authorized to utilize all reasonable procedures in

2    connection with the administration of the settlement which are not materially inconsistent with

3    either this Order or the terms of the Stipulation.

4         IT IS SO ORDERED.

5

6    DATED:  _____

7

8                                        _____

                                        Honorable Vince G. Chhabria

9                                        United States District

USW 805398353.4

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
SAN DIEGO

Case No. 3:14-cv-02727-VC
[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS
ACTION SETTLEMENT

7

51                        Ex. 3 to Stipulated Settlement

Ex. A - Notice of Lodgment

Page 54

# Exhibit 1

8                           Ex. 1 to Proposed Order
52                          Ex. 3 to Stipulated Settlement

Ex. A - Notice of Lodgment

Class Notice (Summary Form)

## LEGAL NOTICE

IF YOU RESIDED AT AN ATRIA ASSISTED LIVING FACILITY IN CALIFORNIA AT ANY TIME FROM JUNE 12, 2010 THROUGH MARCH 17, 2016, YOU MAY BE ENTITLED TO MONEY FROM A CLASS ACTION SETTLEMENT.  READ ON FOR IMPORTANT INFORMATION ABOUT YOUR RIGHTS

Thomas Carnes v. Atria Senior Living, Inc., Case No. 3:14-cv-02727-VC
United States District Court, Northern District of California

### WHAT IS THIS LAWSUIT ABOUT?

Plaintiff Thomas Carnes, by and through his representative and legal successor, Juliana Christine Clegg, ("Plaintiff")  brings this proposed class action on behalf of residents of assisted living communities owned,  managed  or operated by Atria Senior Living, Inc. ("Atria") in California. Plaintiff alleges that Atria made purportedly misleading statements about how its resident evaluations would be used to set staffing at Atria's facilities in California, which Plaintiff alleges resulted in monetary damages to residents.   Atria denies all allegations and claims, but has agreed to settle to avoid burdensome and costly litigation and disruption to its business operations. The settlement is not an admission of wrongdoing, and this Notice does not mean the Court has expressed any opinion as to the merits of any claim or defense.

In a class action, one or more individuals (called plaintiffs) assert claims on behalf of others (called Class Members). Here, the Court has appointed Stebner & Associates and other counsel (Class Counsel) to represent all Settlement Class Members. If you want to be represented by your own lawyer, you may hire one at your expense.

### WHAT ARE THE TERMS OF THE SETTLEMENT?

Under the proposed settlement, Atria has agreed to provide a total settlement fund of $6.4 million (the "Fund") in full settlement of the claims of the Settlement Class.  Subject to Court approval, it is expected that after payment of class notice and administration, Class Counsel's attorneys' fees and litigation expenses, and service award to Plaintiff, the cash payment for each Settlement Class Member will be approximately $300. The attorneys' fees shall not exceed one-third of the settlement fund.  The settlement amount, any attorneys' fee award and the net funds available for payment to class members are all contingent on final approval by the Court.  In addition to monetary payments, Atria has agreed to an injunction that requires, among other things, that Atria include language in its residency agreements and other documents stating that resident assessments and other factors are considered in setting, or monitoring or modifying staffing levels at Atria's facilities.

Ex. 1 to Proposed Order

Ex. 3 to Stipulated Settlement

Ex. A - Notice of Lodgment

## WHO IS A SETTLEMENT CLASS MEMBER?

You are a member of the Settlement Class if you resided at any assisted living facility owned, managed and/or operated by Atria located in California at any time between June 12, 2010 through and including March 17, 2016. To be eligible for benefits under the settlement, you must be a Settlement Class Member, or a legal successor to a deceased Class Member.

## WHAT ARE MY RIGHTS AND OPTIONS?

If you are a member of the settlement class, you must decide whether to:

**Include Yourself In Settlement Class and Receive a Settlement Payment**.  You may include yourself in the settlement class and seek money from the class settlement, but give up your right to sue in a different case about the same subject matter.  If you choose this option, you do not need to do anything, as you will automatically be included in the settlement class;

**Include Yourself in Settlement Class, But File An Objection.**  Alternatively, you can remain in the settlement class, seek money from the class settlement and give up your right to sue in a different case about the same subject matter, but object to the terms of the settlement. If you choose this option, you do not need to do anything in order to be included in the settlement class, but to object to the terms of the settlement, you or your own counsel will need to prepare and submit a written objection.  Please visit [settlement website] for instructions on how to file an objection.  Your written objection must be submitted not later than **[date].**

**Exclude Yourself**.  Your third option is to exclude yourself from the settlement class and give up your right to seek money from the class settlement, but keep your right to sue in a different case about the same subject matter.  If you choose this option, you will need to prepare and submit a written request to be excluded from the settlement class. Please visit [website] for instructions on how to submit a request for exclusion. Your written exclusion request must be submitted not later than **[date].**

## FAIRNESS HEARING

The Court will hold a Final Approval Hearing on **[date]** to decide whether to approve the settlement. This fairness hearing will be held in Courtroom 4, 450 Golden Gate Avenue, 17th Floor, San Francisco, CA 94102.  The hearing date, time and place may be changed without notice to the Settlement Class, so please check the [settlement website] for updates.

## HOW CAN I GET MORE INFORMATION?

This notice is a summary only.  More information about the lawsuit and settlement can be found at [settlement website], or by reviewing court records at https://www.pacer.gov/.  Pleadings and other court documents in the lawsuit may also be reviewed during regular business hours at the Office of the Clerk, United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, California.

PLEASE DO NOT CONTACT THE COURT FOR INFORMATION ABOUT THE LAWSUIT

USW 805399868.3

11                    Ex. 1 to Proposed Order

55                    Ex. 3 to Stipulated Settlement

Ex. A - Notice of Lodgment

Page 58

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**

*A federal court has authorized this Notice.  It is not a solicitation from a lawyer.*

Did you reside at one of the California assisted living facilities owned, managed and/or operated by Atria Senior Living ("Atria") at any time between June 12, 2010 through and including March 17, 2016?  If so, please read this notice very carefully and in its entirety.  Your rights are probably affected by a class settlement of a lawsuit because you may be a member of the settlement class.  If you are a member of the settlement class, you must decide whether to:

    1)   include yourself in the settlement class and seek money from the class settlement, but give up your right to sue in a different case about the same subject matter.  If you choose this option, you do not need to do anything, as you will automatically be included in the settlement class;

    2)   include yourself in the settlement class and seek money from the class settlement, give up your right to sue in a different case about the same subject matter, but object to the terms of the settlement. If you choose this option, you do not need to do anything in order to be included in the settlement class, as you will automatically be included in the settlement class.  However, if you want to object to the terms of the settlement, you or your own counsel will need to prepare and submit a written objection; or

    3)   exclude yourself from the settlement class and give up your right to seek money from the class settlement, but keep your right to sue in a different case about the same subject matter.  If you choose this option, you will need to prepare and submit a written request to be excluded from the settlement class.

The lawsuit is entitled *Thomas Carnes, by and through his Guardian ad litem, Juliana Christine Clegg, on his own behalf and on behalf of others similarly situated v. Atria Senior Living*, Case Number 3:14-cv-02727-VC pending in the United States District Court for the Northern District of California (the "Lawsuit").  The Lawsuit was filed by plaintiff Thomas Carnes, by and through his guardian ad litem and legal successor, Juliana Christine Clegg[A1] ("Plaintiff" or "Class Representative"), on behalf of himself and all of the other Settlement Class Members (as defined below).

The parties have reached a proposed settlement on the terms and conditions set forth in the Stipulation of Settlement entered into by and between Plaintiff and Atria. The Court in charge of the Lawsuit still has to decide whether to approve the settlement.  A settlement fund will be available for distribution to the Settlement Class only if the settlement is approved by the Court and the approval is upheld following any appeals.

1

The following provides a detailed description about the proposed class settlement and the rights you have if you are a Settlement Class Member, the benefits available under the settlement and how you can get the benefits, including the relevant deadlines and requirements.

**BASIC INFORMATION**

| **WHAT IS THIS LAWSUIT ABOUT?** |
|---|
| Plaintiff brings this proposed class action on behalf of residents of California assisted living communities owned, managed or operated by Atria, alleging that Atria made purportedly misleading statements about how resident evaluations would be used to determine, set and monitor staffing levels at Atria's assisted living facilities in California,  which Plaintiff alleges resulted in monetary damages to residents.   Atria denies all allegations and claims in the Lawsuit, and denies that it committed any wrongdoing.  Atria is entering into the settlement to avoid burdensome and costly litigation and disruption to its business operations.  This settlement is not an admission of any wrongdoing by Atria.  The Parties have agreed to settle the Lawsuit on the terms and conditions explained in this notice. |

| **WHY IS THIS A CLASS ACTION?** |
|---|
| In a class action, one or more people, called class representatives (in this case, Juliana Christine Clegg), sue on behalf of people who have similar claims.  All of these people are called a class or class members.  One court resolves the issues for all class members, except for those who choose to exclude themselves from the class.  United States District Court Judge Vince G. Chhabria is in charge of this proposed class action. |

| **WHY IS THERE A SETTLEMENT?** |
|---|
| The Court did not decide in favor of Plaintiff or Atria.  Instead, both sides agreed to a settlement.  That way, they avoid the cost of a trial and settlement benefits go to the Settlement Class Members.  The Class Representative and the attorneys think the settlement is in the best interest of the Settlement Class Members taking in to account the benefits of the proposed settlement, the risks of continued litigation and the delay in obtaining relief for the Settlement Class if the Lawsuit continues. |

| **WHO IS IN THE SETTLEMENT CLASS?** |
|---|
| You are a member of the Settlement Class if you resided at any assisted living facility owned, managed and/or operated by Atria located in California at any time between June 12, 2010 through and including March 17, 2016. To be eligible for benefits under the settlement, you must be a Settlement Class Member, or a legal successor to a deceased Class Member. |

