1  resident of Atria Hillsdale in San Mateo from approximately July 26, 2012 to approximately
2  January 19, 2015, Ms. Clegg had initial concerns about becoming a class representative including
3  potential retaliation resulting from participating in a lawsuit.  The class representative also
4  understood there was a risk she would be ordered to pay Defendants' costs should the litigation
5  prove unsuccessful.  Nonetheless, she agreed to become a class representative to stand up for
6  vulnerable current and future residents. Ms. Clegg devoted approximately sixty hours to this case
7  to help secure the payments to the class members and the stipulated Injunction. Ms. Clegg met in
8  person with Class Counsel on seven or more separate occasions, including to meeting for several
9  hours to prepare for her deposition, and communicated at least twenty-five times via telephone
10  with Class Counsel throughout the pendency of this lawsuit.  She gave significant assistance in
11  providing facts towards the drafting of the complaint and amended complaints.  She reviewed and
12  produced documents related to her father's stay at Atria's facility, was willing to put forth
13  documents for public scrutiny, and took on the weighty responsibility of representing the Class.
14  She gave updates regarding her father's care. Ms. Clegg also responded to written discovery and
15  participated in settlement discussions.   All of these activities were time-consuming and
16  emotionally difficult, as they forced them to relive and talk about the circumstances at Atria.  They
17  made this case possible when many other potential class representatives were reluctant to step
18  forward and represent the class.  She signed an agreement permitting her to support, comment on,
19  or object to any settlement reached in this litigation.  She reviewed the terms of the Stipulation of
20  Settlement and the Stipulated Order for Injunction and supports final approval.  Not only does the
21  proposed settlement provide significant economic benefits to current and former residents, but it
22  requires via the Stipulated Order for Injunction for Defendants to refrain from making any oral or
23  written statements to current or prospective residents (and if applicable, family members or
24  representatives of current or prospective residents) that state or imply that resident assessments are
25  the only factor used to determine, set or monitor staffing levels at Atria's California communities.
26  The injunction, among other requirements, also requires Defendants to ensure that resident
27  assessments, including those conducted at the time of admission and thereafter during a resident's
28

DECLARATION OF KATHRYN STEBNER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, COSTS, AND SERVICE AWARDS
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

Ex. C - Notice of Lodgment

Page 101

1  stay, shall be given consideration by Atria in determining, setting or monitoring staffing levels for

2  its California communities.  The named plaintiff's contributions helped produce the substantial

3  benefits now offered to the Settlement Class.

4      I declare under penalty of perjury under the laws of the State of California that the

5  foregoing is true and correct.

6      Executed on this ___11___ day of May 2016, at San Francisco, California.

7

8

9

10

11                                    Kathryn Stebner

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14

DECLARATION OF KATHRYN STEBNER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, COSTS, AND SERVICE AWARDS
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

Ex. C - Notice of Lodgment

Page 102

# EXHIBIT
# 1

# Kathryn A. Stebner
## STEBNER AND ASSOCIATES

**Contact Information**

Office:

> 870 Market Street, Suite 1212
> San Francisco CA 94102
> Tel: 415-362-9800
> Fax:  415-362-9801

**Education**

University of San Francisco School of Law, San Francisco, California, 1985.
> Juris Doctor.

University of Oregon, Eugene, Oregon, 1982.
> Bachelor of Arts, Political Science.

**Licenses**

Currently licensed to practice before the California and Oregon Bars, as well as numerous Federal District Courts.

**Legal Experience**

Stebner and Associates, San Francisco, California.
> February 2003-Present
> Represent plaintiffs in physical and financial elder abuse cases and other civil litigation including class actions involving both financial elder abuse and nursing home staffing cases.

Lopez, Hodes, Restiano, Milman, Skikos & Polos, San Francisco, California.
> May 2000-February 2003
> Represented plaintiffs in all aspects of civil litigation with emphasis on elder abuse.

Law Offices of Edward J. Nevin, San Francisco, California.
> January 1998-May 2000
> Represented plaintiffs in all aspects of civil litigation with emphasis on health care and elder abuse.

Law Offices of Dan Bolton, San Francisco, California.
> January 1997-January 1998
> Civil litigation representing women with breast implants in individual, class action and multi-district litigation cases.

Williams and Troutwine, Portland, Oregon.
> April 1993-December 1996
> Civil litigation representing women with breast implants in individual, class action and multi-district litigation cases.

Ex. C - Notice of Lodgment

McTernan, Stender & Walsh, San Francisco, California.
    June 1990-December 1992
    Represented plaintiffs in all aspects of civil litigation with emphasis on elder abuse.

Hoberg, Finger, Brown, Cox & Molligan, San Francisco, California.
    November 1986-June 1990
    Represented plaintiffs in all aspects of civil litigation, including elder abuse.

Lewis & Lewis, San Francisco, California.
    May 1986-November 1986
    Represented plaintiffs in all aspects of civil litigation.

Law Offices of Jesus M. Maldonado, Oakland, California.
    January 1986-May 1986
    General civil litigation for Latin community.

Law Offices of Kathleen Lucas-Wallace, San Francisco, California.
    January 1986-May 1986
    Engaged in all aspects of employment law litigation with emphasis on sexual harassment.

Public Advocates, San Francisco, California.
    January 1985-May 1985
    Law clerk-Engaged in all aspects of pre-trial litigation. Major cases involved Title VII, bilingual education and consumer issues, including class action cases.

U.S. Department of Justice, Civil Rights Division, Employment and Voting Sections, Washington, D.C.
    September 1984-December 1984
    Law clerk-Engaged in all aspects of pre-trial litigation, assisted with compilation of computerized database, interviewed potential witnesses and victims in class action cases.  In addition, did pre-clearance work on Section 5 of the Voting Rights Act.

Oregon Department of Justice, Oregon State Attorney General, Trial Division, Salem, Oregon.
    June 1984-August 1984
    Law clerk.

Paul Cominskey, Attorney at Law, San Francisco, California.
    January 1984-April 1984
    Law clerk-Criminal defense work.

**Books**

Stebner, Kathryn and Peter Lomhoff: "Practice and Procedure in Actions Against Residential Care Facilities." Chapter five, California Elder Law Litigation: An Advocate's Guide. Continuing Education of the Bar, 2003 (Updated in 2004, 2005, 2006, 2007 and 2008), California.

Kathryn A. Stebner<br>Page 2 of 9

Ex. C - Notice of Lodgment

Page 105

Stebner, Kathryn and Kirsten Fish: "Litigating Financial Abuse Actions Against Institutions, Agents and Fiduciaries." Chapter 6A, California Elder Law Litigation: An Advocate's Guide. Continuing Education of the Bar

## Articles

"Proving Low Staffing Against Long Term Care Facilities." *CAALA*, November 2014 (with George Kawamoto).

"Drop That Negligence Claim for a Claim of Custodial Neglect." *The Trial Lawyer.* Spring 2008.

"Elder Neglect Cases in Acute Care Facilities: It's Not Just a Nursing Home Problem." *Journal of Consumer Attorneys Associations for Southern California (Advocate).* February 2008.

"Elder Abuse and Medical Malpractice: Intersection with Parallel Roads?" *Forum.* January/February 2006.

"Pressure Sore Cases in Acute Care Facilities: No Matter What the Defense Tries to Tell You, These Are Elder and Dependent Neglect Cases." *Forum.* January/February 2006.

"Recent Decisions In Elder Abuse Law: 'Take Up The Cause.'" *Trial Lawyer.* 2006.

"Pressure Ulcers in Residential Care Facilities for the Elderly – Look at the Regulations." *California Advocates for Nursing Home Reform.* Winter 2005.

"Elder Abuse: Do You Know It When You See It?" *The Trial Lawyer.* Fall 2003.

"Residential Care Facilities for the Elderly: The New Frontier in Litigation." *Forum.* June 2002.

"'Transfer Trauma' Class Action Filed Against California Nursing Home Operator." *Nursing Home Litigation Reporter.* August 9, 2002.

"Discovery for the Motion to Amend for Punitive Damages in an Elder Abuse Case." *Forum.* July/August 2000.

## Presentations

"CCRCs, SNFs, RCFEs Rights & Remedies" CANHR Elder Law Conference, November 20, 2015, Monterey, California.

"Cases Against Assisted Living Facilities", September 30, 2015, Webinar.

"Civil Attorneys: Your Friends in the Fight Against Elder Financial Abuse," Institute on Aging: Swindles, Scams and Schemes Conference, January 23, 2015, San Francisco, California.

"RCFEs and Class Action Lawsuits," CANHR Elder Law Conference, November 22, 2014, Monterey, California.

Kathryn A. Stebner
Page 3 of 9

"Elder Abuse: Having the Newest Tools Will Build the Best Case," Sponsor and Moderator, Consumer Attorneys of California Annual Convention, November 15, 2014, San Francisco, California.

"Proving a Rape or Molestation Case with Unknown Perpetrator," Consumer Attorneys of California Annual Convention, November 15, 2014, San Francisco, California.

"APS and Civil Litigators Working Together," 5th Annual Summit on Elder Financial Exploitation, convened by the NAPSA Elder Financial Exploitation Advisory Board, October 31, 2014, Portland, Oregon.

"Proving a Rape or Molestation Case with Unknown Perpetrator," Santa Clara County Trial Lawyers Association, 2014 Belli Seminar, October 10, 2014, San Jose, California.

"Is It Working," CANHR Elder Law Conference, November 23, 2013, Monterey, California.

"Cluster Cases and Staffing to Acuity in CA Skilled Nursing Facilities," Consumer Attorneys of California Annual Convention, November 16, 2013, San Francisco, California.

"Elder Neglect Under Kaiser Watchful Eye," Consumer Attorneys of California Kaiser Seminar, October 15, 2013, San Francisco, California.

"New Models for Nursing Home Cases," CANHR Elder Law Conference, November 17, 2012, Monterey, California.

"Money Not Medicine: Proving Corporate Recklessness," CAOC 51st Annual Convention, November 10, 2012, San Francisco, CA.

"Resident Rights Litigation: A Tool for Quality Care" 11/19/11, CANHR Elder Law Conference, Monterey, CA

"Elder Abuse: Focus on the Corporation," Consumer Attorneys of California Annual Convention . November 12, 2011, San Francisco, California.

"Financial Elder Abuse—Class Action and Individual Cases," San Francisco Trial Lawyers Association, May 24, 2011.

"Medical School for Lawyers Series: Bedsores and Hospital Infections." National Seminar Web, March 3, 2011.

"Ten Tips to Minimize Litigation and the Costs of Litigation, The Plaintiff Attorney's Perspective," 2010 Annual Conference Aging Services of California, May 4-5, 2010, Long Beach, California.

"Kaiser Home Health – Discovery into Common Areas of Neglect," Consumer Attorneys of California, April 20, 2010, Oakland, California.

"Financial and Physical Abuse to the Elderly," Class Action and Individual Cases, San Francisco Trial Lawyers Association, April 13, 2010, San Francisco, California.

"Potential Strategies in Skilled Nursing Facility Cases," Consumer Attorneys of California, Live Webinar,

Kathryn A. Stebner
Page 4 of 9

December 10, 2009.

"Legal Nurse Consultant Developing Partnership with Elder Abuse Litigation Team," American Association Of Legal Nurse consultants, April 24, 2009, Phoenix, Arizona.

"Direct Examination of an Adverse Witness—Evidence Code section 776," Consumer Attorneys of California, March 21, 2009, Tahoe, California.

"Elder Abuse: Plaintiff and Defense Perspectives," Individual and Class Action Cases, San Francisco Trial Lawyers Association, March 10, 2009, San Francisco, California.

"Gender Bias in the Courtroom," Consumer Attorneys of California College of Trial Arts and San Joaquin County Trial Lawyers' association presents Masters Seminar, January 23, 2009, Stockton, California.

"Elder Abuse—Long Term Healthcare Litigation (Plaintiff vs. Defense Perspective-Debate)  Consumer Attorneys of California, 47th Annual Convention, November 8, 2008.

"Remedies for Financial Abuse" Class Action Cases in Financial Elder Abuse, Continuing Education of the Bar – California, August 14, 2008.

"Mock Trial" – Plaintiff and Defense Day-Long Mock Trial, California Association for Healthcare Quality, June 25, 2008.

"Update on Long-Term Care Litigation," "Point/Counterpoint:  Plaintiff and Defense Perspective," "Common Ground:  Estate Planners and Litigators Working Together" Class Action and Individual cases in Financial Abuse Cases, 12th Annual Elder Law Conference, California Advocates for Nursing Home Reform, May 9-10, 2008.

"Assisted Living:  Three Different Perspectives."  West Legal Education Center, April 24, 2008.

"Using the Elder Abuse Statute To Its Fullest," Business and Professions Code section 17200 and Financial Elder Abuse Cases, San Francisco Trial Lawyer – Litigation Practice, April 22, 2008.

"One Stop Shop—Ethics."  Consumer Attorneys of California 46th Annual Convention, November 11, 2007, San Francisco, California.

"Medical Malpractice vs. Elder Abuse."  Consumer Attorneys Association of Los Angeles, September 8, 2007, Las Vegas, Nevada.

"Ways of Helping Your Jury Get to Know Decedent."  San Francisco Trial Lawyers Association, June 12, 2007, San Francisco, CA.

"Financial Elder Abuse" Class Action and Individual Cases, California Advocates for Nursing Home Reform Elder Law Conference, May 5, 2007, Berkeley, CA.

Kathryn A. Stebner
Page 5 of 9

"Elder Abuse: Point/Counterpoint with John Supple." California Regional TLA Conference, June 9, 2006, Santa Barbara, CA.

"The Many Faces of EADACPA." California Advocates for Nursing Home Reform, May 13, 2006, Los Angeles, CA.

"Using EADACPA in Actions Against Hospitals." California Advocates for Nursing Home Reform, May 12, 2006, Manhattan Beach, CA.

"Can The Expert Be Destroyed? Live Prep and Unrehearsed Cross of Real Experts." San Francisco Trial Lawyers Association, December 13, 2005.

"Long-Term Care Litigation and EADACPA Issues." California Advocates for Nursing Home Reform, November 19, 2005, San Francisco, CA.

"The Home Brewed Multi Media Trial: Presenting High Tech and Old School Demonstrative Evidence." San Francisco Trial Lawyers Association, November 15, 2005.

"Who Are These Plaintiff Attorneys and Why Are They Saying These Awful Things About Us?" QCHF Institute 2005 & CAHF August Quarterly Conference, August 15, 2005, San Diego, CA.

"When You Least Expect It-Elder and Dependent Neglect in Hospitals." California Regional Trial Lawyers Association Conference, MCLE Program, June 3, 2005.

"Elder Abuse in Acute Care;" "Elder Financial Abuse: Relevance, Representation and Remedies;" "Elder Abuse Litigation: Ethical Advocacy." California Advocates for Nursing Home Reform's Elder Law Conference, May 5-6, 2005, Monterey, CA.

"Gender and The Law." San Francisco Trial Lawyers Association, March 7, 2005.

"Elder Abuse: Cases and Controversies;" "Elder Abuse Litigation: Point/Counterpoint-A Panel of Defense and Plaintiff Litigators;" "The Role of Experts in Elder Abuse Litigation;" "Scams, Scandals and Elder Fiduciary Abuse;" "Elder Abuse Litigation: New Directions." California Advocates for Nursing Home Reform's Elder Law in 2004 Conference, Pasadena, CA.

"How to Produce a Film of the Incompetent Plaintiff-Let The Jury Get to Know the Plaintiff." Maximizing the Value of Your Case Through Its Greatest Asset-The Plaintiff-Litigation Practice. San Francisco Trial Lawyers Association, September 7, 2004, San Francisco, CA.

"Defendants Gone Wild! What To Do When Discovery Issues Are Taking Over Your Case (And Your Life)." Roundtable Discussion, San Francisco Trial Lawyers Association, November 18, 2003.

"Representing Elders, Minors and Sexual and Racial Minorities." San Francisco Trial Lawyers Association, Unique Populations-Special Laws Equals Big Results, September 9, 2003, San Francisco, CA.

Kathryn A. Stebner
Page 6 of 9

"Relevant Code Sections and Causes of Action-Scams, Scandals and Elder Fiduciary Abuse" Class Actions and Individual Cases, California Advocates for Nursing Home Reform's Elder Law in 2003 Conference, May 2003.

"Remedies for Physical Abuse and Neglect." Continuing Education of the Bar, Elder Law Litigation, May 10, 2003.

"Current Elder Abuse Law-Physical and Financial" Individual and Class Action cases, California College of Trial Arts/Consumer Attorneys of California's 42nd Annual Convention, April 2003, Monterey, CA.

"Transfer Trauma-The Perfect Psychological Injury Tort." San Francisco Trial Lawyer's Association-Making It Real: Proving Emotional Distress Damages in Personal Injury and Psychological Injury Cases, July 11, 2002, San Francisco, CA.

"Residential Care Facilities-The New Frontier in Litigation." Consumer Attorneys of California's 41st Annual Convention, April 2002, San Francisco, CA.

"Long Term Care and Medi-Cal and Long Term Care Litigation." California Advocates for Nursing Home Reform's Fall 2001 Elder Abuse Training-Tap Into the Experience," December 1, 2001.

"Turning Damages Into Dollars." San Francisco Trial Lawyers Association, November 13, 2001, San Francisco, CA.

"Elder Abuse Litigation: Early Investigation and Discovery;" "Trial Preparation." California Advocates for Nursing Home Reform's Long Term Care Elder Law Conference, May 2001, Burlingame, CA.

"What is Elder Abuse and Why is it Not Med-Mal?" San Francisco Trial Lawyers Association-Elder Abuse Litigation, December 2000, San Francisco, CA.

"SNF Litigation." California Advocates for Nursing Home Reform's Workshop, November 4, 2000, San Francisco, CA.

"Investigating Elder Abuse." Alameda County District Attorney's Office, Consumer Fraud Division, Elder Abuse Unit, October 2000.

"Elder Abuse Litigation." California Advocates for Nursing Home Reform's 4th Annual Elder Law Conference, May 2000.

"Issues and Advocacy." California Advocates for Nursing Home Reform's 3rd Annual Elder Law Conference, April 30 & May 1, 1999, Berkeley, CA.

"Elder Abuse & Long Term Litigation Workshop." California Advocates for Nursing Home Reform, November 14, 1998.

"Law Practice Management: Elder Abuse Litigation;" "The Outer Limits: Elder Abuse Litigation." California Advocates for Nursing Home Reform's First Annual Elder Law Conference: Issues and Advocacy in Long-Term Care, June 1997, Millbrae, CA.

Kathryn A. Stebner
Page 7 of 9

**Academic Instruction**

"Elder Abuse." University of San Francisco School of Law, 2014.

"Elder Abuse." University of San Francisco School of Law, 2013.

"Elder Abuse." University of San Francisco School of Law, 2012.

"Elder Abuse." University of San Francisco School of Law, 2011.

"Elder Abuse." University of San Francisco School of Law, 2010

"Elder Abuse." University of San Francisco School of Law, 2009

"Elder Abuse." University of San Francisco School of Law, 2008

"Elder Abuse." University of San Francisco School of Law, 2007.

