

**Alloy Group LLC**
**SEND PAYMENTS TO:**
**VB Box #150**
**PO Box 9202**
**Minneapolis, MN  55480-9202**

**(612)328-9920**

# Invoice

| Date | Invoice # |
|---|---|
| 11/29/2015 | 7926 |
| Terms | Due Date |
| See below | 11/28/2016 |

| Bill To |
|---|
| Schneider Wallace Cottrell<br>Brayton Konecky LLP<br>Ste 2000<br>180 Montgomery St<br>San Francisco, CA  94104 |

| Contract # | Matter # | Client Contact |
|---|---|---|
| SCH001 | 338012 | Todd Schneider |

| Date | Service Description | Quantity | Rate | Amount |
|---|---|---|---|---|
| 11/29/2015 | Carnes v Atria Monthly Hosting - November, 2015 $2955.60 due now - $5849.40 deferred | | | |
| 11/29/2015 | Relativity (Basic) per GB | 102.8 | 37.50 | 3,855.00 |
| 11/29/2015 | User-Relativity per user | 22 | 225.00 | 4,950.00 |
| 11/29/2015 | Users: sarah@stebnerassociates.com, sahmadian@mckennalong.com, mthamer@trinityinstitute.com, kellis@janssenlaw.com, kflick@mckennalong.com, chealey@mckennalong.com, tneedham@janssenlaw.com, tmyrick@mckennalong.com, smohney@mckennalong.com, smccoy@mckennalong.com, myarnall@janssenlaw.com, michael.potere@dentons.com, andy.jinnah@dentons.com, sgordon@schneiderwallace.com, afton.patterson@dentons.com, kathryn.howard@dentons.com, stephanie.l.williams@dentons.com, tlloyd@schneiderwallace.com, wendy.armstrong@dentons.com, danielle.simon@dentons.com, mhart@schneiderwallace.com, anneehilton@gmail.com | | | |

| | Total | $8,805.00 |
|---|---|---|

**Domestic Wire Transfer information:**
**Venture Bank - 6210 Wayzata Blvd - Golden Valley MN 55416**
**651-289-2222 phone  651-289-0200 fax**
**Alloy Group LLC ABA Routing: 091017196 - Acct: 036780**

Ex. F - Notice of Lodgment

ACCT# 1000824005

SCHNEIDER WALLACE COTTRELL ET AL
2000 POWELL ST STE 1400
EMERYVILLE CA  94608-1804

 THOMSON REUTERS

| INVOICE #  833025225 | WEST INFORMATION CHARGES INVOICE<br>NOV 01, 2015 - NOV 30, 2015 | | PAGE<br>1 |
|---|---|---|---|
| DESCRIPTION | CHARGE<br>IN USD | TAX<br>IN USD | TOTAL CHARGE<br>IN USD |
| WEST INFORMATION CHARGES | | 0.00 | |

**IMPORTANT NEWS**
Thank you for your business.  For more information about us, or your account, please visit us on the web at
legalsolutions.thomsonreuters.com
PLEASE MAKE CHECKS PAYABLE TO: THOMSON REUTERS-WEST PUBLISHING CORP.

**FOR BILLING INFORMATION CALL**                                                      A
    1-800-328-4880

**RETURN BOTTOM PORTION WITH PAYMENT**

INVOICE #              833025225
INVOICE DATE          12/01/2015
ACCOUNT #                                          WEST INFORMATION CHARGES
VENDOR #              41-1426973                   NOV 01, 2015 - NOV 30, 2015
VAT REG#              EU826006554

AMOUNT DUE IN USD
DUE DATE              12/31/2015
AMOUNT ENCLOSED IN USD _____

                        Thomson Reuters - West
                        Payment Center                      SCHNEIDER WALLACE COTTRELL ET AL
                        P.O. Box 6292                        2000 POWELL ST STE 1400
                        Carol Stream, IL 60197-6292          EMERYVILLE CA  94608-1804

0833025225 00000000000000000000 20151201 ZCPG 000837078 0010 1000824005 0

Ex. F - Notice of Lodgment

Page 302

| Usage Type Desc | Account # | Client | User Name | Special Pri |
|---|---|---|---|---|
| Totals for User | 101050 | | HART,MICHAEL | 1415.73 |
| Totals for Client | 101050-Carne | | | 1415.73 |

Ex. F - Notice of Lodgment

Page 303

| | | | |
|---|---|---|---|
| Totals for User | CARNES | JOHNSON,MARK | 2.57 |
| Totals for Client | CARNES | | 2.57 |

 ONE LEGAL

# Invoice

504 Redwood Blvd.
Suite 223
Novato CA 94947
415-491-0606
TIN: 26-0259046

| Date | 12/9/2015 |
|---|---|
| Acct. No. | 0010141 |
| Invoice # | 10460696 |
| Due Date | 12/9/2015 |

**Bill To**

Schneider Wallace Cottrell Konecky Wotkyns
2000 Powell Street
Suite 1400
Emeryville CA 94608

Sales Order:        10004833

Firm Contact:    Guy Wallace

Filer Name:        Sam Marks

Billing Code:      101050

Plaintiff:             Thomas Carnes

Defendant:        Atria Senior Living, Inc.

Documents:       Case Management Statement

Court Branch:    United States District Court, Northern District of California

Target:

**Served:**

**Serve Info:**

| Item | Amount |
|---|---|
| **Courtesy Copy** | 26.95 |

| | **Total** | **$26.95** |
|---|---|---|

Statutory court fees and witness fees disbursed on your behalf are
assessed a 2.6% convenience fee for processing and collecting
these disbursements. The convenience fee is waived if you elect the
ACH payment service.

**Balance Due**        **$26.95**

Ex. F - Notice of Lodgment

Page 305



| Invoice Number | Invoice Date | Account Number | Page |
|---|---|---|---|
| 5-260-08168 | Dec 18, 2015 | | 1 of 5 |

FedEx Tax ID:  71-0427007

**Billing Address:**
SCHNEIDER WALLACE COTTRELL
2000 POWELL ST STE 1400
EMERYVILLE CA  94608-1804

**Shipping Address:**
SCHNEIDER WALLACE COTTRELL
2000 POWELL ST STE 1400
EMERYVILLE CA  94608-1804

**Invoice Questions?**
**Contact FedEx Revenue Services**
Phone:    (800) 622-1147
          M-F 7 AM to 8 PM CST
          Sa 7 AM  to 6 PM CST
Fax:      (800) 548-3020
Internet: www.fedex.com

## Invoice Summary Dec 18, 2015

**FedEx Express Services**
Transportation Charges
Base Discount
Earned/Grace Discount
Bonus Discounts
Special Handling Charges
Return Surcharges
Total Charges                     USD

**TOTAL THIS INVOICE**            **USD**

You saved $83.13 in discounts this period!

Shipments included in this invoice received an earned discount. If you
would like to know how it was calculated, please go to the following URL:
https://www.fedex.com/EarnedDiscounts/.
Other discounts may apply.

---

Detailed descriptions of surcharges can be located at fedex.com

To ensure proper credit, please return this portion with your payment to FedEx.
Please do not staple or fold. Please make check payable to FedEx.
☐ For change of address, check here and complete form on reverse side.

| Invoice Number | Account Number | Amount Due |
|---|---|---|
| 5-260-08168 | | USD . |

## Remittance Advice
**Your payment is due by Jan 02, 2016**

2291122652600816813000017 83844

SCHNEIDER WALLACE COTTRELL
2000 POWELL ST STE 1400
EMERYVILLE CA  94608-1804

FedEx
P.O. Box 7221
Pasadena CA  91109-7321



| Invoice Number | Invoice Date | Account Number | Page |
|---|---|---|---|
| 5-260-08168 | Dec 18, 2015 | | 4 of 5 |

**Ship Date: Dec 14, 2015**  Cust. Ref.: 101050  Ref.#2:
**Payor: Shipper**  Ref.#3:

Fuel Surcharge - FedEx has applied a fuel surcharge of 2.75% to this shipment.
The Earned Discount for this ship date has been calculated based on a revenue threshold of $ 381.28
Distance Based Pricing, Zone 4

| | | Sender | Recipient | |
|---|---|---|---|---|
| Automation | INET | Sintia S Saenz | Darren Keith Cottriel | |
| Tracking ID | 775203288017 | Schneider Wallace Cottrell Kon | Jones Day | |
| Service Type | FedEx 2Day | 2000 Powell Street | 3161 Michelson Drive | |
| Package Type | FedEx Envelope | EMERYVILLE CA 94608 US | IRVINE CA 92612 US | |
| Zone | 04 | | | |
| Packages | 1 | | | |
| Rated Weight | N/A | Transportation Charge | | 15.80 |
| Delivered | Dec 16, 2015 10:36 | Automation Bonus Discount | | -1.58 |
| Svc Area | A1 | Fuel Surcharge | | 0.29 |
| Signed by | R.RAHEIM | Earned Discount | | -3.63 |
| FedEx Use | 000000000/0001110/_ | **Total Charge** | **USD** | **$10.88** |

**Ship Date: Dec 14, 2015**  Cust. Ref.: 101050  Ref.#2:
**Payor: Shipper**  Ref.#3:

Fuel Surcharge - FedEx has applied a fuel surcharge of 2.75% to this shipment.
The Earned Discount for this ship date has been calculated based on a revenue threshold of $ 381.28
Distance Based Pricing, Zone 4

| | | Sender | Recipient | |
|---|---|---|---|---|
| Automation | INET | Sintia S Saenz | Leo A. Bautista | |
| Tracking ID | 775203329065 | Schneider Wallace Cottrell Kon | Lewis Brisbois Bisgaard & Smit | |
| Service Type | FedEx 2Day | 2000 Powell Street | 633 W. 5th Street | |
| Package Type | FedEx Envelope | EMERYVILLE CA 94608 US | LOS ANGELES CA 90071 US | |
| Zone | 04 | | | |
| Packages | 1 | | | |
| Rated Weight | N/A | Transportation Charge | | 15.80 |
| Delivered | Dec 16, 2015 09:57 | Automation Bonus Discount | | -1.58 |
| Svc Area | A1 | Fuel Surcharge | | 0.29 |
| Signed by | C.CRAVENS | Earned Discount | | -3.63 |
| FedEx Use | 000000000/0001110/_ | **Total Charge** | **USD** | **$10.88** |



**Alloy Group LLC**
**SEND PAYMENTS TO:**
**VB Box #150**
**PO Box 9202**
**Minneapolis, MN  55480-9202**

**(612)328-9920**

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/31/2015 | 8009 |
| Terms | Due Date |
| See below | 12/30/2016 |

| Bill To |
|---------|
| Schneider Wallace Cottrell<br>Brayton Konecky LLP<br>Ste 2000<br>180 Montgomery St<br>San Francisco, CA  94104 |

| Contract # | Matter # | Client Contact |
|------------|----------|----------------|
| SCH001 | 338012 | Todd Schneider |

| Date | Service Description | Quantity | Rate | Amount |
|------|---------------------|----------|------|--------|
| 12/31/2015 | Carnes v Atria Monthly Hosting - December, 2015 - FINAL MONTH OF BILLING<br>$2955.60 due now ~ $5849.40 deferred | | | |
| 12/31/2015 | Relativity (Basic) per GB | 102.8 | 37.50 | 3,855.00 |
| 12/31/2015 | User-Relativity per user | 22 | 225.00 | 4,950.00 |
| 12/31/2015 | Users: sarah@stebnerassociates.com, sahmadian@mckennalong.com, mthamer@trinityinstitute.com, kellis@janssenlaw.com, kflick@mckennalong.com, chealey@mckennalong.com, tneedham@janssenlaw.com, tmyrick@mckennalong.com, smohney@mckennalong.com, smccoy@mckennalong.com, myarnall@janssenlaw.com, michael.potere@dentons.com, andy.jinnah@dentons.com, sgordon@schneiderwallace.com, afton.patterson@dentons.com, kathryn.howard@dentons.com, stephanie.l.williams@dentons.com, tlloyd@schneiderwallace.com, wendy.armstrong@dentons.com, danielle.simon@dentons.com, mhart@schneiderwallace.com, anneehilton@gmail.com | | | |

| | Total | $8,805.00 |
|--|-------|-----------|

**Domestic Wire Transfer information:**
**Venture Bank - 6210 Wayzata Blvd - Golden Valley MN 55416**
**651-289-2222 phone  651-289-0200 fax**
**Alloy Group LLC ABA Routing: 091017196 - Acct: 036780**



**Alloy Group LLC**
**SEND PAYMENTS TO:**
**VB Box #150**
**PO Box 9202**
**Minneapolis, MN  55480-9202**

**(612)328-9920**

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/31/2015 | 8010 |
| Terms | Due Date |
| See below | 12/30/2016 |

| Bill To |
|---------|
| Schneider Wallace Cottrell<br>Brayton Konecky LLP<br>Ste 2000<br>180 Montgomery St<br>San Francisco, CA  94104 |

| Contract # | Matter # | Client Contact |
|------------|----------|----------------|
| SCH001 | 338012 | Todd Schneider |

| Date | Service Description | Quantity | Rate | Amount |
|------|---------------------|----------|------|--------|
| 12/31/2015 | Carnes v Atria Processing DSS Docs, Relativity import, OCR, export production to FTP<br>Work performed 12/11/15.<br>$62.50 due now - $230.00 deferred | | | |
| 12/31/2015 | Tech time - Tier 1 per hour | 0.5 | 225.00 | 112.50 |
| 12/31/2015 | Processing - Intake based per GB | 0.8 | 225.00 | 180.00 |
| | | | Total | $292.50 |

**Domestic Wire Transfer information:**
**Venture Bank - 6210 Wayzata Blvd - Golden Valley MN 55416**
**651-289-2222 phone  651-289-0200 fax**
**Alloy Group LLC ABA Routing: 091017196 - Acct: 036780**

Ex. F - Notice of Lodgment

Page 309



**Alloy Group LLC**
**SEND PAYMENTS TO:**
**VB Box #150**
**PO Box 9202**
**Minneapolis, MN  55480-9202**

**(612)328-9920**

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/31/2015 | 8011 |

| Terms | Due Date |
|-------|----------|
| See below | 12/30/2016 |

| Bill To |
|---------|
| Schneider Wallace Cottrell<br>Brayton Konecky LLP<br>Ste 2000<br>180 Montgomery St<br>San Francisco, CA  94104 |

| Contract # | Matter # | Client Contact |
|------------|----------|----------------|
| SCH001 | 338012 | Todd Schneider |

| Date | Service Description | Quantity | Rate | Amount |
|------|---------------------|----------|------|--------|
| 12/31/2015 | Carnes v Atria - Processing PDFs, Relativity import, export Plaintiff's production to FTP Work performed 12/10/15. $45.00 due now - $168.75 deferred | | | |
| 12/31/2015 | Tech time - Tier 1 per hour | 0.5 | 225.00 | 112.50 |
| 12/31/2015 | Processing - Intake based per GB | 0.45 | 225.00 | 101.25 |

| | Total | $213.75 |
|---|-------|---------|

**Domestic Wire Transfer information:**
**Venture Bank - 6210 Wayzata Blvd - Golden Valley MN 55416**
**651-289-2222 phone  651-289-0200 fax**
**Alloy Group LLC ABA Routing: 091017196 - Acct: 036780**

ACCT# 1

SCHNEIDER WALLACE COTTRELL ET AL
2000 POWELL ST STE 1400
EMERYVILLE CA  94608-1804

 THOMSON REUTERS

| INVOICE #  833220580 | WEST INFORMATION CHARGES INVOICE<br>DEC 01, 2015 - DEC 31, 2015 | | PAGE<br>1 |
|---|---|---|---|
| DESCRIPTION | CHARGE<br>IN USD | TAX<br>IN USD | TOTAL CHARGE<br>IN USD |
| WEST INFORMATION CHARGES | | 0.00 | |

**IMPORTANT NEWS**
Thank you for your business.  For more information about us, or your account, please visit us on the web at
legalsolutions.thomsonreuters.com
PLEASE MAKE CHECKS PAYABLE TO: THOMSON REUTERS-WEST PUBLISHING CORP.

**FOR BILLING INFORMATION CALL**
1-800-328-4880

A

RETURN BOTTOM PORTION WITH PAYMENT

| | |
|---|---|
| INVOICE # | 833220580 |
| INVOICE DATE | 01/01/2016 |
| ACCOUNT # | |
| VENDOR # | 41-1426973 |
| VAT REG# | EU826006554 |

WEST INFORMATION CHARGES
DEC 01, 2015 - DEC 31, 2015

**AMOUNT DUE IN USD**
**DUE DATE**          **01/31/2016**
**AMOUNT ENCLOSED IN USD** _____

Thomson Reuters - West
Payment Center
P.O. Box 6292
Carol Stream, IL 60197-6292

SCHNEIDER WALLACE COTTRELL ET AL
2000 POWELL ST STE 1400
EMERYVILLE CA  94608-1804

3
0
4
1

0833220580 000000000000000000000 20160101 ZCPG 000767578 0010 1000824005 9

Ex. F - Notice of Lodgment

Page 311

| Totals for User | 101050 | HART,MICHAEL | 2703.78 |
|---|---|---|---|
| Totals for User | 101050 | UHROWCZIK,JENNI | 197.36 |
| Totals for Client | Carnes | | 2901.14 |

Ex. F - Notice of Lodgment

Page 312



**PACER**
Public Access to Court Electronic Records

## INVOICE

Invoice Date: 01/07/2016
Usage From: 10/01/2015   to: 12/31/2015

Account Summary

**Pages:**
Rate:
Subtotal:

**Audio Files:**
Rate:
Subtotal:

**Current Billed Usage:**

**Previous Balance:**
Current Balance:

| | |
|---|---|
| **Account #:** | |
| **Invoice #:** | 2637106-Q42015 |
| **Due Date:** | 02/10/2016 |
| **Amount Due:** | |

### Contact Us

San Antonio: (210) 301-6440
Toll Free: (800) 676-6856
Hours: 8 am - 6 pm CT M-F
pacer@psc.uscourts.gov

See pacer.gov/billing for detailed billing transactions, instructions for disputing transactions, FAQs, and more.