**THE SETTLEMENT BENEFITS**

| **CASH PAYMENTS AND INJUNCTIVE RELIEF** |
|---|

2

Ex. 1 to Proposed Order
Ex. 3 to Stipulated Settlement

Under the terms of the settlement, Atria has agreed to provide a total settlement fund of $6.4 million (the "Fund") in full settlement of the claims of the Settlement Class.  The Fund will be used to pay for class notice and payment distribution administration expenses (estimated at $120,000), as well as Class Counsel's attorneys' fees not to exceed one-third of the Fund, litigation expenses of approximately $135,000, and a service award of $3,500 to the Class Representative.  The remaining amount (the "Net Settlement Fund") will be used to make cash payments to Settlement Class Members (or if a Class Member is deceased, to their legal successor).  It is estimated that the cash payment for each Settlement Class Member will be approximately $300. The settlement distribution process will be administered by an independent settlement administrator (the "Settlement Administrator") approved by the Court. **The settlement amount and Net Settlement Fund are contingent on final approval by the Court.**

In addition, as part of the settlement and a Court-approved injunction, Atria has agreed, among other terms,to include language in Atria's residency agreements and other documents stating that resident assessments and other factors are considered in setting,  monitoring or modifying staffing levels at Atria's facilities. The injunction will begin on the Effective Date (defined in the Agreement) and remain in place for three years.

| AMOUNT OF CASH PAYMENT |
|---|

The actual cash payment amounts to Class Members will be determined by the Settlement Administrator based on the formula described in the settlement agreement, and may be increased if funds are available.   Subject to Court approval, the Administrator will reserve $25,000 from the Fund to pay late distribution requests.  Any amounts left in the Fund and not paid from the reserve or from uncashed checks, if any, will be paid to the Institute on Aging, or other non-profit organizations approved by the Court.

| How can I get a cash payment? |
|---|

If you are a Class Member and the address above is correct, **you do not need to take any action.**  Your cash payment will be mailed to you if the settlement is approved by the Court and becomes Effective.   If your address has changed, you must provide your new address to the Settlement Administrator.  If a Class Member is deceased, his or her legal successor must submit a payment request and supporting documentation to the Settlement Administrator.  To contact the Settlement Administrator, visit [insert website] or call 1-800- xxx-xxxx.

| When will I received my settlement award? |
|---|

The Court will hold a final approval hearing on **[date]** at **[time]**, to decide whether to approve the settlement. **The date or time of the final approval hearing may be changed by the Court without notice to the Settlement Class, and you should check the Settlement Website at [insert web address] or the public court records on file in this lawsuit for any updates.**  If the Court approves the settlement, there may be appeals, which could extend the process by 18 months or more.

3

14                                                    Ex. 1 to Proposed Order
58                                                    Ex. 3 to Stipulated Settlement

| IN RETURN FOR THESE SETTLEMENT BENEFITS, WHAT AM I GIVING UP? |
|---|
| If the Court approves the proposed settlement and you do not request to be excluded from the Settlement Class, you must release (meaning, give up) all legal claims concerning Atria's alleged misrepresentations and nondisclosures with respect to whether or how resident assessments are used to set, determine or monitor staffing levels or care amounts provided in Atria's facilities.  **This includes any other lawsuit or proceeding already in progress.** The Release does not include claims solely for personal injury, emotional distress or bodily harm.  The judgment and orders entered in this case, whether favorable or unfavorable, will bind all Settlement Class Members who do not request to be excluded.  The full terms of the Release are contained in the Stipulation of Settlement that is available on the Settlement Website at **[web address]**, or at the public court records on file in the Lawsuit. |

## THE LAWYERS REPRESENTING YOU

| DO I HAVE A LAWYER IN THIS CASE? |
|---|
| All Settlement Class Members are represented by Plaintiffs' Counsel, who have been preliminarily approved by the Court to serve as Class Counsel representing the Settlement Class for purposes of the settlement.  If you want to be represented by your own lawyer, you may hire one at your own expense and enter an appearance through your own counsel. |

| HOW WILL THE LAWYERS BE PAID? |
|---|
| Class Counsel will ask the Court to award attorneys' fees not to exceed one-third of the Fund (approximately $2.1 million), and litigation expenses not to exceed $135,000.  Atria has agreed not to oppose this request.  Any award of attorneys' fees and litigation expenses must be approved by the Court as fair, reasonable and consistent with prevailing marketplace standards. The amount of attorneys' fees and costs awarded by the Court will be paid from the Fund. |

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want to keep the right to sue or continue to sue Atria, on your own, about the legal issue in this case, then you must take steps to be excluded from the settlement.  This is called excluding your self – or is sometimes referred to as opting out of the Settlement Class.

| HOW DO I GET OUT OF THE SETTLEMENT? |
|---|
| If you do not wish to be included in the Settlement Class and receive a cash payment, you must send a letter stating that you want to be excluded from the Settlement Class in *Thomas Carnes v. Atria Senior Living and DOES 1 through 100*, case no. 3:14-cv-02727-VC (N.D. Cal.).  Be sure to include your name, address, telephone number, signature, and a statement that you are covered by this settlement.  You must mail your letter requesting exclusion postmarked no |

4

later than **[date]** to: [insert Administrator address]

You cannot exclude yourself via telephone, fax, or email.

| **WHAT HAPPENS IF I EXCLUDE MYSELF FROM THE SETTLEMENT?** |
|---|
| If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement.  However, you will not be legally bound by anything that happens in this lawsuit and you will keep your right to separately pursue claims against Atria relating to the subject matter of this lawsuit. |
| **IF I DON'T EXCLUDE MYSELF, CAN I SUE DEFENDANTS FOR THE SAME THING LATER?** |
| No.  Unless you exclude yourself, you give up the right to sue Atria for the claims that this settlement resolves.  You must exclude yourself from *this* case and the Settlement Class to pursue your own lawsuit.  Remember, your letter requesting exclusion must be postmarked on or before **[date]**. |
| **IF I EXCLUDE MYSELF, CAN I GET MONEY FROM THIS SETTLEMENT?** |
| No.  If you exclude yourself, you will not receive any money from the settlement.  But, you will not lose any right you may have to sue (or continue to sue) in a different lawsuit against Atria about the legal issues or claims in this case.  If you choose to initiate a new lawsuit, your claim will be subject to time limitations, so you must act promptly. |

**OBJECTING TO THE SETTLEMENT**

You can tell the court that you do not like the settlement or some part of it.

| **HOW DO I TELL THE COURT THAT I DO NOT LIKE THE SETTLEMENT?** |
|---|
| If you are a Settlement Class Member, you can object to the settlement if you do not like any part of it, and the Court will consider your views.  To object, you must send a letter to the Court and the parties saying that you object to the settlement in *Thomas Carnes v. Atria Senior Living and DOES 1 through 100*, case no. 3:14-cv-02727-VC (N.D. Cal.).  Be sure to include your name, address, telephone number, your signature, and the reasons you object to the settlement.  You must also affirm under penalty of perjury that you are a Settlement Class Member (or a legal successor to a Class Member) or provide other proof of Settlement Class membership.  If you are represented by counsel, be sure to include the name, address, and telephone number of that lawyer. |
| Your objection **must be mailed to** these three different places no later than **[date]**: |
| Clerk of the Court United States District Court, |

5

16                                              Ex. 1 to Proposed Order
60                                              Ex. 3 to Stipulated Settlement

Ex. A - Notice of Lodgment

Page 63

Northern District of California
450 Golden Gate Avenue
Courtroom 4 – 17th Floor
San Francisco, CA 94102

Kathryn A. Stebner
STEBNER AND ASSOCIATES
870 Market Street, Suite 1212
San Francisco, CA  94102
Telephone:  (415) 362-9800

Darren Cottriel
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, California 92612-4408
Telephone:  (949) 553-7548

**WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND EXCLUDING?**

Objecting is telling the Court that you do not like something about the settlement.  You can object only if you stay in the Settlement Class.  Excluding yourself is telling the Court that you do not want to be part of the Settlement Class or the lawsuit.  You cannot request exclusion **and** object to the settlement.  If you exclude yourself, you have no basis to object because the lawsuit and settlement no longer affect you.

**THE FINAL APPROVAL HEARING**

The Court will hold a Final Approval Hearing to decide whether to approve the settlement.  You may attend, and you may ask to speak at the hearing, but you are not required to do either.

**WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?**

The Court will hold a Final Approval Hearing at **[time]** and **[date]** at the Courtroom of the Honorable Vince G. Chhabria:  450 Golden Gate Avenue, Courtroom 4 – 17th Floor, San Francisco, CA 94102.  **The hearing date or time may be changed by the Court without notice to the Settlement Class, and you should check the Settlement Website at [web address] or the public court records on file in this lawsuit at https://www.pacer.gov/ for any updates.**  At the Final Approval Hearing, the Court will consider whether the settlement is fair, reasonable and adequate.  If there are objections, the Court will consider them.  The Court will listen to people who have asked to speak at the hearing.  After the hearing, the Court will decide whether to approve the settlement.  The Court will also consider how much to award Class Counsel as reasonable attorneys' fees and litigation expenses.  We do not know how long this decision will take.

6

17                                                      Ex. 1 to Proposed Order
61                                                      Ex. 3 to Stipulated Settlement

Ex. A - Notice of Lodgment

Page 64

| **DO I HAVE TO COME TO THE HEARING?** |
|---|
| No.  Class Counsel will answer any questions the Court may have.  But you are welcome to come to the hearing at your own expense.  If you submit an objection, you do not have to attend the hearing.  As long as you filed and delivered your written objection on time, signed it and provided all of the required information, the Court will consider it.  You may also pay your own lawyer to attend the hearing, but it is not necessary. |
| **MAY I SPEAK AT THE HEARING?** |
| If you are a Settlement Class Member, you may speak at the Final Approval Hearing, subject to any limitations made by the judge presiding over the hearing.  You cannot speak at the hearing if you exclude yourself from the Settlement Class. |

## IF YOU DO NOTHING

| **WHAT HAPPENS IF I DO NOTHING AT ALL?** |
|---|
| If you do nothing, you will be part of the Settlement Class.  You will receive a cash payment from the settlement and you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Atria about the claims and issues in this case. |

## GETTING MORE INFORMATION

| **ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?** |
|---|
| The Stipulation of Settlement contains the complete terms of the parties' agreement.  You can get a copy at **[Settlement website]**, or by reviewing the records on file in the court clerk's office at **https://www.pacer.gov/.**<br><br>The pleadings and other documents in this lawsuit may also be examined during regular business hours at the Office of the Clerk, United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, California.<br><br>If you have additional questions, you may call the Settlement Administrator at **[insert]** |
| |
| **DO NOT CONTACT THE COURT OR COURT CLERK'S OFFICE<br>REGARDING THIS NOTICE.** |
| |
|  <br> <br>  [/s/ The Honorable Vince G. Chhabria]<br>DATED: _____   UNITED STATES DISTRICT JUDGE |

USW 805398346.4

7

18          Ex. 1 to Proposed Order

62          Ex. 3 to Stipulated Settlement

Ex. A - Notice of Lodgment

# Exhibit 4

Ex. 4 to Stipulated Settlement

Ex. A - Notice of Lodgment

1
2
3
4
5
6
7
8        **UNITED STATES DISTRICT COURT**
9     **NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO**
10

11  THOMAS CARNES, by and through his          Case No. 3:14-cv-02727-VC
    Guardian ad Litem, Juliana Christine Clegg,
12  on his own behalf and on behalf of others   **[PROPOSED] FINAL JUDGMENT AND**
    similarly situated,                          **ORDER APPROVING CLASS ACTION**
13                                               **SETTLEMENT**
14                    Plaintiff,

15  vs.