"Elder Abuse." University of San Francisco School of Law, 2006.

"Elder Law Seminar." New College of California, School of Law, 2006.

"Elder Abuse." Golden Gate School of Law, 2005.

"Elder Abuse." University of San Francisco, 2004-2005.

"Elder Abuse." Golden Gate School of Law, 2002.

"Trial Advocacy." Hastings College of the Law, 2002.

"Toxic Torts." Willamette University School of Law, 1995.

**Awards**

"Street Fighter of the Year," Consumer Attorneys of California, 2014

"Marvin E. Lewis Award," Consumer Attorneys of California, 2012

"Presidential Award of Merit," Consumer Attorneys of California, November 2011

"Super Lawyer," Elder Abuse, 2009, 2010, 2011, 2012, 2013, 2014.

"Presidential Award of Merit," Consumer Attorneys of California, November 2008

"Legal Advocate of the Year," California Advocates for Nursing Home Reform, 2002.

Kathryn A. Stebner
Page 8 of 9

Nominated-"Trial Lawyer of the Year," San Francisco Trial Lawyers Association, 2000.

"Volunteer of the Year," Bar Association of San Francisco, 1990.

**Professional Associations and Memberships**

Consumer Attorneys of California, Board of Governors and Financial Secretary
San Francisco Trial lawyers Association, Past President
California Advocates for Nursing Home Reform (CANHR), Lawyer Referral Panel

**Testimony**

Senate Judiciary Committee Hearing regarding Elder Abuse and Dependent Adult Civil Protection Act

Senate Bill 2171, Residential Care Facilities for the Elderly – Bill of Rights.

Senate Bill 2947, California Assembly and Senate, Elder and Dependent Adult Abuse: Waiver of Rights.

Senate Bill 558, Standard of Proof for Physical Elder Abuse.

Kathryn A. Stebner
Page 9 of 9

# EXHIBIT
# 2

## SARAH COLBY

SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS LLP
2000 POWELL ST., SUITE 1400
EMERYVILLE, CA 94608
(415) 421-7100

### EDUCATION

UNIVERSITY OF CALIFORNIA,
HASTINGS COLLEGE OF THE LAW
J.D., *magna cum laude,* 1997
Symposium Editor, Hastings Law Journal, 1996-97

PRINCETON UNIVERSITY
A.B., Art History, 1990

### LEGAL EMPLOYMENT

SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS LLP
EMERYVILLE, CALIFORNIA
*Associate, April 2016 to present*
Represent plaintiffs in class actions behalf of persons with disabilities, elders and
dependent adults. Trial and appellate litigation in federal and state court, focusing
on actions under the Americans with Disabilities Act and corresponding
California statutes, the California Elder Abuse and Dependent Adult Civil
Protection Act , Cal. B&P Code §17200 et seq., and Cal. Civ. Code § 1750 et.
seq.

STEBNER AND ASSOCIATES
SAN FRANCISCO, CALIFORNIA
*Of Counsel, October 2008-March 2016*
Represented plaintiffs in elder and dependent adult abuse claims. Focus on class
action and complex cases, including CLRA, B&P Code §17200, elder abuse, and
patients' rights claims. Extensive experience in state and federal courts litigating
class actions filed against skilled nursing homes and assisted living facilities for
patients' rights violations, understaffing, and misrepresentations made to residents
and their family members.

HERSH FAMILY LAW PRACTICE
SAN FRANCISCO, CALIFORNIA
*Of Counsel, May 2005-January 2008*
Managed all aspects of family law cases, including motion practice, depositions,
mediation and negotiation, trial work and supervision of junior associates and paralegals.

OF COUNSEL
*July 2003-March 2005*
Litigation for several plaintiffs' firms in class action and mass tort cases in the areas of
disability discrimination and access, employment discrimination, wage-and-hour, and
products liability.

LEGAL SERVICES FOR CHILDREN
SAN FRANCISCO, CALIFORNIA
*Staff Attorney, August 2000 – July 2003*
Represented minors in dependencies, guardianships, emancipations, school discipline
hearings, and special education, benefits, and immigration proceedings.  Provided
outreach and legal representation to lesbian, gay, transgender and bisexual youth.

THE LEGAL AID SOCIETY OF SAN FRANCISCO, EMPLOYMENT LAW CENTER
SAN FRANCISCO, CALIFORNIA
*Skadden Fellow, September 1998 – August 2000*
Provided legal advice and representation to workers and students with disabilities on
issues of access, discrimination, accommodations and privacy.  Investigated, developed
and prosecuted class action cases filed against educational institutions alleging access
barriers for students with disabilities.

UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA
THE HON. CHARLES A. LEGGE
*Law Clerk, August 1997- August 1998*

INTERNATIONAL EXPERIENCE

ASOCIACIÓN CIVIL POR LA IGUALDAD Y LA JUSTICIA
BUENOS AIRES, ARGENTINA
*Project and Development Director, July 2006 – September 2006*
Raised funds and assisted executive director with project development for legal non-
profit organization committed to justice, transparency and human rights.

# EXHIBIT
# 3

Ex. C - Notice of Lodgment

**GEORGE N. KAWAMOTO**
Stebner and Associates | Associate Attorney
870 Market St., Ste. 1212
San Francisco, CA 94102
tel: (415) 362-9800

EDUCATION

**University of California Hastings College of the Law,** San Francisco, CA
J.D., Civil Litigation Concentration, May 2011

- *Hastings Women's Law Journal*, Editor-In-Chief (2010-11); published *Mentoring for a Public Good*, 22 HASTINGS WOMEN'S L.J. 361 (May 2011)
- Hastings Civil Justice Clinic, Individual Representation Clinic (fall 2009)
- Honors: Pretrial Practice, Witkin and CALI Awards for Academic Excellence (spring 2011); Negotiation and Mediation, CALI Award for Academic Excellence (spring 2011)
- Hastings Pro Bono Advisory Committee (2008-11)

**University of California at Berkeley, College of Letters and Science,** Berkeley, CA
B.A., Comparative Literature, 2003
B.A., Japanese Language & Culture, 2003
Phi Beta Kappa

EXPERIENCE

| | |
|---|---|
| **Stebner & Associates,** San Francisco, CA<br>*Associate Attorney* | 12/2011-Present |
| **Stebner & Associates,** San Francisco, CA<br>*Law Clerk* | 8/2010-12/2011 |
| **2010 SFTLA Trial Advocacy Fellow,** San Francisco, CA<br>*Stebner & Associates, Arns Law Firm, and Dolan Law Firm*<br>*Law Clerk* | 5/2010-8/2010 |
| **Asian Law Caucus,** San Francisco, CA<br>*Law Clerk* | 5/2009-8/2009 |
| **San Francisco Superior Court, ACCESS Center,** San Francisco, CA<br>*Volunteer Extern and Superior Court Liaison* | 9/2008-5/2009 |
| **Huckleberry Youth Programs,** San Francisco, CA<br>*Executive Assistant and Board Liaison* | 10/2005-7/2008 |
| **Private Tutor in English/Japanese Literature and College Writing,** Berkeley, CA | 4/2003-10/2005 |
| **International Computer Science Institute (ICSI),** Berkeley, CA<br>*Research Assistant, FrameNet Project on Semantics* | 5/2002-8/2002 |

# EXHIBIT
# 4

Karman Guadagni
STEBNER AND ASSOCIATES
A Professional Law Corporation

**Contact Information**

Office:
>870 Market Street, Suite 1212
>San Francisco CA 94102
>415-362-9800
>415-362-9801 fax

**Education**

University of California, Hastings School of Law, 2009.
>Juris Doctor.

University of Oregon, Eugene, Oregon, 2003.
>Bachelor of Arts- Journalism
>Minor in Spanish, Study-abroad in Gijon, Spain
>Honors: Phi Beta Kappa, Golden Key Society, Kappa Tau Alpha, National Society of Collegiate
>Honors, Dean's Scholar

**Licenses**

Currently licensed to practice in California.

**Professional Experience**

Stebner and Associates, San Francisco, California.
>Attorney, 2009-Present
>Represent plaintiffs in elder abuse, medical malpractice and other civil litigation with emphasis on
>health care.
>Law clerk, September 2006-December 2009
>Legal writing and research, in addition to medical record review and working with clients in elder abuse,
>medical malpractice and other civil litigation.

Levy, Ram & Olson, San Francisco, California
>Law clerk, June 2008-August 2008
>Legal writing and research on class action and First Amendment issues, as well as general research on
>defective products.

First Amendment Project, Oakland, California
>Intern, June 2007-August 2007
>Legal writing and research on First Amendment issues, including anti-SLAPP, defamation and privilege
>laws.

Women's Initiative, San Francisco, California
>Volunteer Writer, 2005

Eugene Weekly, Eugene, Oregon
    Freelance Writer, January 2004-May 2004
    Pitched, wrote and edited various articles for weekly newspaper.
    Editorial Intern, August 2003-January 2004
    Pitched, researched and wrote several short news articles for weekly newspaper.

**Memberships**

San Francisco Trial Lawyers Association
    Women's Caucus
    New Lawyer's Division

Consumer Attorneys of California

Queen's Bench
    Work/Life Balance/Employment Committee Co-chair

**Speaking Engagements:**

Med School for Lawyers- Bed Sores and Hospital Infections (Kathryn Stebner and Karman Ratliff Guadagni)- webinar, March 3, 2011.

Medicare Liens and Standing in Survivorship Actions, California Advocates for Nursing Home Reform Conference, November 16, 2012.

Everything You Need to Know About Elder Abuse Cases in 15 Minutes- San Francisco Trial Lawyers Association Tahoe Ski Seminar, February 2, 2013.

**Publications:**

*"Standing Issues in Wrongful Death Cases Based on Elder Abuse,"* Legal Network News, California Advocates for Nursing Home Reform, Winter 2012.

*"Follow the Money Trail – Holding Corporate Owners of RCFEs Directly Liable as Licensees"*, Legal Network News, California Advocates for Nursing Home Reform, Fall, 2013

Karman Guadagni
Page 2 of 2

Ex. C - Notice of Lodgment

# EXHIBIT
# 5

# Carnes v. Atria Senior Living| Graphs of Attorney Work Hours
## Stebner and Associates

### CHART - ALLOCATION SUMMARY OF KATHRYN STEBNER'S HOURS

| TOTAL HOURS | Research / Investigation / Memos | Discovery / Doc. Rev. & Org. | Mtgs & Corr. With Co-Counsel | Corr. with Plaintiffs | Corr. with Experts / Witnesses | Pleadings / Motions / Other Court Filings & Prep | Court Apps. & Prep | Mediation / Settlement Negs. & Prep | Mtgs. & Corr. With Defs. |
|---|---|---|---|---|---|---|---|---|---|
| 467.4 | 26.3 | 150.2 | 64.4 | 15.8 | 49.5 | 37.8 | 11.4 | 65.2 | 46.8 |
| | 6% | 32% | 14% | 3% | 11% | 8% | 2% | 14% | 10% |



# EXHIBIT
# 6

# Carnes v. Atria Senior Living| Graphs of Attorney Work Hours
## Stebner and Associates

### CHART - ALLOCATION SUMMARY OF SARAH COLBY'S HOURS

| TOTAL HOURS | Research / Investigation / Memos | Discovery / Doc. Rev. & Org. | Mtgs & Corr. With Co-Counsel | Corr. with Plaintiffs | Corr. with Experts / Witnesses | Pleadings / Motions / Other Court Filings & Prep | Court Apps. & Prep | Mediation / Other Settlement Negs. & Prep | Mtgs. & Corr. With Defs. |
|---|---|---|---|---|---|---|---|---|---|
| 743.8 | 96.5 | 278.8 | 41.2 | 42.9 | 29.7 | 137.2 | 4.1 | 88.0 | 25.4 |
| | 13% | 37% | 6% | 6% | 4% | 18% | 1% | 12% | 3% |



# EXHIBIT
# 7

# Carnes v. Atria Senior Living| Graphs of Attorney Work Hours
## Stebner and Associates

### CHART - ALLOCATION SUMMARY OF GEORGE KAWAMOTO'S HOURS

| TOTAL HOURS | Research / Investigation / Memos | Discovery / Doc. Rev. & Org. | Mtgs & Corr. With Co-Counsel | Corr. with Plaintiffs | Corr. with Experts / Witnesses | Pleadings / Motions / Other Court Filings & Prep | Court Apps. & Prep | Mediation / Settlement Negs. & Prep | Mtgs. & Corr. With Defs. |
|---|---|---|---|---|---|---|---|---|---|
| **415.7** | 31.5 | 229.5 | 64.4 | 5.1 | 27.0 | 14.9 | 0.7 | 13.8 | 28.8 |
| | 8% | 55% | 15% | 1% | 6% | 4% | 0% | 3% | 7% |



# EXHIBIT
# 8

Stebner and Associates | Summary of Lodestar and Expenses (rev. 5/10/2016)

| Name | Hours | Rate | Value |
|---|---|---|---|
| Kathryn A. Stebner (Principal) | 467.4 | $750.00 | $350,550.00 |
| Sarah Colby (Of Counsel until 3/31/16) | 743.8 | $575.00 | $427,685.00 |
| Karman Guadagni (Associate) | 9.3 | $375.00 | $3,487.50 |
| George Kawamoto (Associate) | 415.7 | $350.00 | $145,495.00 |
| Legal Assistants | 13.4 | $150.00 | $2,010.00 |
| **Total Lodestar** | 1,649.6 | | **$929,227.50** |
| **Total Expenses** | | | **$18,320.01** |
| **Total Lodestar and Expenses** | | | **$947,547.51** |

# EXHIBIT
# 9

| Date | Source Name | Memo | Amount |
|------|-------------|------|--------|
| 05/01/2014 | Sarah Colby | 4/8 Mileage reimb., $5 Toll to meeting | 45.26 |
| 06/12/2014 | US DISTRICT COU... | Filing Fee | 400.00 |
| 07/03/2014 | One Legal LLC | Atria -#10032152 Summons-Decl. Julia Clegg | 36.95 |
| 07/17/2014 | Spincycle Legal Ser... | 6/17 to OAK USDC. Inv #9133 | 120.00 |
| 08/07/2014 | Pacer Service Center | Q2 Charges-Atria | 22.00 |
| 08/15/2014 | LexisNexis-online | Carnes vs. Atria #1407429005 | 18.13 |
| 08/15/2014 | ATT - New Conf | 7/29 Atria | 33.55 |
| 08/26/2014 | Kawamoto, George | Carnes:8/20 mtg. in San Carlos-Mileage, Parking | 62.82 |
| 09/15/2014 | Spincycle Legal Ser... | 8/8 to USDC/ SF | 35.00 |
| 09/15/2014 | ATT - New Conf | 8/5 Atria | 35.27 |
| 09/16/2014 | Clerk of the Court - ... | Sacramento Court-Name Search | 1.00 |
| 09/16/2014 | LA Superior Court | Civil Party Name Search | 4.75 |
| 09/16/2014 | Courtweb1 | Riverside Courts-Name Search | 3.50 |
| 10/09/2014 | LexisNexis-online | /Inv #1409427982 | 153.18 |
| 10/16/2014 | ATT - New Conf | 9/15 Atria | 24.38 |
| 11/06/2014 | James Pence (Court Rpt.) | Transcript of proceedings of 11/6/14 hearing | 94.25 |
| 11/17/2014 | Federal Express | 2-844-97748 11/6 to USDC | 52.38 |
| 12/01/2014 | Expert | Research 3.5 hrs: Expert witness-care review mgmt. | 612.50 |
| 12/15/2014 | LexisNexis-online | Inv #1410427531 | 125.09 |
| 12/15/2014 | LexisNexis-online | Inv #1411426982 | 254.06 |
| 01/02/2015 | Expert | Research 1 hr.: Expert witness-care review | 175.00 |
| 01/08/2015 | LexisNexis-online | Inv #1412426533 | 239.42 |
| 01/15/2015 | Pacer Service Center | Inv# 3430204-Q42014 10/1-12/31 Court Records | 13.70 |
| 01/19/2015 | ATT - New Conf | 12/3 Atria conference call re amending complaint,TCF w/ C... | 7.99 |
| 02/09/2015 | LexisNexis-online | Inv #1501425869 | 74.86 |
| 03/10/2015 | SFMTA | Fare to/from CMC at Fed. District Court | 7.00 |
| 03/12/2015 | Federal Express | 3/3 #2-959-71937 | 18.18 |
| 04/07/2015 | LexisNexis-online | Carnes :Inv #1503425022/March | 97.08 |
| 04/14/2015 | Expert | Economic expert - retainer fee | 10,000.00 |
| 04/23/2015 | Sarah Colby | 11/12 Mileage, Parking- mtg. w/ Client | 47.71 |
| 04/23/2015 | Sarah Colby | 11/25 Mileage Mtg. w/Witness | 35.28 |
| 04/27/2015 | Schneider, Wallace ... | Relativity Costs-Feb & March 2015 | 115.15 |
| 05/01/2015 | Pacer Service Center | Q1 2105 Charges | 21.60 |
| 05/07/2015 | Kawamoto, George | 4/21 Office Max- USB Thumb Drives to send DSS docs to co-counsel | 23.90 |
| 05/07/2015 | Kawamoto, George | 4/27 Mileage, Toll to Sacramento- Mtg w/Witness | 139.40 |
| 05/07/2015 | Federal Express | Inv# 5-018-62015 4/22 docs to Mckenna, et al.; Thamer,et, al. | 63.82 |
| 05/21/2015 | Kawamoto, George | 5/6 Mileage, Parking, to DSS(San Bruno) CCL records | 46.90 |
| 05/21/2015 | Kawamoto, George | State of CA HHSA-CCL records copy costs | 30.00 |
| 06/09/2015 | Parking Garage | 5/19 Civic Ctr Parking - Mtg w/Witness | 27.00 |
| 06/10/2015 | Secretary of State | WA. gov | 15.00 |
| 06/10/2015 | Secretary of State | WA. gov | 35.00 |
| 06/10/2015 | Secretary of State | WA. gov | 15.00 |
| 06/15/2015 | LexisNexis-online | Carnes Inv #1505377335 May | 186.00 |
| 07/10/2015 | Parking Garage | 6/8 65 City Parking | 14.00 |
| 07/10/2015 | Parking Garage | 6/10 Parking Ellis O"Farrell | 26.00 |
| 08/13/2015 | Federal Express | # 5-119-86035  7/31 documents to M. Johnson, Dentons | 48.38 |
| 08/13/2015 | LexisNexis-online | Atria /Inv #1507376250 | 289.24 |
| 09/14/2015 | Sarah Colby | 7/2 Coding Mtg. w/ co-counsel - Parking | 12.00 |
| 09/17/2015 | LexisNexis-online | Carnes Inv #1508375628 Aug | 146.23 |
| 10/05/2015 | Schneider, Wallace ... | Inv # Aug15-Stebner-Carnes Relativity Costs | 466.48 |
| 10/09/2015 | P. A. Med. F... | 10/1 Medical Records | 96.80 |
| 10/09/2015 | P. A. Med. F... | 10/2 Medical Records | 96.80 |
| 10/12/2015 | LexisNexis-online | #1509375274-Atria  -Sept. | 188.71 |
| 10/19/2015 | Federal Express | #5-193-17035 (Atria) 10/13 to Schneider, Wallace, Cotrell | 19.22 |
| 10/22/2015 | Sarah Colby | 9/24 Parking at SWCK- Doc Production | 15.00 |