It's quick and easy to pay your bill online with a credit card. Visit the **Manage My Account** section of the PACER Service Center website at pacer.gov.

The PACER Federal Tax ID is:
**74-2747938**

Questions about the invoice?
Visit **pacer.gov/billing**

**Total Amount Due:** 

### Getting Ready for NextGen CM/ECF

Over the past year, several appellate, district, and bankruptcy courts throughout the country have implemented the next generation (NextGen) CM/ECF system. While most courts have not yet set a date for when they will switch to NextGen, you can begin preparing now by upgrading your PACER account. To learn more, visit the NextGen information page at pacer.gov/nextgen.

- **NextGen Help** (pacer.gov/nextgen): Provides general information about NextGen conversion
- **Electronic Learning Modules** (pacer.gov/ecfcbt/cso/index.html): Provides user training for new NextGen features
- **NextGen CM/ECF FAQs** (pacer.gov/psc/hfaq.html): Answers common NextGen-related questions

--- --- --- *Please detach the coupon below and return with your payment.* **Thank you!** --- --- ---



**PACER**
Public Access to Court Electronic Records

| Account # | Due Date | Amount Due |
|---|---|---|
| | 02/10/2016 | Auto Bill |

Do not send cash. Make checks or money orders drawn on a U.S. Bank in U.S. dollars payable to: PACER Service Center. Include your account ID on the check or money order.

This account is registered for automatic billing.  The total amount due, $2,613.10, will be charged to the credit card on file up to 7 days before the due date.  Charges will appear on your credit card statement as: PACER 800-676-6856 IR.

*Visit pacer.gov for address changes.*

PACER Service Center
P.O. Box 71364
Philadelphia, PA 19176-1364

Schneider Wallace Cottrell Konecky Wotkyns
Todd M Schneider
180 Montgomery St
Suite 2000
San Francisco, CA 94104

Ex. F - Notice of Lodgment

Page 313

**Report for sm070707**

| Login | Court | Date | Client Code | Cost |
|-------|-------|------|-------------|------|
| 2637106 | 00PCL | 11/19/2015 | 101050 | $0.10 |
| 2637106 | CACDC | 12/10/2015 | 101050 | $4.00 |
| 2637106 | CANDC | 10/05/2015 | 101050 | $8.50 |
| 2637106 | CANDC | 10/06/2015 | 101050 | $5.60 |
| 2637106 | CANDC | 10/07/2015 | 101050 | $1.80 |
| 2637106 | CANDC | 11/09/2015 | 101050 | $4.00 |
| 2637106 | CANDC | 11/19/2015 | 101050 | $2.70 |
| 2637106 | CANDC | 12/08/2015 | 101050 | $1.10 |
| 2637106 | CANDC | 12/10/2015 | 101050 | $1.00 |

Total    $28.80

Ex. F - Notice of Lodgment

Page 314

# Exhibit G

1  Kathryn A. Stebner, State Bar No. 121088
   George Kawamoto, State Bar No. 280358
2  **STEBNER AND ASSOCIATES**
   870 Market Street, Suite 1212
3  San Francisco, CA 94102
   Tel: (415) 362-9800
4  Fax: (415) 362-9801

5  Michael D. Thamer, State Bar No. 101440
   **LAW OFFICES OF MICHAEL D. THAMER**
6  Old Callahan School House
   12444 South Highway 3
7  Post Office Box 1568
   Callahan, California 96014-1568
8  Tel: (530) 467-5307
   Fax: (530) 467-5437
9
   Robert S. Arns, State Bar No. 65071
10 **THE ARNS LAW FIRM**
   515 Folsom Street, 3rd Floor
11 San Francisco, CA 94105
   Tel: (415) 495-7800
12 Fax: (415) 495-7888

13

14 Attorneys for Plaintiff and the Proposed Class

Guy B. Wallace, State Bar No. 176151
Mark T. Johnson, State Bar No. 76904
Sarah Colby, State Bar No. 194475
Jennifer A. Uhrowczik, State Bar No. 302212
**SCHNEIDER WALLACE**
**COTTRELL KONECKY**
**WOTKYNS, LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel: (415) 421-7100
Fax: (415) 421-7105

W. Timothy Needham, State Bar No. 96542
**JANSSEN MALLOY LLP**
730 Fifth Street
Eureka, CA 95501
Tel: (707) 445-2071
Fax: (707) 445-8305

Christopher J. Healey, State Bar No. 105798
**DENTONS US LLP**
600 West Broadway, Suite 2600
San Diego, CA 92101-3372
Tel: (619) 236-1414
Fax: (619) 645-5328

15

**UNITED STATES DISTRICT COURT**

16

**NORTHERN DISTRICT OF CALIFORNIA**

17

THOMAS CARNES, by and through his guardian ad
18 litem, JULIANA CHRISTINE CLEGG, on behalf of
   himself and all others similarly situated,
19
        Plaintiff,
20
   vs.
21
   ATRIA SENIOR LIVING, INC. and DOES 1 through
22 100,

23        Defendants.

24

Case No.: 3:14-cv-02727-VC

**CLASS ACTION**

**DECLARATION OF ROBERT S. ARNS IN
SUPPORT OF PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES, COSTS, AND SERVICE
AWARD**

Date: June 30, 2016
Time: 10:00 a.m.
Place: Courtroom 4
Judge: Hon. Vince Chhabria

25
26
27
28

DECLARATION OF ROBERT S. ARNS ISO PLTFF'S MOTION FOR ATTYS' FEES, COSTS, AND SERVICE AWARD
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-02727-VC

1   I, Robert S. Arns, hereby declare:

2      1.   I am an attorney licensed to practice before all the courts of the State of California and am the

3   principal of The Arns Law Firm, one of the attorneys for Plaintiffs herein. I am submitting this

4   Declaration in support of Class Counsel's Application for Attorneys' Fees and Expenses and for

5   Service Awards. I have personal knowledge as to the facts stated herein and, if called upon to do so,

6   could and would competently testify thereto.

7      2.   My firm has incurred $2,446.85 in litigation expenses.

8      3.   Attached as Exhibit 1 is a summary of the costs incurred by my firm in this matter. The costs

9   relate to discovery and document management software used in this case.

10

11   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and

12   correct.

13      Executed on this _12th_ day of May 2016, at San Francisco, California.

14

15

16                                              Robert S. Arns

17

18

19

20

21

22

23

24

25

26

27

28

1

Ex. G - Notice of Lodgment

Page 317

# EXHIBIT 1


# Exhibit H

1  Kathryn A. Stebner, State Bar No. 121088
2  George Kawamoto, State Bar No. 280358
   **STEBNER AND ASSOCIATES**
   870 Market Street, Suite 1212
3  San Francisco, CA  94102
   Tel:  (415) 362-9800
4  Fax:  (415) 362-9801

5  Michael D. Thamer, State Bar No. 101440
   **LAW OFFICES OF MICHAEL D. THAMER**
6  Old Callahan School House
   12444 South Highway 3
7  Post Office Box 1568
   Callahan, California 96014-1568
8  Tel:  (530) 467-5307
   Fax:  (530) 467-5437
9
   Robert S. Arns, State Bar No. 65071
10 **THE ARNS LAW FIRM**
   515 Folsom Street, 3rd Floor
11 San Francisco, CA 94105
   Tel:  (415) 495-7800
12 Fax: (415) 495-7888

Guy B. Wallace, State Bar No. 176151
Mark T. Johnson, State Bar No. 76904
Sarah Colby, State Bar No. 194475
Jennifer A. Uhrowczik, State Bar No. 302212
**SCHNEIDER WALLACE**
**COTTRELL KONECKY**
**WOTKYNS, LLP**
2000 Powell Street, Suite 1400
Emeryville, CA  94608
Tel: (415) 421-7100
Fax: (415) 421-7105

W. Timothy Needham, State Bar No. 96542
**JANSSEN MALLOY LLP**
730 Fifth Street
Eureka, CA  95501
Tel:  (707) 445-2071
Fax:  (707) 445-8305

Christopher J. Healey, State Bar No. 105798
**DENTONS US LLP**
600 West Broadway, Suite 2600
San Diego, CA 92101-3372
Tel: (619) 236-1414
Fax: (619) 645-5328

13

14  Attorneys for Plaintiffs and the Proposed Class

15                     **UNITED STATES DISTRICT COURT**

16                  **NORTHERN DISTRICT OF CALIFORNIA**

17

18

19  THOMAS CARNES, by and through his guardian
    ad litem, JULIANA CHRISTINE CLEGG, on
20  behalf of himself and all others similarly situated,

21          Plaintiff,

22  vs.

23  ATRIA SENIOR LIVING, INC. and DOES 1
    through 100,

24          Defendants.

Case No.: 3:14-cv-02727-VC

**CLASS ACTION**

**DECLARATION OF JULIANA**
**CHRISTINE CLEGG**

Judge:      Hon. Vince Chhabria
Courtroom: 4, 17th Floor

25

26

27

28

DECLARATION OF JULIANA CHRISTINE CLEGG
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-0727-VC

I, Juliana Christine Clegg, declare and state:

1.      If called to testify as to the information contained herein, I would and could competently do so as stated below.  The following is based upon my own personal knowledge.

2.      I am the daughter of Thomas Carnes and the sole successor-in-interest to his estate. Thomas Carnes was a resident of Atria Hillsdale in San Mateo from approximately July 26, 2012 to approximately January 19, 2015.  Thomas Carnes died on September 29, 2015.  I served as a class representative in this case as successor-in-interest to the Estate of Thomas Carnes.

3.      I initially had concerns about becoming a class representative in this case including potential retaliation resulting from participating in a lawsuit.  My father's experience at Atria Hillsdale in San Mateo was traumatic for both of us.  During his stay there, I visited regularly and was my father's advocate.  I also advocated for residents who could not speak for themselves and had no regular visitors.  As a result, I had already experienced many unsatisfying interactions with Defendants.  I worried that my father and/or I would be discriminated against by Atria's management and staff because of my involvement in this lawsuit.  I was concerned that my participation in this lawsuit would consume a lot of my time. I also understood that there was a risk that the Court would order me to pay Defendants' costs should the litigation prove unsuccessful.

4.      Despite these concerns, I believed that Atria had misled my father, me and other residents and their family members about how it would use its resident evaluation system to provide care and staffing at its facilities.  I therefore agreed to participate in this lawsuit to stop Atria from misleading residents and charging them level of care fees that were not supported by facility staffing.  During my visits, I saw that my father paid for many services he did not receive and that the facility did not have enough staff.  For example, in 2013, my father's care plan promised him three showers per week.  Yet I noticed that my father often smelled of urine and body odor, and his hair was filthy and matted.  I repeatedly advised Atria staff that my father was not getting his promised care, and on many occasions, Atria staff admitted that the reason was lack of sufficient staffing.  I agreed to be a class representative so that other Atria residents would not have to go through what my father did.  My participation in this class action allowed me to speak

1

DECLARATION OF JULIANA CHRISTINE CLEGG
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-0727-VC

up not only for him but for other residents and families who had no advocate.  I believed that Atria was effectively deceiving families paying for assisted living services, putting residents at risk of receiving sub-standard care on a regular basis.  I witnessed Atria staff repeatedly making representations to potential resident families about the ability to ensure continuity-of-care when those same managers knew intimately that they had no ability to make good on those statements given the chronic and well-known staffing shortages the Atria facility suffered, staff shortages I later discovered were expressly endorsed by Atria headquarters budget supervisors despite complaints from their own Directors, care staff and many families.  I was willing to participate in this lawsuit to bring this deception to light and, if possible, to begin to fix this fraudulent practice.

5.     Since January of 2014, I have met in person with class counsel on at least seven (7) occasions.  I have spoken with them by telephone at least twenty-five (25) times and exchanged many emails and letters with them regarding the facts of the case, developments regarding my father's care, written discovery and document production, the progress of the lawsuit, court rulings, settlement negotiations, and the terms of the settlement.  To date, I have devoted approximately sixty (60) hours to this case.  I spent numerous hours meeting, talking, and corresponding with my attorneys; preparing for my deposition; providing information; searching for and providing documents; reviewing pleadings; responding to written discovery requests; discussing mediation and settlement offers with my attorneys; and reviewing the Stipulation of Settlement and the Stipulated Order for Injunction.  All of these activities were time-consuming and draining, as they required me to relive and discuss the substandard care my father received at Atria.

6.     In signing the attorney representation agreement with class counsel, I agreed to a provision that reserved my right to support, oppose, or comment upon any proposed settlement, and to support, oppose, or comment upon any application for compensation by the attorneys in this case.

7.     Having reviewed the terms of the Stipulation of Settlement and the Stipulated Order for Injunction, I accept the final approval of this Class Settlement and the attorney's request for

2

DECLARATION OF JULIANA CHRISTINE CLEGG
*Carnes, et al, vs. Atria Senior Living, Inc.*, Case No. 3:14-cv-0727-VC

1  compensation for the work they have done on the case. I understand that the injunctive relief
2  secured through this settlement is the best non-financial outcome that counsel determined could be
3  achieved. Therefore, accepting that counsel have attained some measure of justice for class
4  members, I believe it is in the best interests of the class members that this settlement go forward.
5      8.     I declare under penalty of perjury that the foregoing is true and correct. Executed
6  this 16th Day of May 2016, at Redwood City, California.

Juliana Christine Clegg

DECLARATION OF JULIANA CHRISTINE CLEGG
*Carnus, et al, vs. Aurla Senior Living, Inc.*, Case No. 3:14-cv-0727-VC

Ex. H - Notice of Lodgment

Page 324

# Exhibit I

Kathryn A. Stebner, State Bar No. 121088
Sarah Colby, State Bar No. 194475
George Kawamoto, State Bar No. 280358
**STEBNER AND ASSOCIATES**
870 Market Street, Suite 1212
San Francisco, CA 94102
Tel: (415) 362-9800
Fax: (415) 362-9801

Guy B. Wallace, State Bar No. 176151
Mark T. Johnson, State Bar No. 76904
Jennifer A. Uhrowczik, State Bar No. 302212
**SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS, LLP**
2000 Powel Street, Suite 1400
Emeryville, CA 94608
Tel: (415) 421-7100
Fax: (415) 421-7105

Michael D. Thamer, State Bar No. 101440
**LAW OFFICES OF MICHAEL D. THAMER**
Old Callahan School House
12444 South Highway 3
Post Office Box 1568
Callahan, California 96014-1568
Tel: (530) 467-5307
Fax: (530) 467-5437

W. Timothy Needham, State Bar No. 96542
**JANSSEN MALLOY LLP**
730 Fifth Street
Eureka, CA 95501
Tel:    (707) 445-2071
Fax:    (707) 445-8305

Robert S. Arns, State Bar No. 65071
**THE ARNS LAW FIRM**
515 Folsom Street, 3rd Floor
San Francisco, CA 94105
Tel: (415) 495-7800
Fax: (415) 495-7888

Christopher J. Healey, State Bar No. 105798
**DENTONS US LLP**
600 West Broadway, Suite 2600
San Diego, CA 92101-3372
Tel: (619) 236-1414
Fax: (619) 645-5328

Attorneys for Plaintiff and the Proposed Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

THOMAS CARNES, by and through his guardian ad litem, JULIANA CHRISTINE CLEGG, on his own behalf and on behalf of others similarly situated,

        Plaintiff,

vs.

ATRIA SENIOR LIVING, INC. and DOES 1 through 100,

        Defendants.

Case No.: 3:14-cv-02727-VC

**DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS FEES**

DECLARATION OF RICHARD M. PEARL ISO MOTION FOR
AWARD OF ATTORNEYS' FEES

Ex. I - Notice of Lodgment

Page 326

I, Richard M. Pearl, hereby declare:

1.      I am an attorney at law licensed and duly admitted to practice before all the courts of the State of California and before this court.  If called as a witness I could and would competently testify to the following.

2.      I am a member in good standing of the California State Bar.  I am in private practice as the principal of my own law firm, the Law Offices of Richard M. Pearl, in Berkeley, California.  I specialize in issues related to court-awarded attorneys' fees, including the representation of parties in fee litigation and appeals, serving as an expert witness, and serving as a mediator and arbitrator in disputes concerning attorneys' fees and related issues.  In this case, I have been asked by the attorneys for Plaintiff  Thomas Carnes to render my opinion on the reasonableness of the hourly rates, hours, and multiplier they are requesting in this matter and make this declaration in support of their fee request.

3.      I am aware of the attorneys' fees being requested by Plaintiff's attorneys in this case, their experience and qualifications, the nature of the work performed, and the results achieved.  I have also discussed the case with Tim Needham, one of Plaintiff's attorneys.

4.      In light of the my experience as an attorneys' fees specialist and the information about hourly rates I have gathered, some of which is summarized below (see ¶¶11-15), in my opinion the hourly rates requested by Plaintiff's counsel are all well within the range of reasonable attorneys' fees that for this case.