16  ATRIA SENIOR LIVING and DOES 1
17  Through 100,

18                    Defendants.

19
20
21
22
23
24
25
26
27
28

DENTONS US LLP
SAN DIEGO

Case No. 3:14-cv-02727-VC
[PROPOSED] FINAL JUDGMENT AND ORDER APPROVING
CLASS ACTION SETTLEMENT

64                                          Ex. 4 to Stipulated Settlement

Ex. A - Notice of Lodgment

Page 67

By order dated _____, 2016, Dkt No. _____, this Court granted Plaintiff's motion for class action settlement approval and separate application for attorneys' fees, reimbursement of litigation costs and service awards to the named Plaintiff (herein "Final Approval Order").  In accordance with the Final Approval Order and the parties' Stipulation of Settlement filed _____, 2016, Dkt. No. _____, (herein "Stipulation"), and good cause appearing,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.      This Final Judgment and Order ("Judgment") incorporates by reference the definitions in the Stipulation, and all terms used herein shall have the same meanings as set forth in the Stipulation unless set forth differently herein. The terms of the Stipulation are fully incorporated in this judgment as if set forth fully here.

2.      The Court has jurisdiction over the subject matter of this action and all Parties to the action, including all Settlement Class Members.

3.      As set forth in the Final Approval Order, which is incorporated herein, the Court approves the settlement as set forth in the Stipulation, and finds that the settlement is in all respects fair, reasonable, adequate and just to the Settlement Class Members.

4.      Pursuant to Federal Rules of Civil Procedure, Rule 23(c), for purposes of settlement only, the Court certifies the following Settlement Class:  Plaintiff and all similarly situated persons who resided at one of the California assisted living facilities owned, managed and/or operated by Defendant at any time between June 12, 2010 through and including March 17, 2016 (the "Class Period").   Excluded from the Settlement Class are:  (i) Defendant and its officers, directors and employees; (ii) any person who files a valid and timely Request for Exclusion, as described in more detail below; and (iii) the Judges to whom this Action and the Other Actions are assigned and any members of their immediate families.

5.      Excluded from the Settlement Class are all persons who submitted valid requests for exclusion who are listed on **Exhibit 1** attached hereto. The persons listed in **Exhibit 1** are not bound by this Judgment or the terms of the Stipulation.

6.      Pursuant to Federal Rules of Civil Procedure, Rule 23(c)(3), for purposes of

DENTONS US LLP
SAN DIEGO

Case No. 3:14-cv-02727-VC
[PROPOSED] FINAL JUDGMENT AND ORDER APPROVING
CLASS ACTION SETTLEMENT

1

65

Ex. 4 to Stipulated Settlement

Ex. A - Notice of Lodgment

Page 68

1  settlement only, all such Persons who satisfy the Settlement Class definition above, except those

2  Persons who timely and validly excluded themselves from the Settlement Class, are Settlement

3  Class Members bound by this Judgment and the terms of the Stipulation.

4        7.   Pursuant to Federal Rules of Civil Procedure, Rule 23(a), for purposes of

5  settlement only, the Court finds that Plaintiff Thomas Carnes, by and through his Guardian Ad

6  Litem and legal successor, Juliana Christine Clegg, on his own behalf and on behalf of others

7  similarly situated, is a member of the Settlement Class, has claims typical of the Settlement Class

8  claims, and will fairly and adequately protect the interests of the Settlement Class throughout the

9  settlement approval proceedings in the Action.  Accordingly, Thomas Carnes, by and through his

10  Guardian Ad Litem and legal successor, Juliana Christine Clegg, on his own behalf and on behalf

11  of others similarly situated, is properly appointed as the Class Representative for purposes of

12  settlement only.

13        8.   The Settlement Class meets all requirements of Federal Rules of Civil Procedure,

14  including Rules 23(a) and (b)(3) for certification of the Settlement Class for purposes of

15  settlement only, including:  (a) numerosity; (b) commonality; (c) typicality; (d) adequacy of the

16  Class Representative and Class Counsel; (e) predominance of common questions of fact and law;

17  and (f) superiority.

18        9.   Having considered the factors set forth in Federal Rules of Civil Procedure, Rule

19  23(g)(1), the Court finds that Class Counsel are properly appointed to represent the Settlement

20  Class Members for purposes of settlement only and they have fairly and adequately represented

21  the Settlement Class for purposes of entering into and implementing the settlement.

22       10.   The Court has again reviewed the notice and accompanying documents that were

23  sent or made available to the Settlement Class Members and finds that the "best practicable"

24  notice was given to the Settlement Class and that the notice was "reasonably calculated" to (a)

25  describe the Action and the Plaintiff's and each Settlement Class Member's rights in it, and (b)

26  apprise Settlement Class Members and interested parties of the pendency of the Action and of

27  their right to be excluded from the settlement and the Settlement Class or to have their objections

28  to the settlement heard.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985).  The

DENTONS US LLP
SAN DIEGO

Case No. 3:14-cv-02727-VC
[PROPOSED] FINAL JUDGMENT AND ORDER APPROVING
CLASS ACTION SETTLEMENT

2

66

Ex. 4 to Stipulated Settlement

Ex. A - Notice of Lodgment

Page 69

1    Court further finds that Settlement Class Members were given a reasonable opportunity to opt out

2    of the Action and that they were adequately represented by Plaintiff and Class Counsel. *See id*

3    The Court thus reaffirms its findings that the notice given to the Settlement Class satisfies the

4    requirements of due process and holds that it has personal jurisdiction over all Settlement Class

5    Members.

6          11.    The Stipulation and this Judgment are not admissions of liability, fault or

7    wrongdoing by Defendant or the Released Parties, or a finding of the validity of any claims in the

8    Action or of any wrongdoing or violation of law by Defendant or the Released Parties.  Neither

9    this Judgment, nor any of its terms or provisions, nor any of the negotiations or proceedings

10   connected with it, shall be offered as evidence or received in evidence in any pending or future

11   civil, criminal, or administrative action or proceeding to establish any liability of, or admission by

12   Defendant, the Released Parties, or any of them.  Notwithstanding the foregoing, nothing in this

13   Judgment shall be interpreted to prohibit the use of this Judgment in a proceeding to consummate

14   or enforce the Stipulation, the Final Approval Order, or this Judgment, or to defend against the

15   assertion of Released Claims in any other proceeding, or as otherwise required by law.

16         12.    Defendant is hereby ordered to comply with the terms of the Stipulation of

17   Settlement.

18         13.    Upon the Effective Date, and subject to fulfillment of all of the terms of the

19   Stipulation, each and every Releasing Party shall be permanently barred and enjoined from

20   initiating, asserting and/or prosecuting any Released Claim against any Released Party in any

21   court or any forum.

22         14.    The Plaintiff and all Settlement Class Members shall, as of the Effective Date,

23   conclusively be deemed to have acknowledged that the Released Claims may include claims,

24   rights, demands, causes of action, liabilities, suits, damages, losses or injury that are not known or

25   suspected to exist as of the Effective Date.  The Plaintiff and all Settlement Class Members

26   nonetheless release all such Released Claims against the Released Parties.  Further, as of the

27   Effective Date, the Plaintiff and all Settlement Class Members shall be deemed to have waived

28

DENTONS US LLP
SAN DIEGO

Case No. 3:14-cv-02727-VC
[PROPOSED] FINAL JUDGMENT AND ORDER APPROVING
CLASS ACTION SETTLEMENT

3

Ex. 4 to Stipulated Settlement

Ex. A - Notice of Lodgment

Page 70

any and all protections, rights and benefits of California Civil Code section 1542 and any comparable statutory or common law provision of any other jurisdiction.

15. Upon the Effective Date, and subject to fulfillment of all of the terms of the Stipulation, the Court hereby dismisses with prejudice the Action, and all Released Claims against each and all Released Parties and without costs to any of the Parties as against the others. Notwithstanding the foregoing, this Order does not dismiss any claims that have been or may be asserted in the future by any persons or entities who have validly and timely requested exclusion from the Settlement Class.

16. Without affecting the finality of the Judgment, the Court reserves jurisdiction over the implementation, administration and enforcement of this Judgment, the Final Approval Order and the Stipulation, and all matters ancillary thereto.

17. The Parties are hereby authorized without needing further approval from the Court, to agree to and adopt such modifications and expansions of the Stipulation, including without limitation, the forms to be used in the process of distributing settlement payments, which are consistent with this Judgment and do not limit the rights of Settlement Class Members under the Stipulation.

18. For the reasons set forth in the Final Approval Order, the objections to the Stipulation and approval of this settlement are expressly overruled.

19. All other relief not expressly granted to the Settlement Class Members is denied.

20. Within thirty (30) days after all Settlement Awards have been paid to all Settlement Class Members, Plaintiff shall file a compliance report with the Court. The report shall include a declaration from the Settlement Administrator specifying the amounts remaining in the Reserve Fund, if any. Assuming any funds remain, Plaintiff shall also file a request to confirm distribution of any such funds to the identified *cy pres* recipient, the Institute on Aging.

IT IS SO ORDERED, ADJUDGED AND DECREED.