Ex. C - Notice of Lodgment

Page 130

STEBNER AND ASSOCIATES, INC.
**Client Ledger**

| 10/22/2015 | Sarah Colby | 9/29 Parking at SWCK- co-co mtg. | 15.00 |
|---|---|---|---|
| 11/04/2015 | Parking Garage | 11/2 Parking - Mtg. Impark/Towers, Emeryville | 15.00 |
| 11/11/2015 | Taxi | Yellow Cab - Mtg. | 12.55 |
| 11/12/2015 | LexisNexis-online | October 1510374641 | 180.87 |
| 11/12/2015 | ATT - New Conf | #511-024309 10/2, 10/6, 10/7,10/13, 10/26 | 217.35 |
| 11/17/2015 | Parking Garage | JAMS Mediation/Embarcadero Ctr | 34.00 |
| 11/19/2015 | Sarah Colby | 10/29  parking - Doc Review @ swck | 15.00 |
| 11/19/2015 | Sarah Colby | 10/30  parking Doc Review @ swck | 30.00 |
| 12/07/2015 | Sarah Colby | Parking 11/2, 11/4, 11/19, 11/30 @ swck Mediation brief, doc review ... | 69.50 |
| 12/07/2015 | LexisNexis-online | Carnes-Inv #1511374050 Nov. | 288.05 |
| 12/08/2015 | Ellis O'Farrell Parki... | Parking | 11.00 |
| 12/15/2015 | Parking Garage | Atria Case Management Conference | 12.00 |
| 12/17/2015 | ATT - New Conf | #512-024047  11/2, 11/9,  11/11 Atria Cals | 79.75 |
| 01/11/2016 | LexisNexis-online | Atria Inv #1512373481 Dec | 325.07 |
| 01/14/2016 | Sarah Colby | 12/1, 12/7, 12/8 SWCK/parking for Depo. Prep | 45.00 |
| 02/01/2016 | Schneider, Wallace ... | Relativity 12/15-#Sept-Nov15-Stebner Carnes | 1,469.85 |
| 02/01/2016 | Schneider, Wallace ... | Relativitity 1/15#December15-Stebner-Carnes | 510.52 |
| 02/19/2016 | ATT - New Conf | 1/8  Atria | 16.14 |
| 03/14/2016 | LexisNexis-online | Atria #1602372262 Feb | 7.64 |

**TOTAL**

**18,320.01**

# Exhibit D

| | |
|---|---|
| Kathryn A. Stebner (CSB# 121088)<br>Sarah Colby (CSB# 194475)<br>George Kawamoto (CSB# 280358)<br>**STEBNER AND ASSOCIATES**<br>810 Market Street, Suite 1212<br>San Francisco, CA 94102<br>Tel:   (415) 362-9800<br>Fax:   (415) 362-9801 | Guy B. Wallace, State Bar No. 176151<br>Mark T. Johnson, State Bar No. 76904<br>Jennifer A. Uhrowczik, State Bar No. 302212<br>**SCHNEIDER WALLACE**<br>**COTTRELL KONECKY**<br>**WOTKYNS, LLP**<br>2000 Powell Street, Suite 1400<br>Emeryville, CA  94608<br>Tel:   (415) 421-7100<br>Fax:   (415) 421-7105 |
| Michael D. Thamer (CSB # 101440)<br>**LAW OFFICES OF MICHAEL D. THAMER**<br>12444 South Highway 3<br>Post Office Box 1568<br>Callahan, CA 96014-1568<br>Tel:   (530) 467-5307<br>Fax:   (530) 467-5437 | W. Timothy Needham<br>**JANSSEN MALLOY LLP**<br>730 Fifth Street<br>Eureka, CA  95501<br>Tel:   (707) 445-2071<br>Fax:   (707) 445-8305 |
| Robert S. Arns (CSB# 65071)<br>**THE ARNS LAW FIRM**<br>515 Folsom Street, 3rd Floor<br>San Francisco, CA 94105<br>Tel:   (415) 495-7800<br>Fax:   (415) 495-7801 | Christopher J. Healey, State Bar No. 105798<br>**DENTONS US LLP**<br>600 West Broadway, Suite 2600<br>San Diego, CA  92101-3372<br>Tel:   (619) 236-1414<br>Fax:   (619) 645-5328 |

Attorneys for Plaintiff

### UNITED STATE DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS CARNES, by and through his guardian ad litem, JULIANA CHRISTINE CLEGG, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>ATRIA SENIOR LIVING, INC. and DOES 1 through 100,<br><br>        Defendants. | Case No.: 3:14-cv-02727-VC<br><br>**CLASS ACTION**<br><br>**DECLARATION OF W. TIMOTHY NEEDHAM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>**Date:**<br>**Time:**<br>**Dept.:** |

1

DECLARATION OF W. TIMOTHY NEEDHAM IN
SUPPORT OF AWARD MOTION FOR ATTORNEYS'
FEES AND COSTS

I, W. Timothy Needham hereby declare:

1. I am a partner at the law firm of Janssen Malloy LLP, co-counsel of record for Plaintiff Class in the above-referenced matter. Except as noted below, I have personal knowledge of the matter set forth in this declaration, and if called as a witness, could and would competently testify thereto.

## CLASS ACTION EXPERIENCE

2. I graduated from the University of California, Davis in 1980 and have been licensed to practice law for the past thirty-five years. I am a member of the American Board of Trial Advocates and have tried over fifty jury trials to verdict as well as numerous court trials and binding arbitrations. I am a member of both the American Association for Justice and the Consumer Attorneys of California (Board of Directors 2000-2004). I have been involved as counsel in numerous class actions, including *Lincoln Savings and Loan litigation, In re Cosmetics, In re Air Cargo, In re Insurance Broker, DRAM Litigation, Biel v. Sun Valley Bulb Farm,* and *In re Insurance Broker litigation.*

3. For over the last twenty years I have also been attorney for plaintiffs in a number of individual cases and class actions against nursing homes and assisted living centers. I have also been counsel in a number of reported cases in elder law, including *Wehlege v. EmpRes Healthcare Inc., (N.D. Cal. 2011) 791 F. Supp.2d 774; Welsh v. Kindred Healthcare (N.D. Cal. 2011) 798 F. Supp. 2d 1073; Monschke v. Timber Ridge Assisted Living LLC (2016) 244 CA 4th 583; Fitzhugh v. Granada Health Care and Rehabilitation Center LLC (2007) 150 Cal.App.4th 469* and *Shuts v. Covenant Holdco LLP (2012) 208 Cal.App.4th 609.*

4. I was also co-trial counsel in the class action entitled *Lavender v. Skilled Health Care Group* which, after a six month trial, resulted in a $670 million verdict against the Skilled Nursing Home chain.

5. In 2010 I was recognized as California Lawyer of the Year by California Lawyer magazine in the area of elder law. In 2011 I was also honored to receive recognition as Trial Lawyer of the Year by Public Justice and in 2012 Consumer Attorney of the Year by Consumer Attorneys of California.

DECLARATION OF W. TIMOTHY NEEDHAM IN
SUPPORT OF AWARD MOTION FOR ATTORNEYS'
FEES AND COSTS

6.  One of my special areas of interest is alter ego/single enterprise issues and I have written articles on that issue including "Liability of Parent and Sister Corporations, Getting the Family to the Table" for Forum Magazine

7.  I have also been requested to speak regarding nursing home litigation for the AAJ Nursing Home Litigation Group and the Consumer Attorneys of California.

## WORK PERFORMED

8.  When we organized the prosecution of this case it was structured so that there would be little overlap of duties.    Our main assignment was to run ads and obtain potential witnesses and to review documents provided by defendants and the Department of Social Services.

9.  Since June of 2014 my firm has expended time and costs in the above matter, including the following areas outlined below:

a.  Work on pleadings, including assisting in drafting complaint, opposition to dismiss and researching arbitration issues (24.2 hours);

b.  Run ads to obtain witnesses regarding Defendants' misrepresentations and conduct and respond to ad calls from numerous witnesses regarding the staffing levels and conditions at the Atria homes (88.4 hours);

c.  Review documents provided by Defendants during the course of discovery (141.7 hours);

d.  Attend organizational meetings and coordinate case (15.6 hours);

e.  Prepare and attend mediation (13 hours);

f.  Miscellaneous additional duties including setting up website, lining up court reporters, reviewing and responding to emails, document organization, etc. (10.4 hours).

| Investigation & Witness Interviews | Document Review | Prepare & Review Pleadings | Attend Meetings | Mediation | Misc. |
|---|---|---|---|---|---|
| 88.4 | 141.7 | 24.2 | 15.6 | 13 | 10.4 |
| 30% | 48% | 8% | 5% | 5% | 4% |

//

//

//

3

10. A graph of our time is shown below:



11. Attached hereto as **Exhibit A** is a summary of my time, regular hourly rate and costs incurred in this matter as well as the time and regular hours of my staff.  The total attorney loadstar is $101,127.50.  The attached rates have been approved by the courts in *Hernandez v. Golden Gate Equity Holdings LLC, et al.* San Francisco Sup. Ct. Case No. CGC-10-505288

DECLARATION OF W. TIMOTHY NEEDHAM IN
SUPPORT OF AWARD MOTION FOR ATTORNEYS'
FEES AND COSTS

(nursing home class action); *Walsh v. Kindred, et al.* U.S. Dist. N. Dist. 3:11-C0050-JSW (nursing home class action) and *Valentine v. Thekkek, et al.* Alameda Superior Court Case No. RG-10546266.  *Correa v. SnF Management Company LLC* Alameda Superior Court No. RG13664498; and (nursing home class action) and *Winans v. Emeritus Corp.* U.S. Dist Ct N. Dist. 3:13-cv-03962 (nursing home class action.)

12. Copies of my detailed billing records as well as the detailed billing records and regular fees of my paralegal, Karen Ellis, will be made available to the Court for in camera inspection at the time of the hearing upon request.

13. Separately, my office incurred unreimbursed costs of $14,626.20, the majority of which were for the costs of ads to locate witnesses.   A complete breakdown of these costs is attached as **Exhibit B**.  The payments to Schneider Wallace were for reimbursement of my office share of ESI research costs.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on May 11, 2016 at Eureka, California.

W. Timothy Needham, Declarant

5

DECLARATION OF W. TIMOTHY NEEDHAM IN
SUPPORT OF AWARD MOTION FOR ATTORNEYS'
FEES AND COSTS

## EXHIBIT A

| NAME | TOTAL HOURS | RATE | TOTAL |
|------|-------------|------|-------|
| W. Timothy Needham | 63.7 | $775 | $49,522.50 |
| Megan Yarnall | 93.80 | $300 | $28,140.00 |
| Karen O. Ellis | 135.2 | $175 | $23,395.00 |
| Marla Zumwalt | .4 | $175 | $70.00 |
| **TOTAL:** | **282.10** | | **$101,127.50** |
| Unreimbursed costs | | | $14,626.20 |
| **TOTAL** | | | **$115,753.70** |

**EXHIBIT B**

Costs Advanced

| | | |
|---|---|---|
| 10/31/14 | $ .80 | Pacer - Court Documents |
| 11/26/14 | $ 1,014.30 | Press Democrat & Angus Courier - Ads |
| 11/26/14 | $ 1,150.00 | Orange County Reporter - Ads |
| 11/26/14 | $ 2,490.00 | Bay Area News Group - Ads |
| 11/26/14 | $ 1,566.18 | The Stockton Record - Ads |
| 11/26/14 | $ 647.50 | Chico Enterprise-Record - Ads |
| 11/26/14 | $ 2,346.76 | Sacramento Bee - Ads |
| 11/26/14 | $ 750.00 | The Press Enterprise - Ads |
| 12/10/14 | $ 71.02 | GoDaddy.com - 3-year Domain Name Registration |
| 4/15/15 | $ 115.15 | Schneider Wallace |
| 4/30/15 | $ 50.30 | Pacer - Court Documents |
| 5/20/15 | $ 77.00 | Thomson Reuters-West |
| 5/31/15 | $ 20.50 | Pacer - Court Documents |
| 9/30/15 | $ 3.00 | Pacer - Court Documents |
| 10/14/15 | $ 466.48 | Schneider Wallace |
| 11/16/15 | $ 578.20 | Airfare to San Francisco |
| 11/25/15 | $ 48.00 | Bart, Meal & Parking Expenses - San Francisco |
| 12/22/15 | $ 450.64 | Hotel - San Francisco |
| 12/22/15 | $ 1,469.85 | Schneider Wallace |
| 1/27/16 | $ 510.52 | Schneider Wallace |
| 5/11/16 | $ 800.00 | Declaration of Richard Pearl |
| **TOTAL** | **$14,626.20** | |



1  Michael D. Thamer, State Bar No. 101440
   **LAW OFFICES OF MICHAEL D. THAMER**
2  Old Callahan School House
   12444 South Highway 3
3  Post Office Box 1568
   Callahan, California 96014-1568
4  Tel:  (530) 467-5307
   Fax:  (530) 467-5437
5

6  Attorneys for Plaintiffs and the Proposed Class

7

8                          **UNITED STATES DISTRICT COURT**

9                         **NORTHERN DISTRICT OF CALIFORNIA**

10

11 THOMAS CARNES, by and through his guardian       Case No.: 3:14-cv-02727-VC
   ad litem, JULIANA CHRISTINE CLEGG, on
   behalf of himself and all others similarly situated,   **CLASS ACTION**
12
                                                    **DECLARATION OF MICHAEL D.**
13         Plaintiff,                               **THAMER IN SUPPORT OF**
                                                    **PLAINTIFFS' MOTION FOR**
14 vs.                                              **ATTORNEYS' FEES, COSTS, AND**
                                                    **SERVICE AWARDS**
15 ATRIA SENIOR LIVING, INC. and DOES 1
   through 100,
                                                    Date:  June 30, 2016
16         Defendants.                              Time:  10:00 a.m.
                                                    Place:  Courtroom 4
17                                                  Judge: Hon. Vince Chhabria

18

19

20

21

22

23

24

25

26

27

28
   ─────────────────────────────────────────────────────────────
   DECLARATION OF MICHAEL D. THAMER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS'
   FEES, COSTS, AND SERVICE AWARDS
   *Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

I, Michael D. Thamer, hereby declare:

1.      I am an attorney duly licensed to practice before all the courts of the State of California and am a member in good standing of the State Bar of California.  I am a solo practitioner, and counsel for Plaintiffs in this action.  I am submitting this Declaration in support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards.  I have personal knowledge as to the facts stated herein and, if called upon to do so, could and would competently testify thereto.

2.      I have been practicing law for a total of 35 years, have tried over 50 jury trials to verdict in numerous state and federal venues throughout California, and have prosecuted hundreds of elder and dependent adult abuse cases and other related tort actions in twenty six (26) counties in California.  In 2011, I received the National Trial Lawyer of the Year award from The Public Justice Foundation, as well as the Consumer Attorney of the Year award from the Consumer Attorneys of California.  In 2010, I was named California Lawyer of the Year in Elder Law by California Lawyer magazine.  I was lead trial counsel responsible for voir dire, opening statement, closing argument, and significant witness examination in the class action matter entitled *Lavender v. Skilled Healthcare Group, Inc.* which resulted in a $677 million dollar jury verdict after a seven month jury trial, as well as the trial attorney in *In re Conservatorship of Gregory*, 80 Cal. App. 4th 514 (2000), which resulted in a $95 million dollar jury verdict in an elder abuse action. I have significant class action litigation experience, generally in the area of consumer rights and specifically in the area of understaffing in nursing homes.  I have lectured on several occasions on class action law and the use of Health & Safety Code section 1430(b), Business & Professions Code section 17200 and the CLRA in Elder Abuse actions.

3.      My work on behalf of victims of elder and dependent adult abuse and advocacy groups has been extensively featured in numerous state and national media sources, including CBS '60 Minutes,' CBS Evening News, Time Magazine, Wall Street Journal, Los Angeles Times, San Francisco Chronicle, Sacramento Bee, California Law Business Journal, and other news and media sources.  I have been an invited lecturer for the University of Southern California, American Trial Lawyers Association, Consumer Attorneys of California, California Healthcare Association,

---

1

DECLARATION OF MICHAEL D. THAMER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, COSTS, AND SERVICE AWARDS
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

1   California Association of Healthcare Facilities, National Consumer Voice for Quality Long-Term

2   Care and other groups and organizations.

3          4.      Attached hereto as Exhibit 1 is a true and correct copy of my curriculum vitae.

4          5.      Along with several co-counsel in this case, I have represented the plaintiffs in class

5   actions filed against skilled nursing facility chains alleging system-wide violations of minimum

6   nurse staffing requirements in California.  One of these actions, *Wehlage v. EmpRes Healthcare,*

7   *Inc., et al.*, Case No. 10-05839 CW, was settled in 2013, and had been pending in front of the

8   Honorable Claudia Wilken in the Northern District of California.  Another action, *Walsh v.*

9   *Kindred Healthcare, et al.*, Case No. 11-00050 JSW, was settled in 2013, and had been pending in

10  front of the Honorable Jeffrey S. White in the Northern District of California.  Six other cases,

11  *Valentine v. Thekkek Health Services, Inc.*, No. RG-10546266 in Alameda County Superior Court;

12  *Montreuil v. The Ensign Group, Inc.*, No. BC449162 in Los Angeles County Superior Court;

13  *Hernandez v. Golden Gate Equity Holdings, LLC*, No. CGC-10-505288 in San Francisco County

14  Superior Court; *Shuts v. Covenant Holdco LLC*, No. RG 10551807 in Alameda County Superior

15  Court; *Dalao v. LifeHouse Holdings, LLC*, No. RG12660602 in Alameda County Superior Court;

16  *Correa v. SnF Management Company, LLC*, No. RG-13664498 in Alameda County Superior

17  Court; and *Regina v. Hycare, Inc.* No. RG-12647573 in Alameda County Superior Court, have also

18  now settled.  Currently I am an attorney of record in three additional complex litigation actions

19  (including this immediate matter) alleging misrepresentations at California assisted living

20  facilities.  I am currently spending more than 90% of my time on these complex cases.

21         6.      My co-counsel and I represented the Plaintiffs in the instant class action based on

22  our concern that Defendants misled residents, family members, and the general public to believe

23  that resident assessments, conducted at move-in and thereafter during each resident's stay, would

24  be used to determine staffing at Defendant's facilities in California but failed to disclose that

25  staffing was determined by labor budgets only.  Plaintiffs asserted claims for damages and other

26  relief under California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

27  ("CLRA"), and Financial Elder Abuse statute,  Cal. W&I Code § 15610.30.