**Professional Background**

5.      Briefly summarized, my background is as follows:  I am a 1969 graduate of Boalt Hall School of Law, University of California, Berkeley, California.  I took the California Bar Examination in August 1969 and passed it in November of that year, but because I was working as an attorney in Atlanta, Georgia for the Legal Aid Society of Atlanta (LASA), I was not admitted to the California Bar until January 1970.  I worked for LASA until summer of 1971, when I then went to work in California's Central Valley for California Rural Legal Assistance, Inc. (CRLA), a statewide legal services program.  From 1977 to 1982, I was CRLA's Director of Litigation, supervising more than fifty attorneys.  In 1982, I went into private practice, first in a small law firm, then as a sole practitioner.  Martindale Hubbell rates my law firm "AV."  I also have been selected as a Northern California "Super Lawyer" in Appellate Law for 2005, 2006, 2007, 2008, 2010, 2011, 2012, 2013, 2014, 2015, and 2016.  A copy of

1

1   my current Resume is attached hereto as **Exhibit A**. I also currently serve as Chair of the Board of the
2   California Rural Legal Assistance Foundation.
3          6.      Since 1982, my practice has been a general civil litigation and appellate practice, with an
4   emphasis on cases and appeals involving court-awarded attorneys' fees.  I also am the author of
5   *California Attorney Fee Awards* (3d ed. Cal. CEB 2010) and its February 2011, 2012, 2013, 2014, 2015,
6   and March 2016 Supplements, as well as all its previous editions and annual supplements.  California
7   appellate courts have cited this treatise on more than 35 occasions.  *See, e.g., Graham v.*
8   *DaimlerChrylser Corp.* (2004) 34 Cal.4th 553, 576, 584; *Lolley v. Campbell* (2002) 28 Cal.4th 367, 373;
9   *Chacon v. Litke* (2010) 181 Cal.App.4th 1234, 1259; *Syers Properties III, Inc. v. Rankin* (2014) 226
10  Cal.App.4th 691, 698, 700.  I also have lectured and written extensively on court-awarded attorneys'
11  fees.  I have been a member of the California State Bar's Attorneys' Fees Task Force and have testified
12  before the State Bar Board of Governors and the California Legislature on attorneys' fee issues.  In
13  addition, I authored a federal manual on attorneys' fees entitled *Attorneys' Fees: A Legal Services*
14  *Practice Manual*, published by the Legal Services Corporation.  I also co-authored the chapter on
15  "Attorney Fees" in Volume 2 of CEB's *Wrongful Employment Termination Practice*, 2d Ed. (1997).
16         7.      More than 90% of my practice is devoted to issues involving court-awarded attorneys'
17  fees.  I have been counsel in over 190 attorneys' fee applications in state and federal courts, primarily
18  representing other attorneys.  I also have briefed and argued more than 45 appeals, at least 30 of which
19  have involved attorneys' fees issues.  I have successfully handled five cases in the California Supreme
20  Court involving court-awarded attorneys' fees: (1) *Maria P. v. Riles* (1987) 43 Cal.3d 1281, a landmark
21  early decision on the scope of California Code of Civil Procedure section 1021.5; (2) *Delaney v. Baker*
22  (1999) 20 Cal.4th 23, which held that heightened remedies, including attorneys' fees, are available in
23  suits against nursing homes under California's Elder Abuse Act; (3) *Ketchum v. Moses* (2001) 24
24  Cal.4th 1122, which held, *inter alia*, that contingent risk multipliers remain available under California
25  attorney fee law, despite the United States Supreme Court's contrary ruling on federal law (note that in
26  *Ketchum*, I was primary appellate counsel in the Court of Appeal and "second chair" in the Supreme
27  Court); (4) *Flannery v. Prentice* (2001) 26 Cal.4th 572, which held that in the absence of an agreement
28  to the contrary, statutory attorneys' fees belong to the attorney whose services they are based upon; and
    (5) *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, which held, *inter alia*, that the "catalyst"

2

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

theory was still valid under California law despite federal Supreme Court authority to the contrary.  I also represented and argued on behalf of *amicus curiae* in *Conservatorship of McQueen* (2014) 59 Cal.4th 602, and, along with Richard Rothschild, filed an *amicus curiae* brief in *Vasquez v. State of California* (2009) 45 Cal.4th 243.  I also have handled numerous other appeals involving attorneys' fees, including:  *Davis v. City & County of San Francisco* (9th Cir. 1992) 976 F.2d 1536; *Mangold v. CPUC* (9th Cir. 1995) 67 F.3d 1470; *Moore v. Bank of America* (9th Cir. 2007) 245 Fed.Appx. 613; *Velez v. Wynne* (9th Cir. 2007) 2007 U.S.App.LEXIS 2194; *Camacho v. Bridgeport Financial, Inc.* (9th Cir. 2008) 523 F.3d 973; *Center for Biological Diversity v. County of San Bernardino* (2010) 185 Cal.App.4th 866; and *Environmental Protection Information Center v. California Dept. of Forestry & Fire Protection et al.* (2010) 190 Cal.App.4th 217.  For an expanded list of my representative decisions, *see* Exhibit A.

8.      I also have been retained by various governmental entities, including the states of California and Vermont, to consult with them regarding their affirmative attorney fee claims.

9.      I am frequently called upon to opine about the reasonableness of attorneys' rates and fees, and numerous federal and state courts have cited my testimony on that issue favorably.  The reported cases referencing my testimony include the following California appellate courts:  *Kerkeles v. City of San Jose* (2015) 243 Cal.App.4th 88; *Habitat and Watershed Caretakers v. City of Santa Cruz* (2015) 2015 Cal.App.Unpub. LEXIS 7156; *Laffitte v. Robert Half International Inc.* (2014) 231 Cal.App.4th 860 (vacated on grant of review); *In re Tobacco Cases I* (2013) 216 Cal.App.4th 570; *Heritage Pacific Financial LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1009; *Children's Hospital & Medical Center v. Bonta* (2002) 97 Cal.App.4th 740*; Wilkinson v. South City Ford* (2010) 2010 Cal.App.Unpub. LEXIS 8680; *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628 (anti-SLAPP case).  My declaration also has been favorably referenced by the following federal courts: *Prison Legal News v. Schwarzenegger* (9th Cir. 2010) 608 F.3d 446, 455, in which the expert declaration referred to in that opinion is mine; *Antoninetti v. Chipotle Mexican Grill, Inc.* (9th Cir. 2012) Order filed Dec. 26, 2012; *In re Cathode Ray Tube Antitrust Litigation,*  Master File No. 3:07-cv-5944 JST, MDL No. 1917, Report And Recommendation Of Special Master Re Motions (1) To Approve Indirect Purchaser Plaintiff's Settlements With the Phillips, Panasonic, Hitachi, Toshiba, Samsung SDI, Technicolor, And Technologies Displays Americas Defendants and (2) For An Award Of Attorneys'

3

Ex. I - Notice of Lodgment

Page 329

Fees, Reimbursement Of Litigation Expenses, And Incentive Awards To Class Representative, dated January 28, 2016; *Gutierrez v. Wells Fargo Bank* (N.D. Cal. 2015) 2015 U.S.Dist.LEXIS 67298; *Walsh v. Kindred* (N.D. Cal. 2013) 2013 U.S.Dist.LEXIS 176319; *Holman et al v. Experian Information Solutions, Inc.* (N.D. Cal. 2014) 2014 U.S.Dist.LEXIS 173698, at *13; *In re TFT-LCD (Flat Panel) Antitrust Litigation* (N.D.Cal. 2013) No. M 07-1827 SI, MDL, No. 1827, Report and Recommendation of Special Master re Motions for Attorneys' Fees etc., filed Nov. 9, 2012, adopted in relevant part, 2013 U.S.Dist.LEXIS 49885; *Rosenfeld v. United States Dept. of Justice* (N.D. Cal. 2012) 904 F.Supp.2d 988; *Stonebrae v. Toll Bros.* (N.D. Cal. 2011) 2011 U.S.Dist.LEXIS 39832, at *9 (thorough discussion), *aff'd* (9th Cir. 2013) 2013 U.S.App.LEXIS 6369; *Hajro v. United States Citizenship & Immigration Service* (N.D.Cal 2012) 900 F.Supp.2d 1034, 1054; *Armstrong v. Brown* (N.D. Cal. 2011) 2011 U.S.Dist.LEXIS 87428; *Californians for Disability Rights, Inc. v. California Dept. of Transportation* (N.D. Cal. 2010) 2010 U.S.Dist.LEXIS 141030; *Prison Legal News v. Schwarzenegger* (N.D. Cal. 2008) 561 F.Supp.2d 1095 (an earlier motion); *Oberfelder v. City of Petaluma* (N.D. Cal. 2002) 2002 U.S.Dist.LEXIS 8635, *aff'd* (9th Cir. 2003) 2003 U.S.App.LEXIS 11371; *Bancroft v. Trizechahn Corp.*, C.D. Cal. No. CV 02-2373 SVW (FMOx), Order Granting Reasonable Attorneys' Fees etc., filed Aug. 14, 2006; *Willoughby v. DT Credit Corp.*, C.D. Cal. No. CV 05-05907 MMM (Cwx), Order Awarding Reasonable Attorneys' Fees After Remand, filed July 17, 2006; *A.D. v. California Highway Patrol* (N.D.Cal. 2009) 2009 U.S.Dist.LEXIS 110743, *rev'd on other grounds* (9th Cir. 2013) 712 F.3d 446, *reaffirmed and additional fees awarded on remand* at 2013 U.S.Dist.LEXIS 169275; *National Federation of the Blind v. Target Corp.* (N.D.Cal. 2009) 2009 U.S.Dist.LEXIS 67139.   In addition, numerous trial courts have relied upon my testimony in unpublished fee orders.

       10.      Through my writing and practice, I have become knowledgeable about the non-contingent market rates charged by attorneys in California and elsewhere.  I have obtained this knowledge in several ways:  (1) by handling attorneys' fee litigation; (2) by preparing expert declarations in numerous cases; (3) by discussing fees with other attorneys; (4) by obtaining declarations regarding market rates in cases in which I represent attorneys seeking fees; and (5) by reviewing attorneys' fee applications and awards in other cases, as well as surveys and articles on attorneys' fees in the legal newspapers and treatises.

<div align="center">4</div>

<div align="center">DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR<br>AWARD OF ATTORNEYS' FEES</div>

**Plaintiff's Counsel's Hourly Rates Are Reasonable**

11.     Under California law, Plaintiff's attorneys are entitled to be compensated at their requested rates if those rates are "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work." *Children's Hosp. & Med. Ctr. v. Bonta* (2002) 97 Cal.App.4th 740, 783 [*CHMC*].  As noted, I am aware of the hourly rates being requested by Plaintiff's attorneys in this case and their experience and qualifications.

12.     As shown by the information about hourly rates I have gathered, some of which is summarized below (see ¶¶13-16), in my opinion, the hourly rates requested by Plaintiff's counsel in this matter are well within the range of non-contingent market rates charged by attorneys of reasonably comparable experience, skill, and expertise for reasonably comparable services in the Bay Area. I base that opinion primarily on the following data:

**Court Awards**

13.     The rates requested by Plaintiff's counsel are well within the range of rates awarded in the Bay Area:

<div align="center">

**2015**

</div>

(1)     *O'Bannon v. National Collegiate Athletic Assn* (N.D. Cal. 2016) 2016 U.S. Dist. LEXIS 44131, filed March 30, 2016, a group antitrust action, in which the court found the following hourly rates reasonable[1]:

| Years of Experience | Rate |
|---|---|
| 45 | $985 |
| 37 | 935-895 |
| 15 | 610-510 |
| 14 | 600 |
| 7 | 490 |
| 3 | 370 |
| Paralegals | 300-320 |
| Law Clerks | 325 |

---

[1]  The hourly rates are not mentioned in the cited order because they were conceded to be reasonable. See 2015 U.S.Dist. LEXIS 91514, at *14. Nonetheless, the district court was still required to independently determine that they were reasonable. See, e.g., *Civil Rights Education and Enforcement Center v. Ashford Hospitality Trust, Inc.* (N.D. Cal. March 22, 2016) 2016 U.S.Dist.LEXIS 37256, at *14.

<div align="center">

5

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

</div>

(2)      *Civil Rights Education and Enforcement Center v. Ashford Hospitality Trust, Inc.* , 2016 U.S.Dist.LEXIS 37256 (N.D. Cal. March 22, 2016), an action challenging defendants' hotels' failure to provide wheelchair accessible transportation,  in which the Court found the following 2015 hourly rates reasonable:

| Years of Experience | Rates |
|---|---|
| 41 | $900 |
| 24 | 750 |
| 10 | 550 |
| 8 | 500 |
| 5 | 430 |
| Paralegal | 250 |

(3)      *In re High Tech Employment Antitrust Litigation* (N.D. Cal. 2015) 2015 U.S. Dist. LEXIS 118052, filed September 2, 2015, a class employment practices action, in which the court found the following 2015 hourly rates reasonable for Class Counsel (before applying a 2.2 multiplier):

| Level | Rates |
|---|---|
| Partners | $490-975 |
| Associates | 310-800 |
| Paralegals, law clerks, and litigation support staff | 190-430 |

(4)      *Wynn v. Chanos* (N.D. Cal. 2015) 2015 U.S .Dist. LEXIS 80062, filed June 19, 2015, an anti-SLAPP fee award, in which the court found the following hourly rates reasonable:

| Years of Experience | 2015/2014 Rates |
|---|---|
| 40 | $1085/1035 |
| 35 | 750 |
| 20 | 920/875 |
| 6 | 710/645 |

6

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

4                             640/570

(5)   *Gutierrez v. Wells Fargo Bank, N.A* (N.D. Cal. 2015) 2015 U.S. Dist. LEXIS 67298, filed May 21, 2015, a consumer class action, in which this court found the following hourly rates reasonable (plus a 5.5 multiplier):

| Years of Bar Admission | Rate |
|---|---|
| 1972 | $975 |
| 1989 | 850 |
| 2001 | 625 |
| 2006 | 435 |
| 2009 | 435 |
| 3 | 370 |
| Paralegals | 300-320 |
| Law Clerks | 325 |

## 2014

(1)   *Ammari v. Pacific Bell Directory,* Alameda Superior Court No. RG05198014, Order Granting Plaintiff' Application for Attorney's Fees, Reimbursement of Costs, and Service Awards, filed January 5, 2015, a consumer class action, in which the court found the following hourly rates reasonable:

| Years of Experience | Rate |
|---|---|
| 49 | $995 |
| 45 | 700 |
| 39 | 800 |
| 39 | 750 |
| 37 | 895 |
| 33 | 650 |
| 24 | 720 |
| 24 | 450 |
| 23 | 700 |
| 23 | 650 |
| 19 | 650 |
| 19 | 625 |
| 19 | 475 |
| 14 | 600 (as Partner) 475 (as Associate) |

7

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

| Years of Experience | Rate |
|---|---|
| 12 | 340 |
| 11 | 500 |
| 9 | 375 |
| 8 | 655 |
| 4 | 375 |

(2)    *Banas v. Volcano Corp.* (N.D. Cal. 2014) 47 F.Supp.3d 957, a dispute over a merger agreement decided on summary judgment, in which the court found the following hourly rates reasonable:

| Years of Experience (in 2014) | 2012 | 2013 | 2014 |
|---|---|---|---|
| 31 | $975 | $1,035 | $1,095 |
| 17 | $670 | $710 | $770 |
| 9 | $550 | $645 | $685 |
| 7 | $500 | $585 | $685 |
| 6 | | $530 | $620 |
| 3 | | $355 | $445 |
| E-Discovery Staff Attorney | | $260 | $325 |
| Paralegal | $245 | $260 | $275 |
| Paralegal | | | $295 |

(3)    *Holman v. Experian Information Solutions, Inc.* (N.D. Cal. 2014) 2015 U.S.Dist.LEXIS 173698, a consumer class action, in which the court found the following hourly rates reasonable:

| Years of Experience | Rate |
|---|---|
| 45 | $675 |
| 42 | 750 |
| 14 | 690 |
| 12 | 450 |
| Paralegal | 150 |

(4)    *Dixon v. City of Oakland et al.* (N.D. Cal. 2014) 2014 U.S.Dist.LEXIS 69688, an individual law enforcement misconduct action, in which the court found the following hourly rates reasonable, plus a 1.10 lodestar multiplier for merits work:

| Years of Experience | Rate |
|---|---|
| 45 | $750 |
| 23 | 725 |
| 19 | 695 |
| 5 | 400 |

8

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

| Years of Experience | Rate |
|---|---|
| 3 | 350 |
| 2 | 325 |
| Paralegal | 200 |

(5)   *IPVX Patent Holdings, Inc. v. Voxernet LLC,* N.D. Cal. No. 5:13-CV-01708-HRL, a patent infringement case, in which the court found the following hourly rates reasonable:

| Years of Experience | Rate |
|---|---|
| **2014** | |
| 45 | $750 |
| 35 | 750 |
| 23 | 725 |
| 19 | 695 |
| 5 | 400 |
| 3 | 350 |
| Paralegal | 125 |
| **2013** | |
| 18 | $755 |
| 11 | 595 |
| 2 | 425 |
| **2012** | |
| 40 | $865 |
| 17 | 755 |
| 10 | 595 |
| 1 | 375 |

(6)   *Rose v. Bank of America Corp.,* N.D. Cal. No. 5:11-CV-02390-EJD; 5:12 CV-04009-EJD, Order Granting Motion for Final Approval of Settlement; Granting in Part and Denying in Part Motion for Attorney's Fees and Costs, filed August 29, 2014, a consumer class action involving the Bank's loan servicing calls, in which the court found the following hourly rates reasonable:

Partners:  $775-350

Associates: $525-325

(7)   *Cornell v. City & County of San Francisco,* San Francisco County Superior Court No. CGC-11-509240, Order Granting Motion for Reasonable Attorneys' Fees, Subject to Modifications, filed May 15, 2014, an individual police misconduct/employment action, in which the court found the