DATED: _____

_____
Honorable Vince G. Chhabria
United States District Judge

USW 805398356.3

DENTONS US LLP
SAN DIEGO

Case No. 3:14-cv-02727-VC
[PROPOSED] FINAL JUDGMENT AND ORDER APPROVING
CLASS ACTION SETTLEMENT

4

Ex. 4 to Stipulated Settlement

Ex. A - Notice of Lodgment

Page 71

# Exhibit B

| | |
|---|---|
| 1 | Kathryn A. Stebner, State Bar No. 121088 |
| | George Kawamoto, State Bar No. 280358 |
| 2 | **STEBNER AND ASSOCIATES** |
| | 870 Market Street, Suite 1212 |
| 3 | San Francisco, CA  94102 |
| | Tel:  (415) 362-9800 |
| 4 | Fax: (415) 362-9801 |

1  Kathryn A. Stebner, State Bar No. 121088
   George Kawamoto, State Bar No. 280358
2  **STEBNER AND ASSOCIATES**
   870 Market Street, Suite 1212
3  San Francisco, CA  94102
   Tel:  (415) 362-9800
4  Fax: (415) 362-9801

5  Michael D. Thamer, State Bar No. 101440
   **LAW OFFICES OF MICHAEL D. THAMER**
6  Old Callahan School House
   12444 South Highway 3
7  Post Office Box 1568
   Callahan, California 96014-1568
8  Tel: (530) 467-5307
   Fax:  (530) 467-5437
9
   Robert S. Arns, State Bar No. 65071
10 **THE ARNS LAW FIRM**
   515 Folsom Street, 3rd Floor
11 San Francisco, CA 94105
   Tel: (415) 495-7800
12 Fax: (415) 495-7888

13

Guy B. Wallace, State Bar No. 176151
Mark T. Johnson, State Bar No. 76904
Jennifer A. Uhrowczik, State Bar No. 302212
Sarah Colby, State Bar No. 194475
**SCHNEIDER WALLACE**
**COTTRELL KONECKY**
**WOTKYNS, LLP**
2000 Powell Street, Suite 1400
Emeryville, CA  94608
Tel: (415) 421-7100
Fax: (415) 421-7105

W. Timothy Needham, State Bar No. 96542
**JANSSEN MALLOY LLP**
730 Fifth Street
Eureka, CA  95501
Tel: (707) 445-2071
Fax: (707) 445-8305

Christopher J. Healey, State Bar No. 105798
**DENTONS US LLP**
600 West Broadway, Suite 2600
San Diego, CA 92101-3372
Tel: (619) 236-1414
Fax: (619) 645-5328

14  Attorneys for Plaintiff and the Proposed Class

15

16  **UNITED STATES DISTRICT COURT**

17  **NORTHERN DISTRICT OF CALIFORNIA**

18

| | | |
|---|---|---|
| 19 | THOMAS CARNES, by and through his guardian ad litem, JULIANA CHRISTINE CLEGG, on behalf of himself and all others similarly situated, | Case No.: 3:14-cv-02727-VC |
| 20 | | **CLASS ACTION** |
| 21 | Plaintiff, | **DECLARATION OF CHRISTOPHER J. HEALEY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS** |
| 22 | vs. | |
| 23 | ATRIA SENIOR LIVING, INC. and DOES 1 through 100, | |
| 24 | Defendants. | Date:       June 30, 2016 |
| 25 | | Time:      10 a.m. |
| 26 | | Place:     Courtroom 4 |
| | | Judge:    Hon. Vince Chhabria |

27

28

Case No. 3:14-cv-02727-VC
HEALEY DECLARATION ISO FINAL
SETTLEMENT APPROVAL

I, Christopher J. Healey, hereby declare,

1.      I am a partner at the law firm of Dentons US LLP, one of the counsel of record for Plaintiff in the above captioned matter (the "Lawsuit").  Unless otherwise indicated, I have personal knowledge of the facts set forth herein.  If called upon to testify, I would do so competently.

2.      This declaration is submitted in support of Plaintiff's motion for final settlement approval and separate motion for attorneys' fees, litigation costs and service awards to the Named Plaintiff.

**Plaintiff's Counsel Experience and Background**

3.      Along with other Plaintiff's Counsel, I have substantial experience in class action litigation and, in particular, class action cases involving nurse staffing in nursing homes.

4.      I was admitted to the State Bar of California in 1982.  From 1982 through 1984, I served as a law clerk to the Honorable William B. Enright, United States District Court Judge for the Southern District of California (now retired).  I have tried more than ten cases to verdict before a jury or judge. My primary area of expertise is class action litigation.

5.      I have an "AV" rating from Martindale-Hubbell.  Since 2010, I have been listed in The Best Lawyers in America® publication in the areas of Mass Torts and Commercial Litigation. Since 2008, I have been selected as a San Diego California "Super Lawyer" (Class Actions).  In 2015, I was listed as a Southern California "Super Lawyer" (Class Actions).  In 2011, I was included in the the "Top 100 Attorneys" for California by the Los Angeles Daily Journal. I am a former Board Member on the Association of Business Trial Lawyers (San Diego Chapter).  I have written and lectured on litigation and class action issues.

6.      For most of my 30-plus years of law practice, I have primarily defended clients sued in consumer and business class actions.  In approximately 2006, however, I joined with co-counsel, Michael Thamer, Tim Needham and other attorneys to prosecute a class action on behalf of nursing home residents filed against Skilled Healthcare to address understaffing and related issues in 22 facilities owned or operated by Skilled throughout California.  We obtained class certification and, after extensive trial court proceedings, defeated Skilled's motion to decertify the

1   class.  After a trial that lasted approximately six months, the jury awarded over $670 million to the

2   plaintiff class.  The case settled before the punitive damages phase for $50 million and injunctive

3   relief to address the underlying staffing violations.

4          7.     Mr. Thamer, Mr. Needham and I jointly received a California Lawyer of the Year

5   (CLAY) award in 2010 for our work in the Skilled Healthcare lawsuit.  We were also named

6   Consumer Attorneys of the Year (2010) by Public Justice and CAOC for work on that case.

7   Along with others in the Plaintiff's Counsel group, I have been approved by California state and

8   federal courts to serve as Class Counsel in eight other consumer class actions involving nurse

9   staffing allegations in nursing homes.

10          8.     On the appellate level, Plaintiff's Counsel have been at the forefront on nurse

11   understaffing and related issues in nursing homes. including several reported decisions in nurse

12   staffing class actions.  *See e.g., Conservatorship of Gregory* (2000) 80 Cal. App. 4th 514;

13   *Fitzhugh v. Granada Healthcare LLC* (2007) 150 Cal. App. 4th 469; *Shuts v. Covenant Holdco*

14   *LLC* (2012) 208 Cal.App.4th 609; *Walsh v. Kindred Healthcare* (N.D. Cal 2011) 798 F. Supp. 2d

15   1073; *Wehlage v. EmPres Healthcare , Inc*. (N.D. Cal 2011) 791 F. Supp. 2d 774.

16   **Case Proceedings**

17          9.     Plaintiff Thomas Carnes, by and through his guardian ad litem, Juliana Christine

18   Clegg filed this action on June 12, 2014. Mr Carnes died on or about September 29, 2015.  As Ms.

19   Clegg is the Successor Trustee of the Thomas & Alice Carnes Family Trust dated September 28,

20   2004, the Parties have stipulated to substitute Ms. Clegg as the Named Plaintiff in her capacity as

21   Mr. Carnes' guardian ad litem and legal successor.

22         10.    The crux of the case is Plaintiff's allegation that Defendant misled residents, family

23   members and the general public to believe that resident assessments would be used to determine

24   staffing at Atria's facilities.  In actuality, Plaintiff alleges, facility staffing is determined based on

25   labor budgets and pre-determined profit objectives.

26         11.    Plaintiff asserts claims for damages and other relief under California's Consumers

27   Legal Remedies Act, Cal. Civ. Code § 1750, et seq. ("CLRA"), California's unfair competition

28   statute, Bus. & Prof. Code §§ 17200 et seq. ("UCL") and the Financial Elder Abuse statute, Cal.

3

Case No. 3:14-cv-02727-VC
HEALEY DECLARATION ISO FINAL
SETTLEMENT APPROVAL

1   W&I Code § 15610.30.

2        12.     Following Plaintiff's amendment to the initial complaint, Defendant moved to

3   dismiss Plaintiff's First Amended Complaint ("FAC") on multiple grounds.  After full briefing and

4   oral argument in November 2014, the Court dismissed the FAC but granted leave to amend.

5        13.     Plaintiff filed a Second Amended Complaint ("SAC") on December 11, 2014.

6   Defendant again moved to dismiss, raising among other arguments, that Plaintiff's request for

7   injunctive relief was barred on abstention grounds and that Plaintiff's financial elder abuse claim

8   failed because Ms. Clegg was not an "elder" for purposes of that statute.  On February 20, 2015,

9   the Court denied Atria's motion to dismiss the SAC.  Mr. Carnes died on or about September 29,

10   2015.  Plaintiff filed a Third Amended Complaint ("TAC") to reflect Ms. Clegg's status as Mr.

11   Carnes' guardian ad litem and legal successor.

12        **Investigation and Discovery**

13        14.     Prior to reaching a settlement, Plaintiff engaged in substantial investigation and

14   discovery.  Before filing the initial complaint, Plaintiff's Counsel reviewed approximately 2,800

15   pages of background documents, interviewed former Atria employees, interviewed residents (and

16   family members), and consulted with multiple experts on assisted living facilities.

17        15.     After the lawsuit was filed, discovery included Defendant's production and

18   Plaintiff's review of approximately 554,469 pages of documents and 2,406 additional electronic

19   documents in their native formats.  Plaintiff's review also included approximately 56,345 pages of

20   documents from the California Department of Social Services, Community Care Licensing

21   Division regarding the California assisted living facilities owned and/or operated by Defendant.

22   In addition, Plaintiff deposed two of Defendant's employees.

23        16.     In connection with the mediation and settlement effort, Defendant produced

24   additional information, including a summary of the move-in fees paid by all Atria facility residents

25   during the Settlement Class Period.  I am advised that Defendant's records show that the average

26   move-in fee for each resident was roughly $885.

27

28

          4

**Settlement Negotiations**

17.     In late 2015, the parties engaged in preliminary settlement discussions through counsel.  Those discussions eventually led to an agreement to mediate before the Honorable Rebecca Westerfield (Ret.) of JAMS in San Francisco. On November 17, 2015, the parties engaged in a full-day mediation before Judge Westerfield.