28                                                    2

DECLARATION OF MICHAEL D. THAMER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, COSTS, AND SERVICE AWARDS
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

7.      Before the action was filed, the attorneys who associated together to prosecute the action met and discussed efficient ways to divide the work and allocate resources so as to avoid unnecessary overlap and duplication of efforts, costs and expenses.  To ensure that the work was allocated and completed efficiently, we participated in ongoing weekly phone conferences and discussed work in progress, assignments and best approaches.  Before filing the initial complaint, Plaintiffs' counsel also reviewed court filings, deposition testimony, and exhibits from other lawsuits against Atria; Department of Social Services' files for Defendants' facilities in California; and Atria' website and other marketing materials.  Plaintiffs' Counsel also interviewed former employees, residents, family members of residents, and consulted with multiple experts on assisted living facilities.

8.      I, along with my staff, have tried our best to keep accurate time records, and the time recorded in this matter is an accurate depiction of the time and work described.  My fees are fully documented by detailed, contemporaneous and/or recreated time records describing every hour or fraction thereof of time worked for which compensation is sought.  If there was any question about the time I worked, but no entry created at or near the event in question, I always erred on the smallest time the task required if written evidence existed to support my entry, or omitted the time entry in its entirety.  If I had a recollection of spending time working on the matter, but nothing in writing evidencing the time spent, it was likewise omitted.  In addition, for all of the hours worked, including by me, I exercised my discretion to cut hours where I felt that the time was non-compensable or exceed what was reasonably necessary in my judgment to accomplish the task in question.  My records do not fully capture all of the time I spent on the case, which probably exceeds the recorded time by at least 25 percent.

9.      The rates charged for hours worked by me and my staff are squarely in line with the prevailing rates in the Northern District of California, and have been approved by courts.  Rates similar to my office's rates in this case were previously approved by Northern District of California Chief District Judge Claudia Wilken in *Wehlage v. EmpRes Healthcare, Inc. et al*. (Case No. C10-05839 CW, "The billing rates used by Class Counsel to calculate their lodestar are

DECLARATION OF MICHAEL D. THAMER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, COSTS, AND SERVICE AWARDS
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

1   reasonable and in line with the prevailing rates in this District for personnel of comparable
2   experience, skill, and reputation." Order Granting Class Counsel's application for Attorneys' Fees
3   and Expenses and for Service Awards, 2:26-28), by U.S. District Judge Haywood Gilliam in
4   *Winans v. Emeritus Corporation* (N.D. Cal. Jan. 19, 2016, case no. 3:13-cv-03962-HSG, dkt. 133),
5   and by Northern District of California District Judge Jeffrey S. White in *Walsh v. Kindred*
6   *Healthcare, et al.* (Case No. 11-00050 JSW, Order Granting Motion for Fees, Costs and Incentive
7   Awards).  Rates similar or equal to my office's rates in this case were previously approved in
8   California State Court by Judge Robert Freedman in *Valentine v. Thekkek Health Services, Inc., et.*
9   *al.* (Alameda County Superior Court, Case No. RG-10546266); by Judge Wynne Carvill in *Shuts*
10  *v. Covenant Holdco LLC* (Alameda County Superior Court, Case No. RG 10551807), *Dalao v.*
11  *LifeHouse Holdings, LLC* (Alameda County Superior Court, Case No. RG12660602), and *Correa*
12  *v. SnF Management Company, LLC* (Alameda County Superior Court, Case No. RG-13664498);
13  by Judge Jane Johnson in *Montreuil v. The Ensign Group, Inc.* (Los Angeles County Superior
14  Court, Case No. BC449162); by Judge Richard Kramer in *Hernandez v. Golden Gate Equity*
15  *Holdings, LLC* (San Francisco County Superior Court, Case No. CGC-10-505288); and by Judge
16  George Hernandez, Jr., in *Regina v. Hycare, Inc.*, Alameda County Superior Court, Case No. RG-
17  12647573.

18      10.     My hours in this case are 283.75.  My billing rate is $775 per hour.  My lodestar is
19  $219,906.25.

20      11.     A breakdown of the hours I spent, as co-lead counsel with trial preparation duties,
21  working in this matter is as follows:

22          a.      150.75 hours, or 53% of my time, was spent reviewing and overseeing the
23  work associated with summarizing Department of Social Services ("DSS") files for Atria's
24  California facilities and nearly 600,000 pages of documents produced by Defendant; helping to
25  prepare and review written discovery requests and responses from Defendant; and preparing for
26  and attending the depositions of Defendant's witnesses;

27          b.      48.75 hours, or 17% of my time, was spent meeting, conversing and/or
28
                                                    4

DECLARATION OF MICHAEL D. THAMER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, COSTS, AND SERVICE AWARDS
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

1  corresponding with my co-counsel.  This work involved numerous discussion with the young staff
2  members who were assigned to review and summarize tens of thousands of DSS files as part of my
3  oversight responsibilities, reporting to co-counsel evidence discovered by me and others from
4  third-party sources that was germane to pleading allegations, class certification issues, and
5  prosecution strategies, participating in litigation strategy meetings and phone conferences, and
6  phone conversations where assignments, case-updates, and to-do items were discussed and
7  determined;

8          c.      42.75 hours, or 15% of my time, was spent preparing for, and attending,
9  mediation the mediation at JAMS San Francisco with Judge Rebecca Westerfield (Ret.) and
10  participating in additional settlement discussions;

11          d.      14.0 hours or 4%, was spent working on discrete tasks for pleadings,
12  motions and other court filings when requested by co-counsel who had primary responsibilities for
13  these assignments;

14          e.      11.5 hours, or 2% of my time was spent preparing for and interviewing ex-
15  employees and other witnesses in person and/or telephonically;

16          f.      6.25 hours, or 2% of my time was spent corresponding with defense
17  counsel;

18          g.      4.75 hours, or 2% of my time was spent locating and working with expert
19  and staffing consultants to develop, assemble, evaluate and marshal evidence of Defendants'
20  misrepresentations and the implications and consequences of same;

21          h.      4.25 hours, or 1% of my time, was spent helping prepare co-counsel for
22  court hearings; and

23          i.      A small amount of time, 0.75 hours, or less than 1% of my time, involved
24  doing legal research on issues involved with opposing motions brought by Defendants.

25      12.     My staff spent significant time on this matter, and kept contemporaneous records of
26  the time worked. I closely worked with them on this case and I am familiar with the tasks they
27  worked on and the time it took to accomplish those tasks.

28

5

DECLARATION OF MICHAEL D. THAMER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, COSTS, AND SERVICE AWARDS
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

13.     Anne Hilton, my Office Manager, worked 80.5 hours on this matter reviewing and summarizing the California Department of Social Services' files for Defendants' facilities in California, assembling records of costs, and performing general file organization and case filing. Her billing rate is $150 and her lodestar is $12,075.00.

14.     Darby Hanna, my legal assistant, worked 4.5 hours on this matter reviewing and organizing the California Department of Social Services' files for Defendants' facilities in California, and performing general file organization and case filing. Her billing rate is $110 and her lodestar is $495.00.

15.     The total hours worked by all timekeepers at my firm on this matter are 368.8 hours. Multiplied by our respective billing rates at my firm, the lodestar for my firm on this matter comes to $232,476.25.

16.     Attached as Exhibit 2 is a summary of the time and hourly rates by timekeepers at my firm, as well as costs incurred by my firm in this matter. My firm maintains detailed timesheets which contain privileged, work product and proprietary information, but can be made available for the Court's review in camera upon request.

17.     Because of the tremendous work cases like this require, I consciously limited the number of cases my office took on during the pendency of litigation so I could be available to invest the time this action required. There were occasions when significant time and energy was spent on this case, including entire days participating in mediation, along with significant travel time.

18.     As this court understands, neither I, nor my co-counsel, have received any form of compensation for the hours we have worked on this case for approximately two years. Working without compensation on a large case for approximately two years has had a negative financial impact on the economic health of my practice. As a sole practitioner, I have no one to share the burden of such an endeavor, or to help cover overhead expenses until payment for my work is ultimately received. I am certain that I could have earned a significant amount of money in other, additional cases if I had not been involved in the instant action.

6

DECLARATION OF MICHAEL D. THAMER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

1        19.    As of April 27, 2016, my firm has incurred $3,977.14 in necessary out-of-pocket

2    litigation expenses in this matter. A true and correct report of the litigation costs incurred by my

3    firm to date is attached as Exhibit 3 to this Declaration. I exercised my discretion to cut litigation

4    costs and expenses that I felt were non-compensable. Specifically, I omitted $23.08 in expenses

5    incurred for meals while traveling for matters regarding this litigation. In my opinion, all costs and

6    expenses listed on Exhibit 3 were reasonably incurred for the prosecution of this lawsuit.

7        20.    I have carefully reviewed the terms of the Stipulation of Settlement entered into by

8    the parties to resolve this case. In my view, as a class action elder abuse attorney, the settlement is

9    fair, reasonable and in the best interests of the class, given the settlement benefits conferred and

10   risks of further litigation through trial and a potential appeal.

11       I declare under penalty of perjury under the laws of the State of California that the

12   foregoing is true and correct.

13       Executed on this _16th_ day of May 2016, at Callahan, California.

14

15

16

17

18                   Michael D. Thamer

19

20

21

22

23

24

25

26

27

28                                7

DECLARATION OF MICHAEL D. THAMER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, COSTS, AND SERVICE AWARDS
*Carnes, et al. vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

# EXHIBIT
# 1

# MICHAEL D. THAMER

Law Offices of Michael D. Thamer
Old Callahan School House
12444 South Highway 3 ♦ Post Office Box 1568
Callahan, CA  96014-1568
Telephone:  (530) 467-5307
Facsimile:  (530) 467-5437
mthamer@trinityinstitute.com

**EDUCATION**

J.D., Santa Clara University School of Law, 1981
B.S., Social Ecology, University of California, Irvine, 1978

**CAREER**

Law Offices of Michael D. Thamer  (Attorney at Law)  1991 – present

Hews, Munoz, Swift & Thamer  (Partner)  1985 – 1991

Orange County Public Defenders Office  (Deputy Public Defender)  1982-1985

**AWARDS**

National Trial Lawyer of the Year—2011
- Public Justice Foundation
Consumer Attorney of the Year—2011
- Consumer Attorneys of California
California Lawyer of the Year—2010 Elder Law
- California Lawyer Magazine

Martindale-Hubbell
AV-Preeminent

**APPOINTMENTS AND LECTURES**

Judge Pro Tem, Siskiyou County Superior Court
Lecturer for MCLE seminars on Legal Ethics
Court-Appointed Arbitrator in civil matters and attorney/client fee disputes
City Attorney, City of Etna (1992 through 1998)

Invited lecturer for University of Southern California, American Trial Lawyers Association, National
Association of Medicaid Fraud Control Units, Consumer Attorneys of California, California Healthcare

Association, California Association of Healthcare Facilities, and California Advocates For Nursing Home Reform.

**TRIAL PRACTICE**

Nationally-recognized trial attorney who has tried over 50 jury trials in state and federal courts, two of which were the largest verdicts in the nation at the time:

$677 Million Jury Verdict: *Lavender v. Skilled Healthcare Group, Inc.*
In 2010, as lead trial lawyer in the historic *Lavender v. Skilled Healthcare* class action lawsuit, obtained for 32 thousand plaintiff class members a jury verdict in excess of $670 million dollars after a seven month trial, as well as injunctions against Skilled Healthcare and its 23 subsidiary corporations requiring compliance with California's minimum staffing laws at 22 skilled nursing facilities.  Lavender is the largest verdict in the nation against a provider of skilled nursing services to the elderly

$95 Million Jury Verdict: *In re Conservatorship of Gregory*
Sole trial counsel in jury trial resulting in $94 million dollar punitive damage award in an elder abuse action against Beverly Enterprises, Inc. and its subsidiaries.  [(2000) 80 Cal.App.4th 514.]

Practice includes prosecution of complex civil consumer class actions, elder abuse, insurance bad faith, bad faith lending, product liability, legal negligence, medical negligence and serious injury matters, as well as defending individuals in significant criminal matters, including first degree murder charges.

**MEDIA COVERAGE**

Trial work has been featured in numerous state and national media sources, including  CBS '60 Minutes', CBS Evening News, Time Magazine, Wall Street Journal, Los Angeles Times, San Francisco Chronicle, Sacramento Bee, San Jose Mercury News, California Lawyer, California Law Business Journal, and Outside Magazine.

# EXHIBIT
# 2

# Law Offices of Michael D. Thamer, P.C.

Old Callahan School House
12444 South Highway 3
Post Office Box 1568
Callahan, CA 96014-1568
Telephone (530)467-5307 ~ Facsimile (530)467-5437

_____

**Law Offices of Michael D. Thamer Fees and Costs Summary, April 27th, 2016**

**Case: Atria**

| Name | Title | Hours | Hourly Rate | Total |
|------|-------|-------|-------------|-------|
| Michael Thamer, Esq. | Attorney | 283.75 | $775.00 | $219,906.25 |
| Anne Hilton | Office Manager | 80.5 | $150.00 | $12,075.00 |
| Darby Hanna | Legal Assistant | 4.5 | $110.00 | $495.00 |

Fees Total: $232,476.25

Office Cost: $3,977.14

**Fees & Costs Total: $236,453.39**

# EXHIBIT
# 3

# Law Offices of Michael D. Thamer, P.C.

Old Callahan School House
12444 South Highway 3
Post Office Box 1568
Callahan, CA 96014-1568
Telephone (530)467-5307 ~ Facsimile (530)467-5437

**Atria Cost Ledger**

| Date | Entry | Cost |
|------|-------|------|
| 3/17/2015 | Mileage from Callahan to S.F. for meeting with co-counsel | $60.01 |
| 3/18/2015 | Mileage from S.F. to Callahan for meeting with co-counsel | $49.03 |
| 3/18/2015 | Toll Road Fees -Benicia for meeting with co-counsel | $5.00 |
| 3/24/2015 | Toll Road Fees -Benicia for meeting with ex-employee witnesses | $5.00 |
| 4/8/2015 | Schneider Wallace Cottrell User Fees - Relativity Costs | $115.15 |
| 5/7/2015 | Mileage from Callahan to S.F. for deposition of defendants | $65.72 |
| 5/11/2015 | Mileage from S.F. to Callahan for deposition of defendants | $62.13 |
| 7/14/2015 | Siskiyou Laser Products - Document copies | $61.78 |
| 8/20/2015 | Parking -Emeryville for deposition of PMQ | $8.00 |
| 8/20/2015 | Mileage from Callahan to Emeryville for PMQ deposition | $50.00 |
| 8/21/2015 | Mileage for meeting with co-counsel | $47.17 |
| 8/21/2015 | Parking -Emeryville for deposition of PMQ | $15.00 |
| 8/21/2015 | Toll Road Fees -Carquinez for PMQ deposition | $5.00 |
| 8/22/2015 | Mileage from Emeryville to Callahan for PMQ deposition | $87.20 |
| 9/29/2015 | Parking -Emeryville for meeting with co-counsel | $15.00 |
| 9/29/2015 | Mileage from Callahan to Emeryville for meeting with co-counsel | $36.08 |
| 9/30/2015 | Mileage from Emeryville to Callahan for meeting with co-counsel | $43.50 |
| 10/5/2015 | Schneider Wallace Cottrell User Fees - Relativity Costs | $466.48 |
| 11/2/2015 | Parking -Emeryville for meeting with co-counsel | $30.00 |
| 11/3/2015 | Parking -Emeryville for meeting with co-counsel | $15.00 |
| 11/3/2015 | Mileage from Callahan to Emeryville for meeting with co-counsel | $43.47 |
| 11/3/2015 | Mileage from Emeryville to Callahan for meeting with co-counsel | $20.43 |
| 11/13/2015 | Mileage from Callahan to Vacaville for meeting with witnesses | $35.46 |
| 11/16/2015 | Flight Cost (estimate) - to OAK for mediation | $500.00 |
| 11/17/2015 | Parking -City of Oakland for mediation | $4.00 |
| 11/20/2015 | Mileage for meetings with witnesses | $27.04 |
| 12/15/2015 | Mileage from Callahan to San Francisco for CMC and meeting with co-counsel | $30.64 |
| 12/16/2015 | Mileage from San Francisco to Callahan for CMC and meeting with co-counsel | $32.99 |
| 12/15/2015 | Parking for CMC and meeting with co-counsel | $12.00 |
| 12/21/2015 | Mileage for meetings with witnesses | $48.49 |
| 12/28/2015 | Schneider Wallace Cottrell User Fees - Relativity Costs | $1,469.85 |
| 1/15/2016 | Schneider Wallace Cottrell User Fees - Relativity Costs | $510.52 |

**Total   $3,977.14**

Ex. E - Notice of Lodgment

# Exhibit F

1  Guy B. Wallace, SBN 176151
gwallace@schneiderwallace.com
2  Mark T. Johnson, SBN 76904
mjohnson@schneiderwallace.com
3  Jennifer Uhrowczik, SBN 302212
juhrowczik@schneiderwallace.com
4  SCHNEIDER WALLACE
COTTRELL KONECKY
5  WOTKYNS LLP
2000 Powell Street, Suite 1400
6  Emeryville, California 94608
Telephone: (415) 421-7100
7  Facsimile: (415) 421-7105

8

9  Attorneys for the Plaintiff Class

10

11

12                    UNITED STATES DISTRICT COURT

13

14              NORTHERN DISTRICT OF CALIFORNIA

15

16                    SAN FRANCISCO DIVISION

17  THOMAS CARNES, by and through his          Case No. 3:14-cv-02727-VC
    Guardian *ad Litem* Juliana Christine
18  Clegg, on his own behalf and on behalf of   **DECLARATION OF GUY B. WALLACE**
    others similarly situated,                  **IN SUPPORT OF PLAINTIFFS' MOTION FOR**
19                                               **AN AWARD OF REASONABLE ATTORNEYS'**
                                                 **FEES, COSTS AND EXPENSES**
20              Plaintiffs,

21              v.                               Date:  June 30, 2016
                                                 Time:  10:00 a.m.
22                                               Place: Courtroom 4
    ATRIA SENIOR LIVING, INC., et al.,          Judge: Hon. Vince Chhabria
23
                Defendants.
24

25

26

27

28

DECLARATION OF GUY B. WALLACE ISO P.'S MOTION FOR REASONABLE ATTORNEYS' FEES, COSTS AND EXPENSES
*Carnes, et al. v Atria Senior Living, Inc., et al.*, Case No. 3:14-cv-02727-VC

1    I, Guy B. Wallace, declare:

2        1.      I am counsel of record in the above-captioned matter.  I am a senior partner at the

3    law firm of Schneider Wallace Cottrell Konecky Wotkyns LLP ("Schneider Wallace").  I am a

4    member in good standing of the bar of the State of California.  I make these statements based on

5    my own personal knowledge and would so testify if called as a witness.

6        2.      This Declaration is submitted in support of Plaintiffs' Motion for Reasonable

7    Attorneys' Fees, Costs and Expenses pursuant to Federal Rule of Civil Procedure 23(h).

8                    **QUALIFICATIONS TO REPRESENT THE SETTLEMENT CLASS**

9        3.      I graduated from Harvard Law School in 1993.  From 1993 to 1994, I was a Skadden

10   Fellow at the Disability Rights Education and Defense Fund (DREDF).  From 1994 to 1998, I was

11   a Skadden Fellow and then Staff Attorney at Disability Rights Advocates.  Between March 1998

12   and June 2000, I was a Staff Attorney at the Legal Aid Society of San Francisco/Employment

13   Law Center ("ELC") and served as head of the disability rights practice at ELC.  I became a

14   partner in the firm of Schneider & Wallace in June 2000 and have held that position since that

15   time.  In 2014, the firm changed its name to Schneider Wallace Cottrell Konecky Wotkyns, LLP.