9

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

following hourly rates reasonable, plus a 1.25 lodestar multiplier for merits work:

| Years of Experience | Rate |
|---|---|
| 45 | $750 |
| 35 | 750 |
| 23 | 725 |
| 19 | 695 |
| 5 | 400 |
| 3 | 350 |
| Paralegal | 125 |

(8)    *Ellis v. Costco Wholesale Corp.*, N.D. Cal. No. C04-3341 EMC, Order Granting Motion for Final Approval of Class Action Settlement, filed May 27, 2014, an employment class action, in which the court found the following hourly rates reasonable:

| Years of Experience | Rate |
|---|---|
| 38 | $700 |
| 35 | 825 |
| 30 | 650-825 |
| 29 | 875 |
| 19 | 725 |
| 9 | 500 |
| 8 | 460 |
| 7 | 425-575 |
| 6 | 435 |
| 3 | 315 |
| Paralegals | 155-295 |
| Law Clerks | 185-275 |

## 2013

(1)    *In re Pacific Bell Late Fee Litigation,* Contra Costa County Superior Ct. No. MSC10-00840, Order Awarding Attorneys' Fees, Costs and Expenses and Authorizing Payment of Incentive Award to the Class Representative, filed October 18, 2013, a consumer class action, in which the court found the following hourly rates reasonable:

| Years of Experience | Rate |
|---|---|
| 17 | $850 |
| 16 | 680 |
| 11 (partner) | 680 |
| 36 | 675 |
| 32 | 675 |
| 28 (assoc.) | 620 |
| 4 | 400 |
| 3 | 390 |
| Paralegals and Litigation Support | 160-180 |

10

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

(2)    *Reuters America LLC v. The Regents of the Univ. of Calif.*, Alameda County Superior Court No. RG12-613664, Order Granting in Part Motion of Plaintiff for Attorneys' Fees filed May 2, 2013, reversed on the merits sub nom *Regents of U.C. v. Superior Court* (2014) 222 Cal.App.4th 383, a California Public Records Act action, in which the trial court found the following hourly rates reasonable, before applying a 1.3 lodestar multiplier:

| Years of Experience | Rate |
|---|---|
| 31 | $785 |
| 27 | 600 |
| 6 | 400 |

**Rate Information from Surveys**

15.    I also base my opinion on several credible surveys of legal rates, including the following:

- In December 2015, Thomson Reuters published its "Legal Billing Report," which surveys the rates approved for various law firms by the bankruptcy courts. (Under bankruptcy law, the rates sought must be the firm's ordinary commercial rates.) A true and correct copy of an excerpt for the data listed for the California and West Regions is attached hereto as **Exhibit B**. It shows that Class Counsel's rates are well within the range of the rates awarded to other law firms.

- On January 5, 2015, the National Law Journal published an article about its most recent rate survey entitled "Billing Rates Rise, Discounts Abound." A true and correct copy of that article is attached hereto as **Exhibit C**. It contains the rates charged by numerous Bay Area law firms handling comparably complex litigation. Plaintiff's attorneys' rates are well in line with those rates.

- On January 13, 2014, the National Law Journal published an article about its most recent rate survey. That article included a chart listing the billing rates of the 50 firms that charge the highest average hourly rates for partners. A true and correct copy of that article is attached hereto as **Exhibit D**. Of the 50 firms listed, several have offices in or practice in the San Francisco Bay Area. And, although the rates that Plaintiff's counsel are requesting here are far *lower* than many of the rates charged by the listed firms, the NLJ chart does show the *range* of rates charged for similar services, which is the applicable standard. *See CHMC*, 97 Cal.App.4th at 783.

11

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

- The 2013 Real Rate Report Snapshot published by Ty Metrix/Legal Analytics summarizes the "real rates" for partners and associates in various cities. A copy of the relevant pages is attached hereto as **Exhibit E**. It shows that for the San Francisco area law firms surveyed (309 partners, 327 associates), the Third Quartile partner rate in 2012 was **$800** per hour and the Third Quartile Associate rate in 2012 was **$525** per hour. Moreover, since 2012, most firms have raised their rates by at least 5-10%.

- In an article entitled "On Sale: The $1,150-Per Hour Lawyer," written by Jennifer Smith and published in the Wall Street Journal on April 9, 2013, the author describes the rapidly growing number of lawyers billing at $1,150 or more revealed in public filings and major surveys. A true and correct copy of that article is attached hereto as **Exhibit F**. The article also notes that in the first quarter of 2013, the 50 top-grossing law firms billed their partners at an average rate between $879 and $882 per hour.

**Rates Charged by Other Law Firms**

16.     Counsel's rates also are supported by the standard hourly non-contingent rates for comparable civil litigation stated in court filings, depositions, surveys, or other reliable sources by numerous California law firms or law firms with offices or practices in California. These rates include, in alphabetical order:

*Altshuler Berzon LLP*

| 2015 Rates: | Years of Experience/Level | Rate |
|---|---|---|
| | 32 | $895 |
| | Junior Partners | 825-630 |
| | Associates | 450-340 |
| | Paralegals | 250 |
| 2014 Rates: | Years of Experience | Rate |
| | 38 | $895 |
| 2012 Rates: | Years of Experience | Rate |
| | 34 | $850 |
| | 26 | 785 |
| | 21 | 750 |
| | 18 | 700 |
| | 14 | 625 |
| | 12 | 570 |

12

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

| | | |
|---|---|---|
| | 11 | 550 |
| | 10 | 520 |
| | 6 | 410 |
| | 5 | 385 |
| | 4 | 335 |
| | Law Clerks | 250 |
| | Paralegals | 215 |
| **2011 Rates:** | Years of Experience | Rate |
| | 43 | $825 |
| | 17 | 675 |
| | 12 | 575 |
| | 10 | 520 |
| | Law Clerks | 225 |
| | Paralegals | 215 |

**Arnold Porter LLP**

| | | |
|---|---|---|
| **2015 Rates:** | Years of Experience | Rate |
| | 40 | $1,085 |
| | 20 | 920 |
| | 6 | 710 |
| | 4 | 640 |
| **2014 Rates:** | Years of Experience | Rate |
| | 49 | $995 |

**Bingham McCutchen (now Morgan Lewis & Bockius)**

| | | |
|---|---|---|
| **2013 Rates:** | Average Partner | $795 |
| | Highest Partner | 1,080 |
| | Lowest Partner | 220 |
| | Average Associate | 450 |
| | Highest Associate | 605 |
| | Lowest Associate | 185 |
| **2011 Rates:** | Years of Experience | Rate |
| | 30 | $780 |
| **2010 Rates:** | Years of Experience | Rate |
| | 13 | $655 |
| | 4 | 480 |
| | 2 | 400 |

**Burson & Fisher**

| | | |
|---|---|---|
| **2013 Rates:** | Years of Experience | Rate |
| | 16 | $680-850 |
| | 11 | 680 |
| | 4 | 400 |
| | 3 | 390 |

13

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

***Burson & Fisher***

|  |  |
|---|---|
| 2 | 375 |
| 1 | 300 |
| Law Clerks | 225 |
| Litigation Support Specialists | 180 |

***Cooley LLP***

| **2014 Rates:** | Years of Experience | 2012 | 2013 | 2014 |
|---|---|---|---|---|
| | 31 | $975 | $1,035 | $1,095 |
| | 17 | 670 | 710 | 770 |
| | 9 | 550 | 645 | 685 |
| | 7 | 500 | 585 | 685 |
| | 6 | | 530 | 620 |
| | 3 | | 355 | 445 |
| | Paralegal | | 260 | 325 |
| | Paralegal | 245 | 260 | 275 |
| | | | | 290 |

***Cooper & Kirkham***

| **2012 Rates:** | Years of Experience | Rate |
|---|---|---|
| | 48 | $950 |
| | 37 | 825 |
| | 11 | 600 |

***Cotchett, Pitre & McCarthy, LLP***

| **2014 Rates:** | Years of Experience | Rate |
|---|---|---|
| | 33 | $775 |
| | 22 | 775 |
| | 15 | 500 |
| | 4 | 360 |
| | Paralegals, case assistants, law clerks | 225-250 |

***Covington Burling***

| **2015 Rates** | Years of Experience | Rate |
|---|---|---|
| | 30 | $805 |
| | 2 | 410 |

| **2014 Rates** | Years of Experience | Rate |
|---|---|---|
| | 35 | $825 |
| | 29 | 780 |
| | 15 | 695 |
| | 6 | 530 |
| | 3 | 425 |

14

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

*Covington Burling*

1                                    350

|  | Level | |
|---|---|---|
|  | Average Partner | $780 |
|  | Highest Partner | 890 |
|  | Lowest Partner | 605 |
|  | Average Associate | 415 |
|  | Highest Associate | 565 |
|  | Lowest Associate | 320 |

| **2013 Rates:** | Years of Experience | Rate |
|---|---|---|
|  | 28 | $750 |
|  | 16 | 670 |
|  | 14 | 670 |
|  | 7 | 510 |
|  | 5 | 490 |
|  | 2 | 375 |
|  | Litigation Support | 110-355 |
| **2012 Rates:** | Years of Experience | Rate |
|  | 27 | $730 |
|  | 15 | 632-650 |
|  | 13 | 650 |
| **2011 Rates:** | Years of Experience | Rate |
|  | 26 | $710 |
|  | 14 | 640 |
|  | 12 | 600 |
|  | 9 | 565 |
|  | 7 | 550 |
|  | 5 | 425 |
|  | 3 | 390 |
|  | 1 | 320 |
| **2010 Rates:** | Years of Experience | Rate |
|  | 25 | $710 |
|  | 13 | 640 |
|  | 11 | 575-600 |
|  | 8 | 550-565 |
|  | 6 | 525-550 |
|  | 4 | 390-425 |
|  | 2 | 350-390 |

*Fenwick & West*

| **2014 Rates** | Years of Experience | Rate |
|---|---|---|
|  | 45 | $750 |

15

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

*Fenwick & West*

|  | | |
|---|---|---|
|  | 35 | 750 |
|  | 23 | 725 |
|  | 19 | 695 |
|  | 5 | 400 |
|  | 3 | 350 |
|  | Paralegal | 125 |
| **2013 Rates** | 18 | $755 |
|  | 11 | 595 |
|  | 2 | 425 |
| **2012 Rates** | 40 | $865 |
|  | 17 | 755 |
|  | 10 | 595 |

*Furth Firm LLP*

| **2010 Rates:** | Years of Experience | Rate |
|---|---|---|
|  | 51 | $875 |
|  | 39 | 750 |
|  | 38 | 600 |
|  | 33 | 775 |
|  | 25 | 550 |
|  | 23 | 650 |
|  | 21 | 625 |
|  | 19 | 610 |
|  | 18 | 600 |
|  | 17 | 585 |
|  | 16 | 570 |
|  | 15 | 560 |
|  | 14 | 550 |
|  | 13 | 525 |
|  | 12 | 515 |
|  | 11 | 510 |
|  | 10 | 505 |
|  | 9 | 500 |
|  | 7 | 460 |
|  | 4 | 435 |

| **2010 Rates:** | Years of Experience | Rate |
|---|---|---|
|  | 36 | $800 |
|  | 31 | 750 |
|  | 20-21 | 600 |
|  | 15 | 575 |

16

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

1

***Furth Firm LLP***

2

| | |
|---|---|
| 10 | 475-500 |
| 8 | 425 |
| 4 | 325 |
| 2 | 275 |
| 1 | 250 |

***Gibson Dunn & Crutcher LLP***

| **2015 Rates:** | Years of Experience | Rate |
|---|---|---|
| | 37 | $1,125 |
| | 23 | 955 |
| | 3 | 575 |
| **2014 Rates:** | Years of Experience | Rate |
| | 36 | $1,080 |
| | 22 | 910 |
| | 9 (Of Counsel) | 740 |
| | 6 | 690 |
| | 2 | 485 |
| **2013 Rates** | Years of Experience | Rate |
| | 35 | $1,040 |
| | 5 | 625 |
| | Paralegal | 345 |

***Goldstein, Borgen, Dardarian & Ho***

| **2014 Rates:** | Years of Experience | Rate |
|---|---|---|
| | 33 | $795 |
| | 27 | 750 |
| | 8 | 500 |
| | 4 | 395 |
| | 3 | 350 |
| | 1 | 300 |
| | Law Clerks/Paralegals | 160-250 |
| **2012 Rates:** | Years of Experience | Rate |
| | Partners | |
| | 42 | $785 |
| | 36 | 750 |
| | 31 | 700 |
| | 18 | 650 |
| | Associates | |
| | 7 | 470 |
| | 6 | 445 |
| **2011 Rates:** | Years of Experience | Rate |
| | Partners | |
| | 41 | $725 |
| | 35 | 725 |

17

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

*__Goldstein, Borgen, Dardarian & Ho__*

| | | |
|---|---|---|
| | 30 | 700 |
| | 24 | 650 |
| | 18 | 600 |
| | 17 | 600 |
| | 16 | 550 |

| **2010 Rates:** | Years of Experience | Rate |
|---|---|---|
| | Partners | |
| | 40 | $700 |
| | 34 | 700 |
| | 29 | 675 |
| | 23 | 625 |
| | 17 | 575 |
| | 16 | 575 |
| | Of Counsel | |
| | 40 | 725 |
| | Associates | |
| | 15 | $500 |
| | 11 | 440 |
| | 6 | 375 |
| | 5 | 365 |
| | 4 | 355 |
| | 3 | 340 |
| | 2 | 325 |
| | 1 | 305 |
| | Law Clerks | 195 |
| | Paralegals | 150-225 |

*__Hausfeld LLP__*

| **2014 Rates:** | Years of Experience | Rate |
|---|---|---|
| | 45 | $985 |
| | 37 | 935-895 |
| | 15 | 610-510 |
| | 14 | 600 |
| | 7 | 490 |
| | 3 | 370 |
| | Paralegals | 300-320 |
| | Law Clerks | 325 |

*__Irell & Manella__*

| **2013 Rates:** | | |
|---|---|---|
| | Average Partner | $890 |
| | Highest Partner | 975 |
| | Lowest Partner | 800 |

18

Ex. I - Notice of Lodgment

Page 344

*Irell & Manella*

| | | |
|---|---|---|
| | Average Associate | 535 |
| | Highest Associate | 750 |
| | Lowest Associate | 395 |

*Jones Day*
**2013 Rates:**

| | | |
|---|---|---|
| | Average Partner | $745 |
| | Highest Partner | 975 |
| | Lowest Partner | 445 |
| | Average Associate | 435 |
| | Highest Associate | 775 |
| | Lowest Associate | 205 |

*Keker & Van Nest, LLP*
**2010 Rates:**

| | Years of Experience | Rate |
|---|---|---|
| | Partners | 525-975 |
| | Associates | 340-500 |
| | Paralegals/Support Staff | 120-260 |

*Kemnitzer, Barron & Krieg*
**2014 Rates:**

| | Years of Experience | Rate |
|---|---|---|
| | 38 | $750 |
| | 32 | 750 |
| | 8 | 475 |
| | 3 | 350 |
| | Senior Paralegal | 250 |

*Kirkland & Ellis*
**2013 Rates:**

| | | |
|---|---|---|
| | Average Partner | $825 |
| | Highest Partner | 995 |
| | Lowest Partner | 590 |
| | Average Associate | 540 |
| | Highest Associate | 715 |
| | Lowest Associate | 235 |

*Latham & Watkins*
**2013 Rates:**

| | | |
|---|---|---|
| | Average Partner | $990 |
| | Highest Partner | 1,100 |
| | Lowest Partner | 895 |
| | Average Associate | 605 |
| | Highest Associate | 725 |
| | Lowest Associate | 465 |

*Lewis Feinberg Lee, Renaker & Jackson, P.C.*
**2012 Rates:**

| | Years of Experience | Rate |
|---|---|---|
| | 38 | $825 |
| | 29 | 750 |

19

***Lewis Feinberg Lee, Renaker & Jackson, P.C.***

|  |  |
|---|---|
| 24 | 725 |
| 21 | 700 |
| 8 | 450 |
| 7 | 425 |
| 3 | 375 |
| Senior Paralegals | 250 |
| Law Clerks | 225 |

***Lieff Cabraser Heimann & Bernstein, LLP***

| **2015 Rates:** | Years of Bar Admission | Rate |
|---|---|---|
|  | 1972 | $975 |
|  | 1989 | 850 |
|  | 2001 | 625 |
|  | 2006 | 435 |
|  | 2009 | 435 |
| **2014 Rates:** | Years of Bar Admission | Rate |
|  | 1998 | $825 |
|  | 2001 | 600 |
|  | 2006 | 435 |
|  | 2009 | 415 |
|  | 2013 | 325 |
|  | Paralegal/Clerk | 305 |
| **2013 Rates:** |  |  |
|  | 1975 | $925 |
|  | 1998 | 800 |
|  | 2001 | 525 |
|  | 2003 | 490 |
|  | 2006 | 415 |
|  | 2009 | 395 |
|  | 2013 | 320 |
|  | Paralegal/Clerk | 285 |

***Manatt, Phelps & Phillips***

| **2013 Rates:** | Average Partner | $740 |
|---|---|---|
|  | Highest Partner | 795 |
|  | Lowest Partner | 640 |
| **2010 Rates:** | Partners | 525-850 |
|  | Associates | 200-525 |

***McKenna Long & Aldridge LLP***

| **2015 Rates:** | Years of Experience | Rate |
|---|---|---|
|  | 31 | $775 |
|  | 10 | 650 |
|  |  | 425 |
|  |  | 420 |
|  | Senior Paralegal | 350 |