18.     Although the case did not resolve at the initial mediation session, in the month following the mediation, the parties continued settlement efforts with Judge Westerfield's assistance.  After further discussions with counsel for the respective parties, Judge Westerfield provided both sides with a mediator's proposal for the parties to either accept or reject.  On December 17, 2015, the parties (independently) agreed to accept Judge Westerfield's mediator's proposal to settle the case.

**Settlement Terms**

19.     Under the Agreement, Defendants have agreed to pay $6.4 million into a Settlement Fund which shall be used to resolve all monetary obligations owed under the settlement. In addition to the Settlement Awards paid to class members, the Fund will be used to pay notice/administration costs (estimated $120,000), a service award of $3,500 to Named Plaintiff, reimbursement of litigation expenses (roughly $130,000) and Plaintiff's attorneys' fees in the amount approved by the Court but not exceed one-third of the Settlement Fund.  Factoring in an agreed-upon reserve of $25,000 to cover late claims, I estimate the amount available to fund payments to class members is roughly $4.05 million.

20.     The Agreement provides for cash payments to class members (or if deceased, their legal successors) on a direct distribution basis, with no claims requirement to obtain payment. Based on information provided by Defendants, I estimate that the Settlement Class includes roughly 13,750 current and former residents.  The Settlement Administrator agreed to by the parties (KCC/Gilardi) will mail settlement checks to each Settlement Class Member for whom a valid address has been provided by Defendants (or located through the address update procedures). For Settlement Class Members for whom current addresses cannot be located, the Administrator is authorized to make payment based on a "distribution request" by the Class Member (or their legal

5

1  successor).

2      21.    The amount of the Settlement Award check will be calculated by dividing the Net

3  Settlement Fund (meaning the $6.4 million less the amounts approved for attorneys' fees,

4  litigation expenses, service award, and settlement administration) by the total number of Eligible

5  Settlement Class Members (defined in the Settlement Stipulation to include all resident class

6  members for whom addresses can be located plus any other residents (or their successors who

7  submit distribution requests).

8      22.    By way of example, if the Net Settlement Fund (after Court-approved payments) is

9  $4 million, and there are roughly 13,750 Settlement Class Members, the Initial Settlement

10  Payment would be approximately $290 (specifically, $290.90).

11      23.    Under the Agreement, the Settlement Administrator is authorized to increase the

12  amount of the Settlement Amount if sufficient monies are available after calculating the amounts

13  owed to all Settlement Class Members for whom current addresses have been provided or located,

14  along with the amounts owed to Class Members (or their successors) who made timely

15  distribution requests.  Based on past experience with settlements in similar class actions, I believe

16  it likely that the actual per-resident payment will exceed the projected minimum $290 payment.

17      24.    The Settlement Award checks will be mailed to class members within 45 days after

18  the Distribution Request Deadline, which is thirty days after the Effective Date as defined in the

19  Agreement.  The Settlement Payment checks shall allow for a check cashing period of 180 days.

20      25.    The Agreement authorizes the Administrator to hold a reserve of $25,000 to pay

21  late-submitted distribution requests or address other valid requests from Settlement Class

22  Members.  Also, Settlement Award checks not cashed within the check cashing deadline (after

23  reasonable reminders issued by the Settlement Administrator) shall be added to the reserve fund.

24      26.    There will be no reversion of any portion of the Settlement Fund to Defendants.

25  Rather, unused reserve funds as well as uncashed or returned checks will be paid in a second

26  round of distributions to Eligible Settlement Class Members who cashed their initial settlement

27  check.  If the Settlement Administrator determines that a second round of class distributions is not

28  economically practical, the remaining funds will be distributed to the Institute on Aging or other

Case No. 3:14-cv-02727-VC
HEALEY DECLARATION ISO FINAL
SETTLEMENT APPROVAL

Ex. B - Notice of Lodgment

Page 78

1 cy pres recipient, upon Court approval.  The Institute is a non-profit entity with substantial

2 experience in assisting seniors and disabled persons on various matters, including assisted living

3 facilities.

4        27.     The Agreement also includes non-monetary relief in the form of the Stipulated

5 Injunction attached to Plaintiff's Notice of Lodgment.

6        28.     Under the Agreement, the Named Plaintiff and Settlement Class Members

7 (excluding opt-outs) will release all claims that were asserted or could have been asserted in the

8 lawsuit to the extent they arise from statements, representations or failures to disclose prior to

9 March 17, 2016 (the close of the Settlement Class Period) regarding Defendant's agreements,

10 advertising, marketing or other documents concerning the use or consideration of resident

11 assessments to determine, evaluate, review or set facility staffing, staffing levels or care amounts.

12 The releases are effective only after the settlement has been granted final approval and the

13 "Effective Date" is reached.  Expressly excluded are any claims for personal injuries, emotional

14 distress or bodily harm.

15        29.     Subject to Court approval, the Agreement provides for a service award of $3,500

16 to Ms. Clegg, who served as the representative and Guardian ad Litem to Mr. Carnes in the

17 prosecution of this lawsuit.  After Mr. Carnes' death in September 2015, Ms. Clegg continued the

18 case prosecution as Mr. Carnes' legal successor.

19        30.     In addition, the Agreement allows Plaintiff's Counsel to file an application for

20 attorneys' fees and litigation costs not to exceed 33% of the Settlement Fund (roughly $2.1

21 million).  To date, Plaintiff's Counsel have incurred over $2.67 million in lodestar attorneys' fees

22 and advanced over $144,000 in litigation expenses.  I anticipate that additional fees and costs will

23 be incurred in connection with the approval proceedings, settlement administration and related

24 matters.

25      **Fairness Assessment**

26        31.     For several reasons, the collective Plaintiff's Counsel believe the settlement is fair,

27 appropriate, reasonable and in the best interests of the Settlement Class.  For purposes of this

28 motion, it clearly falls within the "range of reasonableness" required for preliminary settlement

7

Case No. 3:14-cv-02727-VC<br>HEALEY DECLARATION ISO FINAL<br>SETTLEMENT APPROVAL

1    approval.

2         32.     Under the Agreement, Defendants have agreed to pay $6.4 million, of which

3    roughly $4 million will be available for distribution to class members. Assuming that every

4    settlement class member is located for distribution of the payments, the estimated minimum

5    settlement payment is approximately $290. If current addresses cannot be located for all potential

6    class members (or their successors), such that additional funds are available for distribution, the

7    Settlement Administrator will increase the per-class member payment.

8         33.     Even at the $290 range, the projected average Settlement Award compares

9    favorably with the likely recovery if the case was tried.  As alleged in the SAC, the primary focus

10   of Plaintiff's damages theory is the recovery of the initial payments made by residents,

11   specifically, the move-in fee.  Based on the resident payment information provided by Defendant,

12   the average move-in fee paid by Settlement Class Members was approximately $885.  Thus, the

13   projected minimum settlement award of $290 represents roughly 32.7% of the average move-in

14   fee.

15        34.     I believe it likely the actual Settlement Awards will exceed the projected minimum

16   average of $290. The Agreement requires Defendant to provide the Settlement Administrator with

17   names and last known addresses for all Settlement Class Members, and the Administrator is

18   required to update the addresses as necessary.  Nevertheless, experience in other class litigation

19   has shown that, despite reasonable efforts, some Settlement Class Members will not be located or

20   will not have legal successors. As such, some funds will go undistributed.  Assuming so, under the

21   Agreement, the Administrator will use those funds to increase the payment amounts for the

22   Settlement Class Members who have been located.

23        35.     The potential risks attending further litigation support final approval.  Plaintiff

24   faces significant challenges with respect to class certification. Among other arguments, Defendant

25   is expect to assert that Plaintiff's claims necessarily require consideration of the care services

26   provided (or not) to each resident.  According to Defendant, that will trigger individual issues and

27   thus negate class certification.  Defendant also contends that written arbitration agreements

28   between Defendant and a majority of residents preclude a litigation class in this case.  While

8

1  Plaintiff believes the claims asserted are proper for class treatment, Defendant's anticipated

2  challenge to class certification is a litigation risk that bears on the overall settlement evaluation.

3      36.     Even if the Court certified a litigation class, Atria is expected to raise vigorous trial

4  defenses as to both liability and damages.  For example Defendant has asserted that residents

5  received value (in the form of care services and other benefits) that negate (or at least mitigate)

6  any recovery.  Defendant also argues that their admissions contract do not promise that facility

7  staffing levels will be based on resident assessments, and that prospective residents based their

8  decision to enter Atria facilities on non-staffing factors.

9      37.     While Plaintiff disputes these positions, Defendant's contentions, asserted by

10  skilled trial counsel, raise real trial risks.  Further, proceeding to trial (and potential appeals) could

11  add years to the resolution of this case. Given the elderly status of many class members, delay in

12  case resolution and providing recovery to the class is a significant concern.

13      **Settlement Administration**

14      38.     The Agreement provides for dissemination of class notice to every Class Member

15  by U.S. mail and through the announcement of the Settlement in a statewide publication.  All costs

16  of class notice, as well as administration costs, shall be paid from the Settlement Fund.

17      39.     The parties have agreed that KCC/Gilardi shall serve as the Settlement

18  Administrator.  KCC estimates the Class Notice, settlement administration and related costs will

19  not exceed $120,000.

20      40.     Based on information provided by Defendant, I estimate that the Settlement Class

21  includes approximately 13,750 current or former residents of Atria's California assisted living

22  facilities.  I am advised that Defendant maintains records that contain the names and last known

23  addresses for most (if not all) Settlement Class Members.  Under the Agreement, Defendant has

24  agreed to provide (or make available) all such information to the Settlement Administrator for

25  purposes of issuing Class Notice and processing the settlement.