16       4.      During my twenty-two (22) years of practice I have had extensive experience in

17   class actions and other complex litigation.  In particular, I have specialized in disability civil

18   rights class actions as well as wage and hour, employment and other consumer class action

19   matters.  I have served as lead counsel, co-lead counsel, or class counsel in more than twenty class

20   actions, and have done so through trial and on appeal.  These cases have included, among others,

21   the following:

22   • <u>Willits v. City of Los Angeles</u>, Case No. 10-05782 CBM (RZx) (C.D. Cal.): lead

23       counsel in systemic, disability access class action involving claims under Title II of the

24       Americans with Disabilities Act of 1990. This case settled for $1.4 billion in injunctive

25       relief remedying physical access barriers to persons with mobility disabilities in the

26       City's pedestrian rights of way, the largest systemic disability access settlement in

27       United States history.

28

---

Ex. F - Notice of Lodgment

Page 158

- Winans v. Emeritus Corp., Case No. 13-cv-03962-HSG (N.D. Cal.): co-lead counsel in class action regarding residents in assisted living facilities involving claims under the California Consumer Legal Remedies Act (CLRA) and elder financial abuse statutes. This case settled for $13.5 million and injunctive relief.

- Shemaria v. County of Marin, Case No. CV 082718 (Marin County Sup. Ct.): lead counsel in disability access class action involving claims under Title II of the Americans with Disabilities Act of 1990 and California Government Code § 11135, et seq. This case settled for $15 million in injunctive relief remedying physical access barriers to persons with mobility disabilities in the County's Civic Center, parks, swimming pools, libraries and pedestrian right of way.

- Williams v. H&R Block, Case No. RG08366506 (Alameda County, Sup. Ct., Complex Cases Dept.): co-lead counsel in state-wide wage and hour class action on behalf of managers at H&R Block alleging misclassification and failure to pay overtime hours and all hours worked. This case settled for $6.4 million.

- Holloway v. Best Buy, Case No. C-05-5056 PJH (MEJ) (N.D. Cal.): class counsel in Title VII pattern or practice class action regarding race and gender discrimination. This case settled for injunctive relief regarding the company's policies, procedures and practices regarding promotions and compensation.

- Rosa v. Morrison Homes, Case No. 373059 (Stanislaus County, Sup. Ct., Complex Cases Dept.): co-lead counsel in novel construction defect class action involving 400 homes. This case settled for $5.9 million including repairs to the subject homes.

- Wren v. RGIS, Case No. C-06-05778 JCS (N.D. Cal.): lead counsel in wage and hour national class action involving federal FLSA violations as well as violations of California, Oregon, Washington and Illinois state wage and hour laws. This class included over 62,000 RGIS employees. This case settled for $27 million as well as injunctive relief requiring company policies and procedures ensuring payment for all employee hours worked.

DECLARATION OF GUY B. WALLACE ISO P.'S MOTION FOR REASONABLE ATTORNEYS' FEES, COSTS AND EXPENSES
*Carnes, et al. v Atria Senior Living, Inc., et al.*, Case No. 3:14-cv-02727-VC                3

Ex. F - Notice of Lodgment

Page 159

- <u>Chau v. CVS</u>, Case No. BC349224 (Los Angeles County, Sup. Ct., Complex Cases Dept.): co-lead counsel in wage and hour settlement on behalf of state-wide class of pharmacists alleging meal and rest period violations as well as overtime pay violations. This case settled for $19.75 million.

- <u>Satchell v. FedEx Express, Inc.</u>, Case No. C-03-2659 SI (N.D. Cal.): co-lead counsel in Title VII pattern or practice class action regarding race discrimination. This case settled for over $38 million and injunctive relief regarding the company's employment policies, procedures and practices.

- <u>Cherry v. City College of San Francisco</u>, Case No. C-04-4981 WHA (N.D. Cal.): lead counsel in class action regarding physical and programmatic access to the San Francisco Community College District on behalf of students with mobility disabilities. This case led to a Stipulated Judgment that resulted in the expenditure of over $20 million in injunctive relief remedying physical access barriers to persons with mobility disabilities in numerous campuses of City College.

- <u>Lopez v. San Francisco Unified School District</u>, Case No. C-99-3260 SI (N.D. Cal.): lead counsel in class action regarding physical and programmatic access to the San Francisco public schools on behalf of students and adults with mobility and/or vision disabilities. This case resulted in a Stipulated Judgment against the school district requiring over $400 million in injunctive relief remedying physical access barriers to persons with mobility and/or vision disabilities in 100 of the district's schools.

- <u>Lenahan v. Sears, Roebuck & Co.</u>, Case No. 3-02-CV-000045 (SRC) (TJB) (D.N.J.): class counsel in wage and hour collective action challenging failure to pay employees for all hours worked as required by the Fair Labor Standards Act. This case settled for $15 million.

- <u>Singleton v. Regents of the University of California</u>, Case No. 807233-1 (Alameda Sup. Ct., Complex Cases Dept.): class counsel in employment discrimination action against Lawrence Livermore National Laboratory for gender discrimination against women in promotion, compensation and other terms and conditions of employment. This case

settled for $10.6 million and injunctive relief regarding the Laboratory's employment policies, procedures and practices.

- Bates v. United Parcel Service, Case No. C-99-02216 TEH, 204 F.R.D. 440 (N.D. Cal. 2001): class counsel on behalf of a nationwide class of deaf and hard of hearing employees of UPS. This case settled for $5.8 million.

- Siddiqi v. Regents of the University of California, Case No. C 99-0970 SI (N.D. Cal.), 2000 WL 33190435 (N.D. Cal.), 81 F. Supp. 2d 972 (N.D. Cal. 1999): lead counsel in class action against two campuses of the University of California for failing to adopt and implement appropriate policies and procedures regarding auxiliary aids and services for students who are deaf or hard of hearing as required by the Americans with Disabilities Act. This case settled for injunctive relief including changes to the Universities' policies, procedures and practices for accommodating students who are deaf or hard of hearing, as well as the remediation of communications access barriers in University lecture halls and classrooms through the installation of assistive listening systems and other access equipment and features.

- Weissman v. Trustees of the California State University, Case No. Civ. 97-02326 MMC (MEJ) (N.D. Cal.), 1999 WL 1201809 (N.D.Cal.), 1998 US Dist. LEXIS 22615: co-lead counsel in class action on behalf of students and faculty members with mobility and/or visual impairments against the San Francisco State University for denial of programmatic access. This case settled for $5 million in injunctive relief requiring the removal of physical access barriers to persons with mobility and/or visual impairments at San Francisco State University.

- Gustafson v. Regents of the University of California, Case No. C-97-4016 BZ (N.D. Cal.): co-lead counsel in class action on behalf of students with mobility and/or vision disabilities against the Regents of the University of California for denial of physical and programmatic access at the University of California at Berkeley campus. This case settled for extensive injunctive relief requiring disability access barrier removal.

1     • <u>C.P. v. City and County of San Francisco,</u> Case No. 976437 (San Francisco Superior

2       Court): lead counsel in class action challenge to policy cutting off child care benefits to

3       foster children with disabilities. The case was resolved with the entry of a permanent

4       injunction against the policy after plaintiffs successfully sought a TRO from the superior

5       court.

6     • <u>Guckenberger v. Boston University,</u> 974 F. Supp. 106 (D. Mass. 1997); 957 F.Supp. 306

7       (D. Mass. 1997): class counsel in class action on behalf of students with learning

8       disabilities against a private university for policies limiting access to reasonable

9       accommodations. The case was tried with plaintiffs obtaining substantial changes in

10       defendants' policies and damages for the named plaintiffs.

11     • <u>Thomas v. BASS,</u> Case No. 733496-8, (Alameda County Superior Court): class counsel

12       in class action on behalf of all BASS Tickets patrons in Northern California with

13       mobility disabilities denied equal access to defendant's ticket selling services. The

14       action settled with plaintiffs obtaining changes in defendant's policies and damages.

15     • <u>Putnam v. Oakland Unified School District,</u> Case No. Civ. 93-3772 CW (N.D. Cal.),

16       1995 US Dist. LEXIS 22122, 1995 WL 873734 (N.D. Cal.): class counsel in class action

17       against large urban school district under state and federal law for the District's failure to

18       make its programs and facilities accessible to students with disabilities. Plaintiffs'

19       motion for summary judgment was granted. The case was settled requiring the

20       defendant to make at least 25 of its schools fully accessible.

21     5.     I serve as a member of the Board of Directors of The San Francisco Trial Lawyers

22 Association. I have served as a member of the Board of Directors of the Bar Association of San

23 Francisco. I have also served on the Board of Directors of Disability Rights California, a section

24 501(c)(3) organization committed to protecting the civil rights of persons with disabilities, and

25 continue to serve on their fundraising committee. I am a member of the bar of the Ninth Circuit

26 Court of Appeals and of the United States Supreme Court. I have served as counsel in both of

27 those courts on matters relating to employment and disability civil rights. I have been named a

28 "Super Lawyer" in the area of civil rights by San Francisco Magazine for the past seven years.

DECLARATION OF GUY B. WALLACE ISO P.'S MOTION FOR REASONABLE ATTORNEYS' FEES, COSTS AND EXPENSES
*Carnes, et al. v Atria Senior Living, Inc., et al.*, Case No. 3:14-cv-02727-VC     6

Ex. F - Notice of Lodgment

Page 162

6.     The firm of Schneider Wallace Cottrell Konecky Wotkyns LLP has an extensive practice in the areas of race discrimination, gender discrimination, wage and hour violations, disability civil rights (including both employment discrimination and access to public entities and public accommodations), and actions brought on behalf of consumers under both federal and state law.  Class action litigation is the major focus of the firm.  Todd Schneider founded the firm in 1993.  Schneider Wallace employs between 15 and 20 attorneys and has acted or is acting as class counsel on numerous cases, including those identified on the firm resume.  The firm has represented plaintiffs at all levels including the federal and state trial courts, the California Court of Appeal, the California Supreme Court, the Ninth Circuit Court of Appeals, and the United States Supreme Court.  A true and correct copy of the firm resume of Schneider Wallace Cottrell Konecky Wotkyns LLP is attached as **Exhibit A**.

## WORK PERFORMED BY THE SCHNEIDER WALLACE FIRM IN THIS MATTER

7.     While a certain amount of duplication of efforts is inevitable in the course of complex class action litigation in which multiple firms represent the Plaintiff class, Plaintiffs' counsel herein took reasonable measures to assign litigation tasks to specific firms and attorneys so as to ensure that, to the extent practicable, attorneys were not unreasonably performing duplicative work.  In this respect, the Schneider Wallace firm had primary responsibility for the following tasks in this litigation.

8.     The Schneider Wallace firm had primary responsibility for written discovery and the preparation and maintenance of the database of more than 500,000 pages of paper and electronic records produced by Defendant Atria in response to Plaintiffs' discovery requests.  In addition, our firm had primary responsibility for such case management matters as the preparation of proposed schedules for the litigation, case management statements and case management conferences, and for researching and formulating Plaintiffs' theory of class treatment.  I performed the bulk of Plaintiffs' work in these areas.  I also had input into the preparation of Plaintiffs' mediation brief herein, and attended the mediation with the Hon. Rebecca Westerfield (Ret.) of JAMS.

Ex. F - Notice of Lodgment

Page 163

9.      I took primary responsibility for preparing the putative class representative's guardian ad litem, Ms. Julianna Clegg, for her deposition. Ms. Clegg's deposition, however, was not ultimately taken because the parties chose to settle this matter.

10.     Mr. Johnson took primary responsibility for conducting Plaintiffs' discovery regarding Defendants' electronic records ("e-discovery"). In this regard, Mr. Johnson prepared Plaintiffs' written discovery, and also took the lead on preparing Plaintiffs' search terms and preparing the written protocol for e-discovery. Mr. Johnson also had primary responsibility for conferring with Defendants regarding the production of electronic records, and resolving disputes and problems regarding such production. Finally, Mr. Johnson took the depositions of Defendants' Federal Rule of Civil Procedure 30(b)(6) designees regarding the electronic databases and records maintained by Atria, and the nature of the information contained therein.

11.     The Schneider Wallace firm served as the document depository for Plaintiffs, establishing a firm website to store Defendants' production of written and electronic materials, and providing a site so that Plaintiffs' counsel could also access those documents and review and analyze them for discovery purposes. Defendants produced over 554,000 pages of documents and other electronic records herein.

12.     In connection with discovery and preparation for the mediation with Judge Westerfield, Ms. Uhrowczik prepared a detailed written analysis of Defendants' various contracts with its residents. Defendants produced thousands of pages of such contracts to Plaintiffs in this case. This analysis demonstrated that these standardized contracts all contained the same factual misrepresentations and misleading statements. Further, this analysis also showed that all of the residents, or their representatives with power of attorney, were required to affirm that they had read and understood the misrepresentations and misleading statements contained in Atria's standard form contracts. This analysis was critical to demonstrating that there was no variation in Atria's written form contracts with its residents that would function to defeat class treatment.

13.     The Schneider Wallace firm took the lead on the issue of written discovery regarding the membership of the Plaintiff class. In this regard, our firm prepared a "Pioneer" or "Bel-Aire" notice for purposes of seeking class member contact information.

---

DECLARATION OF GUY B. WALLACE ISO P.'S MOTION FOR REASONABLE ATTORNEYS' FEES, COSTS AND EXPENSES
*Carnes, et al. v Atria Senior Living, Inc., et al.*, Case No. 3:14-cv-02727-VC                    8

Ex. F - Notice of Lodgment

Page 164

14.     Mr. Johnson, Ms. Uhrowczik and I also participated with our co-counsel in analyzing the legal and factual issues pertaining to the settlement of this action, and the litigation issues and risks that Plaintiffs faced in this case. Our firm performed many other specific tasks in this case, but the discussion above describes our areas of major responsibility.

15.     A true and correct copy of our firm's billing system's "Billing By Project" for the above-captioned matter is attached as **Exhibit B**. This computer-generated report shows the amounts of time expended by our firm's various attorney, law clerk and paralegal timekeepers on this case. The report contains summaries of the work performed by Schneider Wallace with respect to the following categories:  (1) case / document administration; (2) case management conferences; (3) case organization, planning and strategy; (4) class certification; (5) class outreach; (6) communications with opposing counsel; (7) depositions; (8) discovery (non-deposition); (9) miscellaneous research; (10) no charge; (11) work "not assigned" to a category; (12) other motions; (13) pleadings and motions re: pleadings; and, (14) settlement. The report provides a total number of hours billed by each timekeeper, and by the firm as a whole, for each of the foregoing categories. (As an artifact of our computer billing system, the Billing By Project report shows our firm's 2016 rates. As discussed, this application is based on 2015 rates.)

16.     Of course, we will provide this Court with our detailed underlying billing records in this case if requested to do so. Those records are contemporaneously maintained, and are billed in tenth of an hour increments. They are readily available on our server and can be generated as a written print out if this Court believes that it is necessary to review them.

## BACKGROUNDS OF SCHNEIDER WALLACE ATTORNEYS, LAW CLERKS AND PARALEGALS AND THE RATES SOUGHT BY OUR FIRM

17.     The 2015 hourly rate that my law firm seeks for my own services in this case is $750.00 per hour. Having reviewed the market, my firm has determined that my rate is within the market range charged by attorneys of comparable experience, expertise, and reputation for similar services. My background and experience are described above. Courts have recognized that I have special expertise in class action litigation. *See, e.g., Lopez v. San Francisco Unified School District*, 385 F.Supp.2d 981, 991 (N.D. Cal. 2005).

DECLARATION OF GUY B. WALLACE ISO P.'S MOTION FOR REASONABLE ATTORNEYS' FEES, COSTS AND EXPENSES
*Carnes, et al. v Atria Senior Living, Inc., et al.*, Case No. 3:14-cv-02727-VC      9

Ex. F - Notice of Lodgment

Page 165

18.     The 2015 rates that are sought for the work of Schneider Wallace attorneys on this matter were approved by the District Court in *Winans v. Emeritus Corp.*, Case No. 13-cv-03962-HSG, 2016 WL 107574 (N.D. Cal. Jan. 11, 2016), at *8 ("The Court further finds that the billing rates used by class counsel to calculate the lodestar are reasonable and in line with prevailing rates in this district for personnel of comparable experience, skill and reputation."). A true and correct copy of the District Court's Order approving my rate and those of the attorneys and paralegals at my firm who worked on that case is attached as **Exhibit C**, and a true and correct copy of the plaintiffs' proposed Order therein showing the rates that were requested and approved in *Winans* is attached as **Exhibit D**.

19.     Further, the 2015 rates that are sought herein for the Schneider Wallace attorneys who worked on this matter represent only a modest increase over the rates that were approved by other courts as being reasonable during the past three years. For example, in *Williams v. H&R Block*, Case No. RG08366506, Alameda County Sup. Ct., the complex cases department of the Superior Court, the Honorable Robert B. Freedman presiding, approved my 2012 rate of $700 per hour. A true and correct copy of the Superior Court's Order approving counsel's rates in *Williams v. H&R Block* is attached as **Exhibit E**.

20.     Mark Johnson is of counsel at Schneider Wallace. He received his J.D. from the University of California, Los Angeles in 1977 and his B.A. in political science from the University of California at Berkeley in 1974. He has extensive experience in representing plaintiffs in the areas of consumer protection, employment and disability discrimination, and class action litigation. Mr. Johnson's 2015 hourly rate is $700, which is within the market range for attorneys of comparable experience and expertise for similar services in the Bay Area.

21.     Jennifer Uhrowczik is an associate attorney at Schneider Wallace. She is a 2009 graduate of New York University School of Law. At Schneider Wallace, Ms. Uhrowczik's practice focuses on systemic disability access, employment and consumer class actions. She received her B.A. from Indiana University in 2004. Ms. Uhrowczik is a sixth-year associate and her 2015 rate of $450 per hour is in line with the market range charged by attorneys of comparable experience and expertise for similar services in the Bay Area.

22.     Michael Hart is an associate attorney at Schneider Wallace.  He graduated from Northeastern University School of Law in 2014.  Mr. Hart's practice focuses on class action litigation, with an emphasis on wage and hour matters.  Mr. Hart worked on various fact research and analysis projects regarding Defendants' extensive document production in this matter, as well as legal research projects regarding class certification.  Mr. Hart is a first year associate and his 2015 rate of $400 is in line with the market range charged by attorneys of comparable experience and expertise for similar services in the Bay Area.

23.     Sintia Saenz is a staff attorney/ paralegal at Schneider Wallace.  She graduated from St. Thomas University School of Law, and obtained her Florida Bar license in 2008.  She has been an attorney at our firm for two years.  Ms. Saenz managed the document database and the document review and analysis projects for this case.  Our firm seeks the 2015 rate of $350 for her work, which is in line with the market range charged by attorneys of comparable experience and expertise for similar services in the Bay Area.