20

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

Ex. I - Notice of Lodgment

Page 346

|  | Paralegal | 225 |
|---|---|---|
| **2014 Rates:** | Years of Experience | Rate |
|  | 30 | $775 |
|  | 9 | 650 |
|  | 5 | 420 |
|  | Litigation Support Mgr. | 350 |
|  | Paralegals | 225 |

**_Minami Tamaki LLP_**

| **2014 Rates:** | Years of Experience | Rate |
|---|---|---|
|  | 38 | $1,025 |
|  | 22 | 815 |
|  | 17 | 790 |
|  | 38 (Of Counsel) | 650 |
|  | 7 | 620 |
|  | 6 | 605 |
|  | 5 | 595 |
|  | 4 | 535 |
|  | 2 | 430 |
|  | Paralegal | 250 |
| **2013 Rates** | Years of Experience | Rate |
|  | 37 | $985 |
|  | 29 | 780 |
|  | 21 | 760 |
|  | 37 (Of Counsel) | 650 |
|  | 5 | 570 |
|  | 4 | 515 |
|  | Paralegal | 240 |
| **2012 Rates:** | Years of Experience | Rate |
|  | 36 | $750 |
|  | 15 | 525 |
|  | 5 | 395 |
|  | Paralegals | 175 |
|  | 5 | 535 |

**_Morrison Foerster LLP_**

| **2013 Rates:** | Years of Experience | Rate |
|---|---|---|
|  | Average Partner | $865 |
|  | Highest Partner | 1,195 |
|  | Lowest Partner | 595 |
|  | Average Associate | 525 |
|  | Highest Associate | 725 |
|  | Lowest Associate | 230 |
|  | Years of Experience | Rate |

21

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

*Morrison Foerster LLP*

**2011 Rates:**

|  |  |  |
|---|---|---|
|  | 22 | $775 |
|  | 11 | 625 |
|  | 10 | 620 |
|  | 1 | 335 |

**2009 Rates:** Years of Experience — Rate

|  |  |  |
|---|---|---|
|  | 24 | $750 |

*O'Melveny & Myers*

| **2013 Rates:** | Years of Experience | Rate |
|---|---|---|
|  | Average Partner | $715 |
|  | Highest Partner | 950 |
|  | Lowest Partner | 615 |
| **2012 Rates:** | Years of Experience | Rate |
|  | 12 | $695 |
|  | 4 | 495 |

*Orrick Herrington & Sutcliffe*

| **2014 Rates:** | Years of Experience | Rate |
|---|---|---|
|  | Average Partner | $845 |
|  | Highest Partner | 1,095 |
|  | Lowest Partner | 715 |
|  | Average Associate | 560 |
|  | Highest Associate | 710 |
|  | Lowest Associate | 375 |

*Paul Hastings LLP*

| **2014 Rates:** | Years of Experience | Rate |
|---|---|---|
|  | Average Partner | $815 |
|  | Highest Partner | 900 |
|  | Lowest Partner | 750 |
|  | Average Associate | 540 |
|  | Highest Associate | 755 |
|  | Lowest Associate | 350 |

*Pillsbury Winthrop Shaw Pittman LLP*

| **2013 Rates:** | Years of Experience | Rate |
|---|---|---|
|  | Average Partner | $865 |
|  | Highest Partner | 1,070 |
|  | Lowest Partner | 615 |
|  | Average Associate | 520 |
|  | Highest Associate | 860 |
|  | Lowest Associate | 375 |
| **2010 Rates:** | Years of Experience | Rate |
|  | Partners |  |
|  | 30 | $705-775 |
|  | Other Partners | 595-965 |

22

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

*Pillsbury Winthrop Shaw Pittman LLP*

|  | | |
|---|---|---|
| Associates | 320-650 |
| Paralegals/Support Staff | 85-380 |

*Quinn Emanuel Urquhart & Sullivan*
**2013 Rates:**

| | | |
|---|---|---|
| Average Partner | $915 |
| Highest Partner | 1,075 |
| Lowest Partner | 810 |
| Average Associate | 410 |
| Highest Associate | 675 |
| Lowest Associate | 320 |

*Reed Smith LLP*
**2014 Rates:**

| Years of Experience | Rate |
|---|---|
| 37 | $830 |
| 18 | 695 |
| 15 | 585 |
| 6 | 485 |
| 5 | 435 |

**2013 Rates:**

| Years of Experience | Rate |
|---|---|
| Partner | |
| 36 | $830 |
| 30 | 805 |
| 17 | 610-615 |
| 14 | 570 |
| Associates | |
| 8 | 450-535 |
| 6 | 495 |

*Rosen, Bien, Galvan & Grunfeld LLP*
**2015 Rates:**

| Years of Experience | Rate |
|---|---|
| Partners | |
| 53 | $930 |
| 35 | 840 |
| 33 | 775 |
| 31 | 710 |
| 18 | 690 |
| 9 | 525 |
| Of Counsel | 590-610 |
| Associates | |
| 9 | 490 |
| 8 | $480 |
| 7 | 470 |
| 6 | 440 |
| 5 | 420 |
| 4 | 400 |
| 3 | 380 |
| Paralegals | 250-295 |

23

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

Ex. I - Notice of Lodgment

Page 349

***Rosen, Bien, Galvan & Grunfeld LLP***

| | | |
|---|---|---|
| | Litigation Support/Paralegal Clks | 200-220 |
| | Law Students | 275 |
| | Word Processing | 85 |
| **2014 Rates** | *Years of Experience* | *Rate* |
| | Partners | |
| | 52 | $900 |
| | 34 | 800 |
| | 30 | 675 |
| | 17 | 650 |
| | Of Counsel | 580 |
| | Associates | 350-550 |
| | Paralegals | 230-290 |
| | Litig. Support/Paralegal Clks | 180-215 |
| | Law Students | 260 |
| | Word Processing | 80 |
| **2013 Rates** | *Years of Experience* | *Rate* |
| | Partners | |
| | 51 | $875 |
| | 33 | 780 |
| | 29 | 660 |
| | 16 | 630 |
| | Of Counsel | |
| | 30 | 580 |
| | Associates | |
| | 20 | 550 |
| | 10 | 480 |
| | 9 | 465 |
| | 8 | 445-450 |
| | 7 | 440 |
| | 6 | 435 |
| | 5 | 405 |
| | 4 | 375 |
| | 3 | 355 |
| | Paralegals | 220-280 |
| | Litigation Support/ Paralegal clerk | 170 |
| | Law Clerk/Students | 250 |
| | Word Processing | 80 |
| **2012 Rates:** | *Years of Experience* | *Rate* |
| | *Partners* | |
| | 50 | $860 |
| | 32 | 760 |
| | 28 | 640 |
| | 15 | 610 |
| | Of Counsel | |

24

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

*Rosen, Bien, Galvan & Grunfeld LLP*

| | | |
|---|---|---|
| | 29 | 570 |
| | Associates | |
| | 19 | 540 |
| | 10 | 470 |
| | 9 | 460 |
| | 7 | 400 |
| | 6 | 400 |
| | 5 | 380 |
| | 4 | 360 |
| | 3 | 340 |
| | Paralegals | 215-280 |
| | Litigation Support/ Paralegal clerk | 150 |
| | Law Clerk/Students | 240 |
| | Word Processing | 80 |
| **2011 Rates:** | Years of Experience | Rate |
| | Partners | |
| | 49 | $840 |
| | 31 | 740 |
| | 27 | 625 |
| | 14 | 590 |
| | Of Counsel | |
| | 28 | 540 |
| | Associates | |
| | 18 | 525 |
| | 11 | 465 |
| | 10 | 450 |
| | 9 | 440 |
| | 8 | 420 |
| | 6 | 385 |
| | 5 | 365 |
| | 4 | 350 |
| | 3 | 325 |
| | 2 | 315 |
| | Paralegals | 205-275 |
| | Litigation Support/ Paralegal clerk | 140-220 |
| | Law Clerk/Students | 225 |
| | Word Processing | 75 |
| **2010 Rates:** | Years of Experience | Rate |
| | Partners | |
| | 48 | $800 |
| | 30 | 700 |
| | 26 | 575 |
| | 13 | 560 |
| | Of Counsel | |
| | 27 | 520 |

25

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

Ex. I - Notice of Lodgment

Page 351

***Rosen, Bien, Galvan & Grunfeld LLP***

| | |
|---|---|
| Associates | |
| 17 | 510 |
| 13 | 490 |
| 9 | 430 |
| 8 | 415 |
| 7 | 390 |
| 5 | 360 |
| 3 | 325 |
| 1 | 285 |
| Paralegals | 200-275 |
| Litigation Support/ Paralegal clerk | 135-220 |
| Law Clerk/Students | 190 |
| Word Processing | 70 |

***Schneider Wallace Cottrell Brayton Konecky LLP***

**2015 Rates:**

| | Years of Experience | Rate |
|---|---|---|
| | | $750 |
| Associates | | 350-700 |
| Law Clerks/Paralegals | | 135-300 |

**2014 Rates:**

| | | |
|---|---|---|
| Partners | | |
| 13-22 | | $750 |
| Associates/Of Counsel | | |
| 20 | | 750 |
| 37 | | 700 |
| 10-16 | | 650 |
| 0-3 | | 135-475 |
| Paralegals/Law Clerks | | 135-300 |

***Sheppard, Mullin, Richter & Hampton***

**2014 Rates:**

| Level | Rate |
|---|---|
| Highest Partner | $875 |
| Lowest Partner | 490 |
| Average Partner | 685 |
| Highest Associate | 535 |
| Lowest Associate | 275 |
| Average Associate | 415 |

**2010 Rates:**

| Years of Experience | Rate |
|---|---|
| Partners | $495-820 |
| Associates | 270-620 |

***Sidley Austin***

**2010 Rates:**

| Years of Experience | Rate |
|---|---|
| Partners | |
| 33 | $900 |

26

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

Ex. I - Notice of Lodgment

Page 352

1

***Sidley Austin***

| | | |
|---|---|---|
| | Senior Partners | 1,100 |
| | Legal Assistants | 120-280 |

***Skadden, Arps, Slate, Meagher & Flom***

**2013 Rates:**

| | | |
|---|---|---|
| | Average Partner | $1,035 |
| | Highest Partner | 1,150 |
| | Lowest Partner | 845 |
| | Average Associate | 620 |
| | Highest Associate | 845 |
| | Lowest Associate | 340 |

***Wilson Sonsini Goodrich & Rosati PC***

**2010 Rates:**

| | Years of Experience | Rate |
|---|---|---|
| | 28 | $875 |
| | Other Partners | 650-975 |
| | Associates | 290-610 |
| | Paralegals/Litigation Support | 120-300 |

***Zelle Hofmann Voelbel & Mason, LLP***

**2012 Rates:**

| | Years of Experience | Rate |
|---|---|---|
| | Partners | Up to $950 |
| | Associates | Up to $540 |
| | Paralegals | Up to $290 |
| | Law Clerks | Up to $250 |

**2011 Rates:**

| | Years of Experience | Rate |
|---|---|---|
| | Partners | |
| | 38 | $800 |
| | 26 | 685 |
| | 23 | 650 |
| | 22 | 640 |
| | Associates | |
| | 9 | 500 |
| | 4 | 435 |
| | 3 | 415 |
| | 2 | 405 |
| | 1 | 395 |
| | Paralegals | 210-290 |

17.      The foregoing data shows that the rates charged by Plaintiff's attorneys for their work in these proceedings are well within, and sometimes significantly below, the range of rates charged by comparably qualified attorneys for reasonably similar work.

18.      In my experience, fee awards are almost always determined based on current rates, i.e., the attorney's rate at the time a motion for fees is made, rather than the historical rate at the time the work was performed.  This is a common and accepted practice to compensate attorneys for the delay in

27

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

being paid.  The hourly rates set forth above are those charged where full payment is expected promptly upon the rendition of the billing and without consideration of factors other than hours and rates.  If any substantial part of the payment were to be deferred for any substantial period of time, for example, the fee arrangement would be adjusted accordingly to compensate the attorneys for those factors.

**A Lodestar Multiplier For Contingent Risk Is Reasonable**

19.     In my opinion, a lodestar enhancement for contingent risk also would be consistent with the market value of counsel's work in the legal marketplace and therefore reasonable. It certainly is consistent with the risk involved in litigating this case on a wholly contingent basis. Based on my experience with and knowledge of the legal marketplace, it is certainly true that attorneys who litigate on a wholly or partially contingent basis expect to receive significantly higher fees in cases where compensation is contingent on success than in cases in which they are paid on a non-contingent basis, win or lose. This is particularly true in hard-fought cases like this one against well-funded opponents where the result is uncertain.  As the case law recognizes, this does not result in any "windfall" or undue "bonus." Attorneys who assume representation of plaintiffs in important public interest cases like this one on a contingent basis are entitled to receive fees equivalent to those paid in the private market.  In the private legal marketplace, a lawyer who assumes a significant financial risk on behalf of a client rightfully expects that his or her compensation will be significantly greater than if no risk was involved (*i.e.*, if the client paid the bill on an ongoing basis). It also is true that the greater the risk, the greater the "enhancement."  In fact, an expert economist who testified in two cases in which I was involved opined that, based on a statistical risk analysis, attorneys who take cases on a contingent basis should receive from three to six times the market rates paid to attorneys on a non-contingent basis.  Adjusting court-awarded fees upward in contingent fee cases to reflect the risk of recovering no compensation whatsoever for hundreds of hours of labor simply makes them competitive in the legal marketplace, helping to ensure that meritorious cases will be brought to enforce important public interest policies and that clients who have meritorious claims will be more likely to obtain qualified counsel.

20.     The expense and risk of public interest litigation has not diminished over the years; to the contrary, these cases are in many ways more difficult than ever. As a result, fewer and fewer attorneys and firms are willing to take on such litigation, and the few who are willing to do so can only continue if their fee awards reflect true market value.

28

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

1    If called as a witness, I could and would competently testify from my personal knowledge to the

2 facts stated herein.

3    I declare under penalty of perjury that the foregoing is true and correct.  Executed this 5th day of

4 May 2016, in Berkeley, California.

5

6

7                                                    Richard M. Pearl

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

DECLARATION OF RICHARD M. PEARL ISO PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES

# Exhibit J

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

9

THOMAS CARNES, by and through his guardian
ad litem, JULIANA CHRISTINE CLEGG, on
behalf of himself and all others similarly situated,

10

Case No.: 3:14-cv-02727-VC

11

*Plaintiff*,

**DECLARATION OF
KATHLEEN WYATT RE:
NOTICE TO CLASS**

12

*v.*

13

ATRIA SENIOR LIVING, INC. and DOES 1
through 100,

14

*Defendants.*

15

16

I, Kathleen Wyatt, declare as follows:

17

    1.    I am employed as a Senior Project Manager by KCC, located at 3301 Kerner

18

Blvd., San Rafael, California.  KCC was retained as the Settlement Administrator in this matter,

19

and as the project manager I oversee the administrative services provided by KCC.   I have

20

personal knowledge of the facts set forth herein and, if called as a witness, could and would

21

testify competently thereto.

22

    2.    On or about April 12, 2016, KCC received Class Member data from Defense

23

Counsel containing a list of 13,811 records. Each record contained resident and responsible party

24

names (if any) and addresses, community, move-in dates and move-out dates. From this data,

25

KCC created a master mailing list. After review of the data, 4,470 names and addresses were

26

found to be duplicates.  The duplicate records were combined so that only one notice would be

27

sent per unique individual.  There were a total of 583 records that did not include addresses for

28

the resident and/or responsible person.  Prior to the mailing of the Notice, the names and

-1-

1    addresses were processed through the National Change of Address ("NCOA") database to update

2    any change of address on file with the United States Postal Service ("USPS").

3        3.      On or about April 26, 2016, KCC caused the Notice of Proposed Class Action

4    Settlement to be mailed to the 21,972 names on the master mailing list, and to be emailed to 41

5    names for which there was no postal address.   These names represent 13,330 Resident Class

6    Members and 8,683 Responsible Persons.  A true and correct copy of the Notice is attached

7    hereto as Exhibit A.

8        4.      On or about April 26, 2016, KCC caused the Notice to be published in the *San

9    Francisco* and *Los Angeles* editions of *USA Today*.  Tear sheets of the publications are attached

10   hereto as Exhibit B.

11       5.      On or before April 26, 2016, KCC created a case-dedicated website at

12   www.californiaassistedlivingsettlement.com.  The website includes a copy of the Notice.  In

13   addition, the website contains case information, a list of Frequently Asked Questions, copies of

14   case documents, successor in interest information, and relevant probate codes.

15       6.      On or before April 26, 2016, KCC established a toll free telephone number that

16   class members can call and speak to a live operator.  English and Spanish speaking live operators

17   are available Monday through Friday between the hours of 7:00 a.m. and 5:00 p.m. Pacific Time.

18       7.      The 35-day period for Class Members to opt out or object expires on May 31,

19   2016.  As of May 13, 2016, eight (8) Settlement Class Members have opted out of the settlement

20   and none have submitted objections.