26      **Dentons - Fees and Litigation Expenses**

27      41.     As of May 12, 2016, Dentons US LLP (formerly McKenna Long & Aldridge LLP)

28  has incurred over $554,200 in attorneys' fees (on 1,456.2 hours worked) in connection with this

1  case. The above-stated lodestar fee number is net of a $2,300 discount that I applied to address

2  potential duplication of effort.  The hourly rates and hours worked for the primary Dentons

3  timekeepers who have worked on this file are as follows:

4       Chris Healey, lead partner, 32 years in practice, $775 hourly rate, 341.5 hours

5       Aaron Winn, partner, 12 years in practice, $650 hourly rate, 16.8 hours

6       Stefanie Warren, counsel, 11 years in practice, $540 hourly rate, 12 hours

7       Ahmed Jinnah, associate, 3 years in practice, $365 hourly rate, 69.2 hours

8       Saeid Ahmadian, senior paralegal, $350 hourly rate, 55.1 hours

9       Awenda Armstrong, paralegal, $300 hourly rate, 149.3 hours

10      Danielle Simon, paralegal, $260 hourly rate,141.9 hours

11      Susan Mohney, paralegal, $230 hourly rate,121.2 hours

12      Cathryn Howard, paralegal, $225 hourly rate, 152.3 hours

13      Afton Patterson, paralegal, $220 hourly rate, 195.3 hours

14      Suzanne McCoy, case assistant, $160 hourly rate, 55 hours

15      42.    By category and estimated hourly total, the primary tasks performed by Dentons

16  timekeepers are as follows

17      Initial case background review and analysis (10 hours);

18      Review and assistance in drafting amended complaints (15 hours);

19      Review and assistance in discovery planning, requests and approach (25 hours);

20      Research, drafting and analysis regarding opposition to Atria's pleading challenges (34.5

21      hours);

22      Research, drafting and analysis regarding class certification issues (70 hours);

23      Obtain and review records from Atria and third parties (906.9 hours);

24      Review and analyze Atria contract documents (116.2 hours);

25      Supervise document and data review team (17 hours);

26      Support data review and analysis, including technical assistance (55.1 hours);

27      Participate in responding to Atria's discovery positions (10 hours);

28      Participation in mediation and settlement negotiations (60 hours);

10

Case No. 3:14-cv-02727-VC
HEALEY DECLARATION ISO FINAL
SETTLEMENT APPROVAL

1   Draft settlement documentation and communications with counsel re same (39.4 hours);

2   Draft preliminary settlement approval papers and communications with counsel re same

3   (25 hours);

4   Research and drafting final settlement approval motion (6.1 hours);

5   Coordination with Settlement Administrator on class notice and settlement issues (15

6   hours);

7   Miscellaneous case administration and coordination (50 hours).

8   43.   As of May 11, 2016, my firm has advanced litigation costs of $24,779.90.  A true

9   and correct summary of the Dentons litigation costs is attached as Exhibit 1 to this Declaration.

10   44.   Copies of detailed billing records can be made available to the Court for in camera

11   inspection upon request.

12   I declare under penalty of perjury under the laws of the State of California that the

13   foregoing is true and correct.  Executed on this 16th day of May, 2016 at San Diego California.

14

15   _s/ Christopher J. Healey_
     Christopher J. Healey

16

17   93411544\V-2

18

19

20

21

22

23

24

25

26

27

28

11

# Exhibit C

Kathryn A. Stebner, State Bar No. 121088
George Kawamoto, State Bar No. 280358
**STEBNER AND ASSOCIATES**
870 Market Street, Suite 1212
San Francisco, CA 94102
Tel: (415) 362-9800
Fax: (415) 362-9801

Attorneys for Plaintiffs and the Proposed Class

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

THOMAS CARNES, by and through his guardian ad litem, JULIANA CHRISTINE CLEGG, on behalf of himself and all others similarly situated,

    Plaintiff,

vs.

ATRIA SENIOR LIVING, INC. and DOES 1 through 100,

    Defendants.

Case No.: 3:14-cv-02727-VC

**CLASS ACTION**

**DECLARATION OF KATHRYN STEBNER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

Date: June 30, 2016
Time: 10:00 a.m.
Place: Courtroom 4
Judge: Hon. Vince Chhabria

DECLARATION OF KATHRYN STEBNER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

1    I, Kathryn A. Stebner, hereby declare:

2       1.      I am an attorney duly licensed to practice before all the courts of the State of
3    California and am a member in good standing of the State Bar of California. I am the principal of
4    Stebner and Associates and am counsel for the Plaintiffs in this action. I am submitting this
5    Declaration in support of Plaintiff's Motion for Attorneys' Fees, Costs, and Service Awards. I
6    have personal knowledge as to the facts stated herein and, if called upon to do so, could and would
7    competently testify thereto.

8       2.      I have been prosecuting elder abuse cases since 1987, and have practiced solely in
9    this area for over sixteen years. I have been involved with California Advocates for Nursing Home
10   Reform (CANHR) since 1987.  Since January 28, 2002, I have sat on the California Bar-
11   sanctioned lawyer referral panel of CANHR for Elder and Dependent Abuse Civil Protection Act
12   (EADCPA) cases.

13      3.      I have been practicing law for 30 years. I am a Past-President of the San Francisco
14   Trial Lawyers' Association (SFTLA), have been on the Board of Governors of the Consumer
15   Attorneys of California (CAOC) for over ten years and am currently its Financial Secretary, and
16   have tried in excess of 20 trials and arbitrations. Among numerous other publications, I am the
17   author of two chapters on Elder Abuse for the Continuing Education of the Bar (CEB), as well as
18   the book *Elder Law Litigation Strategies: Leading Lawyers on Understanding the Changing*
19   *Landscape of Elder Law Litigation and Its Effect on Client Needs.*

20      4.      I have experience in class action matters and have been involved as counsel for the
21   plaintiffs in the litigation of at least sixteen other class action cases, including nine class action
22   cases brought for understaffing violations in skilled nursing facilities. I also have experience
23   representing plaintiffs in three class action cases against owners of assisted living facilities alleging
24   violations of the CLRA, fraudulent business practices (pursuant to Business & Professions Code
25   section 17200), and elder financial abuse. I am also representing plaintiffs in a class action case
26   against a skilled nursing facility chain in California alleging violations of the California Labor
27   Code, the Unfair Competition Law, and Business and Professions Code section 17200 et seq. in

28                                                      1

Ex. C - Notice of Lodgment

Page 89

1  connection with the alleged Labor Code violations. I have lectured on numerous occasions
2  regarding elder abuse cases, including several lectures on class action law and the use of Business
3  & Professions Code section 17200 and the CLRA in Elder Abuse actions. I have also testified on
4  several occasions before the California Assembly and Senate on bills pertaining to elder abuse and
5  elder rights.

6      5.      Attached hereto as Exhibit 1 is a true and correct copy of my curriculum vitae.

7      6.      Sarah Colby is a seasoned attorney with over seventeen years of experience and was
8  of counsel to Stebner & Associates until March 31, 2016. She worked on numerous class action
9  lawsuits, including extensive work on this and the other assisted living class cases, as well as the
10 class actions our firm brought against skilled nursing facility chains alleging understaffing. Prior
11 to working at Stebner & Associates, she has also worked on numerous class actions against
12 educational institutions alleging failure to provide equal access under the Americans with
13 Disabilities Act. Sarah Colby's practice at Stebner & Associates was devoted almost entirely to the
14 litigation of class action and complex actions. Thus, any time which she spent on one class action
15 case, such as the instant action, took away from time she could be spending on our other actions.
16 Through the pendency of the instant action, we have had several complex litigation actions. Ms.
17 Colby spent approximately 90% of her time on complex cases.

18     7.      Attached hereto as Exhibit 2 is a true and correct copy of the curriculum vitae of
19 Sarah Colby.

20     8.      George Kawamoto, an associate at Stebner & Associates, is an attorney with over
21 four years of experience. Prior to becoming an attorney, Mr. Kawamoto worked for one year as a
22 law clerk at Stebner & Associates. Mr. Kawamoto's practice at Stebner & Associates includes the
23 litigation of class action and complex actions, as well as individual cases. Thus, any time which he
24 spends on one class action case, such as the instant action, takes away from time he could be
25 spending on our other actions. Mr. Kawamoto has spent approximately 50% of his time on these
26 class action cases regarding understaffing at California skilled nursing facilities and
27 misrepresentations at California assisted living facilities.

28                                              2
DECLARATION OF KATHRYN STEBNER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, COSTS, AND SERVICE AWARDS
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

Ex. C - Notice of Lodgment

Page 90

1    9.    Attached hereto as Exhibit 3 is a true and correct copy of the curriculum vitae of
2  George Kawamoto.

3    10.    As I am the sole principal attorney in my firm, I must devote much of my time
4  to overseeing my individual elder abuse cases. There are currently four other attorneys at my firm.
5  I could have taken on several more elder abuse matters, but I did not as I knew I would not have
6  the time to monitor them given the time commitment, and possible trial, in this action. At any
7  given time, I had roughly fifteen to twenty other cases pending. I was unable to devote more time
8  to them due to my substantial commitment to this matter. I spent entire days simply working on
9  this matter alone, including one mediation session and numerous in-person and telephonic
10  meetings with Defense counsel. I am certain that I could have earned a significant amount of
11  money in other, additional cases if I had not been involved in the instant action.

12    11.    Along with my co-counsel in this case, I have experience representing plaintiffs in
13  two other class action cases against owners of assisted living facilities alleging violations of the
14  CLRA, fraudulent business practices (pursuant to Business & Professions Code section 17200),
15  and elder financial abuse. One of these actions, *Winans v. Emeritus Corporation* (N.D. Cal. Jan.
16  19, 2016, Case No. 3:13-cv-03962-HSG, was settled in 2015, and had been pending in the
17  Northern District of California.

18    12.    Along with several co-counsel in this case, I have also represented the plaintiffs in
19  class actions filed against skilled nursing facility chains alleging system-wide violations of
20  minimum nurse staffing requirements in California. One of these actions, *Wehlage v. EmpRes*
21  *Healthcare, Inc., et al.*, Case No. 10-05839 CW, was settled in 2013, and had been pending in the
22  Northern District of California. Another action, *Walsh v. Kindred Healthcare, et al.*, Case No. 11-
23  00050 JSW, was settled in 2013, and had been pending in the Northern District of California. Six
24  other cases, *Valentine v. Thekkek Health Services, Inc.*, No. RG-10546266 in Alameda County
25  Superior Court in front of the Hon. Robert Freedman; *Montreuil v. The Ensign Group, Inc.*, No.
26  BC449162 in Los Angeles County Superior Court; *Hernandez v. Golden Gate Equity Holdings,*
27  *LLC*, No. CGC-10-505288 in San Francisco County Superior Court; *Shuts v. Covenant Holdco*

28

DECLARATION OF KATHRYN STEBNER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, COSTS, AND SERVICE AWARDS
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

Ex. C - Notice of Lodgment

Page 91

1  *LLC*, No. RG 10551807 in Alameda County Superior Court in front of the Hon. Wynne Carvill;
2  *Dalao v. LifeHouse Holdings, LLC*, No. RG12660602 in Alameda County Superior Court in front
3  of the Hon. Wynne Carvill; *Correa v. SnF Management Company, LLC*, No. RG-13664498 in
4  Alameda County Superior Court in front of the Hon. Wynne Carvill; *Regina v. Hycare, Inc.* No.
5  RG-12647573 in Alameda County Superior Court originally in front of the Hon. Wynne Carvill
6  and later in front of the Hon. George Hernandez, Jr., have also now settled.