24.     Christine Knowles is a contract attorney at Schneider Wallace.  She graduated from Santa Clara University School of Law in 2013.  She assisted with document review, class outreach, and calendar functions for this case.  Our firm seeks the 2015 rate of $350 for her work, which is in line with the market range charged by attorneys of comparable experience and expertise for similar services in the Bay Area.

25.     Serenity Wang was a contract attorney at Schneider Wallace.  She graduated from Temple University, Beasley School of Law in 2012.  Ms. Wang worked on document review and analysis for this case.  Our firm seeks the 2015 rate of $350 for her work, which is in line with the market range charged by attorneys of comparable experience and expertise for similar services in the Bay Area.

26.     Thomas Lloyd was a contract attorney at Schneider Wallace.  He graduated from the University of California, Hastings College of Law in 2015.  Ms. Wang worked on document review and analysis for this case.  Our firm seeks the 2015 rate of $350 for his work, which is in line with the market range charged by attorneys of comparable experience and expertise for similar services in the Bay Area.

27.     Kevin Whitacre is a contract attorney at Schneider Wallace.  He graduated from Arizona Summit Law School in 2013.  He has been a contract attorney at our firm for eight months, and worked on document review and analysis for this case.  Our firm seeks the 2015 rate of $350 for his work, which is in line with the market range charged by attorneys of comparable experience and expertise for similar services in the Bay Area.

28.     Schneider Wallace submits the following application for fees, costs and expenses in this case.  Billing Judgment deductions are discussed below at ¶¶ 29-31.

### Partners

|  | Rate | Law School Year | Hours | Billing |
|---|---|---|---|---|
| Guy B. Wallace | $750 | 1993 | 248.6 | $186,450.00 |

### Of Counsel/Associates

|  | Rate | Law School Year | Hours | Billing |
|---|---|---|---|---|
| Mark T. Johnson | $700 | 1977 | 174.80 | $122,360.00 |
| Jennifer A. Uhrowczik | $450 | 2009 | 324.70 | $146,115.00 |
| Michael S. Hart | $400 | 2014 | 392.60 | $157,040.00 |
| Sintia Saenz | $350 | 2008 | 176.40 | $61,740.00 |
| Serenity Wang | $350 | 2012 | 48.50 | $16,975.00 |
| Christine Knowles | $350 | 2013 | 376.80 | $131,880.00 |
| Kevin Whitacre | $350 | 2013 | 39.80 | $13,930.00 |
| Thomas Lloyd | $350 | 2015 | 69.20 | $24,220.00 |

Total Lodestar: $860,710.00

27. Schneider Wallace submits an application for costs and expenses incurred in this matter in the amount of $80,049.32.  A true and correct copy of a detailed itemized list of our firm's costs and expenses is attached as **Exhibit F**.

28.     In total, the Schneider Wallace firm incurred reasonable attorneys' fees, costs and litigation expenses in the amount of $940,759.32 for its work on this case through May 10, 2016.

Ex. F - Notice of Lodgment

Page 168

**APPROPRIATE BILLING JUDGMENT WAS EXERCISED BY COUNSEL**

29.     In the exercise of billing judgment, to the extent that particular time entries by our staff reflect arguably unproductive or duplicative hours, we have not requested fees based thereon. In connection with this application for fees and costs, I made the following exercise of billing judgment in which I excluded particular time entries.  Specifically, I excluded all time expended on the matter by the following attorneys, paralegals and law clerks:

|   |   |   |
|---|---|---|
| a. | Rita Roberts | 37.50 hours |
| b. | David Whitehead | 37.50 hours |
| c. | Scott Gordon | 9.30 hours |
| d. | Charles Greenlee | 1.10 hours |
| e. | John Hwang | 1.80 hours |
| f. | Sam Marks | 11.90 hours |
| g. | Rebecca Rosales | 1.40 hours |
| h. | Robert Shaw | 4.60 hours |

Total hours removed: 105.1 hours

I made these deletions to minimize the possibility of billing based on overstaffing, and to minimize any overbilling resulting from the use of additional attorneys or paralegals.

30.     Altogether, I excised 105.1 hours that were recorded by attorneys or paralegals with our firm.  This exercise of billing judgment reduced our lodestar by approximately $32,040.

31.     Our billing system is not designed to ensure that all time spent on a case is recorded. As a result, the amount of time stated on our hourly records is conservative.  Also, in recording my time I did not record, and we do not seek compensation for, many tasks and activities.  For example, my records for work in this case do not include many telephone conversations, meetings, and email exchanges with attorneys, as well as supervisory activities of paralegals and law clerks.

**COSTS EXPENDED BY THE SCHNEIDER WALLACE FIRM**

32.     Schneider Wallace expended at least $80,049.32 in reasonable litigation costs and expenses in this case.  Major expense items are detailed in the following paragraphs.

DECLARATION OF GUY B. WALLACE ISO P.'S MOTION FOR REASONABLE ATTORNEYS' FEES, COSTS AND EXPENSES
*Carnes, et al. v Atria Senior Living, Inc., et al.*, Case No. 3:14-cv-02727-VC      13

Ex. F - Notice of Lodgment

Page 169

33.     Schneider Wallace paid invoices of Alloy Group in the amount of $65,225.06 for the maintenance of the electronic document database in this case.

34.     Schneider Wallace paid invoices in the amount of $5,864.12 for computer legal research services from Westlaw in this case.

35.     Schneider Wallace paid invoices in the amount of $2,827.85 for deposition expenses in this case.

36.     Schneider Wallace paid invoices in the amount of $2,006.73 for external copying services in this case.

37.     Schneider Wallace incurred internal copying and postage costs in the amount of $3,873.34 in this case.

38.     A true and correct copy of the Schneider Wallace cost summary for this case which is based upon the above-stated invoices and other costs discussed therein is attached as **Exhibit F**. True and correct copies of our invoices that were paid in connection with the above-captioned matter are attached as **Exhibit G.**  The summary shows total costs and expenses for this case in the amount of $80,049.32.   In my opinion, those costs and expenses were reasonably incurred for the prosecution of this litigation.

## **FAIRNESS OF THE PROPOSED CLASS SETTLEMENT**

39.     As discussed above, I was an active participant in the mediation at JAMS with Judge Westerfield that led to the settlement of this case.  I have carefully reviewed the terms of the Stipulation of Settlement.  In my judgment, the proposed settlement is fair, reasonable and adequate, and represents a good result for the settlement class members.  As this Court is most likely aware, there have been relatively few actions that challenge consumer fraud on a class basis in the setting of assistive living facilities such as those at issue in this case.  This case therefore presented novel and difficult issues regarding class certification as well as the merits.  The litigation risks were quite real, and the Defendants were represented by the firm of Jones Day, one of the most well-resourced and aggressive litigation defense firms in the United States. Notwithstanding the foregoing, Plaintiffs have managed to achieve a settlement that will provide genuine monetary benefits to the members of the Plaintiff class on a checks mailed (not claims

Ex. F - Notice of Lodgment

Page 170

1    made) basis, and that will compensate the class members for an amount of approximately 33% of

2    their maximum realistic hard damages.  In addition, Defendants have agreed to cease making the

3    misrepresentations and misleading statements that were at issue in this case, a result which is

4    equivalent to the maximum equitable relief that this Court might have ordered if we had prevailed

5    at trial on the merits.  All things considered, in my professional judgment, this is a good result for

6    the members of the settlement class, and is in their best interests, particularly when balanced

7    against the risks and delays attendant to multi-year class action litigation.

8        I declare under penalty of perjury under the laws of the United States of America that the

9    foregoing is true and correct.  Executed on May 16, 2016 in Emeryville, California.

10

11

12

13                                      GUY B. WALLACE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF GUY B. WALLACE ISO P.'S MOTION FOR REASONABLE ATTORNEYS' FEES, COSTS AND EXPENSES
*Carnes, et al. v Atria Senior Living, Inc., et al.,* Case No. 3:14-cv-02727-VC       15

# Exhibit A

# SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS, LLP

## Firm Profile

Schneider Wallace Cottrell Konecky Wotkyns LLP, founded in 1993, is a sixteen-lawyer firm with offices in California, Texas and Arizona. The firm maintains a nationwide practice, and its attorneys have litigated in nearly every state in the country. The firm specializes in employment, disability and civil rights and consumer rights litigation and in ERISA and financial investment litigation on behalf of both individual and institutional investors. The firm's class action practice focuses on impact litigation with a goal of remedying systemic violations of the law in employment, civil rights, public accommodations, consumer fraud, testing and education cases, and breaches of fiduciary duties in ERISA and public retirement plan cases.

Schneider Wallace Cottrell Konecky Wotkyns LLP ("SWCKW") specializes in class actions and it or its attorneys have been appointed class counsel in many cases over the past twenty years. A partial list of such cases includes:

Disability Rights

- *Willits v. City of Los Angeles*, Case No. CV 10-05782 CBM (RZx) (C.D. Cal.) (disability access class action on behalf of people with mobility disabilities that resulted in class action settlement for $1.4 billion in injunctive relief for remedying physical access barriers in the City's pedestrian rights of way, the largest systemic disability access settlement in United States history).

- *Bates v. United Parcel Service*, 465 F.3d 1069 (9th Cir. 2006) (a first of its kind national disability discrimination class action on behalf of deaf employees of UPS, which resulted in a partial settlement of $5.8 million and, after a trial on the remaining claims, a liability verdict in favor of the Plaintiff class that was appealed and later settled).

- *Ortiz v. Home Depot USA, Inc.*, Case No. 5:09-cv-03485-LHK (N.D. Cal.) (an (innovative class action settlement creating new procedures for providing sign language interpreters, accessible technology and effective interactive process to deaf workers).

- *National Federation of the Blind, et al., v. Target Corp.*, 582 F.Supp.2d 1185 (N.D. Cal. 2007) (nationwide disability rights class action resulting in settlement for broad injunctive relief requiring Target Corporation to design its website to be accessible to blind individuals using screen access software and a class damages fund of $6 million, the largest damages fund in any class action brought on behalf of the blind).

- *Cherry v. The City College of San Francisco*, No. C 04-04981 WHA (N.D.Cal.) (disability access class action on behalf of people with mobility disabilities that resulted in a stipulated judgment requiring the College to make architectural and other access changes valued at over $20 million at numerous campuses of City College).

- *Lopez, et al. v. San Francisco Unified School District*, Case No. C 99-3260 SI (N.D. Cal.) (disability access class action on behalf of mobility-impaired students in the San Francisco Unified School District, which resulted in a stipulated judgment requiring the District to make architectural and other access changes valued at over $400 million).

Discrimination

- *Satchell v. FedEx Express, Inc.*, Case No. 03-02659 SI (N.D. Cal.) ($55.5 million class action settlement addressing race discrimination within FedEx and covering nearly 24,000 class members).

- *Singleton v. Regents of the University of California* (gender discrimination class action against Lawrence Livermore National Laboratory for disparities in pay and promotion resulting in class action settlement of $10.6 million).

Civil Rights

- *Carlson v. eHarmony*, Case No. BC 371958 (Los Angeles County Superior Court) (class action settlement requiring Internet dating site to change policies and ensure equal access to gays and lesbians as well as establishing a damages fund of $2 million to pay full statutory damages to class members under the California Unruh Civil Rights Act).

Minimum Wage and Overtime

- *Mitchel v. Acosta Sales & Marketing*, Case No. 2:11-CV-01796 GAF (OPx) (C.D.Cal.) (collective and class action settlement of $9,900,000 to resolve off-the-clock overtime claims on behalf of approximately 4,500 part time and 1,500 full time merchandisers under the Fair Labor Standards Act and California law).

- *Perez v. rue21, Inc.*, Case No. CISCV167815 (Santa Cruz Superior Court) (class action settlement of $2.75 million for missed meal and rest periods to retail store employees working primarily on a part-time basis in approximately 30 stores in California).

- *Sosa v. Dreyer's Grand Ice Cream, Inc.*, Case No. RG08424366 (Alameda County Superior Court) (class action settlement of $13.5 million for unpaid donning and doffing time and noncompliant meal periods, resulting in average settlement awards of $8,500 each for the nonexempt workers at Dreyer's facility in Bakersfield, California).

2

- *Bond-Hatch v. Quest Diagnostics, Inc.*, Case No. CGC-06-450274 (California Superior Court, County of San Francisco) (class action settlement of $9 million for off-the-clock and missed meal and rest breaks for approximately 4,000 phlebotomists).

- *Hollands v. Lincare*, Case No. CGC07-465052 (San Francisco County Superior Court) ($3.4 million class settlement providing average individual awards of over $10,000 for approximately 200 class members based on alleged misclassification for overtime).

- *Piper, et al. v. RGIS*, Case Nos. 06-05778 and 07-00032) (N.D. Cal.) (class settlement requiring injunctive relief and $27 Million settlement fund to remedy off-the-clock and meal period violations on behalf of FLSA opt-in and Rule 23 opt out class covering approximately 62,000 class members).

- *Chau v. CVS RX Services, Inc.*, Case No. BC349224) (Los Angeles County Superior Court) ($19.75 million class action settlement for failure to pay overtime and provide meal and rest periods to nearly 2,000 pharmacists).

- *Holliman v. Kaiser Foundation Health Plan* (Alameda Superior Court) (Fair Labor Standards Act class action on behalf of health plan employees for unpaid overtime wages that resulted in a $9 million class settlement).

- *Elkin v. Six Flags* (Los Angeles Superior Court) (California wage and hour class action on behalf of amusement park employees for failure to provide adequate breaks and failure to compensate for "off-the clock" work, which resulted in a $14 million settlement).

- *Herring v. Hewitt Associates, LLC*, Case No. 06-cv-00267 (D.N.J.) ($4.9 million class action settlement for overtime misclassification of over 1,000 benefits analysts).

- *Jimenez v. Perot Systems Corp.*, Case No. RG07335321 (Alameda County Superior Court) ($5.8 million class action settlement for miscalculation of overtime exemption on behalf of nearly 2,000 hospital technology workers).

- *Gomez v. Perot Systems Corp.*, Case No. CV0803337 (Alameda County Superior Court) (final approval of $3 million class action settlement for failure to pay on-call time to approximately 1,300 hospital technical workers).

- *Reed v. CALSTAR*, Case No. RG04155105 (Alameda County Superior Court) (final approval of $3.5 million class action settlement on behalf of a class of 113 flight nurses for improper on-duty meal periods and failure to pay overtime).

- *Lenahan v. Sears* (Alameda Superior Court) (Fair Labor Standards Act class action on behalf of product repair service technicians for unpaid wages, which resulted in a $15 million settlement).

3

Consumer Fraud

- *Labrador v. Seattle Mortgage Co* (statewide consumer fraud case alleging that defendant systematically violated federal reverse mortgage program consumer protection regulations by charging improper loan-related fees, resulting in $4 million settlement).

- *Rosa v. Morrison Homes* (statewide construction defect case, certified as a class action on behalf of more than 400 home owners alleging that Morrison Homes failed to construct their homes in compliance with applicable building codes and standards).

- *Syran v. Lexis Nexis* (nationwide class action brought for violations of the Fair Credit Reporting Act on behalf of individuals whose personal information was disclosed, which resulted in extensive changes to Lexis' security procedures in addition to a monetary settlement of $2.8 million).

- *Eagan v. AXA Equitable Life Insurance Co.* (nationwide class action under ERISA on behalf of a class of retired insurance agents and other employees seeking the restoration of retiree health care benefits. The case settled on a class wide basis for significant monetary relief and a limitation on the company's ability to amend the health care benefit plan for retirees).

- *Glass Dimensions, Inc., v. State Street Bank & Trust Co.* (ERISA class action brought on behalf of a nationwide class of 1,790 retirement plans alleging that State Street violated its fiduciary duties by setting and receiving excessive compensation in connection with its securities lending program).

- *Healy v. Cox Communications, Inc.* (antitrust class action brought on behalf of Cox subscribers in the Oklahoma City metropolitan area alleging that Cox illegally tied rentals of its set top boxes to subscriptions to its digital cable services).

- *Bilewicz v. FMR LLC, et al.* and *Yeaw v. FMR LLC* (ERISA class action on behalf of a nationwide class of participants in the defendants' profit sharing plan, alleging that defendants' breached their fiduciary duties and engaged in ERISA-prohibited transactions in making decisions with respect to selecting, removing, replacing and monitoring the Plan's investments, resulting in a $12 million dollar settlement).

## PARTNERS' PROFILES

***Todd M. Schneider*** – Mr. Schneider founded the firm in 1993. Having received his J.D. degree in 1990. Mr. Schneider has spent his entire career representing plaintiffs in complex litigation. He has litigated cases successfully around the country, in both trial and appellate courts. He recently argued a case in the United States Supreme Court, and he has tried numerous consumer class actions to verdict.

Mr. Schneider is a national leader in the plaintiff's bar. Named by his peers as a Trial Lawyer of the Year in California and a two-time finalist for Consumer Attorney of the Year, he is past President and serves on the Board of Directors of the San Francisco Trial Lawyers Association, and has served on the Board of Governors and was the Vice President of the Consumer Attorneys of California.

Mr. Schneider is a frequent lecturer and regularly appears as a panelist at continuing legal education seminars. For each year that the list has been published, Mr. Schneider was been named a Super Lawyer in the area of "class actions and mass torts" by Northern California Super Lawyers magazine.

*Guy Wallace* – Guy Wallace is a 1993 graduate of the Harvard Law School. He began his career in public interest law, and was the recipient of a Skadden Arps Fellowship. He has extensive experience in class action impact litigation on behalf of persons with disabilities and other protected classes, as well as consumer litigation. He is a frequent lecturer on disability law issues and class action impact litigation, and he has authored various publications on those topics. He has been named as a "Super Lawyer" by Northern California Super Lawyers magazine for every year since 2009.

Mr. Wallace serves as a member of the Board of Directors of The San Francisco Trial Lawyers Association. He has also served as a member of the Board of Directors of the Bar Association of San Francisco, and on the Board of Directors of Disability Rights California.

Mr. Wallace practices in the areas of civil rights, employment and consumer rights. He is a recognized specialist in class action litigation. His expertise includes both disability access and employment class action cases. Mr. Wallace lectures and writes extensively about the practice of impact litigation. Mr. Wallace received his B.A. from Harvard College in 1989. He has been a wheelchair user since the age of 16 as the result of a spinal injury. Mr. Wallace has been a partner at SWCKW since 2000.

*Carolyn Cottrell* – Ms. Cottrell is a partner with Schneider Wallace Cottrell Konecky LLP and has been a member of the firm since 1995. Ms. Cottrell has spent her legal career advocating for the rights of individuals who have been subjected to underpayment of wages, discrimination, harassment and retaliation. She has litigated hundreds of class actions and individual claims including wage and hour, employment discrimination and civil rights actions.