21

22       I declare under penalty of perjury that the foregoing is true and correct to the best of my

23   knowledge and that this declaration was executed this 13th day of May, 2016 at San Rafael,

24   California.

25                                          Kathleen Wyatt

26                                          KATHLEEN WYATT

27

28

                                        2

                          DECLARATION OF KATHLEEN WYATT

# EXHIBIT A

*Carnes v. Atria Senior Living* Administrator
P.O. Box 40007
College Station TX 77842-4007

# ARN

## «Barcode»

Postal Service: Please do not mark barcode

Claim#: ARN-«ClaimID»-«MailRec»
«First1» «Last1»
«Addr1»«Addr2»
«City», «St»  «Zip»
«Country»

### NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*A federal court has authorized this Notice.  It is not a solicitation from a lawyer.*

If you resided at any of the California assisted living facilities owned, managed and/or operated by Atria Senior Living ("Atria") at any time between June 12, 2010 through and including March 17, 2016, or are the heir or legal successor for any such resident, your rights are affected by a class settlement of a lawsuit.  Please read this notice carefully in its entirety.  You are a member of the settlement class described below and, as such, you must decide whether to:

1) include yourself in the settlement class and seek money from the class settlement, but give up your right to sue in a different case about the same subject matter.  If you choose this option, you do not need to do anything, as you will automatically be included in the settlement class;

2) include yourself in the settlement class and seek money from the class settlement, give up your right to sue in a different case about the same subject matter, but object to the terms of the settlement. If you choose this option, you do not need to do anything in order to be included in the settlement class, as you will automatically be included in the settlement class.  However, if you want to object to the terms of the settlement, you or your own counsel will need to prepare and submit a written objection; or

3) exclude yourself from the settlement class and give up your right to seek money from the class settlement, but keep your right to sue in a different case about the same subject matter.  If you choose this option, you will need to prepare and submit a written request to be excluded from the settlement class.

The lawsuit is entitled *Thomas Carnes, by and through his Guardian ad litem, Juliana Christine Clegg, on his own behalf and on behalf of others similarly situated v. Atria Senior Living*, Case Number 3:14-cv-02727-VC pending in the United States District Court for the Northern District of California (the "Lawsuit").  The Lawsuit was filed by plaintiff Thomas Carnes, by and through his guardian ad litem and legal successor, Juliana Christine Clegg ("Plaintiff" or "Class Representative"), on behalf of himself and all of the other Settlement Class Members (as defined below).

The parties have reached a proposed settlement on the terms and conditions set forth in the Stipulation of Settlement entered into by and between Plaintiff and Atria. The Court in charge of the Lawsuit still has to decide whether to approve the settlement.  A settlement fund will be available for distribution to the Settlement Class only if the settlement is approved by the Court and the approval is upheld following any appeals.

The following provides a detailed description about the proposed class settlement and the rights you have if you are a Settlement Class Member, the benefits available under the settlement and how you can get the benefits, including the relevant deadlines and requirements.

### BASIC INFORMATION

#### WHAT IS THIS LAWSUIT ABOUT?

Plaintiff brings this proposed class action on behalf of residents of California assisted living communities owned, managed or operated by Atria, alleging that Atria made purportedly misleading statements about how resident evaluations would be used to determine, set and monitor staffing levels at Atria's assisted living facilities in California,  which Plaintiff alleges resulted in monetary damages to residents.  Atria denies all allegations and claims in the Lawsuit, and denies that it committed any wrongdoing.  Atria is entering into the settlement to avoid burdensome and costly litigation and disruption to its business operations.  This settlement is not an admission of any wrongdoing by Atria.  The Parties have agreed to settle the Lawsuit on the terms and conditions explained in this notice.

WHY IS THIS A CLASS ACTION?

In a class action, one or more people, called class representatives (in this case, Juliana Christine Clegg), sue on behalf of people who have similar claims. All of these people are called a class or class members. One court resolves the issues for all class members, except for those who choose to exclude themselves from the class. United States District Court Judge Vince G. Chhabria is in charge of this proposed class action.

WHY IS THERE A SETTLEMENT?

The Court did not decide in favor of Plaintiff or Atria. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial and settlement benefits go to the Settlement Class Members. The Class Representative and the attorneys think the settlement is in the best interest of the Settlement Class Members taking in to account the benefits of the proposed settlement, the risks of continued litigation and the delay in obtaining relief for the Settlement Class if the Lawsuit continues.

WHO IS IN THE SETTLEMENT CLASS?

You are a member of the Settlement Class if you resided at any assisted living facility owned, managed and/or operated by Atria located in California at any time between June 12, 2010 through and including March 17, 2016. To be eligible for benefits under the settlement, you must be a Settlement Class Member, or the heir or legal successor to a deceased Class Member.

## THE SETTLEMENT BENEFITS

CASH PAYMENTS AND INJUNCTIVE RELIEF

Under the terms of the settlement, Atria has agreed to provide a total settlement fund of $6.4 million (the "Fund") in full settlement of the claims of the Settlement Class. The Fund will be used to pay for class notice and payment distribution administration expenses (estimated at $120,000), as well as Class Counsel's attorneys' fees not to exceed one-third of the Fund, litigation expenses of approxmately $135,000, and a service award of $3,500 to the Class Representative. The remaining amount (the "Net Settlement Fund") will be used to make cash payments to Settlement Class Members (or if a Class Member is deceased, to their legal successor). It is estimated that the cash payment for each Settlement Class Member will be approximately $290. The settlement distribution process will be administered by an independent settlement administrator (the "Settlement Administrator") approved by the Court. **The settlement amount and Net Settlement Fund are contingent on final approval by the Court.**

In addition, as part of the settlement and a Court-approved injunction, Atria has agreed, among other terms,to include language in Atria's residency agreements and other documents stating that resident assessments and other factors are considered in setting, monitoring or modifying staffing levels at Atria's facilities. The injunction will begin on the Effective Date (as defined in the Stipulation of Settlement) and remain in place for three years.

AMOUNT OF CASH PAYMENT

The actual cash payment amounts to Class Members will be determined by the Settlement Administrator based on the formula described in the settlement agreement, and may be increased if funds are available. Subject to Court approval, the Administrator will reserve $25,000 from the Fund to pay late distribution requests. Any amounts left in the Fund and not paid from the reserve or from uncashed checks, if any, will be paid to the Institute on Aging, or other non-profit organizations approved by the Court.

HOW CAN I GET A CASH PAYMENT?

If you are a Class Member and the address above is correct, **you do not need to take any action.** Your cash payment will be mailed to you if the settlement is approved by the Court and becomes Effective. If your address has changed, you must provide your new address to the Settlement Administrator not later than 30 days after the Effective Date, as defined in the Stipulation of Settlement. If a Class Member is deceased, his or her heir or legal successor must submit a payment request and supporting documentation to the Settlement Administrator not later than 30 days after the Effective Date. To contact the Settlement Administrator, visit **www.CaliforniaAssistedLivingSettlement.com** or call 1-844-850-7137.

WHEN WILL I RECEIVE MY SETTLEMENT AWARD?

The Court will hold a final approval hearing on **June 30, 2016** at **10:00 a.m.**, to decide whether to approve the settlement. **The date or time of the final approval hearing may be changed by the Court without notice to the Settlement Class, and you should check the Settlement Website at www.CaliforniaAssistedLivingSettlement.com or the public court records on file in this lawsuit for any updates.** If the Court approves the settlement, there may be appeals, which could extend the process by 18 months or more.

IN RETURN FOR THESE SETTLEMENT BENEFITS, WHAT AM I GIVING UP?

If the Court approves the proposed settlement and you do not request to be excluded from the Settlement Class, you must release (meaning, give up) all legal claims concerning Atria's alleged misrepresentations and nondisclosures with respect to whether or how resident assessments are used to set, determine or monitor staffing levels or care amounts provided in Atria's facilities. **This includes any other lawsuit or proceeding already in progress.** The Release does not include claims solely for personal injury, emotional distress or bodily harm. The judgment and orders entered in this case, whether favorable or unfavorable, will bind all Settlement Class Members who do not request to be excluded. The full terms of the Release are contained in the Stipulation of Settlement that is available on the Settlement Website at **www.CaliforniaAssistedLivingSettlement.com**, or at the public court records on file in the Lawsuit.

### THE LAWYERS REPRESENTING YOU

**DO I HAVE A LAWYER IN THIS CASE?**

All Settlement Class Members are represented by Plaintiffs' Counsel, who have been preliminarily approved by the Court to serve as Class Counsel representing the Settlement Class for purposes of the settlement.  If you want to be represented by your own lawyer, you may hire one at your own expense and enter an appearance through your own counsel.

**HOW WILL THE LAWYERS BE PAID?**

Class Counsel will ask the Court to award attorneys' fees not to exceed one-third of the Fund (approximately $2.1 million), and litigation expenses not to exceed $135,000.  Atria has agreed not to oppose this request.  Any award of attorneys' fees and litigation expenses must be approved by the Court as fair, reasonable and consistent with prevailing marketplace standards.  The amount of attorneys' fees and costs awarded by the Court will be paid from the Fund.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want to keep the right to sue or continue to sue Atria, on your own, about the legal issue in this case, then you must take steps to be excluded from the settlement.  This is called excluding yourself – or is sometimes referred to as opting out of the Settlement Class.

**HOW DO I GET OUT OF THE SETTLEMENT?**

If you do not wish to be included in the Settlement Class and receive a cash payment, you must send a letter stating that you want to be excluded from the Settlement Class in *Thomas Carnes v. Atria Senior Living and DOES 1 through 100*, case no. 3:14-cv-02727-VC (N.D. Cal.).  Be sure to include your name, address, telephone number, signature, and a statement that you are covered by this settlement.  You must mail your letter requesting exclusion postmarked no later than **May 31, 2016** to: Carnes v. Atria Senior Living Administrator, P.O. Box 40007, College Station, TX 77842-4007.

You cannot exclude yourself via telephone, fax, or email.

**WHAT HAPPENS IF I EXCLUDE MYSELF FROM THE SETTLEMENT?**

If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement.  However, you will not be legally bound by anything that happens in this lawsuit and you will keep your right to separately pursue claims against Atria relating to the subject matter of this lawsuit.

**IF I DON'T EXCLUDE MYSELF, CAN I SUE DEFENDANTS FOR THE SAME THING LATER?**

No.  Unless you exclude yourself, you give up the right to sue Atria for the claims that this settlement resolves.  You must exclude yourself from *this* case and the Settlement Class to pursue your own lawsuit.  Remember, your letter requesting exclusion must be postmarked on or before **May 31, 2016**.

**IF I EXCLUDE MYSELF, CAN I GET MONEY FROM THIS SETTLEMENT?**

No.  If you exclude yourself, you will not receive any money from the settlement.  But, you will not lose any right you may have to sue (or continue to sue) in a different lawsuit against Atria about the legal issues or claims in this case.  If you choose to initiate a new lawsuit, your claim will be subject to time limitations, so you must act promptly.

### OBJECTING TO THE SETTLEMENT

You can tell the court that you do not like the settlement or some part of it.

**HOW DO I TELL THE COURT THAT I DO NOT LIKE THE SETTLEMENT?**

If you are a Settlement Class Member, you can object to the settlement if you do not like any part of it, and the Court will consider your views.  To object, you must send a letter to the Court and the parties saying that you object to the settlement in *Thomas Carnes v. Atria Senior Living and DOES 1 through 100*, case no. 3:14-cv-02727-VC (N.D. Cal.).  Be sure to include your name, address, telephone number, your signature, and the reasons you object to the settlement.  You must also affirm under penalty of perjury that you are a Settlement Class Member (or a legal successor to a Class Member) or provide other proof of Settlement Class membership.  If you are represented by counsel, be sure to include the name, address, and telephone number of that lawyer.

Your objection *must be mailed to* these three different places no later than **May 31, 2016:**

| | | |
|---|---|---|
| Clerk of the Court | Kathryn A. Stebner | Darren Cottriel |
| United States District Court, | STEBNER AND ASSOCIATES | JONES DAY |
| Northern District of California | 870 Market Street, Suite 1212 | 3161 Michelson Drive, Suite 800 |
| 450 Golden Gate Avenue | San Francisco, CA 94102 | Irvine, California 92612-4408 |
| Courtroom 4 – 17th Floor | Telephone: (415) 362-9800 | Telephone: (949) 553-7548 |
| San Francisco, CA 94102 | | |

**WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND EXCLUDING?**

Objecting is telling the Court that you do not like something about the settlement. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class or the lawsuit. You cannot request exclusion **and** object to the settlement. If you exclude yourself, you have no basis to object because the lawsuit and settlement no longer affect you.

### THE FINAL APPROVAL HEARING

The Court will hold a Final Approval Hearing to decide whether to approve the settlement. You may attend, and you may ask to speak at the hearing, but you are not required to do either. Absent good cause shown, a Settlement Class Member will be permitted to speak at the Final Approval Hearing in support of an objection only if he or she has timely submitted a written objection.

**WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?**

The Court will hold a Final Approval Hearing at **10:00 a.m.** on **June 30, 2016** at the Courtroom of the Honorable Vince G. Chhabria: 450 Golden Gate Avenue, Courtroom 4 – 17th Floor, San Francisco, CA 94102. **The hearing date or time may be changed by the Court without notice to the Settlement Class, and you should check the Settlement Website at www.CaliforniaAssistedLivingSettlement.com or the public court records on file in this lawsuit at https://www.pacer.gov/ for any updates.** At the Final Approval Hearing, the Court will consider whether the settlement is fair, reasonable and adequate. If there are objections, the Court will consider them. The Court will listen to people who have asked to speak at the hearing. After the hearing, the Court will decide whether to approve the settlement. The Court will also consider how much to award Class Counsel as reasonable attorneys' fees and litigation expenses. We do not know how long this decision will take.

**DO I HAVE TO COME TO THE HEARING?**

No. Class Counsel will answer any questions the Court may have. But you are welcome to come to the hearing at your own expense. If you submit an objection, you do not have to attend the hearing. As long as you filed and delivered your written objection on time, signed it and provided all of the required information, the Court will consider it. You may also pay your own lawyer to attend the hearing, but it is not necessary.

**MAY I SPEAK AT THE HEARING?**

If you are a Settlement Class Member, you may speak at the Final Approval Hearing, subject to any limitations made by the judge presiding over the hearing. You cannot speak at the hearing if you exclude yourself from the Settlement Class.

### IF YOU DO NOTHING

**WHAT HAPPENS IF I DO NOTHING AT ALL?**

If you do nothing, you will be part of the Settlement Class. You will receive a cash payment from the settlement and you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Atria about the claims and issues in this case.

### GETTING MORE INFORMATION

**ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?**

The Stipulation of Settlement contains the complete terms of the parties' agreement. You can get a copy at **www.CaliforniaAssistedLivingSettlement.com**, or by reviewing the records on file in the court clerk's office at **https://www.pacer.gov/.**

The pleadings and other documents in this lawsuit may also be examined during regular business hours at the Office of the Clerk, United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, California.

If you have additional questions, you may call the Settlement Administrator at **1-844-850-7137**

DO NOT CONTACT THE COURT OR COURT CLERK'S OFFICE
REGARDING THIS NOTICE.

DATED: April 26, 2016

[/s/ The Honorable Vince G. Chhabria]
UNITED STATES DISTRICT JUDGE

Ex. J - Notice of Lodgment

Page 363

# EXHIBIT B

# 4D LIFE

## MUSIC

# New Orleans Jazz Fest opens with heavy hearts

With loss of Prince, tributes are soaring on stage and off

**Alex Rawls**
Special for USA TODAY



Festival-goers captured the moment as tributes to Prince were spelled out in a clear blue sky.
GERALD HERBERT, AP


JEFF KRAVITZ, FILMMAGIC
Eddie Vedder and Pearl Jam took the stage Saturday for a 2½-hour musical journey.

NEW ORLEANS A week before the 47th edition of New Orleans Jazz and Heritage Festival, the story looked to be the festival recommitting to its core values — good singing and good playing — with a talent roster overwhelmingly from New Orleans and Louisiana.

Then Prince died Thursday, and his loss led to a new Jazz Fest narrative: Who would honor him and how?

When the festival opened Friday, New Orleans' Kermit Ruffins performed *Purple Rain* and let the audience sing the lyrics he obviously didn't know. Americana group The Deslondes sang the gospel standard *What Are They Doing in Heaven Today* in Prince's honor, but Janelle Monae made the biggest impact. Prince had been her friend and mentor. Musically cut from the similar genre-crossing cloth as he, she acknowledged during the set, "I am because he was."

Throughout her set closing Jazz Fest's Congo Square Stage, she interspersed stories and memories of Prince with songs from her 2013 album *Electric Lady*, including *Givin Em What They Love*, the song they wrote together. She remembered how he loved her "jazz voice," so she used it sing the popular standard *Smile* — "Smile, though your heart is aching."

Emotion overtook Monae when she covered *Take Me With U* from *Purple Rain*, and she was clearly trying to regain control of her emotions between the end of that song and the start of *Let's Go Crazy*. The usually self-possessed Monae's performance had a slightly unfocused quality, as if she wasn't sure what to do with herself. When the song finished, a crew member picked her up, carried her off and ended the set 20 minutes early as Prince's *Pop Life* played.



Janelle Monae, for whom Prince had been a friend and mentor, poured forth music and memories in an emotional set.
JOSH BRASTED, WIREIMAGE

Steely Dan did not do Prince. From the opening *Black Cow* and throughout the show from the '70s rock standard-bearers, the live versions of the group's classics were faithful to the recorded ones down to singer Donald Fagen's phrasing. One byproduct of that approach was a show as lush and musical as Steely Dan's records. Another was that the slightest change of inflection felt meaningful.

Saturday didn't have any Princely moments as monumental as Monae's. He was a constant presence, however, during for much of the afternoon as a skywriter flew over the fairgrounds and in the clear blue sky left smoke trails of the name "Prince," the number "1999," the glyph Prince used in his Artist Formerly Known As days, and a peace sign, heart and smiley face.

On the ground, Pearl Jam semi-covered Prince. Eddie Vedder explained that he performed *Even Flow* with Prince's all-woman power trio 3rdEyeGirl. Then Pearl Jam played the song, complete with a Mike McCready guitar solo that began on front of the stage as he played with his guitar behind his head while working the front row and ended with him at his amps coaxing out feedback.