7      13.    We brought the instant class action based on our concern that Defendants misled
8  residents, family members, and the general public to believe that resident assessments, conducted
9  at move-in and thereafter during each resident's stay, would be used to determine staffing at
10 Defendants' facilities in California but failed to disclose that staffing was determined by labor
11 budgets only. I have been litigating cases against this defendant for many years, saw a pattern, and
12 felt it needed to change. I was the driving force in beginning this suit. Plaintiffs asserted claims
13 for damages and other relief under California's Consumers Legal Remedies Act, Cal. Civ. Code
14 § 1750, *et seq.* ("CLRA"), and Financial Elder Abuse statute, Cal. W&I Code § 15610.30.

15     14.    Plaintiffs' Counsel faced substantial risks in agreeing to prosecute this class action case
16 on a contingency fee basis. To my knowledge, this is one of the first putative class actions
17 challenging misrepresentations and misleading statements made by a provider of assistive living
18 services in the country, and Defendants are represented by skilled counsel. As reflected in motion
19 practice before the Court, the case raises novel issues, and the pleadings were heavily contested in
20 motions to dismiss the First and Second Amended Complaints. When this case was retained, Class
21 Counsel knew of the risk but also considered the possibility of a risk-related multiplier, as their hourly
22 rates do not include consideration of risk.

23     15.    Class Counsel here are highly regarded members of the bar. They brought a unique
24 blend of expertise and skill, including specialized knowledge in elder care class actions and
25 complex litigation vital to the success of this case. Class Counsel coordinated their efforts to
26 maximize efficiency and avoid duplication of work to ensure that the case was litigated as
27 effectively and efficiently as possible. Class Counsel held regular conference calls to discuss

28

4

DECLARATION OF KATHRYN STEBNER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, COSTS, AND SERVICE AWARDS
*Carnes, et al. vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

Ex. C - Notice of Lodgment

Page 92

1    developments, strategy and individual assignments in the current matter. I was the leader on these
2    calls, prepared all the agendas, and drove the assignments. These calls facilitated efficient use of
3    each attorney's time, permitted our team to use knowledge and lessons learned in other cases, gave
4    us an opportunity to assign tasks to specific attorneys and make key decisions, to craft the top-
5    quality work product necessary to successfully prosecute the case, and to reduce duplication. We
6    thus consciously assigned work to be done as efficiently and effectively as possible by the
7    attorneys in accordance with their respective skills, expertise, and availability.   While Class
8    Counsel consistently delegated duties to particular firms, they also marshaled their shared expertise
9    on projects at key moments in the case. The delegation of tasks and the cooperation around high-
10   stakes decisions and briefing were always carried out foremost for the benefit of the Class. All of
11   the firms participated in the numerous settlement negotiations, yet I was the main counsel in the
12   discussions with opposing counsel.

13        16.    Even before the action was filed, the attorneys who associated together to prosecute
14   the action met and discussed efficient ways to divide the work and allocate resources so as to avoid
15   unnecessary overlap and duplication of efforts, costs and expenses. Before filing the initial
16   complaint, Plaintiffs' counsel also reviewed court filings, deposition testimony, and exhibits from
17   other lawsuits against Atria; Department of Social Services' files for Defendants' facilities in
18   California; and Atria' website and other marketing materials. My firm also interviewed former
19   employees, residents, and family members of residents, and consulted with multiple experts on
20   assisted living facilities. My firm personally met with and spoke to numerous former employees
21   and the class representative numerous times.

22        17.    The time spent on this matter by timekeepers at my firm was fully justified and
23   necessary to the litigation of this action. I, along with my staff, have tried our best to keep
24   contemporaneous and accurate time records, and the time recorded in this matter is an accurate
25   depiction of the time and work described.   My fees are fully documented by detailed,
26   contemporaneous and/or recreated time records describing every hour or fraction thereof of time
27   worked for which compensation is sought. If upon my review of my hours I had notations of e-

28

DECLARATION OF KATHRYN STEBNER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, COSTS, AND SERVICE AWARDS
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

Ex. C - Notice of Lodgment

Page 93

1 mails or other documents which I reviewed or created, but no time entry, I recreated my time,
2 always erring on the side of the smallest time which the task or document would have required or
3 omitted the time entry in its entirety. If I had a recollection of spending time working on the
4 matter, but nothing in writing evidencing the time spent, it was likewise omitted. In addition, for
5 all of the hours worked, including by me, I exercised my discretion to cut hours where I felt that
6 the time was non-compensable, duplicative, or exceeding what was reasonably necessary in my
7 judgment to accomplish the task in question. My records do not fully capture all of the time I
8 spent on the case, which probably exceeds the recorded time by at least 20 percent.

9     18.    The rates charged for hours worked by me and my staff are squarely in line with the
10 prevailing rates in Northern California, (*see* Declaration of Richard M. Pearl, filed concurrently
11 with Named Plaintiff's Fee Application), are paid by hourly-paying clients of our firms, and/or
12 have been previously approved by courts in long term care class action cases. Rates similar or
13 equal to my office's rates in this case were previously approved by U.S. District Judge Haywood
14 Gilliam in *Winans v. Emeritus Corporation* (N.D. Cal. Jan. 19, 2016, case no. 3:13-cv-03962-
15 HSG, dkt. 133), by Chief Judge of the Northern District of California Claudia Wilken in *Wehlage*
16 *v. Evergreen at Arvin LLC*, 2012 U.S. Dist. LEXIS 144152 at *8 (N.D. Cal. Oct. 4, 2012) ("The
17 billing rates used by Class Counsel to calculate their lodestar are reasonable and in line with the
18 prevailing rates in this District for personnel of comparable experience, skill, and reputation"), and
19 by U.S. District Judge Jeffrey S. White in *Walsh v. Kindred Healthcare, et al.*, 2013 U.S. Dist.
20 LEXIS 176319 (N.D. Cal. Dec. 16, 2013). Rates similar or equal to Class Counsel's rates in this
21 case were also previously approved in the Superior Court of California by Judge Robert Freedman
22 in *Valentine v. Thekkek Health Services, Inc., et. al.* Alameda County Superior Court, Case No.
23 RG-10546266; by Judge Wynne Carvill in *Shuts v. Covenant Holdco LLC*, Alameda County
24 Superior Court, Case No. RG 10551807, *Dalao v. LifeHouse Holdings, LLC* Alameda County
25 Superior Court, Case No. RG12660602, and *Correa v. SnF Management Company, LLC* Alameda
26 County Superior Court, Case No. RG-13664498; by Judge Jane Johnson in *Montreuil v. The*
27 *Ensign Group, Inc.* Los Angeles County Superior Court, Case No. BC449162; by Judge Richard

28                                                  6

Ex. C - Notice of Lodgment

Page 94

1  Kramer in *Hernandez v. Golden Gate Equity Holdings, LLC*, San Francisco County Superior
2  Court, Case No. CGC-10-505288; and by Judge George Hernandez, Jr., in *Regina v. Hycare, Inc.*,
3  Alameda County Superior Court, Case No. RG-12647573.

4      19.     As of May 10, 2016, my hours in this case are 467.4. My billing rate is $750 per
5  hour. My lodestar is $350,550.00. As one of the co-lead attorneys, my firm initially evaluated
6  numerous publically available sources to evaluate initial case merit, including court filings,
7  deposition testimony, and exhibits from other lawsuits against Atria; meeting with other attorneys
8  who had cases against Atria and gathering their documents; meeting with numerous former Atria
9  employees, residents, former residents, and their families; collecting information on corporate
10  structure; investigating software systems with experts and witnesses; producing a discovery plan,
11  reviewing deposition testimony; organizing and leading the effort to review hundreds of thousands
12  of pages of documents produced by Defendants; reviewing relevant case law, reviewing news
13  reports regarding Atria; drafting the CLRA letter prior to filing the Complaint; drafting and
14  reviewing the pleadings and motions including the various amended complaints; drafting joint
15  CMC statements; drafting the initial disclosure; drafting a significant portion of the motion
16  briefing pertaining to Defendants' Motion to Dismiss the First and Second Amended Complaints;
17  Department of Social Services' files for Defendants' facilities in California; reviewing Atria'
18  website and other marketing materials; and locating and working with experts. I handled the bulk
19  of numerous and regularly scheduled communications with opposing counsel and was a lead
20  attorney in all settlement negotiations as I was the point person for the Plaintiffs' side to
21  communicate with opposing counsel. I participated in the formal mediation session with Judge
22  Rebecca Westerfield (ret.) and was lead Class Counsel for settlement efforts outside of the formal
23  mediation including multiple telephone discussions with opposing counsel, and/or Judge
24  Westerfield, as well as mediation briefing and preparation. My associates and I were the main
25  attorneys communicating with the class representative and helped in preparing the client for
26  deposition. I met with the class representative in person and had many phone calls with her. My
27  associates and I also took lead responsibilities for meeting with witnesses in person or by phone,
28

7
DECLARATION OF KATHRYN STEBNER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, COSTS, AND SERVICE AWARDS
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

Ex. C - Notice of Lodgment

Page 95

1  drafting written discovery requests and responses.  My associates and I were involved in the
2  preliminary and ongoing review and analysis of Defendants' documents, motion briefing and
3  almost all meetings with co-counsel as to strategy.   These efforts make up at least ninety percent
4  of my hours in this matter.   A chart of my time allocations is attached as Exhibit 5 to this
5  declaration.   As the chart shows, I spent approximately 26.3 hours (6%) on research and
6  investigation, 150.2 hours (32%) on discovery and document review, 64.4 hours (14%) meeting
7  and corresponding with co-counsel, 15.8 hours (3%) meeting and corresponding with plaintiff,
8  46.8 hours (10%) meeting and corresponding with defense counsel, 49.5 hours (11%) meeting and
9  corresponding with experts and witnesses, 37.8 hours (8%) on pleadings and motions and
10 preparation, 11.4 hours (2%) on court hearings and preparation, and 65.2 hours (14%) on
11 mediation and settlement negotiations and preparation.