In 2010, Ms. Cottrell was honored as a "Top Woman Litigator" by the Daily Journal. In 2012 she was nominated for "Woman Trial Lawyer of the Year" by the Consumer Attorneys of California. She also serves on the Board of Directors of the San Francisco Trial Lawyers Association. Ms. Cottrell is a member of the State Bar of California, the San Francisco Trial Lawyers Association, Public Justice, the Consumer Attorneys of California and the California Employment Lawyers Association. She earned her Bachelor's degree from the University of California and received her law degree from the University of Pacific, McGeorge School of Law.

5

*Joshua Konecky* – Joshua Konecky is a litigator, mediator and partner at Schneider Wallace Cottrell Konecky Wotkyns LLP. He has litigated numerous class action cases in the areas of employment, disability, and consumer law. In 2013, the Daily Journal named him as one of the top labor and employment attorneys in California. In 2012, his firm was listed as one of the "top 10 go-to plaintiffs' employment firms in Northern California" by the Recorder Legal Paper. Mr. Konecky has been on the Northern California Super Lawyers list every year since 2011. He has authored publications on discrimination and employment law and frequently lectures on these subjects. He is a contributing editor to the Rutter Group "Claims and Defenses" treatise.

Mr. Konecky sits on the Board of Directors for the Legal Aid Society—Employment Law Center; the Center on Race, Poverty and the Environment; and Disability Rights Advocates. He also serves on the Mandatory Settlement Conference Panel for the Superior Court of California in San Francisco.

Mr. Konecky holds a J.D. from New York University School of Law (1995), a B.A. from Haverford College (1990), and 42 hours of formal mediation training at the Straus Institute for Dispute Resolution at Pepperdine University School of Law (2011).

He is a former U.S. Fulbright Scholar, Skadden Public Interest Law Fellow, and judicial law clerk for U.S. District Court Judge Lawrence K. Karlton.

*Garrett W. Wotkyns* – Mr. Wotkyns is a partner with the firm and has responsibility for the firm's consumer and financial services litigation practice. Mr. Wotkyns graduated magna cum laude from Rice University and received his law degree from the University of Chicago Law School, where he served on The University of Chicago Law Review. Following law school, Mr. Wotkyns was a law clerk to The Honorable John M. Duhé Jr., of the United States Court of Appeals for the Fifth Circuit.

Before joining SWCKW to litigate exclusively for plaintiffs and lead the firm's financial services practice, Mr. Wotkyns spent five years practicing law at O'Melveny & Myers LLP, where he garnered significant experience representing large corporations in complex litigation. At O'Melveny and, since then, at SWCKW, Mr. Wotkyns has played a leading role in litigating antitrust matters. At O'Melveny, he played a prominent role in representing corporate plaintiffs in commercial antitrust litigation in the life insurance and telecommunications industries and also in defending a prominent client of the firm in a criminal antitrust investigation brought by the then-Attorney General of the state of New York, Eliot Spitzer, which lasted a number of years and involved extensive motions and discovery practice and settlement negotiations. Since then, as an exclusively plaintiffs'-side practitioner, he has counseled numerous health plans concerning antitrust matters and worked along with his partner Todd Schneider in leading *In re Cox Enterprises Inc., Set-Top Cable Television Box Antitrust Litigation* and *McCanney v. GlaxoSmithKline, LLC.*

6

Mr. Wotkyns is a frequent lecturer, writer and continuing legal education instructor on financial services litigation and arbitration issues. Recently, he has spoken at three different CLE events concerning FINRA arbitration issues and published an article about the so-called "sophisticated investor defense" often employed by defendants in FINRA arbitrations in Arizona Banker magazine. He is also a faculty member of the Practicing Law Institute's Consumer Financial Services Institute. In 2008, the Arizona Volunteer Lawyers Program gave him its "For Love of Justice" award in recognition of his volunteer work assisting Arizona homeowners fighting foreclosure. He is currently Chairman of the Business Torts Section of the American Association for Justice and a member of the Executive Committee of The National Trial Lawyers' Business Tort Trial Lawyers Association.

7

# Exhibit B

# Carnes v. Atria Senior Living, Inc.
# Billing By Project

### Case / Document Administration

| Time Keeper | Time | Rate | Amount |
|---|---|---|---|
| CJW | 1.3 | $200 | $260 |
| DAM | 2.5 | $200 | $500 |
| EC | 4.5 | $150 | $675 |
| GBW | 1.5 | $795 | $1,193 |
| JAU | 3.0 | $550 | $1,650 |
| KGB | 0.7 | $500 | $350 |
| MSH | 124.1 | $500 | $62,050 |
| MTJ | 0.2 | $775 | $155 |
| PRR | 1.3 | $250 | $325 |
| RER | 37.5 | $375 | $14,063 |
| RSS | 4.6 | $150 | $690 |
| SLG | 2.0 | $250 | $500 |
| SSS | 162.8 | $400 | $65,120 |
| **Total Case / Document Administration** | **346.0** | | **$147,530** |

### Case Management Conferencese

| Time Keeper | Time | Rate | Amount |
|---|---|---|---|
| GBW | 20.0 | $795 | $15,900 |
| JAU | 1.4 | $550 | $770 |
| MSH | 2.1 | $500 | $1,050 |
| SSS | 0.8 | $400 | $320 |
| **Total Case Management Conferencese** | **24.3** | | **$18,040** |

### Case Organization, Planning and Strategy

| Time Keeper | Time | Rate | Amount |
|---|---|---|---|
| CKK | 29.1 | $375 | $10,913 |
| FMM | 0.3 | $200 | $60 |
| GBW | 14.6 | $795 | $11,607 |

| | | | |
|---|---|---|---|
| JAU | 22.4 | $550 | $12,320 |
| JGH | 0.2 | $250 | $50 |
| MSH | 45.8 | $500 | $22,900 |
| MTJ | 13.8 | $775 | $10,695 |
| PRR | 0.1 | $250 | $25 |
| SSS | 8.3 | $400 | $3,320 |
| **Total Case Organization, Planning and Strategy** | **134.6** | | **$71,889** |

## Class Certification

| Time Keeper | Time | Rate | Amount |
|---|---|---|---|
| GBW | 30.7 | $795 | $24,407 |
| JAU | 1.4 | $550 | $770 |
| MSH | 62.9 | $500 | $31,450 |
| MTJ | 1.8 | $775 | $1,395 |
| SSS | 0.8 | $400 | $320 |
| **Total Class Certification** | **97.6** | | **$58,342** |

## Class Outreach and Contact

| Time Keeper | Time | Rate | Amount |
|---|---|---|---|
| JAU | 4.5 | $550 | $2,475 |
| **Total Class Outreach and Contact** | **4.5** | | **$2,475** |

## Communications With Opposing Counsel

| Time Keeper | Time | Rate | Amount |
|---|---|---|---|
| GBW | 0.6 | $795 | $477 |
| JAU | 1.5 | $550 | $825 |
| MTJ | 0.1 | $775 | $78 |
| **Total Communications With Opposing Counsel** | **2.2** | | **$1,380** |

## Depositions

| Time Keeper | Time | Rate | Amount |
|---|---|---|---|
| CKK | 5.0 | $375 | $1,875 |
| DAM | 2.5 | $200 | $500 |
| FMM | 0.3 | $200 | $60 |
| GBW | 14.7 | $795 | $11,687 |
| JAU | 10.9 | $550 | $5,995 |

Ex. F - Notice of Lodgment

Page 182

| | | | |
|---|---|---|---|
| MSH | 0.9 | $500 | $450 |
| MTJ | 87.0 | $775 | $67,425 |
| SLG | 4.0 | $250 | $1,000 |
| SMW | 2.7 | $400 | $1,080 |
| **Total Depositions** | **128.0** | | **$90,071** |

## Discovery (Non-Deposition)

| Time Keeper | Time | Rate | Amount |
|---|---|---|---|
| CKK | 342.7 | $375 | $128,513 |
| CRG | 1.1 | $200 | $220 |
| DWW | 36.3 | $375 | $13,612 |
| FMM | 0.7 | $200 | $140 |
| GBW | 64.5 | $795 | $51,278 |
| JAU | 176.8 | $550 | $97,240 |
| JGH | 0.8 | $250 | $200 |
| KCW | 39.8 | $375 | $14,925 |
| MSH | 19.8 | $500 | $9,900 |
| MTJ | 48.6 | $775 | $37,665 |
| SLG | 3.3 | $250 | $825 |
| SMW | 45.8 | $400 | $18,320 |
| TJL | 68.2 | $350 | $23,870 |
| **Total Discovery (Non-Deposition)** | **848.4** | | **$396,707** |

## Experts (Including Retention)

| Time Keeper | Time | Rate | Amount |
|---|---|---|---|
| TJL | 1 | $350 | $350 |
| **Total Experts (Including Retention)** | **1** | | **$350** |

## Misc. Research

| Time Keeper | Time | Rate | Amount |
|---|---|---|---|
| DWW | 0.6 | $375 | $225 |
| ESS | 1.1 | $200 | $220 |
| JAU | 39.2 | $550 | $21,560 |
| MSH | 130.3 | $500 | $65,150 |
| **Total Misc. Research** | **171.2** | | **$87,155** |

## No charge

| Time Keeper | Time | Rate | Amount |
|---|---|---|---|

Ex. F - Notice of Lodgment

Page 183

| | | | |
|---|---|---|---|
| EC | 2.7 | $150 | $405 |
| FMM | 0.3 | $200 | $60 |
| JAU | 0.1 | $550 | $55 |
| <u>Total No charge</u> | <u>3.1</u> | | <u>$520</u> |

## Not Assigned

| Time Keeper | Time | Rate | Amount |
|---|---|---|---|
| SSS | 4.1 | $400 | $1,640 |
| STM | 11.9 | $225 | $2,678 |
| TEE | 0.2 | $150 | $30 |
| <u>Total Not Assigned</u> | <u>16.2</u> | | <u>$4,347</u> |

## Other Motions

| Time Keeper | Time | Rate | Amount |
|---|---|---|---|
| GBW | 37.9 | $795 | $30,131 |
| JAU | 44.7 | $550 | $24,585 |
| JGH | 0.2 | $250 | $50 |
| MTJ | 4.2 | $775 | $3,255 |
| NNC | 0.1 | $500 | $50 |
| <u>Total Other Motions</u> | <u>87.1</u> | | <u>$58,071</u> |

## Pleadings and Motions Re: Pleadings

| Time Keeper | Time | Rate | Amount |
|---|---|---|---|
| FMM | 3.2 | $200 | $640 |
| GBW | 30.3 | $795 | $24,089 |
| JAU | 0.1 | $550 | $55 |
| MTJ | 14.7 | $775 | $11,393 |
| sxc | 1.1 | $650 | $715 |
| <u>Total Pleadings and Motions Re: Pleadings</u> | <u>49.4</u> | | <u>$36,891</u> |

## Settlement

| Time Keeper | Time | Rate | Amount |
|---|---|---|---|
| GBW | 41.0 | $795 | $32,595 |
| JAU | 22.5 | $550 | $12,375 |
| JGH | 0.8 | $250 | $200 |
| MSH | 6.7 | $500 | $3,350 |
| MTJ | 4.4 | $775 | $3,410 |

Ex. F - Notice of Lodgment

Page 184

| | | | |
|---|---|---|---|
| sxc | 0.2 | $650 | $130 |
| **Total Settlement** | **75.6** | | **$52,060** |

### Trial and Pretrial Preparation

| Time Keeper | Time | Rate | Amount |
|---|---|---|---|
| DWW | 0.6 | $375 | $225 |
| **Total Trial and Pretrial Preparation** | **0.6** | | **$225** |
| **Grand Total** | | | **$1,026,054** |

Ex. F - Notice of Lodgment

Page 185

# Exhibit C

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARVILLE WINANS,<br><br>       Plaintiff,<br><br>   v.<br><br>EMERITUS CORPORATION,<br><br>       Defendant. | Case No. 13-cv-03962-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>Re: Dkt. Nos. 102, 103 |

     Pending before the Court are two motions filed by Plaintiffs Arville Winans, by and through his guardian ad litem, and Ruby Richardson, in her capacity as trustee to the Wilma F. Fritz Trust. Plaintiffs move for (1) final approval of the parties' proposed class action settlement, Dkt. No. 102, and (2) an award of attorneys' fees, costs, and named plaintiff incentive payments, Dkt. No. 103. The Court held a final fairness hearing on both motions on December 17, 2015. Dkt. No. 127. For the reasons stated below and at the hearing, the Court GRANTS both motions.

## I.    BACKGROUND

### A.    Litigation History

     Plaintiffs filed this action in Alameda County Superior Court on July 29, 2013. Dkt. No. 1-1. Defendant Emeritus Corp.[1] removed the action to federal court on August 27, 2013. Dkt. No. 1. Plaintiffs filed the operative Second Amended Class Action Complaint ("SAC") on April 15, 2015. Dkt. No. 93.

     The following allegations are taken from the SAC. Defendant owns and operates assisted living facilities. *Id.* ¶ 13. Plaintiffs are current and former residents of Defendant's assisted living

---

[1] After the case was filed, Emeritus was acquired through merger by Brookdale Senior Living, Inc. Dkt. No. 93 ¶ 12.

United States District Court
Northern District of California

facilities. *Id.* ¶¶ 9-10. When residents move in, and periodically thereafter, Defendant conducts "wE Care" assessments to determine the care needs of residents. *Id.* ¶ 3. Defendant represented to potential residents, their family members, and the general public that the wE Care assessments were used to assign each resident a "Level of Care"—which impacted the price charged to residents for the promised care—and to determine facility staffing. *Id.* ¶¶ 3-4. Plaintiffs allege that such representations were misleading because, in actuality, staffing—and therefore the level of resident care—was based on labor budgets and profit objectives. *Id.* ¶ 5. Plaintiffs further allege that they would not have agreed to live at Defendant's facilities, and would not have paid new resident fees and monthly charges to Defendant, if they had known the truth about the staffing procedures. *Id.* ¶ 7. On the basis of these factual allegations, Plaintiffs assert claims under the California Consumers Legal Remedies Act and the California Financial Elder Abuse statute. *Id.* ¶¶ 85-114.

The parties settled the case on March 11, 2015 after participating in mediation. Dkt. No. 102 at 5. On June 5, 2015, the Court granted preliminary approval of the settlement, provisionally certified a settlement class, and directed notice to class members through mail, media publication, and website posting. Dkt. No. 99. Notice was completed on June 30, 2015. Dkt. No. 108 ¶¶ 4-6.

Based on an objection dated July 31, 2015, the parties determined that residents whose move-in dates preceded the date Defendant took over operations of their facility ("Carry Over Residents") should be included in the settlement. Dkt. No. 116-2, Minnick Decl. ¶¶ 4-5. The parties further agreed to slight modifications to the amount of the overall settlement fund and the request for attorneys' fees, so that the average minimum payment to class members would not be affected by the expansion of the class. Dkt. No. 116-2, Healey Decl. ¶¶ 3-4. At a hearing on September 25, 2015, the Court directed further notice to the Carry Over Residents, Dkt. No. 117, which notice was completed on October 9, 2015, Dkt. No. 122-1 ¶ 3.

Notice was mailed to a total of 21,277 class members. *See* Dkt. No. 122-1 ¶ 2; Dkt. No. 116-2, Wyatt Decl. ¶ 3. 25 of those class members—or 0.12%—opted out of the settlement. Additionally, two substantive objections, including the objection regarding the Carry Over Residents, were submitted. Dkt. Nos. 114, 115.

2

**B.   Settlement Agreement**

The proposed settlement will dispose of all of Plaintiffs' claims against Defendant.   Dkt.
No. 104, Ex. 1 ("Settlement Agreement").   The Settlement Agreement defines the class as:

> Plaintiffs and all similarly situated persons who resided at one of the
> California assisted living facilities owned and/or operated by
> Defendants under the Emeritus name from July 29, 2009 through
> and including May 15, 2015 (the "Class Period"), and who
> contracted with Emeritus for services for which Emeritus was paid
> money.

*Id.* at 5.   Under the terms of the Settlement Agreement, Defendant will (1) pay $13,500,000;[2] (2)
completely phase out the wE Care assessment system by December 31, 2015; and (3) issue a
written directive to each assisted living community it owns or operates in California to not make
affirmative representations to prospective residents that the wE Care system is used to determine
facility staffing.   *Id.* at 21-25.   In exchange, settlement class members will release all claims
"arising out of or relating to statements, representations, or failures to disclose made prior to May
15, 2015 . . . regarding the . . . advertising, marketing, promotion, or use of wE Care . . . in
connection with evaluating residents and setting facility staffing."   *Id.* at 19.   The Settlement
Agreement further clarifies that the released claims "shall not include any claims for personal
injuries, emotional distress or bodily harm."   *Id.*

Settlement class members are not required to submit a claim; rather, they will be entitled to
a pro rata payment based on the amount of move-in fees and initial monthly rent they paid.[3]   *Id.* at
24.   A class member, or his/her legal successor, may make a distribution request if the settlement
administrator is unable to locate his/her current address.   *Id.* at 7.   If the settlement administrator is
unable to locate a class member, his/her payment will be allocated back into the settlement fund.
*Id.* at 24.   A reserve fund of $45,000 will be carved out of the settlement fund for the payment of

---

[2] The Settlement Agreement filed on the docket reflects a total payment amount of $13,000,000.
*See* Settlement Agreement at 10.   After the parties agreed to include the Carry Over Residents in
the settlement class, the parties further agreed to increase the gross settlement payment to
$13,500,000.   Dkt. No. 116-2, Healey Decl. ¶ 3.
[3] Specifically, the "Settlement Payment Percentage" is calculated by adding the move-in fee paid
and the initial monthly rent paid, and dividing that amount by the total move-in fees and initial
rent payments made by all settlement class members.   Settlement Agreement at 24.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  late-submitted distribution requests. *Id.* at 9. Any portion of the reserve fund that is not claimed,

2  and any settlement checks that are not timely cashed, will be paid to the *cy pres* recipient, the

3  Institute on Aging. Dkt. No. 129 ("Supp. Brief") at 1.

### C. Objections To The Settlement

5  Two substantive objections to the proposed class action settlement were timely filed.[4]

6  First, William Finch submitted a notice of objection dated July 31, 2015. Dkt. No. 114. Mr. Finch

7  "object[s] to the settlement to the extent it excludes me, and others like me." *Id.* Based on Mr.

8  Finch's objection, the parties revised the settlement to expand the class and increase the total cash

9  settlement amount. *See* Dkt. No. 116 ("Final Approval Reply") at 9-10. At the hearing on

10  September 25, 2015, the Court ordered additional notice and time for objections based on the

11  revised settlement agreement. *See* Dkt. No. 117.

12  Second, Kate Wilkins submitted an objection dated August 4, 2015. Dkt. No. 115. Ms.

13  Wilkins objects to several aspects of the proposed settlement agreement, including the adequacy of

14  notice, amount of the settlement, appropriateness for class action treatment, *cy pres* payment, and

15  amount of requested attorneys' fees. *Id.* The merits of Ms. Wilkins' objection are addressed

16  below.