For much of the 2½-hour set, Pearl Jam seemed stuck in a churning midtempo mode that didn't work in the band's favor, but it took advantage of the talent on hand as it brought out New Orleans horn players Big Sam Williams, Andrew Baham, Carly Meyers and Seattle sax player Skerik for a cover of The Who's *The Real Me*, then Chad Smith and Josh Klinghoffer of the Red Hot Chili Peppers, who headlined Sunday, along with the Kings of Leon's Nathan Followill to join the band on a raucous, rowdy version of Neil Young's *Rockin' in the Free World*.

On Saturday, Van Morrison returned to Jazz Fest. His voice was a little slow to warm up, and the high kicks he displayed in the 1978 movie *The Last Waltz* are almost 40 years in the rear-view mirror. Still, his voice remains an amazing instrument.

Morrison sang the blues, jazz and his hits, doing largely what you might expect but with just enough eccentricity to show the artist's hand. Seemingly apropos of nothing, he added Hank Williams' *Jambalaya* to the mix and clearly enjoyed it.

Not everybody at Jazz Fest has 40 to 50 years of history, though it can seem like it at times. Denver's Nathaniel Rateliff and the Night Sweats were one of 2015's breakout bands on the strength of a self-titled debut that paid a big debt to the Memphis R&B label Stax Records. Rateliff raised a toast to Prince, and the band was at its most solid when it sounded like one in love with Otis Redding and Sam and Dave. The clean, motoring punchiness of *I Need Never Grow Up, Look It Here* and their breakthrough song *S.O.B* show the band at its most compelling.

## MOVIES

# 40 years after 'Taxi Driver,' we flag down six fast facts

**Patrick Ryan**
USA TODAY

NEW YORK Four decades later, Robert De Niro still can't shake his *Taxi Driver* character.

"Every day for 40 years, at least one of you has to come up to me and said, 'You talking to me?' " De Niro smiled, introducing Martin Scorsese's gritty 1976 classic at Tribeca Film Festival Thursday. The psychological thriller, which celebrates its 40th anniversary this year, follows Vietnam War veteran Travis Bickle (De Niro) as he takes a job driving cabs and becomes increasingly unhinged.

Festival co-founder De Niro hosted a *Taxi* screening and Q&A at New York's Beacon Theatre, joined by Scorsese, screenwriter Paul Schrader, producer Michael Phillips and co-stars Jodie Foster, Harvey Keitel and Cybill Shepherd. Here's what we learned:

### 1 THE SCRIPT STARTED AS "SELF-THERAPY."

Despite the belief that *Taxi* is based on Arthur Bremer, who tried to assassinate presidential candidate George Wallace in 1972, Schrader said it was introspective. "I was afraid of becoming" this taxi driver, he said. "I felt if I wrote about him, I could distance him from me and it worked. It does show that art has therapeutic powers."

### 2 DE NIRO DROVE A CAB TO PREPARE FOR HIS ROLE.

Fresh off a supporting-actor Oscar for *The Godfather: Part II*, De Niro had just two weeks in New York before shooting started on *Taxi*. "I started driving a cab as much as I could," De Niro said. Scorsese added: "There was a guy who got in the car ... and said, 'God, you just won an Oscar. Is it that hard to get jobs?' "

### 3 DE NIRO DIDN'T REALLY GO BALD.

Travis' third-act mohawk was inspired by a friend of Scorsese's who served in the Special Forces in Southeast Asia, where fellow soldiers sported the haircut. Be-



Iris (Jodie Foster) and Travis Bickle (Robert De Niro) memorably cross paths in 1976's *Taxi Driver*.

cause he was about to shoot *The Last Tycoon*, De Niro opted to wear a prosthetic. While it was being fitted, "I dozed off for a minute," Scorsese said. "I opened my eyes and you were there with this thing. It was terrifying."

### 4 FOSTER ALMOST COULDN'T DO THE MOVIE.

The actress was only 12 when she played runaway teen prostitute Iris. She went through a four-hour interview with a psychiatrist after the Los Angeles Welfare Board refused to give her a work permit because of the film's violent content. "They decided to determine if I was psychologically sane enough to play the part," Foster said. "I guess I passed."

### 5 KEITEL "TRAINED" WITH A PIMP.

The actor sought real-life inspiration to play Iris' hustler Sport, who meets a bloody end at Travis' hands. Performing in a play in New York at the time, Keitel met a man on the street who claimed to be a former pimp. "He taught me what it was like to (be) a real pimp," Keitel said. "I played the girl, he told me what to do, and he'd be the guy. We had a good business together."

### 6 FOSTER HATED IRIS' OUTFITS.

While she loved the buckets of fake blood, there were some things the child actress couldn't stand. "The hot pants and the dumb hat and the sunglasses," Foster said. "The first day (on set), I cried."

LEGAL NOTICE

IF YOU RESIDED AT AN ATRIA ASSISTED LIVING FACILITY IN CALIFORNIA AT ANY TIME FROM JUNE 12, 2010 THROUGH MARCH 17, 2016, OR ARE THE HEIR OR LEGAL SUCCESSOR FOR ANY SUCH RESIDENT, YOU ARE ENTITLED TO MONEY FROM A CLASS ACTION SETTLEMENT.
READ ON FOR IMPORTANT INFORMATION ABOUT YOUR RIGHTS

Thomas Carnes v. Atria Senior Living, Inc., Case No. 3:14-cv-02727-VC

United States District Court, Northern District of California

**WHAT IS THIS LAWSUIT ABOUT?**

Plaintiff Thomas Carnes, by and through his representative and legal successor, Juliana Christine Clegg, ("Plaintiff") brings this proposed class action on behalf of residents of assisted living communities owned, managed or operated by Atria Senior Living, Inc. ("Atria") in California. Plaintiff alleges that Atria made purportedly misleading statements about how its resident evaluations would be used to set staffing at Atria's facilities in California, which Plaintiff alleges resulted in monetary damages to residents. Atria denies all allegations and claims, but has agreed to settle to avoid burdensome and costly litigation and disruption to its business operations. The settlement is not an admission of wrongdoing, and this Notice does not mean the Court has expressed any opinion as to the merits of any claim or defense.

In a class action, one or more individuals (called plaintiffs) assert claims on behalf of others (called Class Members). Here, the Court has appointed Stebner & Associates and other counsel (Class Counsel) to represent all Settlement Class Members. If you want to be represented by your own lawyer, you may hire one at your expense.

**WHAT ARE THE TERMS OF THE SETTLEMENT?**

Under the proposed settlement, Atria has agreed to provide a total settlement fund of $6.4 million (the "Fund") in full settlement of the claims of the Settlement Class. Subject to Court approval, it is expected that after payment of class notice and administration, Class Counsel's attorneys' fees and litigation expenses, and service award to Plaintiff, the cash payment for each Settlement Class Member will be approximately $290. The attorneys' fees shall not exceed one-third of the settlement fund. The settlement amount, any attorneys' fee award and the net funds available for payment to class members are all contingent on final approval by the Court. In addition to monetary payments, Atria has agreed to an injunction that requires, among other things, that Atria include language in its residency agreements and other documents stating that resident assessments and other factors are considered in setting, or monitoring or modifying staffing levels at Atria's facilities.

**WHO IS A SETTLEMENT CLASS MEMBER?**

You are a Settlement Class Member if you resided at any assisted living facility owned, managed and/or operated by Atria located in California at any time between June 12, 2010 through and including March 17, 2016, or are the heir or legal successor for any such resident. To be eligible for benefits under the settlement, you must be a Settlement Class Member, or a legal successor to a deceased Class Member.

**WHAT ARE MY RIGHTS AND OPTIONS?**

If you are a member of the settlement class, you must decide whether to:

**Include Yourself In Settlement Class and Receive a Settlement Payment.** You may include yourself in the settlement class and seek money from this class settlement, but give up your right to sue in a different case about the same subject matter. If you choose this option, you do not need to do anything, as you will automatically be included in the settlement class, provided the Settlement Administrator has your current address. If your address has changed, or if you are the heir or legal successor to deceased resident, you must provide your current address and, in the case of a deceased resident, documentation sufficient to show status as the heir or legal successor to the deceased resident, by **30 days after the Effective Date.**

**Include Yourself In Settlement Class, But File An Objection.** Alternatively, you can remain in the settlement class, seek money from the class settlement and give up your right to sue in a different case about the same subject matter, but object to the terms of the settlement. If you choose this option, you do not need to do anything in order to be included in the settlement class, but to object to the terms of the settlement, you or your own counsel will need to prepare and submit a written objection. Please visit www.californiaassistedlivingsettlement.com for instructions on how to file an objection. Your written objection must be submitted no later than **May 31, 2016.** Absent good cause shown, a Settlement Class Member will be permitted to speak at the Final Approval Hearing in support of an objection only if he or she has timely submitted a written objection.

**Exclude Yourself.** Your third option is to exclude yourself from the settlement class and give up your right to seek money from the class settlement, but keep your right to sue in a different case about the same subject matter. If you choose this option, you will need to prepare and submit a written request to be excluded from the settlement class. Please visit www.californiaassistedlivingsettlement.com for instructions on how to submit a request for exclusion. Your written exclusion request must be postmarked no later than **May 31, 2016.**

**FAIRNESS HEARING**

The Court will hold a Final Approval Hearing on **June 30, 2016** to decide whether to approve the settlement. This fairness hearing will be held in Courtroom 4, 450 Golden Gate Avenue, 17th Floor, San Francisco, CA 94102. The hearing date, time and place may be changed without notice to the Settlement Class, so please check the www.californiaassistedlivingsettlement.com for updates.

**HOW CAN I GET MORE INFORMATION?**

This notice is a summary only. More information about the lawsuit and settlement can be found at www.californiaassistedlivingsettlement.com, or by reviewing court records at https://www.pacer.gov/. Pleadings and other court documents in the lawsuit may also be reviewed during regular business hours at the Office of the Clerk, United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, California.

PLEASE DO NOT CONTACT THE COURT FOR INFORMATION ABOUT THE LAWSUIT

MUSIC

# New Orleans Jazz Fest opens with heavy hearts

With loss of Prince, tributes are soaring on stage and off

**Alex Rawls**
Special for USA TODAY





Eddie Vedder and Pearl Jam took the stage Saturday for a 2½-hour musical journey.

NEW ORLEANS A week before the 47th edition of New Orleans Jazz and Heritage Festival, the story looked to be the festival recommitting to its core values — good singing and good playing — with a talent roster overwhelmingly from New Orleans and Louisiana.

Then Prince died Thursday, and his loss led to a new Jazz Fest narrative: Who would honor him and how?

When the festival opened Friday, New Orleans' Kermit Ruffins performed *Purple Rain* and let the audience sing the lyrics he obviously didn't know. Americana group The Deslondes sang the gospel standard *What Are They Doing in Heaven Today* in Prince's honor, but Janelle Monae made the biggest impact. Prince had been her friend and mentor. Musically cut from the similar genre-crossing cloth as he, she acknowledged during the set, "I am because he was."

Throughout her set closing Jazz Fest's Congo Square Stage, she interspersed stories and memories of Prince with songs from her 2013 album *Electric Lady*, including *Givin Em What They Love*, the song they wrote together. She remembered how he loved her "jazz voice," so she used it sing the popular standard *Smile* — "Smile, though your heart is aching."

Emotion overtook Monae when she covered *Take Me With U* from *Purple Rain*, and she was clearly trying to regain control of her emotions between the end of that song and the start of *Let's Go Crazy*. The usually self-possessed Monae's performance had a slightly unfocused quality, as if she wasn't sure what to do with herself. When the song finished, a crew member picked her up, carried her off and ended the set 20 minutes early as Prince's *Pop Life* played.

Festival-goers captured the moment as tributes to Prince were spelled out in a clear blue sky.



Janelle Monae, for whom Prince had been a friend and mentor, poured forth music and memories in an emotional set.

Steely Dan did not do Prince. From the opening *Black Cow* and throughout the show from the '70s rock standard-bearers, the live versions of the group's classics were faithful to the recorded ones down to singer Donald Fagen's phrasing. One byproduct of that approach was a show as lush and musical as Steely Dan's records. Another was that the slightest change of inflection felt meaningful.

Saturday didn't have any Princely moments as monumental as Monae's. He was a constant presence, however, during for much of the afternoon as a skywriter flew over the fairgrounds and in the clear blue sky left smoke trails of the name "Prince," the number "1999," the glyph Prince used in his Artist Formerly Known as days, and a peace sign, heart and smiley face.

On the ground, Pearl Jam semi-covered Prince. Eddie Vedder explained that he performed *Even Flow* with Prince's all-woman power trio 3rdEyeGirl. Then Pearl Jam played the song, complete with a Mike McCready guitar solo that began on front of the stage as he played with his guitar behind his head while working the front row and ended with him at his amps coaxing out feedback.

For much of the 2½-hour set, Pearl Jam seemed stuck in a churning midtempo mode that didn't work in the band's favor, but it took advantage of the talent on hand as it brought out New Orleans horn players Big Sam Williams, Andrew Baham, Carly Meyers and Seattle sax player Skerik for a cover of The Who's *The Real Me*, then Chad Smith

and Josh Klinghoffer of the Red Hot Chili Peppers, who headlined Sunday, along with the Kings of Leon's Nathan Followill to join the band on a raucous, rowdy version of Neil Young's *Rockin' in the Free World*.

On Saturday, Van Morrison returned to Jazz Fest. His voice was a little slow to warm up, and the high kicks he displayed in the 1978 movie *The Last Waltz* are almost 40 years in the rear-view mirror. Still, his voice remains an amazing instrument.

Morrison sang the blues, jazz and his hits, doing largely what you might expect but with just enough eccentricity to show the artist's hand. Seemingly apropos of nothing, he added Hank Williams' *Jambalaya* to the mix and clearly enjoyed it.

Not everybody at Jazz Fest has 40 to 50 years of history, though it can seem like it at times. Denver's Nathaniel Rateliff and the Night Sweats were one of 2015's breakout bands on the strength of a self-titled debut that paid a big debt to the Memphis R&B label Stax Records. Rateliff raised a toast to Prince, and the band was at its most solid when it sounded like one in love with Otis Redding and Sam and Dave. The clean, motoring punchiness of *I Need Never Grow Up*, *Look It Here* and their breakthrough song *S.O.B* show the band at its most compelling.

---

MOVIES

# 40 years after 'Taxi Driver,' we flag down six fast facts

**Patrick Ryan**
USA TODAY

NEW YORK Four decades later, Robert De Niro still can't shake his *Taxi Driver* character.

"Every day for 40 years, at least one of you has to come up to me and said, 'You talking to me?' " De Niro smiled, introducing Martin Scorsese's gritty 1976 classic at Tribeca Film Festival Thursday. The psychological thriller, which celebrates its 40th anniversary this year, follows Vietnam War veteran Travis Bickle (De Niro) as he takes a job driving cabs and becomes increasingly unhinged.

Festival co-founder De Niro hosted a *Taxi* screening and Q&A at New York's Beacon Theatre, joined by Scorsese, screenwriter Paul Schrader, producer Michael Phillips and co-stars Jodie Foster, Harvey Keitel and Cybill Shepherd. Here's what we learned:

**1 THE SCRIPT STARTED AS "SELF-THERAPY."**
Despite the belief that *Taxi* is based on Arthur Bremer, who tried to assassinate presidential candidate George Wallace in 1972, Schrader said it was introspective. "I was afraid of becoming" this taxi driver, he said. "I felt if I wrote about him, I could distance him from me and it worked. It does show that art has therapeutic powers."

**2 DE NIRO DROVE A CAB TO PREPARE FOR HIS ROLE.**
Fresh off a supporting-actor Oscar for *The Godfather: Part II*, De Niro had just two weeks in New York before shooting started on *Taxi*. "I started driving a cab as much as I could," De Niro said. Scorsese added: "There was a guy who got in the car ... and said, 'God, you just won an Oscar. Is it that hard to get jobs?' "

**3 HE DIDN'T REALLY GO BALD.**
Travis' third-act mohawk was inspired by a friend of Scorsese's who served in the Special Forces in Southeast Asia, where fellow soldiers sported the haircut. Be-

cause he was about to shoot *The Last Tycoon*, De Niro opted to wear a prosthetic. While it was being fitted, "I dozed off for a minute," Scorsese said. "I opened my eyes and you were there with this thing. It was terrifying."



Iris (Jodie Foster) and Travis Bickle (Robert De Niro) memorably cross paths in 1976's *Taxi Driver.*

**4 FOSTER ALMOST COULDN'T DO THE MOVIE.**
The actress was only 12 when she played runaway teen prostitute Iris. She went through a four-hour interview with a psychiatrist after the Los Angeles Welfare Board refused to give her a work permit because of the film's violent content. "They decided to determine if I was psychologically sane enough to play the part," Foster said. "I guess I passed."

**5 KEITEL "TRAINED" WITH A PIMP.**
The actor sought real-life inspiration to play Iris' hustler Sport, who meets a bloody end at Travis' hands. Performing in a play in New York at the time, Keitel met a man on the street who claimed to be a former pimp. "He taught me what it was like to (be) a real pimp," Keitel said. "I played the girl, he told me what to do, and he'd be the guy. We had a good business together."

**6 FOSTER HATED IRIS' OUTFITS.**
While she loved the buckets of fake blood, there were some things the child actress couldn't stand. "The hot pants and the dumb hat and the sunglasses," Foster said. "The first day (on set), I cried."