12     20.     My staff spent significant time on this matter, and kept contemporaneous records of
13 the time worked. I closely worked with them on this case and I am familiar with the tasks they
14 worked on and the time it took to accomplish those tasks.

15     21.     I have reviewed the hours for Sarah Colby in this action, and they comport with
16 my recollection of the time she spent on this case. As of May 10, 2016, Ms. Colby worked a total
17 of 743.8 hours on this case.   Her billing rate is $575 per hour.   Ms. Colby's lodestar is
18 $427,685.00.  She was involved in evaluating numerous publically available sources to evaluate
19 initial case merit, meeting with witnesses in person or by phone, drafting the CLRA letter and
20 original and amended Complaints and other pleadings, including the Joint CMC Statements and
21 Initial Disclosure, motion and memoranda briefing pertaining to Defendants' Motion to Dismiss
22 the First and Second Amended Complaints, drafting and reviewing written discovery requests and
23 responses, meeting with the class representative and preparing for the class representative's
24 deposition, interviewing witnesses, contacting defense counsel, document review, investigation
25 and analysis, legal research, communication with experts, mediation preparation, and participating
26 in meetings with co-counsel as to strategy. A chart of Ms. Colby's time allocations is attached as
27 Exhibit 6 to this declaration. As the chart shows, Ms. Colby spent approximately 96.5 hours (13

28                                              8

Ex. C - Notice of Lodgment

Page 96

1  %) on research and investigation, 278.8 hours (37%) on discovery and document review, 41.2
2  hours (6%) meeting and corresponding with co-counsel, 42.9 hours (6%) meeting and
3  corresponding with plaintiffs, 25.4 hours (3%) meeting and corresponding with defense counsel
4  and/or defendants' representatives, 29.7 hours (4%) meeting and corresponding with experts and
5  witnesses, 137.2 hours (18%) on pleadings and motions and preparation, 4.1 hours (1%) on court
6  hearings and preparation, and 88.0 hours (12%) on mediation and settlement negotiations and
7  preparation.

8       22.    I have reviewed the hours for George Kawamoto in this action, and they comport
9  with my recollection of the time he spent on this case.  As of May 10, 2016, Mr. Kawamoto
10 worked 415.7 hours on this case.  His billing rate as an associate is $350 per hour.  Mr.
11 Kawamoto's lodestar is $145,495.00.  He was involved in evaluating numerous publically
12 available sources to evaluate initial case merit, meeting with witnesses in person or by phone,
13 memoranda briefing including issues pertaining to Defendants' Motion to Dismiss the First and
14 Second Amended Complaints, drafting letters and other correspondence to opposing counsel,
15 drafting written discovery requests and responses, meeting with the class representative and other
16 witnesses in person and by telephone, creating agendas and participating in numerous regularly
17 scheduled phone calls with defense counsel, reviewing documents, communication with experts,
18 mediation preparation, and participating in meetings with co-counsel as to strategy. A chart of Mr.
19 Kawamoto's time allocations is attached as Exhibit 7 to this declaration. As the chart shows, Mr.
20 Kawamoto spent approximately 31.5 hours (8%) on research and investigation, 229.5 hours (55%)
21 on discovery and document review, 64.4 hours (15%) meeting and corresponding with co-counsel,
22 5.1 hours (5.1%) meeting and corresponding with plaintiff, 28.8 hours (7%) meeting and
23 corresponding with defense counsel and/or defendants' representatives, 27.0 hours (6%) meeting
24 and corresponding with experts and witnesses, 14.9 hours (4%) on pleadings and motions and
25 preparation, 0.7 hours (0%) on court hearings and preparation, and 13.8 hours (3%) on mediation
26 and settlement negotiations and preparation.

27      23.    Karman Guadagni, an associate at Stebner & Associates, is an attorney with over
28                                              9

Ex. C - Notice of Lodgment

Page 97

1  six years of experience. I have reviewed the hours for Karman Guadagni in this action, and they
2  comport with my recollection of the time he spent on this case. As of May 10, 2016, Ms.
3  Guadagni worked 9.3 hours on this matter contacting and meeting with the class representative and
4  witnesses (5.5 hours; 59%), reviewing documents and other lawsuits regarding defendants (1.2
5  hours; 13%), and corresponding with co-counsel (2.6 hours; 28%). Her billing rate is $375, and
6  her lodestar is $3,487.50. Attached hereto as Exhibit 4 is a true and correct copy of Ms.
7  Guadagni's curriculum vitae.

8      24.   I have reviewed the hours for the legal assistants in this action, and they comport
9  with my recollection of the time he spent on this case. As of May 10, 2016, the legal assistants at
10  my firm worked 13.4 hours at a rate of $150 per hour, for a lodestar of $2,010.00. The legal
11  assistants at my firm organized and reviewed defendants' documents, including website
12  documents, documents from other cases and this case, and Department of Social Services' files for
13  Defendants' facilities in California.

14      25.   The total hours worked by all timekeepers at my firm on this matter are 1,649.6
15  hours as of May 10, 2016. Multiplied by our respective billing rates at my firm, the lodestar for
16  my firm on this matter comes to $929,227.50.

17      26.   Attached as Exhibit 8 is a summary of the time and hourly rates by timekeepers at
18  my firm, as well as costs incurred by my firm in this matter. Copies of the detailed timesheets and
19  expenses will be made available under seal for the Court's review in camera upon request.

20      27.   Because of the tremendous work cases like this require, I consciously limited the
21  number of cases my office took on during the pendency of litigation so I could be available to
22  invest the time this action required. Because my office was the main office charged with
23  marshaling evidence supporting Plaintiffs' claims, there were occasions when significant time and
24  energy was spent on this case, including entire days participating in mediation and settlement
25  negotiation efforts, along with significant travel time.

26      28.   Neither I, nor my co-counsel, have received any form of compensation for the hours
27  we have worked on this case for approximately two years. Working without compensation on a

28                                    10

Ex. C - Notice of Lodgment

Page 98

1 large case for approximately two years has had a financial impact on the economic health of my
2 practice.  As the sole principal of a small firm, I have no one to share the burden of such an
3 endeavor, or to help cover overhead expenses until payment for my work is ultimately received.  I
4 am certain that I could have earned a significant amount of money in other, additional cases if I
5 had not been involved in the instant action.  This is not stated as a complaint but only for the
6 Court's consideration in determining an appropriate attorney fee award.

7     29.    My firm has incurred $18,320.01 in necessary out-of-pocket litigation expenses in
8 this matter as of May 9, 2016.  A true and correct copy of an itemized report of my firm's litigation
9 costs and expenses incurred to date in this case is attached as Exhibit 9.  Major expense items are
10 detailed in the following paragraphs.  I exercised my discretion to cut litigation costs and expenses
11 that I felt were non-compensable.  Specifically, I omitted $186.41 in expenses incurred for meals
12 while traveling for matters regarding this litigation.  In my opinion, all costs and expenses listed on
13 Exhibit 9 were reasonably incurred for the prosecution of this lawsuit.

14     30.    My firm expended the amount of $10,787.50 in expert fees incurred in the
15 prosecution of this lawsuit.  My firm was the main office interfacing with experts in this case.  One
16 main issue in this lawsuit concerned the potential direct liability and alter ego of the parent
17 company and individual licensees of the facilities.  As we anticipated that Defendants would argue
18 against the direct liability of the parent company, we were required to conduct significant research
19 and document review pertaining to the corporate structure of Defendants, including their parent
20 company, individual owners, and licensees.  It was therefore necessary to retain a financial expert
21 with an M.B.A. from Stanford University to help shape our discovery and prepare for class
22 certification and trial.  This financial expert reviewed the information and documents pertaining to
23 Defendants' corporate structure and financial dealings including filings, deposition transcripts of
24 corporate personnel, and documents produced by Defendants.  We also retained California experts,
25 who analyzed documents and consulted on the operations of assisted living facilities, including the
26 use of resident assessment systems.

27     31.    My firm expended the amount of $2,562.00 to vendors for the maintenance of the

28     11

DECLARATION OF KATHRYN STEBNER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, COSTS, AND SERVICE AWARDS
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

1   electronic document database in this case, including to Schneider Wallace (i.e., for a portion of the

2   fees paid to Relativity document management).

3       32.     My firm expended the amount of $414.43 to AT&T for conference calls with co-

4   counsel and/or opposing counsel pertaining to the prosecution of this lawsuit. My firm was the

5   lead attorney for these conference calls, which were usually held on a weekly basis.

6       33.     My firm expended the amount of $2,533.50 to LexisNexis for computer legal

7   research services pertaining to this matter.

8       34.     My firm expended the amount of $1,285.16 for court filings, transcription fees of

9   court proceedings, PACER, copy costs, mailing costs, and related expenses pertaining to this

10  matter.

11      35.     My firm expended the amount of $737.42 for mileage, parking, and related travel

12  costs incurred in participating in meetings with the class representatives, witnesses, co-counsel,

13  opposing counsel, and experts; hearings, depositions, and other court proceedings; and the

14  mediation in this matter.

15      36.     I have carefully reviewed the terms of the Stipulation of Settlement entered into by

16  the parties to resolve this case. In my view, as a class action elder abuse attorney, the settlement is

17  fair, reasonable and in the best interests of the class, given the settlement benefits conferred and

18  risks of further litigation through class certification, trial and a potential appeal. Partly to avoid

19  wasteful collateral proceedings over fees, Class Counsel negotiated with Defendants to arrive at a

20  fee that they (Class Counsel and Defendants) concluded was reasonable. Importantly, the fee was

21  properly bargained for *after* the monetary and non-monetary relief to the Class had been agreed

22  upon, and without any detriment to the Class.

23      37.     The Agreement provides for services awards of $3,500 to Plaintiff Juliana Christine

24  Clegg, as successor-in-interest to the Estate of Thomas Carnes, subject to Court approval (*see*

25  Stipulation of Settlement, ¶ 12.3, p. 17.) I believe the award is appropriate, reasonable, and

26  justified in light of my personal knowledge of the efforts and risks taken by plaintiff. The plaintiff

27  lent her name to this case and thus subjected herself to public attention. As Thomas Clegg was a

28

DECLARATION OF KATHRYN STEBNER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, COSTS, AND SERVICE AWARDS
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

Ex. C - Notice of Lodgment

Page 100