### II. DISCUSSION

#### A. Motion for Final Approval of Class Action Settlement

##### 1. Legal Standard

20  "The claims, issues, or defenses of a certified class may be settled . . . only with the court's

21  approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a

22  hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To

23  assess whether a proposed settlement comports with Rule 23(e), a district court must "determine

24  whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v.*

26  ───────────

[4] As noted at the hearing, the Court finds that the objection letter submitted by David H. Brands is
27  without substance because it does not address the merits of this particular settlement. *See* Dkt. No.
125. Additionally, the parties confirmed at the hearing that the letter submitted to the Court by
28  Brian P. Klinker is a distribution request, and that the parties forwarded Mr. Klinker's letter to the
settlement administrator to ensure that he would be included in the settlement. *See* Dkt. No. 121.

4

United States District Court
Northern District of California

*Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge." *Id.* When making this decision, courts consider the following factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Id.* at 1025.

### 2.    Adequacy of Notice

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, the class claims, class members' right to exclude themselves from the class, and the binding effect of any class judgment. Fed. R. Civ. P. 23(c)(2)(B). Additionally, before granting final approval of a proposed class settlement, a court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id.* 23(e)(1). While Rule 23 requires that "reasonable effort" be made to reach all class members, it does not require that each individual actually receive notice. *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010).

The Court previously approved the notice and notice plan proposed by the parties. Dkt. No. 99 ¶ 14. Additionally, the Court directed notice to the Carry Over Residents after the expansion of the settlement class based on Mr. Finch's objection. *See* Dkt. No. 117. In accordance with the Court's orders, the settlement administrator mailed the approved notice to 21,277 individuals, published the notice in USA Today, and posted the notice online. Of the 3,070 notice packets returned as undeliverable, 1,511 were re-mailed to updated addresses located by the settlement administrator. Dkt. No. 122-1 ¶ 4.

In her objection, Ms. Wilkins argues that the class notice was misleading because it failed

5

Case 3:13-cv-03962-HSG Document 51 Filed 05/13/16 Page 6 of 15

1    to inform recipients that Defendant is now owned by Brookdale Senior Living, Inc.  Dkt. No. 115

2    at 2.  The Court finds that such information was not necessary to provide adequate notice.

3    Moreover, Brookdale's acquisition of Emeritus is public knowledge.  *See* SAC ¶ 12.

4          Ms. Wilkins also appears to argue that the class notice was deficient because it did not

5    identify the proposed *cy pres* recipient.  Dkt. No. 115 at 4-5.  While Ninth Circuit authority makes

6    clear that the parties must identify the proposed *cy pres* recipient for the Court to evaluate, *see*

7    *infra*, no such authority establishes that a specific *cy pres* recipient must be identified in the class

8    notice.  In the absence of Ninth Circuit case law directly on point, the Court finds persuasive the

9    Third Circuit's holding that the "failure to identify the *cy pres* recipients [to class members in the

10   class notice] is not a due process violation."  *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180

11   (3d Cir. 2013); *see also Zeisel v. Diamond Foods, Inc.*, No. 10-cv-01192-JSW, 2012 WL

12   4902970, at *2 (N.D. Cal. Oct. 16, 2012) (approving settlement where parties did not identify *cy*

13   *pres* recipient in class notice).

14         In light of the above, the Court finds that the notice and notice procedures used here

15   complied with the requirements of Rule 23(e).

16               **3.      Fairness, Adequacy, and Reasonableness of Settlement**

17         Having found the notice procedures adequate, the Court next considers whether the

18   settlement as a whole comports with Rule 23(e).

19               **a.      Strength of Plaintiff's Case and Risk of Continued Litigation**

20         Approval of a class settlement is appropriate when plaintiffs must overcome "significant

21   barriers" to make their case.  *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D.

22   Cal. 2010).  Courts "may presume that through negotiation, the Parties, counsel, and mediator

23   arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."

24   *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D.

25   Cal. Apr. 22, 2010).  Additionally, difficulties and risks in litigating weigh in favor of approving a

26   class settlement.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).  "Generally,

27   unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy

28   and expensive litigation with uncertain results."  *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-

United States District Court
Northern District of California

MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (internal quotation marks omitted).

While Plaintiffs maintain that they would be likely to prevail on the merits of their case, they face substantial challenges in continued litigation. First, it is not clear that Plaintiffs could successfully maintain class certification throughout the litigation. Defendant argues that Plaintiffs' claims require individualized consideration of care services provided to each resident. If individualized issues pervade the factual analysis such that no common questions of law or fact exist, class certification cannot be maintained. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556-57 (2011).

Second, even if Plaintiffs successfully certified a class, they would face obstacles to prove both liability and damages. As to liability, Defendant argues that Plaintiffs cannot show reliance because the decision to live at Defendant's facilities was impacted by a variety of factors aside from the wE Care assessments. As to damages, Defendant argues that any recovery by Plaintiffs must be reduced by the value of the care actually received. The Court agrees that Plaintiffs faced substantial risks to succeeding on the merits of their claims.

Finally, even if Plaintiffs prevailed, this litigation likely would have taken years to complete. Given the advanced age of many of the class members, any delay to recovery presents heightened concerns.

The Court finds that these factors weigh in favor of settlement.

### b. Settlement Amount

This factor "is generally considered the most important, because the critical component of any settlement is the amount of relief obtained by the class." *Bayat v. Bank of the W.*, No. 13-cv-02376-EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015). Because "the interests of class members and class counsel nearly always diverge, courts must remain alert to the possibility that some class counsel may urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) (internal quotation marks omitted).

Plaintiffs calculate that the gross settlement amount represents approximately 33.2% of the "maximum projected 'hard damages' at trial," which in turn means that the net settlement amount

7

United States District Court
Northern District of California

1    represents approximately 21.7% of the maximum recovery.  Dkt. No. 102 ("Mot.") at 12.[5]

2    Additionally, Plaintiffs estimate that the individual payments will range from 20-40% of each

3    class member's maximum damages, *id.* at 13, and the projected average payment will be over

4    $500, Final Approval Reply at 3.  "It is well-settled law that a cash settlement amounting to only a

5    fraction of the potential recovery does not per se render the settlement inadequate or unfair."  *In re*

6    *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  Based on the facts in the record

7    and the parties' arguments at the final fairness hearing, the Court finds that the settlement is within

8    the range of reasonableness in light of the risks and costs of litigation.  *See Gaudin v. Saxon*

9    *Mortg. Servs., Inc.*, No. 11-cv-01663-JST, 2015 WL 7454183, at *6 (N.D. Cal. Nov. 23, 2015)

10   (granting final approval of a net settlement amount representing 13.6% of the plaintiffs' estimated

11   maximum recovery at trial); *Stovall-Gusman v. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL

12   3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval of a net settlement amount

13   representing 7.3% of the plaintiffs' estimated maximum recovery at trial).

14        Additionally, only a small portion—if any—of the gross settlement amount will be paid to

15   the parties' proposed *cy pres* recipient, the Institute on Aging.  The organizational mission of the

16   Institute on Aging is to "enhance the quality of life for adults as they age by enabling them to

17   maintain their health, well-being, independence, and participation in the community."  Dkt. No.

18   129-1 ¶ 9.  The Institute runs an Elder Abuse Prevention Program aimed at protecting elders from

19   potential financial abuse and consumer protection violations in Northern California.  *Id.*  The

20   Court finds that the required "driving nexus between the plaintiff class and the *cy pres*

21   beneficiaries" exists here.  *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011).

22        Accordingly, this factor weighs in favor of approval.

23           **c.**      **Stage of Proceedings**

24        "This factor evaluates whether the parties have sufficient information to make an informed

25   decision about settlement."  *Larsen v. Trader Joe's Co.*, No 11-cv-05188-WHO, 2014 WL

26   

27       [5] These percentages are based on the original gross settlement amount of $13 million and the class
     exclusive of the Carry Over Residents.  The parties confirmed at the final fairness hearing on

28   December 17, 2015 that the revised settlement amount and class scope maintained these rough
     percentages.

8

United States District Court
Northern District of California

1   3404531, at *5 (N.D. Cal. July 11, 2014) (internal quotation marks omitted). "In the context of

2   class action settlements, as long as the parties have sufficient information to make an informed

3   decision about settlement, formal discovery is not a necessary ticket to the bargaining table."

4   *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) (internal quotation

5   marks omitted). "Rather, the court's focus is on whether the parties carefully investigated the

6   claims before reaching a resolution." *Id.* (internal quotation marks omitted).

7           Here, prior to reaching a settlement, Plaintiffs engaged in extensive motion practice,

8   substantial investigation, and informal and formal discovery. Dkt. No. 104, Healey Decl. ¶¶ 12-

9   13. Plaintiffs reviewed tens of thousands of pages of documents related to the action, conducted

10  interviews, responded to formal discovery requests, and defended a deposition of Plaintiff

11  Winans' guardian ad litem. *Id.*

12          The Court finds that Plaintiffs had an adequate understanding of the merits of their case

13  before settlement negotiations began. Accordingly, this factor weighs in favor of approval.

14                  **d.      Experience and Views of Counsel**

15          "Parties represented by competent counsel are better positioned than courts to produce a

16  settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec.*

17  *Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). The Court has previously evaluated class counsel's

18  qualifications and experience and concluded that counsel is qualified to represent the class'

19  interests in this action. Dkt. No. 99 ¶ 5. The Court notes, however, that courts have taken

20  divergent views as to the weight to accord counsel's opinions. *Compare Carter v. Anderson*

21  *Merchandisers, LP*, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is

22  accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is

23  reluctant to put much stock in counsel's pronouncements, as parties to class actions and their

24  counsel often have pecuniary interests in seeing the settlement approved."). The Court finds that

25  this factor tilts in favor of approval, even though the Court affords only modest weight to the

26  views of counsel.

27

28

                                            9

e.      **Reaction of Class Members**

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). A small number of objections to and opt-outs from a settlement "presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027.

Here, the overwhelming majority of settlement class members reacted favorably to the proposed settlement. Of the 21,277 class members who were mailed notice, only 25 opted out of the settlement. Dkt. No. 122-1 ¶ 4. Moreover, only two substantive objections were filed, one of which—Mr. Finch's objection regarding the inclusion of Carry Over Residents in the settlement class—has been fully resolved. The remaining objection submitted by Ms. Wilkins asserts three arguments against approval of the settlement.

First, Ms. Wilkins contends that that the allegations in the complaint "trigger minimum penalties of $1,000 or $5,000," and protests that the average settlement payment of $450 is therefore "paltry." Dkt. No. 115 at 1. However, only $1,000 in statutory damages is available as a matter of right to prevailing parties, and some courts have construed that amount to be shared amongst all class members. *See Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 593 (C.D. Cal. 2011). A court may award up to $5,000 per class member in additional damages under the CLRA, but any such award is purely discretionary. Cal. Civ. Code § 1780(b). Additionally, Ms. Wilkins does not appear to have taken into account the above-described risks of protracted litigation when she assessed the reasonableness of the average settlement payment.

Second, Ms. Wilkins contends that the Court should not certify a class for settlement purposes because "[t]he principal wrongs identified in the lawsuit relate to the companies' failure to provide individualized care to residents; instead staffing levels were devised to make a profit rather than based on individual residents' care needs." Dkt. No. 115 at 2. As a result, she argues, individual issues predominate. Plaintiffs argue in their reply brief that Ms. Wilkins misunderstands the "primary damage relief sought" in this case, which is "the recovery of initial rent payments and rental deposits . . . that residents would not have paid but for Defendants'

10

actionable conduct." Dkt. No. 116 at 3. In other words, the damages stem from class members' reliance on Defendant's uniform misrepresentations, not individualized deviations from promised levels of care. Plaintiffs further contend that the Settlement Agreement preserves class members' ability to bring claims based on individualized issues, such as neglect or abuse. *Id.* at 2-3. The Court finds that the settlement class is properly certified here.

Third, Ms. Wilkins argues that the parties must identify the *cy pres* recipient. Dkt. No. 115 at 4-5. Ms. Wilkins correctly notes that the Ninth Circuit has directed courts to carefully review pre-certification settlements to ensure that *cy pres* distributions are "tethered to the nature of the lawsuit and the interests of the silent class members." *Dennis v. Kellogg Co.*, 697 F.3d 858, 867 (9th Cir. 2012) (internal quotation marks omitted). To enable the Court to conduct this review, the parties must identify the *cy pres* recipient. *Id.* While the Court agrees with Ms. Wilkins on this point, the parties have mooted this objection by identifying the Institute on Aging as the *cy pres* recipient in the supplemental briefing submitted to the Court. *See* Dkt. No. 129.

The Court finds that this factor weighs in favor of approval. Although Ms. Wilkins makes reasoned arguments in her objection, they ultimately fail. Additionally, the overwhelming majority of the class did not object to or opt out of the settlement.

*          *          *

After considering and weighing all of the above factors, the Court finds that the proposed class action settlement is fair, adequate, and reasonable, and that the settlement class members received adequate notice. Accordingly, Plaintiffs' motion for final approval of class action settlement is granted.

## B.     Attorneys' Fees and Costs

### 1.     Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Because California law governed the claim here, it also governs the award of attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Under California law, "the award of attorney fees is proper . . . if (1) plaintiffs' action has

11

United States District Court
Northern District of California

Ex. F - Notice of Lodgment

Page 197

resulted in the enforcement of an important right affecting the public interest, (2) a significant

benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large

class of persons and (3) the necessity and financial burden of private enforcement are such as to

make the award appropriate." *Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311, 317-18 (1983) (internal

quotation marks omitted).  Moreover, certain provisions of the CLRA mandate payment of

attorneys' fees to successful plaintiffs.  *See* Cal. Civ. Code § 1780(e).  Based on these criteria, and

the parties' agreement, the Court finds that class counsel is entitled to attorneys' fees.

      Additionally, class counsel is entitled to "recover as part of the award of attorney's fees

those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v.

Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks omitted).

      **2.     Class Counsel's Request for Fees**

      Under California law, courts have the power to award reasonable attorneys' fees and costs

where, as here, a litigant proceeding in a representative capacity secures a "substantial benefit" for

a class of persons.  *Serrano v. Priest*, 20 Cal. 3d 25, 38 (1977).  The two primary methods for

determining reasonable fees in the class action settlement context are the "lodestar/multiplier"

method and the "percentage of recovery" method.  *See Wershba v. Apple Comput., Inc.*, 91 Cal.

App. 4th 224, 254 (2001); *accord Hanlon*, 150 F.3d at 1029.

      The Court first considers the lodestar method.  The first step in the lodestar analysis is to

multiply the number of hours counsel reasonably expended on the litigation by a reasonable

hourly billing rate.  *See Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 579 (2004); *Hanlon*,

150 F.3d at 1029.  Once this raw lodestar figure is determined, the Court may apply a multiplier to

the lodestar if warranted after the consideration of certain enhancement factors like (1) the results

obtained; (2) the novelty and difficulty of the questions involved; (3) the requisite legal skill

necessary to litigate the case; (4) the preclusion of other employment due to acceptance of the

case; and (5) whether the fee is fixed or contingent.  *See Serrano*, 20 Cal. 3d at 48.

      Here, class counsel calculated total lodestar fees of $2,686,519.75 based on 5,106.9 total

hours worked as of September 18, 2015.  Dkt. No. 116-1 at 1.  The Court has reviewed class

counsel's time records and billing reports, and finds that the number of hours devoted to this case

12

United States District Court
Northern District of California

United States District Court
Northern District of California

1   was reasonable.  The Court further finds that the billing rates used by class counsel to calculate the

2   lodestar are reasonable and in line with prevailing rates in this district for personnel of comparable

3   experience, skill, and reputation.

4        Furthermore, the Court finds that the *Serrano* enhancement factors support the requested

5   1.36 lodestar multiplier.  Class counsel achieved significant benefits for the settlement class

6   members.  As detailed above, the amount of the settlement is substantial in light of the risks of

7   continued litigation.  Moreover, class counsel secured important nonmonetary benefits for the

8   class members.  *See Vizcaino*, 290 F.3d at 1049 ("Incidental or non-monetary benefits conferred

9   by the litigation are a relevant circumstance [in determining fee awards].").  Defendant has agreed

10  to completely phase out the wE Care assessment program and cease all alleged misrepresentations

11  concerning its use.  The Court finds that the injunctive relief encompassed in the Settlement

12  Agreement carries a substantial value above and beyond the value of the cash class members will

13  be paid.

14       As described above, this case involved complex issues of both fact and law that presented

15  significant risks.  Despite those risks, class counsel prosecuted this case on a contingent basis,

16  agreeing to advance all necessary expenses and knowing that they would only receive a fee if there

17  were a recovery.  Dkt. No. 104, Stebner Decl. ¶ 13.  Moreover, class counsel had to forego other

18  work in order to devote the requisite amount of time, resources, and energy to handle this

19  demanding matter.  *See id.* ¶ 10.  Given Defendant's vigorous opposition, class counsel's skills

20  and experience were essential to obtaining a settlement.

21       Finally, the Court finds that the reasonableness and propriety of the requested fee award

22  are confirmed by a cross-check based on the percentage of the gross settlement amount obtained.

23  The agreed-upon fee here represents approximately 27.2% of the cash value of the settlement.

24  While this percentage is slightly above the "benchmark" percentage of 25% applied in the Ninth

25  Circuit, the Court finds that it is reasonable in light of the additional nonmonetary benefits secured

26  by class counsel and the other enhancement factors considered above.

27       The Court finds that the requested attorneys' fees of $3,667,065.82 are fair, reasonable,

28  and justified.  Accordingly, the Court grants Plaintiffs' motion for attorneys' fees.

                                        13

Ex. F - Notice of Lodgment

Page 199

### 3. Class Counsel's Request for Costs

Class counsel originally sought reimbursement of $121,243.09 in "litigation expenses necessary for the investigation, prosecution, and settlement of this action." Dkt. No. 103 at 20. After being prompted by the Court at the December 17, 2015 final fairness hearing, class counsel submitted itemized cost records. *See* Dkt. Nos. 128-128-4. The Court has thoroughly reviewed the submitted records, which evidence reasonable costs incurred as follows: $3,807.15 by Denton US; $18,809.59 by Janssen Malloy; $3,465.40 by the Law Offices of Michael D. Thamer; $37,948.56 by Stebner & Associates; and $23,617.55 by the Arns Law Firm. *Id.* Because Schneider Wallace Cottrell Konecky Wotkyns did not submit supplemental cost records, the Court assumes that it maintains its original request for $35,074.16 in costs. *See* Dkt. No. 104, Wallace Decl. ¶¶ 32-36 & Exs. D-E. The Court finds these itemized costs to be reasonable and accordingly awards class counsel total costs of $122,722.41.

### 4. Plaintiffs' Incentive Award

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The district court must evaluate a plaintiff's incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Id.* at 977 (internal quotation marks omitted). In the Ninth Circuit, a $5,000 incentive award is "consistent with the amount courts typically award as incentive payments." *In re Toys-R-Us Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014); *Harris v. Vector Mktg. Corp.*, No. 08-cv-05198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount.").

Plaintiffs request a service award of $7,500 to Plaintiff Winans, by and through his guardian ad litem, Renee Moulton, and a service award of $3,500 to Plaintiff Ruby Richardson as trustee of the Wilma F. Fritz Trust. Dkt. No. 103 at 20. These awards represent 0.05% and 0.03% of the gross settlement value, respectively. Plaintiffs subjected themselves to public attention and

14