---

LEGAL NOTICE

IF YOU RESIDED AT AN ATRIA ASSISTED LIVING FACILITY IN CALIFORNIA AT ANY TIME FROM JUNE 12, 2010 THROUGH MARCH 17, 2016, OR ARE THE HEIR OR LEGAL SUCCESSOR FOR ANY SUCH RESIDENT, YOU ARE ENTITLED TO MONEY FROM A CLASS ACTION SETTLEMENT.
READ ON FOR IMPORTANT INFORMATION ABOUT YOUR RIGHTS

Thomas Carnes v. Atria Senior Living, Inc., Case No. 3:14-cv-02727-VC
United States District Court, Northern District of California

**WHAT IS THIS LAWSUIT ABOUT?**

Plaintiff Thomas Carnes, by and through his representative and legal successor, Juliana Christine Clegg, ("Plaintiff") brings this proposed class action on behalf of residents of assisted living communities owned, managed or operated by Atria Senior Living, Inc. ("Atria") in California. Plaintiff alleges that Atria made purportedly misleading statements about how its resident evaluations would be used to set staffing at Atria's facilities in California, which Plaintiff alleges resulted in monetary damages to residents.  Atria denies all allegations and claims, but has agreed to settle to avoid burdensome and costly litigation and disruption to its business operations. The settlement is not an admission of wrongdoing, and this Notice does not mean the Court has expressed any opinion as to the merits of any claim or defense.

In a class action, one or more individuals (called plaintiffs) assert claims on behalf of others (called Class Members). Here, the Court has appointed Stebner & Associates and other counsel (Class Counsel) to represent all Settlement Class Members. If you want to be represented by your own lawyer, you may hire one at your expense.

**WHAT ARE THE TERMS OF THE SETTLEMENT?**

Under the proposed settlement, Atria has agreed to provide a total settlement fund of $6.4 million (the "Fund") in full settlement of the claims of the Settlement Class.  Subject to Court approval, it is expected that after payment of class notice and administration, Class Counsel's attorneys' fees and litigation expenses, and service award to Plaintiff, the cash payment for each Settlement Class Member will be approximately $290. The attorneys' fees shall not exceed one-third of the settlement fund. The settlement amount, any attorneys' fee award and the net funds available for payment to class members are all contingent on final approval by the Court.  In addition to monetary payments, Atria has agreed to an injunction that requires, among other things, that Atria include language in its residency agreements and other documents stating that resident assessments and other factors are considered in setting, or monitoring or modifying staffing levels at Atria's facilities.

**WHO IS A SETTLEMENT CLASS MEMBER?**

You are a Settlement Class Member if you resided at any assisted living facility owned, managed and/or operated by Atria located in California at any time between June 12, 2010 through and including March 17, 2016, or are the heir or legal successor for any such resident.  To be eligible for benefits under the settlement, you must be a Settlement Class Member, or a legal successor to a deceased Class Member.

**WHAT ARE MY RIGHTS AND OPTIONS?**

If you are a member of the settlement class, you must decide whether to:

**Include Yourself In Settlement Class and Receive a Settlement Payment.**  You may include yourself in the settlement class and seek money from the class settlement, but give up your right to sue in a different case about the same subject matter.  If you choose this option, you do not need to do anything, as you will automatically be included in the settlement class, provided the Settlement Administrator has your current address.  If your address has changed, or if you are the heir or legal successor to deceased resident, you must provide your current address and, in the case of a deceased resident, documentation sufficient to show status as the heir or legal successor to the deceased resident, by **30 days after the Effective Date.**

**Include Yourself In Settlement Class, But File An Objection.**  Alternatively, you can remain in the settlement class, seek money from the class settlement and give up your right to sue in a different case about the same subject matter, but object to the terms of the settlement. If you choose this option, you do not need to do anything in order to be included in the settlement class, but to object to the terms of the settlement, you or your own counsel will need to prepare and submit a written objection.  Please visit www.californiaassistedlivingsettlement.com for instructions on how to file an objection.  Your written objection must be submitted no later than **May 31, 2016.**  Absent good cause shown,  a Settlement Class Member will be permitted to speak at the Final Approval Hearing in support of an objection only if he or she has timely submitted a written objection.

**Exclude Yourself.**  Your third option is to exclude yourself from the settlement class and give up your right to seek money from the class settlement, but keep your right to sue in a different case about the same subject matter.  If you choose this option, you will need to prepare and submit a written request to be excluded from the settlement class. Please visit www.californiaassistedlivingsettlement.com for instructions on how to submit a request for exclusion. Your written exclusion request must be postmarked no later than **May 31, 2016.**

**FAIRNESS HEARING**

The Court will hold a Final Approval Hearing on **June 30, 2016** to decide whether to approve the settlement. This fairness hearing will be held in Courtroom 4, 450 Golden Gate Avenue, 17th Floor, San Francisco, CA 94102.  The hearing date, time and place may be changed without notice to the Settlement Class, so please check the www.californiaassistedlivingsettlement.com for updates.

**HOW CAN I GET MORE INFORMATION?**

This notice is a summary only.  More information about the lawsuit and settlement can be found at www.californiaassistedlivingsettlement.com,  or by reviewing court records at https://www.pacer.gov/.  Pleadings and other court documents in the lawsuit may also be reviewed during regular business hours at the Office of the Clerk, United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, California.

PLEASE DO NOT CONTACT THE COURT FOR INFORMATION ABOUT THE LAWSUIT



1  Robert A. Mittelstaedt (State Bar No. 60359)
   ramittelstaedt@jonesday.com
2  David C. Kiernan (State Bar No. 215335)
   Dkiernan@jonesday.com
3  Craig E. Stewart (State Bar No. 129530)
   cestewart@jonesday.com
4  Amir Q. Ameri (State Bar No. 271224)
   Aamiri@jonesday.com
5  JONES DAY
6  555 California Street, 26th Floor
7  San Francisco, California 94104
   Telephone:    (415) 626-3939
8  Facsimile:     (415) 875-5700

9  Darren K. Cottriel (State Bar No. 184731)
   darrencottriel@jonesday.com
10 JONES DAY
11 3161 Michelson Drive, Suite 800
   Irvine, CA 92612
12 Telephone: (949) 851-3939
   Facsimile: (949) 553-7539
13
   Attorneys for Defendant
14 ATRIA SENIOR LIVING, INC.

15                    UNITED STATES DISTRICT COURT

16         NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

17

18 | THOMAS CARNES, by and through his | Case No. 3:14-cv-02727-VC |
   | Guardian ad Litem, Juliana Carnes Clegg, on | |
19 | his own behalf and on behalf of others | **DECLARATION OF DARREN K.** |
   | similarly situated, | **COTTRIEL RE COMPLIANCE** |
20 | | **WITH 28 U.S.C. § 1715(B)** |
   |              Plaintiff, | |
21 | | |
   |        v. | |
22 | | |
   | ATRIA SENIOR LIVING and DOES 1 | |
23 | Through 100, | |
24 | | |
   |              Defendants. | |
25

26

27

28

                                          Declaration of Darren K. Cottriel

<div align="center">

1       **DECLARATION OF DARREN K. COTTRIEL**

</div>

2       I, Darren K. Cottriel, declare as follows:

3       1.     I am a licensed attorney in the State of California and a partner in the law firm of

4  Jones Day, counsel for Defendant Atria Senior Living, Inc. in this case. I make this Declaration

5  pursuant to 28 U.S.C. § 1746. I have personal knowledge of the facts stated in this declaration,

6  and if called as a witness I could and would testify competently to them.

7       2.     In accordance with Section 1715 of the Class Action Fairness Act of 2005

8  ("CAFA"), 28 U.S.C. § 1715, on February 26, 2016, my office served the letter attached as

9  Exhibit 1 hereto, via Overnight Mail to the appropriate federal and State of California officials

10  (shown on the service list attached to the letter), providing them notice of the class action

11  settlement in this case. In accordance with CAFA, included as an enclosure with the letter was a

12  CD-ROM containing copies of the following documents: (1) Class Action Complaint, filed June

13  12, 2014; (2) First Amended Class Action Complaint, filed August 7, 2014; (3) Second Amended

14  Class Action Complaint, filed December 11, 2014; (4) Defendant's Answer to Second Amended

15  Class Action Complaint, filed March 6, 2015; (5) Plaintiff's Notice of Motion and Motion for

16  Preliminary Approval of Class Settlement, including declaration and exhibits, filed February 11,

17  2016; (6) Plaintiff's Supplemental Notice of Lodgment of Exhibits in Support of Motion for

18  Preliminary Approval of Class Settlement (including signed Stipulation of Settlement), filed

19  February 25, 2016; (7) form of notice to be sent to settlement class members; and (8) Stipulation

20  of Settlement.

21       3.     As of the filing of this Declaration, my office has not received any objections to

22  the settlement from any of the federal or state officials to whom the attached letter was sent.

23       I declare under penalty of perjury under the laws of the California that the foregoing is

24  true and correct. This declaration is made on May 13, 2016, in Irvine, California.

25

26                            Darren K. Cottriel

27

28  NAI-1501035425v1

<div align="center">

- 2 -

</div>

Declaration of Darren K. Cottriel

# EXHIBIT 1

# JONES DAY

3161 MICHELSON DRIVE • SUITE 800 • IRVINE, CALIFORNIA 92612.4408

TELEPHONE: +1.949.851.3939 • FACSIMILE: +1.949.553.7539

DIRECT NUMBER: (949) 553-7548
DCOTTRIEL@JONESDAY.COM

February 26, 2016

**VIA OVERNIGHT MAIL**

To:     Federal and State Officials pursuant to 28 U.S.C. § 1715
        (See enclosed distribution list)

Re:     *Thomas Carnes, by and through his Guardian ad Litem, Juliana Clegg, on his*
        *own behalf and on behalf of others similarly situated, vs. Atria Senior Living, Inc.,*
        Case No. 3:14-cv-02727-VC (N.D. Cal.)
        CAFA Notice of Proposed Class Action Settlement, Pursuant to 28 U.S.C. § 1715

Dear Sir or Madam:

This law firm represents Atria Senior Living, Inc. ("Defendant") in the above-referenced putative class action lawsuit (the "Lawsuit"). The Lawsuit is pending before the Honorable Vince Chhabria in the United States District Court for the Northern District of California. Pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, Defendant hereby provides notice of the proposed settlement of all claims against it in the Lawsuit.

In accordance with the CAFA requirements, copies of the following documents are included on the CD that is enclosed with this letter:

1.      **28 U.S.C. § 1715(b)(1) – Complaint and Related Materials**: Included on the enclosed CD as Exhibits A through D are copies of the following: (a) Class Action Complaint (filed June 12, 2014); First Amended Class Action Complaint (filed August 7, 2014); Second Amended Class Action Complaint (filed December 11, 2014); and Defendant's Answer to Second Amended Class Action Complaint (filed March 6, 2015).

2.      **28 U.S.C. § 1715(b)(2) – Notice of Any Scheduled Judicial Hearing**: Plaintiff filed a motion asking the court to consider preliminary approval of the proposed class action settlement on February 11, 2016, and filed a copy of the executed proposed Stipulation of Settlement with the court on February 25, 2016. The hearing on the motion for preliminary approval is currently set for March 24, 2016 at 10:00 am. In the motion for preliminary approval, Plaintiff requests the

ALKHOBAR • AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS
DUBAI • DUSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • JEDDAH • LONDON • LOS ANGELES • MADRID
MEXICO CITY • MIAMI • MILAN • MOSCOW • MUNICH • NEW YORK • PARIS • PITTSBURGH • RIYADH • SAN DIEGO
SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Federal and State Officials (listed on distribution list)
February 26, 2016
Page 2

court to schedule a hearing to consider final approval of the proposed settlement, entry of a final judgment approving the settlement, and Plaintiff's request for a service award and award of attorneys' fees and costs. As of the date of this notice, no final approval hearing has been scheduled. Included on the enclosed CD as Exhibits E & F are copies of: (a) Plaintiff's Notice of Motion and Motion for Preliminary Approval of Class Settlement, including declaration and exhibits, filed February 11, 2016, and (b) Plaintiff's Supplemental Notice of Lodgment of Exhibits in Support of Motion for Preliminary Approval of Class Settlement (including signed Stipulation of Settlement) filed February 25, 2016.

3.    **28 U.S.C. § 1715(b)(3) – Notification to Class Members:** The text of the proposed notification to class members of the proposed settlement, including their rights to request exclusion from the class, is included on the enclosed CD as Exhibit G.

4.    **28 U.S.C. § 1715(b)(4) – Class Action Settlement Agreement:** The proposed class action settlement is set forth in the executed Stipulation of Settlement filed with the court on February 25, 2016, a copy of which is included on the enclosed CD as Exhibit F.

5.    **28 U.S.C. § 1715(b)(5) – Any Settlement or Other Agreement:** Other than the Stipulation of Settlement, there are no other settlements or agreements between Defendant and plaintiff or his counsel in this matter.

6.    **28 U.S.C. § 1715(b)(6) – Any Final Judgment or Dismissal:** No final judgment or notice of dismissal has been entered. The [proposed] Final Judgment and Order Approving Class Settlement is included as an exhibit to the Motion for Preliminary Approval (*see* Exhibit E on the CD).

7.    **28 U.S.C. § 1715(b)(7)(A)-(B) – A reasonable estimate of the number of class members residing in each state and the estimated proportionate share of the claims of such members to the entire settlement**. Because the Stipulation of Settlement (Exhibit F) defines the class period as closing on March 17, 2016, Defendant is still in the process of calculating the number of class members. The Motion for Preliminary Approval (Exhibit E) estimates that there are approximately 13,600 class members. The Stipulation of Settlement also defines the class as including only California residents; Defendant therefore estimates that 100% of the claims will be paid to California residents or their successors in interest.

JONES DAY

Federal and State Officials (listed on distribution list)
February 26, 2016
Page 3

     8.     **28 U.S.C. § 1715(b)(8) – Judicial Opinions Related to the Settlement:** As of the date of this letter, the proposed Stipulation of Settlement is still pending preliminary and final approval by the court, and there have been no written judicial opinions related to the settlement or the enclosed materials.

     This notice is provided based on the information currently available to Defendant, and based on the status of the proceedings at the time of submission of this notification. This notice is complete as of the date hereof and will not be amended. Please note that the court's docket in this case is publicly accessible via the PACER system at https://ecf.cand.uscourts.gov/.

     Please contact Defendant's counsel if you have any questions about this notice, the Lawsuit, the settlement or the enclosed materials.

                          Very truly yours,

                          Darren K. Cottriel

Enclosures
cc:     Counsel of Record (w/out enclosure)

NAI-1500855412v1

Ex. K - Notice of Lodgment

Page 373

**PROOF OF SERVICE**

I, Nicole C. Michau, declare:

I am a citizen of the United States and employed in Orange County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 3161 Michelson Drive, Suite 800, Irvine, California  92612.  On February 26, 2016, I caused to be served a copy of the within document(s): *

☐     by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Irvine, California addressed as set forth below.

☒     by placing the document(s) listed above in a sealed UPS envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a UPS agent for OVERNIGHT delivery.

☐     by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

☐     by causing to be personally delivered by First Legal, the document(s) listed above to the person(s) at the address(es) set forth below.

| | |
|---|---|
| Kathryn A. Stebner<br>Sarah Colby<br>George Kawamoto<br>STEBNER AND ASSOCIATES<br>870 Market Street, Suite 1212<br>San Francisco, CA 94102<br>Tel: (415) 362-9800<br>Fax: (415) 362-9801 | *Attorneys for Plaintiffs and the Proposed Class* |
| Michael D. Thamer<br>LAW OFFICES OF MICHAEL D. THAMER<br>Old Callahan School House<br>12444 South Highway 3<br>Post Office Box 1568<br>Callahan, California 96014-1568<br>Tel: (530) 467-5307<br>Fax: (530) 467-5437 | *Attorneys for Plaintiffs and the Proposed Class* |
| Robert S. Arns<br>THE ARNS LAW FIRM<br>515 Folsom Street, 3rd Floor<br>San Francisco, CA 94105<br>Tel: (415) 495-7800<br>Fax: (415) 495-7888 | *Attorneys for Plaintiffs and the Proposed Class* |

**PROOF OF SERVICE**

| | |
|---|---|
| Guy B. Wallace<br>Mark T. Johnson<br>Jennifer A. Uhrowczik<br>SCHNEIDER WALLACE<br>COTTRELL KONECKY<br>WOTKYNS, LLP<br>2000 Powell Street, Suite 1400<br>Emeryville, CA 94608<br>Tel: (415) 421-7100<br>Fax: (415) 421-7105 | *Attorneys for Plaintiffs and the Proposed Class* |
| W. Timothy Needham<br>JANSSEN MALLOY LLP<br>730 Fifth Street<br>Eureka, CA 95501<br>Tel: (707) 445-2071<br>Fax: (707) 445-8305 | *Attorneys for Plaintiffs and the Proposed Class* |
| Christopher J. Healey<br>DENTONS US LLP<br>600 West Broadway, Suite 2600<br>San Diego, CA 92101-3372<br>Tel: (619) 236-1414<br>Fax: (619) 645-5328 | *Attorneys for Plaintiffs and the Proposed Class* |
| CAFA Coordinator<br>Office of the Attorney General<br>Consumer Law Section<br>455 Golden Gate Ave., Suite 11000<br>San Francisco, CA 94102 | *California Attorney General* |
| California Department of Social Services<br>Legal Division<br>744 P Street #8-5-161<br>Sacramento, CA 95814 | *California Department of Social Services* |
| Loretta E. Lynch<br>United States Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001 | *United States Attorney General* |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on February 26, 2016, at Irvine, California.

Nicole C. Michau

NAI-1500858288v1

2

**PROOF OF SERVICE**

Ex. K - Notice of Lodgment

Page 375